**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK TASSINARI,<br>individually and on behalf of all<br>others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>THE SALVATION ARMY NATIONAL<br>CORPORATION; THE SALVATION ARMY I<br>(EASTERN); THE SALVATION ARMY USA<br>CENTRAL TERRITORY; THE SALVATION<br>ARMY II (SOUTHERN); THE SALVATION<br>ARMY III (WESTERN);<br><br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.:_____

**JURY TRIAL DEMAND**

---

## CLASS ACTION COMPLAINT

1.      The Salvation Army puts thousands of people at increased risk of death, relapse, severe illness, and homelessness each year by denying individuals with opioid use disorder (OUD)[1] access to doctor-prescribed medication-assisted treatment (MAT),[2] *the* standard of care for OUD, and excluding individuals participating in MAT from enrolling in its residential Adult Rehabilitation Centers and Programs (together, "ARCs").

2.      The Salvation Army's discriminatory nationwide policy and practice regarding MAT treatment was in place as of approximately April 14, 2018 and continues to be in place. As

---

[1] "Opioid use disorder" or "OUD" is a term that includes disorders related to opioid use, the most severe form of which is often referred to as "addiction." The acronym OUD is often pronounced phonetically, "ood" or "ude" (rhymes with "food" and "rude").
[2] The acronym MAT, for medication-assisted treatment, is often pronounced M-A-T (phonetically, "em-ay-tee") with each letter of the acronym said individually.

of the date of this Complaint, that discriminatory policy is stated on The Salvation Army's

website at https://www.salvationarmyusa.org/usn/combat-addiction/ (last accessed May 14,

2021). In addition, on May 13, 2021, The Salvation Army confirmed this policy to Mr. Tassinari

and refused to enroll him in its ARC program and services including housing due to his disability

(OUD) and use of MAT for treatment. As a result, The Salvation Army has discriminated against

and continues on an ongoing basis to discriminate against Mr. Tassinari and other individuals

with disabilities who use MAT.

3.      Mr. Tassinari has a long history of OUD and participating in doctor-prescribed

MAT as treatment. In 2018 he was ordered by a court to complete The Salvation Army's ARC

program as a condition of probation. While he was not receiving MAT when he enrolled at the

ARC, his doctor prescribed MAT shortly thereafter. When The Salvation Army learned of Mr.

Tassinari's use of MAT, it immediately expelled him from its ARC program and services,

including housing. This happened on approximately April 14, 2018.

4.      Since his enrollment in and expulsion from the Salvation Army's ARC program

in 2018 and ongoing, Mr. Tassinari has been qualified and remains qualified to participate in The

Salvation Army's ARC program and services, including housing, but for The Salvation Army's

discriminatory MAT policy. As a result of The Salvation Army's discriminatory policy, Mr.

Tassinari and other individuals with disabilities who use or need to use MAT for treatment face

the Hobson's choice of forgoing necessary doctor-ordered treatment to participate in ARCs, or

being excluded from ARC programs and services altogether.

5.      Plaintiff Mark Tassinari brings this class action complaint for damages and

injunctive relief on behalf of himself and others similarly situated against Defendants The

Salvation Army National Corporation, The Salvation Army I (Eastern Territory) a/k/a "The

DocuSign Envelope ID: B3FDB72A-6665-44F6-A784-D235CE945007

Salvation Army," The Salvation Army USA Central Territory a/k/a "The Salvation Army," The

Salvation Army II (Southern Territory) a/k/a "The Salvation Army, a Georgia Corporation" a/k/a

"The Salvation Army," and The Salvation Army III (Western Territory) a/k/a "The Salvation

Army" (together, "The Salvation Army"), pursuant to Title III of the Americans with Disabilities

Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), Section 504 the Rehabilitation Act, 29 U.S.C. § 794

("Rehabilitation Act"), and the Fair Housing Act 42 U.S.C. § 3601 *et seq*. ("FHA"), for

excluding individuals participating in MAT from Salvation Army Adult Rehabilitation Centers

and Programs and/or denying individuals with OUD access to MAT while enrolled in its Adult

Rehabilitation Centers and Programs, and states as follows.

## **Background**

6.      Mr. Tassinari, who is 35, began his struggle with OUD almost twenty years ago,

as a teenager. He took habit-forming painkillers like Vicodin, Percocet, and OxyContin nearly

daily, in part to cope with the trauma of being removed from his home and placed in the foster

care system, and to relieve other stress and anxiety. Once he started using opioids regularly, he

began to experience the permanent brain-altering effects of opioid use disorder. He was not able

to stop on his own, even though he felt the intense and persistent physical toll the drugs were

taking on his body. He wanted to stop but felt stuck: he experienced stigma because of his

struggle with OUD and was discouraged by the mounting pressure of what he felt he had not

accomplished because of OUD.

7.      Like many individuals with OUD, Mr. Tassinari's ongoing recovery includes

periods of relapse and remission. He has experienced sobriety for long stretches, including when

he was 25 and maintained his sobriety with MAT (specifically, buprenorphine) for four-and-a-

half years. During that period of hard-won sobriety, he had a driver's license and car, housing,

employment, and a meaningful relationship—he considers this period of remission the most successful time of his life.

8.      He has also experienced many lows related to relapse, including overdosing at least eight times, being revived with Narcan three or four times, receiving a shot of adrenaline to restart his heart, numerous hospitalizations, nearly aspirating in his own vomit, and engaging in other disability-related behaviors. Mr. Tassinari's struggle with OUD brought him into contact with the criminal justice system and has contributed to many periods of homelessness.

9.      Before he tried MAT, Mr. Tassinari attempted sobriety dozens of times over a five-year period, without success lasting longer than a couple months.

10.     The only treatment for OUD that has worked for Mr. Tassinari is MAT.

11.     After a licensed physician prescribed Mr. Tassinari MAT for the first time, when he was 25 and already a decade into his struggle with OUD, Mr. Tassinari recalls feeling like he could sit comfortably in his own skin for the first time in his life.

12.     Ever since, MAT, including buprenorphine and methadone, has been a significant part of Mr. Tassinari's ongoing recovery and treatment for OUD.

*   *   *   *   *

13.     In or around late 2017, after four-and-a-half years of sobriety and stability, Mr. Tassinari experienced a devastating break up from a long-term partner. The emotional trauma of the break-up triggered a period of relapse that culminated in his arrest and prosecution for three non-violent OUD-related offenses, including possession of pills.

14.     Although Mr. Tassinari was initially sentenced to probation, he experienced a second relapse during probation that led to a three-month hospitalization for complications arising from OUD and his other mental health issues. During his relapse and hospitalization, Mr.

DocuSign Envelope ID: B3FDB72A-6665-44F6-A781-D235CE945007

Tassinari was not able to reach his probation officer, which put him in violation of his probation. When he was released from the hospital, Mr. Tassinari turned himself in for the probation violation. A judge sentenced him to a year at Essex County jail.

15.     In or around early 2018, after spending more than a month in Essex County jail, Mr. Tassinari's prison case worker gave him a choice: complete the rest of his one-year sentence in prison, or the State would agree to release him on probation if he agreed to attend The Salvation Army's Adult Rehabilitation Center (ARC) program for treatment for OUD. Mr. Tassinari was not given any other choices: either jail or The Salvation Army ARC.

16.     Mr. Tassinari, in substance withdrawal and without access to his prescribed psychiatric medications or medication-assisted treatment (MAT), was suffering extreme physical and emotional distress in jail. He agreed to the transfer and was placed on probation pending completion of The Salvation Army's 180-day residential drug rehabilitation program at the Boston ARC, located in Saugus, Massachusetts.

*     *     *     *     *

17.     When Mr. Tassinari arrived at The Salvation Army ARC, he participated fully in the rehabilitation program. He knew that The Salvation Army was the only thing between him and jail, so he kept his head down, followed instructions, worked hard, and tried not to complain, even as he suffered painful withdrawal symptoms and was prohibited from seeking medical help from a doctor.

18.     The Salvation Army's ARCs do not provide participants with medical care when they arrive; there are no doctors on staff and participants are not medically evaluated to assess their needs. During a period of time after they begin the program, The Salvation Army imposes a strict lockdown on ARC participants, during which they are unable to contact outside friends or

5

DocuSign Envelope ID: B3FDB72A-6665-44F6-A784-D235CE945007

Case 1:21-cv-10806-LTS   Document 1   Filed 05/14/21   Page 6 of 37

relatives and cannot seek medical treatment from doctors or pick up their prescription medications from a pharmacy. No doctor or medical professional supervises The Salvation Army's ARC participants during this period of lockdown, or at any other time during the program.

19.     Mr. Tassinari's repeated requests to The Salvation Army to allow him to seek medical treatment went unanswered; The Salvation Army would not let him leave the ARC to see his doctor and would not provide him with the medical help he needed at the ARC.

20.     Approximately a month into joining The Salvation Army's ARC program, Mr. Tassinari's need to see a doctor to refill his prescriptions became critical. By then, he had been off his psychiatric medications and MAT for approximately three months and was suffering physical pain, anxiety, frayed emotions, loss of appetite, and difficulty sleeping. Every day that Mr. Tassinari could not see a doctor and receive treatment for his OUD was a struggle.

21.     Finally, Mr. Tassinari's probation officer, who was in contact with The Salvation Army, convinced The Salvation Army to allow Mr. Tassinari to see his doctor at Boston Health Care for the Homeless, where he had been a patient for several years.

22.     Mr. Tassinari met with his usual doctor, who immediately expressed concern for Mr. Tassinari's health if he did not resume his MAT regimen. In addition to refilling Mr. Tassinari's other prescriptions, his doctor prescribed buprenorphine (the same widely used MAT medication Mr. Tassinari took during his four-and-half-year period of sobriety), to assist in recovery from OUD. Mr. Tassinari's prescription included instructions that he should self-administer the medication; a medical professional would not need to administer his doses.

23.     Following his doctor's orders, Mr. Tassinari took his first dose of the medication before returning to The Salvation Army ARC.

24.     Mr. Tassinari did not use any illegal or non-prescribed drug while he was away from The Salvation Army ARC traveling to and from his doctor's office. He remained committed to his recovery, health, sobriety, and probation conditions, including staying enrolled at The Salvation Army ARC for the full 180-day period of his assignment.

25.     However, when he returned to The Salvation Army ARC, he was required to submit to urinalysis. Mr. Tassinari explained to The Salvation Army that he had taken doctor-prescribed buprenorphine for OUD. His urinalysis confirmed that he had buprenorphine in his system and that he had not taken any illegal or non-prescribed drug.

26.     Even though MAT, including buprenorphine, is the standard of care for treatment of OUD and a legally prescribed medication, The Salvation Army immediately, on or about April 14, 2018, terminated Mr. Tassinari from participation in the ARC program, including his ARC housing, because of its blanket, discriminatory, nationwide policy and practice of prohibiting participants with OUD from receiving MAT, including buprenorphine, even when prescribed directly by their licensed physicians.

27.     In that instant, The Salvation Army forced Mr. Tassinari onto the streets, where he faced months of uncertainty, relapse, danger, helplessness, and the looming threat of jail.

28.     During the days remaining of the 180-day ARC program required by the court as a condition of his probation, The Salvation Army did not attempt to accommodate Mr. Tassinari's OUD or revise its policy to ensure that he could continue to participate in the ARC while taking his doctor-prescribed MAT. The Salvation Army did not engage with him, listen to his request to remain enrolled in the ARC with MAT, or even follow up with him after terminating him from the ARC program and removing him from ARC housing.

29.     After Mr. Tassinari's expulsion from The Salvation Army's ARC program, Mr. Tassinari faced extraordinarily difficult and debilitating circumstances, directly resulting from The Salvation Army's discrimination against him. He became homeless, suffered a harmful relapse, lost many of his personal belongings and personal paper records, did not have reliable access to a phone or computer, lost contact with his probation officer, and required lengthy hospitalization before he could even get back in front of the court for a hearing on his probation conditions.

30.     It took nearly a year for Mr. Tassinari to get back in front of a judge for a hearing on his probation conditions.

31.     During that hearing, the court learned for the first time that The Salvation Army had terminated Mr. Tassinari from its ARC program including ARC housing due to him taking doctor prescribed MAT to treat his OUD and The Salvation Army's policy prohibiting participants from using MAT.

32.     Because he was no longer enrolled in The Salvation Army's ARC program, the court found Mr. Tassinari in violation of his probation.

33.     The court ordered Mr. Tassinari to complete the remainder of his probation at The North Cottage Program, a residential treatment facility in Norton, Massachusetts that provides program participants with OUD access to MAT.

34.     With MAT, Mr. Tassinari was able to complete his probation and was released from North Cottage in or around October 2019.

35.      Mr. Tassinari is continuing his fight for sobriety and recovery from OUD with doctor-prescribed MAT. He continues to experience periods of homelessness. While he is

currently in treatment at Arbour Hospital, he will soon be released and will again be without a permanent address.

36.     As part of planning for his housing needs after his upcoming release from Arbour Hospital, on May 13, 2021, Mr. Tassinari contacted The Salvation Army ARC in Saugus, Massachusetts to ask if they would accept him for OUD rehabilitation. Mr. Tassinari disclosed that he is currently taking MAT (buprenorphine), and that he has a prescription to continue taking MAT. Although the ARC acknowledged that it has a bed available, The Salvation Army told Mr. Tassinari that he could not have a bed because of his participation in MAT. The Salvation Army further said that if Mr. Tassinari wanted to have the bed and participate in the ARC, he would have to stop taking his MAT.

*   *   *   *   *

## Jurisdiction

37.     This action is brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Fair Housing Act, 42 U.S.C. 3601 *et seq*.

38.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law.

39.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

DocuSign Envelope ID: B3FDB72A-6655-44F6-A784-D235CE045007

## Parties

### Plaintiff Mark Tassinari

40.     Plaintiff Mark Tassinari is an adult resident of Massachusetts who has opioid use disorder (OUD), a chronic brain disease and disability that affects and substantially limits several major life activities including, but not limited to, sleeping, working, thinking, remembering, eating, and caring for himself.

41.     Mr. Tassinari also has anxiety, depression, and Post Traumatic Stress Disorder, disabilities that substantially limit several major life activities including, but not limited to, caring for himself.

42.     Mr. Tassinari currently participates in MAT; he takes doctor-prescribed buprenorphine. He uses MAT only in accordance with his doctor's prescribing instructions as part of his treatment for OUD.

43.     Mr. Tassinari's treatment for OUD is ongoing and he has experienced numerous relapses since his expulsion from The Salvation Army ARC program and housing in 2018. He does not have a permanent address and is in need of rehabilitative treatment and housing. Other than his participation in MAT, Mr. Tassinari meets the requirements to enroll in a Salvation Army ARC and would like the opportunity to do so without ending his participation in MAT.

### Defendant The Salvation Army

44.     The Salvation Army describes itself as an international movement related to evangelical Christianity.[3] Defendants are principally engaged in the business of providing education, health care, housing, and social services, within the meaning of and for the purpose of applying federal anti-discrimination laws.

---

[3]The Salvation Army, https://www.salvationarmyusa.org/usn/ (last accessed May 14, 2021).

45.     "The administration of The Salvation Army is top-down and autocratic, in true military style[.]"[4] It has a unified mission and centralized control; The Salvation Army's international motto is "One Army, One Mission, One Message."[5]

46.     In the United States, The Salvation Army operates through a hierarchy of related 501(c)(3) organizations, including a national headquarters (Defendant "The Salvation Army National Corporation"), headed by a "National Commander," and four "territorial headquarters" run by "Territorial Commanders," representing each of four regions of the United States: Eastern (Defendant The Salvation Army I), Southern (Defendant The Salvation Army II), Western (Defendant The Salvation Army III), and Central (Defendant The Salvation Army USA Central Territory) (together, "Territorial Defendants").[6]

47.     The National Commander, who serves as head of Defendant The Salvation Army National Corporation, coordinates and directs Salvation Army functions nationwide by also serving as the Chairperson of the Board for each of the Territorial Defendants.[7]

48.     Each of the Territorial Defendants acts in coordination with the other Territorial Defendants and The Salvation Army National Corporation to administer Adult Rehabilitation Centers and Programs in the United States, including to set and enforce policies and procedures related to ARC program participants' access to MAT, and denial of ARC services to individuals participating in MAT.

49.     ARC programs and services are places of public accommodation.

---

[4] The Salvation Army, https://ctri.salvationarmy.org/SNE/Organizational (last accessed May 14, 2021)

[5] The Salvation Army, https://www.salvationarmy.org/ihq/vision (last accessed May 14, 2021).

[6] The Salvation Army, https://ctri.salvationarmy.org/SNE/Organizational (last accessed May 14, 2021).

[7] The Salvation Army, https://ctri.salvationarmy.org/SNE/Organizational (last accessed May 14, 2021).

50.     ARC programs and services include housing.

**Defendant The Salvation Army National Corporation**

51.     Defendant The Salvation Army National Corporation is a 501(c)(3) organization with its headquarters at 615 Slaters Lane, Alexandria, Virginia 22314.

52.     The Salvation Army National Corporation owns, leases, leases to, or operates approximately 143 Adult Rehabilitation Centers and Programs (ARCs)[8] throughout the United States, including the Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906.

53.     The ARCs owned, leased, leased to, or operated by The Salvation Army National Corporation, including the Boston Adult Rehabilitation Center, are places of public accommodation.

54.     The ARCs include housing.

55.     Upon information and belief, The Salvation Army National Corporation receives federal financial assistance.[9]

56.     Upon information and belief, The Salvation Army National Corporation receives federal financial assistance extended to The Salvation Army National Corporation as a whole.

**Defendant The Salvation Army I (Eastern)**

57.     Defendant The Salvation Army I (Eastern), a/k/a "The Salvation Army," is a 501(c)(3) organization located at 440 West Nyack Road, West Nyack, New York 10994.

---

[8] *See* The Salvation Army, https://salvationarmyannualreport.org/financials/ (last visited March 12, 2021).

[9] The Salvation Army, https://salvationarmyannualreport.org/financials/ (last visited May 14, 2021); Sabrina Kiser, *How the Salvation Army Engages the Federal Government with Sabrina Kiser*, Caring Magazine (Sept. 30, 2019), https://caringmagazine.org/19-how-the-salvation-army-engages-the-federal-government-with-sabrina-kiser/;  U.S. Government, https://www.usaspending.gov/ (last visited May 14, 2021).

58.     The Salvation Army I (Eastern) operates in 12 states, regions, or territories: Connecticut, Delaware, Northeast Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Puerto Rico, and the Virgin Islands.

59.     The Salvation Army I (Eastern) owns, leases, leases to, or operates several Adult Rehabilitation Centers and Programs (ARCs) throughout the eastern United States, including the Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906.

60.     The ARCs owned, leased, leased to, or operated by The Salvation Army I (Eastern), including the Boston Adult Rehabilitation Center, are places of public accommodation.

61.     The ARCs include housing.

62.     Upon information and belief, The Salvation Army I (Eastern) receives federal financial assistance.

63.     Upon information and belief, The Salvation Army I (Eastern) receives federal financial assistance extended to The Salvation Army I (Eastern) as a whole.

64.     Upon information and belief, The Salvation Army I (Eastern) receives federal financial assistance extended to The Salvation Army National Corporation as a whole.

**Defendant The Salvation Army II (Southern)**

65.     Defendant The Salvation Army II (Southern), a/k/a The Salvation Army, a Georgia Corporation and "The Salvation Army" is a 501(c)(3) organization with its headquarters at 1424 Northeast Expressway NE, Atlanta, Georgia 30329.

66.     The Salvation Army II (Southern) operates in 16 states, regions, or territories: Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Maryland, Mississippi, North

Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, Washington, District of
Columbia, and West Virginia.

67.     The Salvation Army II (Southern) owns, leases, leases to, or operates several
Adult Rehabilitation Centers and Programs (ARCs) throughout the southern United States.

68.     The ARCs owned, leased, leased to, or operated by The Salvation Army II
(Southern) are places of public accommodation.

69.     The ARCs include housing.

70.     Upon information and belief, The Salvation Army II (Southern) receives federal
financial assistance.

71.     Upon information and belief, The Salvation Army II (Southern) receives federal
financial assistance extended to The Salvation Army II (Southern) as a whole.

72.     Upon information and belief, The Salvation Army II (Southern) receives federal
financial assistance extended to The Salvation Army National Corporation as a whole.

**Defendant The Salvation Army III (Western)**

73.     Defendant The Salvation Army III (Western), a/k/a "The Salvation Army" is a
501(c)(3) organization with its headquarters at 30840 Hawthorne Boulevard, Rancho Palos
Verdes, California 90275.

74.     The Salvation Army III (Western) operates in 16 states, regions, or territories:
Alaska, Washington, Oregon, California, New Mexico, Arizona, Nevada, Utah, Idaho,
Wyoming, Montana, Colorado, Hawaii, Guam, Micronesia, and the Marshall Islands.

75.     The Salvation Army III (Western) owns, leases, leases to, or operates several
Adult Rehabilitation Centers and Programs (ARCs) throughout the western United States.

76.     The ARCs owned, leased, leased to, or operated by The Salvation Army III (Western), are places of public accommodation.

77.     The ARCs include housing.

78.     Upon information and belief, The Salvation Army III (Western) receives federal financial assistance.

79.     Upon information and belief, The Salvation Army III (Western) receives federal financial assistance extended to The Salvation Army III (Western) as a whole.

80.     Upon information and belief, The Salvation Army III (Western) receives federal financial assistance extended to The Salvation Army National Corporation as a whole.

**Defendant The Salvation Army USA Central Territory**

81.     Defendant The Salvation Army USA Central Territory, a/k/a "The Salvation Army," is a 501(c)(3) organization with its headquarters at 5550 Prairie Stone Parkway, Hoffman Estates, Illinois 60192.

82.     The Salvation Army USA Central Territory operates in 11 states, regions, or territories: Michigan, Wisconsin, Minnesota, North Dakota, South Dakota, Nebraska, Kansas, Missouri, Illinois, Iowa, and Indiana.

83.     The Salvation Army USA Central Territory owns, leases, leases to, or operates several Adult Rehabilitation Centers and Programs (ARCs) throughout the western United States.

84.     The ARCs owned, leased, leased to, or operated by The Salvation Army USA Central Territory are places of public accommodation.

85.     The ARCs include housing.

15

86.     Upon information and belief, The Salvation Army USA Central Territory receives federal financial assistance.

87.     Upon information and belief, The Salvation Army USA Central Territory receives federal financial assistance extended to The Salvation Army USA Central Territory as a whole.

88.     Upon information and belief, The Salvation Army USA Central Territory receives federal financial assistance extended to The Salvation Army National Corporation as a whole.

**Factual Allegations**

**Opioid Use Disorder is a Serious Disability Recognized by the ADA, Rehabilitation Act, and Fair Housing Act**

89.     Opioid use disorder (OUD) is a chronic brain disease associated with numerous potentially deadly complications. Individuals with OUD experience cravings, increasing tolerance to opioids, withdrawal symptoms, and a loss of control. OUD substantially limits major life activities including, but not limited to, sleeping, working, caring for oneself, thinking, and communicating.

90.     Like other chronic diseases, OUD often involves cycles of relapse and remission. Without treatment or other recovery, individuals with OUD are frequently unable to control their use of opioids. OUD is a progressive illness and can result in permanent harm or premature death.

91.     In 2017, when the U.S. Department of Health and Human Services declared the opioid epidemic a public health emergency,[10] the Centers for Disease Control and Prevention

---

[10] U.S. Dep't of Health and Human Services, *What is the U.S. Opioid Epidemic?* (Apr. 28, 2021), https://www.hhs.gov/opioids/about-the-epidemic/index.html.

DocuSign Envelope ID: B3F0B72A-6655-44E6-A784-0335CE045007

recorded 49,860 opioid-involved overdose deaths in the United States in 2019.[11] OUD remains a

serious public health crisis affecting millions throughout the country.

92.     "Drug addiction" – another term for substance use disorders including OUD – is a

disability as defined by the Americans With Disabilities Act, Rehabilitation Act, and Fair

Housing Act.[12] See 42 U.S.C. § 12102; 28 C.F.R. § 36.104 ("The phrase physical or mental

impairment includes, but is not limited to . . . drug addiction, and alcoholism."); 45 C.F.R. § Pt.

84, App. A; 24 C.F.R. 100.201 ("The term physical or mental impairment includes, but is not

limited to…drug addiction (*other than* addiction caused by *current, illegal* use of a controlled

substance)…" (emphasis added). Individuals participating in drug rehabilitation programs or

seeking drug rehabilitation are protected from discrimination on the basis of their substance use

disorder. 42 U.S.C. § 12210(a), (b); 29 U.S.C. § 705(10)(B).

**Medication-Assisted Treatment for Opioid Use Disorder is the Standard of Care**

93.     Medication-assisted treatment (MAT) is the medically recognized standard of

care for treating OUD.[13]

94.     Although some patients can treat their opioid use disorder using other methods,

most patients need MAT to achieve long-term recovery.

95.     MAT for OUD involves a doctor's prescription for medications such as

methadone, buprenorphine (e.g., Suboxone, Subutex), or naltrexone (Vivitrol) alongside other

---

[11] National Institute on Drug Abuse, *Overdose Death Rates* (Jan. 29, 2021),
https://www.drugabuse.gov/drug-topics/trends-statistics/overdose-death-rates.
[12] The FHA uses the outdated term "handicap" which is synonymous with "disability." This
Complaint will use the term "disability" throughout.
[13] Barbara DiPietro et al., Addressing the Opiod Crisis: Medication Assisted Treatment at Health
Care for the Homeless Programs (2019), https://files.kff.org/attachment/Issue-Brief-Addressing-
the-Opioid-Crisis-Medication-Assisted-Treatment-at-Health-Care-for-the-Homeless-Programs.

therapeutic interventions, to better enable people with OUD to overcome their cravings and symptoms of withdrawal.

96.     Methadone, buprenorphine (e.g., Suboxone, Subutex), and naltrexone (Vivitrol) have been approved by the United States Food and Drug Administration for treatment of opioid dependence.

97.      MAT medications block opioid receptors in the brain, suppressing opioid cravings, and prevent many painful symptoms of withdrawal such as insomnia or disrupted sleep, hot and cold sweats, muscle aches and pains, cramping, nausea, vomiting, diarrhea, and mood swings.

98.     The two most commonly used MAT medications are methadone and buprenorphine.

99.     Methadone is a full agonist at the opioid receptor, and buprenorphine is a partial agonist.

100.     Both buprenorphine and methadone bind tightly to the opioid receptor so that someone taking one of these medications is not able to feel a "high" from taking opioids (including heroin and fentanyl) because those drugs are not able to activate the opioid receptor.

101.     Both methadone and buprenorphine also facilitate extinction learning because patients learn that they will not get the same "high" from taking opioids.

102.     MAT decreases the risk that someone in OUD recovery will suffer serious medical conditions related to withdrawal, improves retention in treatment (for example, staying enrolled in a residential rehabilitation program), increases abstinence from illicit drugs, and decreases incidence of relapse, overdosing, and death.[14]

---

[14] Shane Darke et al., *Yes, People Can Die From Opiate Withdrawal*, ADDICTION 1 (2016).

103.    MAT is far more effective than detoxification alone, which produces very poor outcomes.[15]

104.    Once OUD patients begin MAT, continued MAT treatment offers the best chance of success.

105.    Forced withdrawal is not medically appropriate for patients being treated with MAT.

106.    Death is significantly more likely to occur for people with OUD who do not receive MAT treatment in comparison with those who do receive this treatment.[16]

**The Salvation Army's National Adult Rehabilitation Program Prohibits MAT**

107.    The Salvation Army operates approximately 143 residential Adult Rehabilitation Centers and Programs (ARCs) in the United States,[17] purportedly to assist individuals with recovery from substance use disorders including opioid use disorder (OUD).[18]

108.    Within the meaning of and for the purpose of applying federal anti-discrimination laws, The Salvation Army is principally engaged in providing education, health care, housing, and social services such as those described in the paragraph above.

109.    ARCs provide participants with housing and basic living necessities for approximately six months, during which time participants are expected to live on site, be sober,

---

[15] National Institute on Drug Abuse, *Medications to Treat Opioid Use Disorder Research Report* (2018), https://www.drugabuse.gov/publications/research-reports/medications-to-treat-opioid-addiction/how-do-medications-to-treat-opioid-addiction-work.

[16] National Institute on Drug Abuse, *Medications to Treat Opioid Use Disorder Research Report* (2018), https://www.drugabuse.gov/publications/research-reports/medications-to-treat-opioid-addiction/how-do-medications-to-treat-opioid-addiction-work.

[17] *See* The Salvation Army, https://salvationarmyannualreport.org/financials/ (last visited March 12, 2021).

[18] *See* The Salvation Army, https://www.salvationarmyusa.org/usn/combat-addiction/ (last visited March 12, 2021).

attend church, and work full-time for The Salvation Army's retail operations (thrift stores) without wages.

110.    The Salvation Army relies on a steady stream of program participants who do not have anywhere else to go.

111.    The Salvation Army is the largest provider of purportedly "no-cost" adult rehabilitation for OUD in the United States.

112.    In many communities, The Salvation Army's ARCs are the only rehabilitation option available to people with OUD and limited means.

113.    Moreover, The Salvation Army's ARCs receive most program participants directly from court placements, probation, or prison, enrolling individuals, like Plaintiff, who attend rehabilitation at The Salvation Army as an alternative, provided by the State, to jail.

114.    For program participants diverted from prisons, jails, and/or probation programs as ordered, overseen, or approved by the state or federal court or government officials, The Salvation Army's ARCs regularly communicate with these government officials, including probation officers, regarding the participants' compliance with the ARC's programs. The Salvation Army informs these officials if participants completing probation or parole terms at an ARC are expelled from the program, knowing that this report may lead to negative consequences, including arrest or jail, for the expelled participant by the overseeing government official.

115.    The Salvation Army purports to enroll program participants without charge.

116.    In reality, The Salvation Army requires program participants to work full-time (and sometimes overtime) at The Salvation Army without wages.

117.    The Salvation Army requires participants to apply for government benefits (like the federal Supplemental Nutrition Assistance Program (SNAP)) and assign those benefits to The Salvation Army to use for participants' care.

118.    The operation of The Salvation Army's ARCs is deeply entangled with the courts, jails, and federal government.

119.    Although there is substantial consensus among physicians that MAT is the standard of care for OUD, The Salvation Army has a national policy and practice of prohibiting MAT, even for those who are already taking prescribed MAT medications at the time they seek (or are ordered by a court to participate in) rehabilitation at The Salvation Army's ARCs.[19]

120.    The Salvation Army has been operating ARCs for over 100 years.[20]

121.    Although substance use disorder treatment standards have advanced and evolved significantly during that time, The Salvation Army has not updated its program to keep up with modern best practices and standards of care for OUD.

122.    Defendants' discriminatory policies and practices present individuals participating in MAT with an impossible decision: stop taking doctor-prescribed medications before enrolling in The Salvation Army's rehabilitation program, risking cravings, painful withdrawal, and other serious medical effects – including greatly increasing the risk of death from OUD – or forego The Salvation Army's rehabilitation programs and services – including housing – altogether.

---

[19] The Salvation Army, https://www.salvationarmyusa.org/usn/combat-addiction/ (last visited May 14, 2021) (blanket policy prohibiting prescription Schedule II drugs and narcotics, broad categories that include the most commonly prescribed MAT drugs).
[20] The Salvation Army, https://www.salvationarmyusa.org/usn/combat-addiction/ (last visited May 14, 2021).

123.    For individuals who need MAT but do not yet have a prescription or whose prescription needs to be refilled, enrolling in The Salvation Army's rehabilitation program means forgoing their best chance of long-term recovery.

124.    For many, including Mr. Tassinari, whose participation in The Salvation Army's rehabilitation program was a probation condition, forgoing such participation risks a jail sentence.

125.    For others, forgoing rehabilitation or stopping MAT may exacerbate OUD symptoms, lead to relapse, and substantially reduce the chance of successful long-term recovery.

**The Salvation Army Excludes and Discriminates Against Plaintiff and Members of the Proposed Classes Because of Their Participation in or Need for Doctor-Prescribed MAT**

126.    The Salvation Army admitted Mr. Tassinari to its Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906, in early 2018.

127.    After approximately one-two months in the program, on or about April 14, 2018, Mr. Tassinari was allowed to visit his doctor at Boston Health Care for the Homeless.

128.    His doctor prescribed him buprenorphine, an MAT drug, to assist with his OUD recovery.

129.    Mr. Tassinari took his first dose of the medication, as instructed by his doctor, before returning to The Salvation Army.

130.    When he returned to The Salvation Army, Mr. Tassinari was required to submit to urinalysis.

131.    Mr. Tassinari explained to The Salvation Army that he had taken doctor-prescribed buprenorphine for OUD, and that he had not used any illegal or non-prescribed drug.

132.     Mr. Tassinari's urinalysis confirmed that he had buprenorphine in his system and that he had not taken any illegal or non-prescribed drug.

DocuSign Envelope ID: B3FDB72A-6655-44E6-A784-0325CE945007

133.    On approximately April 14, 2018, The Salvation Army immediately expelled Mr. Tassinari from the ARC program and services including housing because he had taken doctor-prescribed buprenorphine. They directed him to collect his things and leave.

134.    By approximately April 17, 2018, The Salvation Army had communicated its expulsion of Mr. Tassinari to his probation officer, causing the probation officer to report that Mr. Tassinari was in violation of his parole.

135.    Approximately one year after The Salvation Army expelled him from the ARC program and services, the court found him in violation of his probation due to no longer participating in ARC.

136.    From approximately April 14, 2018 and ongoing, The Salvation Army has discriminated against and excluded Mr. Tassinari from the ARC program and services including housing due to his disability and use of doctor-prescribed MAT to treat his disability.

137.    The Salvation Army has a policy of permitting individuals expelled from its ARC program to resume the ARC program if the specific ARC has capacity and the individual meets The Salvation Army's conditions, including not taking physician-prescribed MAT. While Mr. Tassinari was housed in The Salvation Army ARC program, he met fellow participants who had returned to the program after expulsion.

138.    Since approximately April 14, 2018 and ongoing, The Salvation Army has had in place a policy which discriminates against Mr. Tassinari and other individuals with OUD who use doctor-prescribed MAT.

139.    Due to The Salvation Army's discriminatory policy, The Salvation Army discriminated against and excluded Mr. Tassinari from the ARC program and services including housing. This discrimination and exclusion is repeated, continuous, and ongoing.

DocuSign Envelope ID: B3FDB72A-6655-44E6-A784-0335CE045007

140.   Due to The Salvation Army's discriminatory policy, Mr. Tassinari has been and continues to be prevented from returning to and/or participating in the ARC program and services including housing.

141.   Mr. Tassinari still requires rehabilitation for OUD and receives MAT.

142.   On May 13, 2021, he again sought ARC services.

143.   In response, the Salvation Army again affirmed its policy of excluding individuals participating in MAT.

144.   In response, The Salvation Army applied its policy of excluding Mr. Tassinari from the ARC program and services including housing.

145.    The Salvation Army's policy of prohibiting participants and residents from obtaining MAT treatment applies in all of its ARCs nationwide.

146.   As a result, The Salvation Army denies thousands of individuals like Mr. Tassinari access to MAT while enrolled in ARCs nationwide even though it is medically necessary for many individuals with OUD.

147.   The Salvation Army refuses to admit individuals who are participating in MAT, even though it is medically necessary for many individuals with OUD.

148.   The Salvation Army has a national policy and practice of expelling any individual who participates in MAT from its ARCs without regard to the medical necessity of MAT for those individuals and without attempting to accommodate their medical needs and disability.

149.   The Salvation Army's blanket policy to discriminate against individuals participating in MAT means that many individuals with OUD cannot access rehabilitation services, and those who do enroll in The Salvation Army's ARCs cannot access medically necessary MAT.

## Class Allegations

150.   Plaintiff Tassinari brings this class action pursuant to Rule 23(a), (b)(2), and
(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes: (1) all
individuals with OUD who are or were excluded from participating in The Salvation Army's
ARCs in the United States because of their use of doctor-prescribed MAT drugs, including
methadone (including methadone with hydrochloride), buprenorphine (including buprenorphine
with naloxone), and naltrexone (the "Denial of Service" Class) and (2) all individuals with OUD
who are or were denied access to doctor-prescribed MAT drugs, including methadone (including
methadone with hydrochloride), buprenorphine (including buprenorphine with naloxone), and
naltrexone, while participating in The Salvation Army's ARCs in the United States (the "Denial
of MAT" Class).

151.   Numerosity—Fed. R. Civ. P. 23(a)(1).  The members of each Class are so
numerous that joinder of all members is impracticable. The exact number or identification of the
members of each Class is presently unknown. Upon information and belief, each Class includes
thousands of individuals across the country. Upon information and belief, the identity of the
members of each Class is ascertainable and can be determined based on available records
maintained by Defendants. An estimated 150,000 individuals with substance use disorders go
through Defendants' ARCs each year.[21] Joinder of all members of each of the proposed Classes
would be impracticable because, without limitation, each Class consists of numerous individuals

---

[21]Kenneth Anderson, *"Work Therapy" – How the Salvation Army's Chain of Rehabs Exploits
Unpaid Labor*, The Influence (Nov. 21, 2016),
https://www.prisonlegalnews.org/news/2016/nov/21/work-therapyhow-salvation-armys-chain-
rehabs-exploits-unpaid-
labor/#:~:text=There%20are%20119%20ARC%20rehabs,rehabs%20at%20any%20given%20tim
e.

who are geographically diverse, these individuals are very difficult to identify, and they are

unlikely to be able to bring individual suits. Thus, the numerosity requirement is easily satisfied

here.

152.   <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  There

are multiple questions of law and fact common to each Class that will predominate over

questions affecting only the individual members. The core questions in this case are legal:

whether Defendants violated the ADA, Rehabilitation Act, and FHA by (1) refusing to provide

services to individuals participating in MAT, and (2) refusing to permit individuals enrolled in its

ARCs to participate in MAT. Such an inquiry includes several common questions of law,

including whether The Salvation Army's operation of ARC programs and services including

housing is covered by Title III of the ADA, Section 504 Rehabilitation Act, and FHA; whether

the ADA, Rehabilitation Act, and FHA prohibit The Salvation Army from excluding individuals

from ARCs for participating in doctor-prescribed MAT;  whether the ADA,  Rehabilitation Act,

and FHA prohibit The Salvation Army from denying ARC participants from accessing MAT;

and whether the ADA, Rehabilitation Act, and FHA require The Salvation Army to put in place

nondiscriminatory policies and practices and/or to provide reasonable accommodations where

necessary to allow full and equal participation by people with disabilities.

153.   <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff Tassinari's claims are typical of

the claims of each Class because he and all proposed members of each Class were and continue

to be subject to, and affected by, The Salvation Army's systemic policies and practices alleged

herein.

154.   <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.  Plaintiff Tassinari is an adequate

representative of each Class because he is a member of each Class and his interests do not

conflict with the interests of the members of the Classes he seeks to represent. Plaintiff Tassinari

is represented by experienced and competent Class Counsel. Class Counsel have litigated scores

of class actions, including cases brought under federal civil rights statutes including the ADA,

Rehabilitation Act, and FHA. Plaintiff Tassinari's counsel intends to prosecute this action

vigorously for the benefit of the entirety of each Class. Plaintiff Tassinari and Class Counsel can

fairly and adequately protect the interests of all of the Members of the Classes.

155.     Action on Grounds Generally Applicable to each Class – Fed. R. Civ. P. 23(b)(2).

Based on their nationwide policies and practices, Defendants have acted or refused to act on

grounds generally applicable to each Class, thereby making appropriate final injunctive or

declaratory relief with respect to each Class as a whole.

156.     Superiority—Fed. R. Civ. P. 23(b)(3).  The class action is superior to other

available methods for fairly and efficiently adjudicating this controversy because individual

litigation of the claims of members of each Class would be impracticable and individual

litigation would be unduly burdensome to the courts. Without the class action vehicle, the

Classes would have no reasonable remedy and would continue to suffer losses. Further,

individual litigation has the potential to result in inconsistent or contradictory judgments. There

is no foreseeable difficulty in managing this action as a class action and it provides the benefits

of single adjudication, economies of scale, and comprehensive supervision by a single court.

DocuSign Envelope ID: B3FDB72A-6655-44E6-A784-0325CE045007

<u>**Count I – Americans With Disabilities Act**</u>
**(Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*)**
**(On behalf of the Denial of Service and Denial of MAT Classes)**

157.    Mr. Tassinari incorporates by reference the foregoing paragraphs as if re-alleged herein.

158.    Plaintiff brings this claim on his own behalf and on behalf of each proposed Class.

159.    At all times relevant to this action, Plaintiff Mark Tassinari was and is a qualified individual with a disability within the meaning of the ADA.

160.    Mr. Tassinari has opioid use disorder (OUD), a chronic brain disease that substantially limits one or more of his major life activities.

161.    "Drug addiction" – another term for substance use disorders including OUD – is a "disability" recognized by the Americans With Disabilities Act. *See* 42 U.S.C. § 12102; 28 C.F.R. § 36.104 ("The phrase physical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

162.    Individuals participating in drug rehabilitation programs or seeking drug rehabilitation are protected from discrimination on the basis of their substance use disorder. 42 U.S.C. § 12210 (b).

163.    Mr. Tassinari has is regarded as having, and has a record of having, such disability.

164.    Mr. Tassinari is otherwise qualified to enroll in Defendants' Adult Rehabilitation Centers and Programs (ARCs) because he meets the program criteria.[22]

---

[22] https://www.salvationarmyusa.org/usn/combat-addiction/

165.     Mr. Tassinari has been directed by his physician to participate in doctor-prescribed medication-assisted treatment (MAT), including suboxone, methadone, and/or other prescribed MAT medications, as part of his treatment for OUD, and is currently participating in MAT.

166.     Defendants are each a "private entity," as defined in the ADA, 42 U.S.C. § 12181(6).

167.     Defendants own, operate, lease, or lease to ARCs throughout the United States, including the Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906, and purport to provide residential rehabilitation services including housing, food, and "work therapy" for individuals with substance use disorders including OUD.

168.     Defendants' ARCs are "public accommodations" within the meaning of Title III of the ADA, because they are "homeless shelters" or "other social service center establishment[s]." 42 U.S.C. § 12181(7)(K).

169.     Defendants are subject to the ADA and its corresponding regulations in providing services and benefits to Plaintiff and the members of the proposed classes.

170.     At all times relevant to the facts in this Complaint, Defendants were and continue to be obligated under the ADA not to discriminate against Plaintiff and members of the proposed Classes on the basis of disability including OUD and participation in doctor-prescribed MAT, in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations in their ARCs.

171.     Defendants repeatedly violated and continue to violate the ADA by denying services at ARCs to Mr. Tassinari and other individuals participating in MAT.

172.    Defendants repeatedly violated and continue to violate the ADA by failing to accommodate Mr. Tassinari and other individuals who need MAT at ARCs.

173.    Defendants repeatedly violated and continue to violate the ADA by failing to modify their policies, practices, or procedures to afford Mr. Tassinari and other individuals who use or need MAT access to its ARCs.

174.    Defendants repeatedly violated and continue to violate the ADA by denying Mr. Tassinari and other individuals in ARCs access to MAT.

175.    Defendants repeatedly violated and continue to violate the ADA by imposing and applying eligibility criteria that screen out or tend to screen out Mr. Tassinari and other individuals who participate in MAT or need MAT from fully and equally enjoying ARCs.

176.    Unless and until Defendants cease their discrimination and make reasonable modifications in policies, practices, and procedures and implement the same to permit Mr. Tassinari and other individuals who participate in or need MAT to enroll and remain enrolled in ARCs, Plaintiff and the members of the proposed Classes will continue to be denied full and equal access to and enjoyment of the services, goods, facilities, privileges, advantages, and accommodations that Defendants provide at  their ARCs.

177.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the proposed Classes have or may suffer, and continue to suffer irreparable harm including threat of imminent physical injury, pain and suffering, emotional distress, humiliation, hardship and anxiety, serious illness, and death.

DocuSign Envelope ID: B3FDB72A-6655-44E6-A784-D325CE045007

**Count II – Rehabilitation Act**
**(On behalf of the Denial of Service and Denial of MAT Classes)**

178.    Mr. Tassinari incorporates by reference the foregoing paragraphs as if re-alleged herein.

179.    Plaintiff brings this claim on his own behalf and on behalf of each proposed Class.

180.    At all times relevant to this action, Plaintiff Mark Tassinari was and is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

181.    Mr. Tassinari has opioid use disorder (OUD), a chronic brain disease that substantially limits one or more of his major life activities.

182.    "Drug addiction" – another term for substance use disorders including OUD – is a disability recognized by the Rehabilitation Act. *See* 45 C.F.R. § Pt. 84, App. A.

183.    Individuals participating in drug rehabilitation programs or seeking drug rehabilitation are protected from discrimination on the basis of their substance use disorder. 42 U.S.C. § 12210 (b); 29 U.S.C. § 705(10)(B).

184.    Mr. Tassinari has and is regarded as having, and has a record of having such disability.

185.    Mr. Tassinari is otherwise qualified to enroll in Defendants' ARCs because he meets the program criteria.[23]

186.    Mr. Tassinari was directed by his physician to participate in doctor-prescribed medication-assisted treatment (MAT), including suboxone, methadone, and/or other prescribed MAT medications, as part of his treatment for OUD, and currently participates in MAT.

---

[23] The Salvation Army, https://www.salvationarmyusa.org/usn/combat-addiction/ (last visited May 14, 2021).

187.    Defendants' ARCs are each programs or activities receiving federal financial assistance.

188.    Defendants receive federal financial assistance.

189.    Defendants are principally engaged in the business of providing education, health care, housing, or social services, within the meaning of and for the purpose of applying federal anti-discrimination laws.

190.    Defendants own, operate, lease, lease to, and/or manage ARCs throughout the United States, including Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906, and purport to provide residential rehabilitation services including housing, food, and "work therapy" for individuals with substance use disorders including OUD.

191.    Defendants receive federal financial assistance directly from the federal government, and also from individuals participating in ARCs who are required to apply for and remit federal financial assistance such as Supplemental Nutrition Assistance Program funds to Defendants as a condition of enrolling in ARCs.

192.    Defendants are subject to the Rehabilitation Act and its corresponding regulations in providing services and benefits to Plaintiff and the members of the proposed Classes.

193.    Defendants are and were obligated under the Rehabilitation Act not to exclude Plaintiff and members of the proposed Classes from participation in, deny them the benefits of, or subject them to discrimination under any of Defendants' programs or activities on the basis of disability including OUD and participation in doctor-prescribed MAT.

194.    Defendants repeatedly violated and continue to violate the Rehabilitation Act by denying services at ARCs to Plaintiff and other individuals participating in MAT.

195.     Defendants repeatedly violated and continue to violate the Rehabilitation Act by failing to accommodate Plaintiff and other individuals who need MAT at ARCs.

196.     Defendants repeatedly violated and continue to violate the Rehabilitation Act by failing to make reasonable accommodations in its policies, practices, or procedures to afford Plaintiff and other individuals who use or need MAT access to its ARCs.

197.     Defendants repeatedly violated and continue to violate the Rehabilitation Act by denying Plaintiff and other individuals in ARCs access to MAT.

198.     Defendants repeatedly violated and continue to violate the Rehabilitation Act by imposing and applying eligibility criteria that screen out or tend to screen out Plaintiff and other individuals who participate in MAT or need MAT from fully and equally enjoying ARCs.

199.     Unless and until Defendants make reasonable modifications in policies, practices, and procedures and implement the same to permit Plaintiff and other individuals who participate in or need MAT to enroll and remain enrolled in ARCs, Plaintiff and the members of the proposed Classes will continue to be denied full and equal access to and enjoyment of the services, goods, facilities, privileges, advantages, and accommodations that Defendants  provide at  their ARCs.

200.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the proposed Classes have suffered, and continue to suffer irreparable harm including physical injury, pain and suffering, emotional distress, humiliation, hardship and anxiety, serious illness, and death.

## Count III – Fair Housing Act
### (On behalf of the Denial of Service and Denial of MAT Classes)

201.    Mr. Tassinari incorporates by reference the foregoing paragraphs as if re-alleged herein.

202.    Plaintiff brings this claim on his own behalf and on behalf of each proposed Class.

203.    At all times relevant to this action, Plaintiff Mark Tassinari was and is a qualified individual with a disability within the meaning of the Fair Housing Act.

204.    Mr. Tassinari has opioid use disorder (OUD), a chronic brain disease that substantially limits one or more of his major life activities.

205.    Drug addiction – another term for substance use disorders including OUD – is a disability recognized by the Fair Housing Act, 24 C.F.R. § 100.201 ("The term physical or mental impairment includes, but is not limited to…drug addiction (*other than* addiction caused by *current, illegal* use of a controlled substance)…" (emphasis added).

206.    Mr. Tassinari is regarded as having, and has, a record of having such disability.

207.    Mr. Tassinari is otherwise qualified to enroll in Defendants' ARCs because he meets the program criteria.

208.    Mr. Tassinari was directed by his physician to participate in doctor-prescribed medication-assisted treatment (MAT), including suboxone, methadone, and/or other prescribed MAT medications, as part of his treatment for OUD, and currently participates in MAT.

209.    Defendants own, operate, lease, and/or manage ARCs throughout the United States, including Boston Adult Rehabilitation Center, located at 209 Broadway, Saugus, Massachusetts 01906, and purport to provide residential rehabilitation services including housing for individuals with substance use disorders including OUD.

DocuSign Envelope ID: B3FDB72A-6655-44E6-A784-D335CE045007

210.     Defendants are subject to the FHA and its implementing regulations in their provision of housing as part of their ARC program and services.

211.     Defendants repeatedly violated and continue to violate the FHA by making unavailable or denying a dwelling to Plaintiff and other individuals with OUD due to their use of MAT.

212.     Defendants repeatedly violated and continue to violate the FHA by discriminating against Plaintiff and other individuals with OUD due to their use of MAT in the provision of services or facilities in connection with a dwelling.

213.     Defendants repeatedly violated and continue to violate the FHA by refusing to grant reasonable accommodations in rules, policies, practices or services to Plaintiff and other individuals with OUD who use MAT and/or by having a blanket prohibition on the use of MAT.

214.     Unless and until Defendants make reasonable accommodations in rules, policies, practices, or services and implement the same to permit Plaintiff and other individuals who participate in or need MAT to enroll and remain enrolled in ARCs, Plaintiff and the members of the proposed Classes will continue to be discriminated against in violation of the Fair Housing Act and denied the equal opportunity to use and enjoy ARC dwellings.

215.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the proposed Classes have suffered, and continue to suffer irreparable harm including physical injury, pain and suffering, emotional distress, humiliation, hardship and anxiety, serious illness, and death.

### Prayer for Relief

**WHEREFORE**, Plaintiff, on behalf of himself and each proposed Class, demands a jury trial for all issues so appropriate and requests that this Court order the following relief:

A.      Certify this action as a class action pursuant to Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, certify each Class defined above; appoint Plaintiff Mark Tassinari as representative for each Class, and appoint undersigned counsel as counsel for each Class;

B.      Issue a declaratory judgment that Defendants' conduct described above violates the rights of the Plaintiff and the proposed Classes under Title III of the ADA, § 42 U.S.C. 12181 *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., and the implementing regulations for each.

C.      Issue preliminary and permanent injunctions requiring Defendants to come into full compliance with the requirements of the ADA, Rehabilitation Act, and FHA including but not limited to:

1.  Immediately issuing a written statement and policy providing that all participants in Defendants' ARC programs nationwide will be permitted to participate in MAT, if prescribed by a treating physician;

2.  Conduct an immediate review of all current participants in their ARC programs for possible OUD history or experience and provide participants with immediate access to medical treatment to consider whether MAT should be commenced as it is the current standard of care for OUD.

D.      A judgment compensating the Plaintiff and the proposed Classes for the damages that they suffered as a result of Defendants' unlawful conduct in an amount to be determined at trial;

E.      Punitive damages against the Defendants under the Fair Housing Act, to be determined according to proof;

F.      Pre- and post-judgment interest as permitted by law;

G.      An order and judgment granting reasonable attorneys' fees and costs; and

H.      Such other and further relief as this Court deems just and proper.

Dated: May 14, 2021

Respectfully submitted,

*Benjamin Elga*
2D1C39FDBDDB42B...

Benjamin Elga (Bar No. 697933)
Lucy B. Bansal* (D.C. Bar No. MD06639)
Janet Herold** (Bar No. 632479)

**Justice Catalyst Law**
123 William Street, 16th Floor
New York, NY 10038
Main: 518-732-6703
belga@justicecatalyst.org
lbansal@justicecatalyst.org
jherold@justicecatalyst.org

*Pro Hac Vice motion to be submitted
**Retired status, reactivation to be
submitted

Martha M. Lafferty* (TN Bar# 019817)
**Civil Rights Education and Enforcement
Center**
525 Royal Parkway, #293063
Nashville, TN 37229
Main: 615-913-5099
mlafferty@creeclaw.org

*Pro Hac Vice motion to be submitted

Amy F. Robertson* (CO Bar# 25890)
**Civil Rights Education and Enforcement
Center**
1245 E. Colfax Ave., Suite 400
Denver, CO 80218
(303) 757-7901
arobertson@creeclaw.org

 *Pro Hac Vice motion to be submitted