IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TASSINARI,<br>individually and on behalf of all others<br>similarly situated,<br><br>                   Plaintiff,<br>V.<br><br>THE SALVATION ARMY NATIONAL<br>CORPORATION; THE SALVATION<br>ARMY I (EASTERN); THE SALVATION<br>ARMY USA CENTRAL TERRITORY;<br>THE SALVATION ARMY II<br>(SOUTHERN); THE SALVATION ARMY<br>III (WESTERN),<br><br>                   Defendants. | CASE NO. 1:21-CV-10806 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE SALVATION ARMY, A NEW YORK CORPORATION'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant The Salvation Army, a New York corporation[1] ("Defendant" or the "New York Corporation"), hereby respectfully moves this Court to dismiss in its entirety Plaintiff's Class Action Complaint ("Complaint").[2]

## INTRODUCTION

Plaintiff's Complaint should not stand for a number of reasons, some of which are supported

---

[1] Plaintiff has identified the Defendants by incorrect names in the caption and in the Complaint. The full entity names listed in the body of this Motion are correct.

[2] The other Defendants named in this lawsuit are moving separately, but concurrently herewith, for dismissal of all claims against them for lack of subject matter and personal jurisdiction. Those other Defendants join the arguments raised in this instant Motion without conceding their arguments regarding jurisdiction.

by facts and law set forth in other motions being filed concurrently herewith.  *See, e.g.,* The New York Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1); the Other Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2).  For purposes of the instant motion, Plaintiff has failed to state a claim under the three statutory causes of action he puts forward because they are barred by the relevant statutes of limitations and the Eastern Territory is also statutorily exempt from certain of those claims.

## FACTUAL BACKGROUND

### A. The Salvation Army

The Salvation Army is a distinct international religious denomination and charitable organization, a branch of the Christian Church, and is a church for all purposes.  As part of the International Salvation Army, there are several separate The Salvation Army non-profit corporate entities within the United States, which each operate exclusively within their own relevant geographic areas.[3]

The New York Corporation is one such entity, incorporated in the State of New York with headquarters in West Nyack, New York.  Compl. at ¶ 57.  The New York Corporation owns and operates 30 Adult Rehabilitation Centers ("ARCs") within The Salvation Army's Eastern Territory in the United States, including the ARC located in Saugus, Massachusetts that forms the backdrop for Plaintiff's claims (the "Saugus ARC").  The ARCs, which operate a short-term rehabilitation program, are fundamentally religious institutions operated by the New York Corporation.

### B. Mark Tassinari's Interactions with the Saugus ARC

Plaintiff Mark Tassinari admits that he has a history of opioid use and has spent years in and

---

[3] Further facts and evidence regarding the Defendant entities, the scope of their operations, their status as religious organizations, and their religious beliefs are set forth in the New York Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), the Other Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), and the declarations in support thereof, which are each incorporated herein by reference.

out of jail, drug treatment programs, homeless shelters, and other social service centers. *See* Complaint at ¶¶ 6-8. He alleges that he now suffers from Opioid Use Disorder, for which he has been at various times treated by a health care provider with "Medication-Assisted Treatment" ("MAT"), which is a term that refers to a variety of drugs intended to deal with drug use and withdrawal, such as methadone and buprenorphine. [4]

Plaintiff applied for admission to the Saugus ARC on February 28, 2018 based on a referral from a third party. Compl. ¶¶ 15, 126. Plaintiff admits that he was not taking any prescribed drugs at the time of his application to the Saugus ARC. *Id.* at ¶ 16. He does not allege that he mentioned any need for MAT or requested it from anyone at the Saugus ARC. *See id.* at 17 (noting how he "kept his head down" and did not complain about alleged drug withdrawal symptoms).

Approximately two months into Plaintiff's participation in the Saugus ARC program, Plaintiff alleges that he was prescribed buprenorphine for his Opioid Use Disorder, despite an ARC policy prohibiting the use of buprenorphine in the ARC programs operated by the New York Corporation. *Id.* at ¶ 128. He does not allege that he notified anyone at the Saugus ARC in advance, but instead began taking the medication regardless, in violation of the ARC medication policy. *See id.* at ¶¶ 130-133. As part of the drug testing practice at the Saugus ARC, Plaintiff was tested and a positive test result occurred. *Id.* Plaintiff was discharged from the Saugus ARC the same day, April 14, 2018. *Id.*

There was no contact between Plaintiff and the Saugus ARC or any other ARC program between approximately April 14, 2018 until May 2021. Subsequently, just prior to filing this lawsuit, Plaintiff alleges that on May 13, 2021, he called the Saugus ARC, told a person on the

---

[4] Defendant denies facts alleged in the Complaint, including many facts related to Plaintiff's participation in and discharge from the Saugus ARC. However, for the purposes of this motion under Rule 12(b)(6), the Court must take Plaintiff's factual allegations as true.

phone that he was taking buprenorphine, and they told him that such medication was not allowed at the ARC program.  Compl. ¶ 36.  However, Plaintiff does not allege that he applied for admission to the Saugus ARC program or any other program in May 2021, or that any such application for admission was denied.  Moreover, Plaintiff admits that he was in treatment at a hospital and at the time of the May 13 contact with the Saugus ARC and at the time of filing of the Complaint, that he was still admitted to such hospital and not released.  *Id*.  at ¶ 35.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224).

## ARGUMENT

### A.     Plaintiff's Claims Are Barred By the Applicable Statutes of Limitations

Any alleged actions by the New York Corporation that purportedly caused harm to Plaintiff took place in April 2018, when he was discharged from the Saugus ARC.  However, the statutory claims Plaintiff asserts in this lawsuit each have a three-year or shorter statute of limitations.  Therefore, Plaintiff's claims based on his discharge from the Saugus ARC are time-barred and must be dismissed.

> Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings. Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate.

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)

First, the statute of limitations under Title III of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12182) is three years.  While Title III does not incorporate its own statute of limitations, courts within the First Circuit apply the statute of limitations from the most closely analogous state statute, which in this case is three years under the Massachusetts personal injury statute.  *See, e.g., Goldstein v. Harvard Univ.,* 77 F. App'x 534, 536, 536 n.1 (1st Cir. 2003) (borrowing the personal injury statute of limitations, Mass. Gen. Laws. Ch. 206, § 2A); *Cunningham v. Potter*, 2009 WL 10694441 (D. Mass. June 18, 2009) (holding that claims under Title III of the ADA are subject to a three-year statute of limitations).

Likewise, Section 504 of the Rehabilitation Act ("Section 504") (29 U.S.C. § 794) does not have its own statute of limitations, but courts borrow statutes of limitations from the analogous state law.  Courts in the First Circuit also borrow the three-year statute of limitations from the

Massachusetts personal injury statute in Section 504 cases. *See, e.g., Downs v. Mass. Bay Transp. Auth.,* 13 F. Supp.2d 130, 136 (D. Mass. 1998) (borrowing the personal injury statute of limitations, Mass. Gen. Laws. Ch. 206, § 2A)*; Cunningham,* 2009 WL 10694441 (D. Mass. June 18, 2009) (applying three-year statute of limitations to the holding that claims under the ADA and the Rehabilitation Act are subject to a three-year statute of limitations).

Finally, the statute of limitations under the Fair Housing Act for private claims of housing discrimination is two years. 42 U.S.C. § 3613(a)(1)(A); *see also In re Koplow*, No. 13-mc-91184-DPW, 2013 WL 4737199 at *2 (D. Mass. Sept. 3, 2013) (Woodlock, J.); *Richardson v. City of Bos. Hous. Auth.*, No. 12-0661-RGS, 2012 WL 1570808 at *3 (D. Mass. May 1, 2012) (Stearns, J.).

Therefore, because the actions to discharge Plaintiff from the Saugus ARC took place in April 2018, more than three years prior to the filing of the Complaint in this matter, they are time-barred under all three statutes pursued in the Complaint and must be dismissed.

### B.    Plaintiff's 2021 Claims Are Not Ripe

Knowing that his original claims were time-barred, Plaintiff attempted a stunt in May 2021, just before filing the instant lawsuit, purporting to inquire about use of buprenorphine at the Saugus ARC. However, Plaintiff admits that at the time of this inquiry and at the time of the filing of the lawsuit, he was admitted for inpatient treatment at Arbour Hospital, that he had not been released but was expecting to be released "soon," and that he remained in the hospital even as of the filing of this lawsuit. Compl. at ¶¶ 35-36. As a result, Plaintiff could not have been admitted to the Saugus ARC program at that time and had suffered no harm. Instead, Plaintiff asserts at best a hypothetical claim that if he were released, if he were otherwise eligible for the ARC program, and if he *applied* (which he had not done, per the Complaint), that he would be rejected and be injured. A potential future harm is not ripe for judicial review and simply insufficient to state a claim over which this

Court has jurisdiction, as such any claims based on alleged communications in May 2021 while Plaintiff was unable to participate in an ARC residential program must be dismissed.

Article III of the Constitution limits a court's judicial power only to actual cases or controversies. In particular, it requires a number of elements, including that the plaintiff has actually and personally suffered injury, and that the injury is capable of redress by the court. Under this doctrine, a matter must be ripe for review in order for a court to have subject matter jurisdiction. *See, e.g., South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (ripeness "is a question of subject matter jurisdiction"). Ripeness depends on "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998).

Plaintiff's allegations in the Complaint make clear that he was not able or eligible to be admitted into the ARC program at the time he inquired. Any claim based on that inquiry would be contingent on a series of future events that may or may not happen, including but not limited to being released from the Arbour Hospital on the timing expected, actually applying for the Saugus ARC program, otherwise being eligible for such program, and actually being denied participation. He did not suffer an injury when he allegedly inquired about the program and was told by an anonymous person on the phone that he could not participate while taking certain medication, when he could not in fact participate anyway because of his status in the hospital. His allegations fail, on their face, to demonstrate that he suffered an injury, much less "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *See Trump v. New York*, 141 S. Ct. 530, 535 (2020). Any claims based on the allegations related to his 2021 inquiry should be

7

dismissed as unripe.

### C. Plaintiff has Failed to Revive His Time-Barred Claims

Even if Plaintiff's claims based on his May 2021 attempt to create new claims within the applicable statutes of limitations were ripe, Plaintiff's claims regarding his discharge from the 2018 Saugus ARC remain time-barred and cannot form a basis for any claim for damages now. In particular, to the extent the statutory claims pursued here permit "continuing violation" claims to string together a series of actions untimely actions with at least one action within the statute of limitations, such theory does not apply to Plaintiff's allegations. Plaintiff's discharge from the Saugus ARC was a "discrete act" that courts have repeatedly held cannot form the basis for "continuing violation. *See*, e.g., *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (noting that under the ADA, discrete acts that occur on a single day, and that could each be independently discriminatory, are not considered under the continuing violation doctrine); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 503-504 (S.D.N.Y. 2015) (holding that under the Fair Housing Act, the continuing violation theory does not apply to separate actions, like denial of financing or foreclosure).

Moreover, Plaintiff only alleges two acts as the basis for his claims in this matter, in 2018 and 2021, without any connective conduct. The First Circuit assesses alleged continuing violations based on three criteria:

> 1) is the subject matter of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts?
> 2) are the acts isolated and discrete or do they occur with frequency or repetitively or continuously?
> 3) are the acts of sufficient permanence that they should trigger an awareness

>of the need to assert one's rights?

*O'Rourke v. City of Providence*, 235 F.3d 713, 731 (1st Cir. 2001) (internal citations omitted).

Here, the two alleged "acts" – discharge and a comment by phone that Plaintiff could not take certain medication while participating in the ARC program - are isolated, with three years between them, and did not occur continuously or with frequency.  As such, these two actions cannot be considered a "continuing violation" under the *O'Rourke* test and all allegations related to conduct in 2018 should be dismissed.[5]

### D.     The New York Corporation is Exempt from Claims Under the ADA and FHA

Both Title III of the ADA and the FHA expressly exempt religious organizations from their coverage, although the language of the exemption differs.  Because The Salvation Army, and the New York Corporation operating a branch of The Salvation Army, is a church, and has been held to be a church for purposes of all federal laws, the prohibitions of the ADA and FHA that Plaintiff seeks to enforce simply do not apply.  *See, e.g., McClure v. The Salvation Army*, 460 F.2d 553, 554, *cert denied* 409 U.S. 896 (5th Cir. 1972); *The Salvation Army v. Dept. of Comm. Affairs of N.J.*, 919 F.2d 183 (3d Cir. 1990); *National Labor Relations Board v. The Salvation Army of Massachusetts Dorchester Day Care Center*, 763 F.2d 1 (1st Cir. 1985).   Plaintiff has not alleged, nor could he, any facts to plausibly suggest that The Salvation Army is not a church.  As such, Plaintiff's claims under the ADA and FHA should be dismissed for this reason, as well.

Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating on the basis of that individual's disability.  42 U.S.C. 12182(a).

---

[5] Additionally, to the extent any aspects of the Complaint survive the instant series of Motions to Dismiss, the New York Corporation respectfully moves pursuant to Fed. R. Civ. P. 12(f) that all allegations related to any alleged discrimination or harm in 2018 should be stricken from the pleadings as immaterial and impertinent.  All such allegations, being time-barred and improper, can have no bearing, for any purpose, on any other claims.

Title III, by its express terms, does not apply to "religious organizations or entities controlled by religious organizations, including places of worship." 42 U.S.C. 12187. The interpreting regulations make clear that this exemption is expansive:

> The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations. Religious organizations have no obligations under the ADA. Even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage. Thus, if a church itself operates a day care center, a nursing home, a private school, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part. The religious entity would not lose its exemption merely because the services provided were open to the general public. The test is whether the church or other religious organization operates the public accommodation, not which individuals receive the public accommodation's services.

28 C.F.R. pt. 36 App. C.

Where a defendant to an ADA Title III claim is a church or other religious organization, the claim is subject to dismissal under Rule 12(b)(6), as Plaintiff cannot state a claim upon which relief may be granted. *See, e.g, Simanov v. Karidat*, 2020 WL 5807956 at *6 (D. Guam Sept. 29, 2020) (dismissing without leave to amend claims under Title III of the ADA against defendant that was an "arm" of a Catholic Archdiocese); *Babcock v. First Methodist Church of Trumansburg,* 2017 WL 1284736 at *3 (N.D.N.Y. Mar. 7, 2017) (recommending dismissal with prejudice of ADA Title III claim where defendants were a church and its pastor, as the religious organization exemption applied and any amendment would be futile) (approved and adopted by 2017 WL 128370 (N.D.N.Y. April 5, 2017)); *Howard v. McCready*, 2017 WL 6625565 at *3 (D. Md. Dec. 28, 2017) (granting motion to dismiss of ADA Title III claim, based on religious organization exemption, where defendants were pastors at two places of worship and religious organizations).

The FHA exempts religious organization from housing discrimination claims based on

religion, so long as religious membership is not restricted "on account of race, color, or national origin." 42 U.S.C. § 3607(a). Admission to the ARCs, including the Saugus ARC, is limited to those who can commit to certain of The Salvation Army's religious tenets, including attending worship services, and complying with the principles of being sober-minded, treating their bodies as a temple, and therefore not partaking in addictive substances (including narcotic medications). *See* Gensler Decl. at ¶¶ 18-19. The Third Circuit Court of Appeals has previously held that the Salvation Army's Adult Rehabilitation Centers are "an essential part of the [The Salvation Army's] faith, playing a role analogous to that of a church in a more traditional Christian faith: 'The Centers . . . are the tools whereby Salvation Army officers practice and preach their basis theology. . . .'" *Salvation Army v. Dep't of Comm. Affairs of N.J.,* 919 F.2d 183, 189 (3d Cir. 1990). The Salvation Army's "inspiration and continuing motivation is what it perceives to be a divine command to save souls, and particularly to save 'men and women untouched by ordinary religious efforts.... the underprivileged, the derelicts, the alcoholics—those rejected by society,' by exposing them to the Gospel." *Id.* at 188.

As a result, because participation in the ARC is limited to those who will follow these teachings and principles of The Salvation Army's religious mission, any allegations regarding discharge from the ARC program or denied admission to such programs based on failure to comply with the religious tenets and religious-based policies are exempted from FHA coverage. For example, in *Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 996-97 (9th Cir. 2011), the Ninth Circuit held that a Christian homeless shelter was exempt from the FHA because it restricted participation in its programs to those who were Christian or willing to *become* Christian, demonstrated by religious requirements mandated as part of the program, including requirements to attend church services and partake in religiously-based substance abuse

DCACTIVE-62292189.2

treatment.

The Salvation Army, and the New York Corporation, as a church is not required to comply with Title III of the ADA in the operation of any religious programs, such as the ARCs, and is not covered by the FHA with respect to decisions in its ARCs that are based on its policy of admitting those who are willing to follow the religious tenets and mandates of The Salvation Army through the ARC program. Thus, Plaintiff's claims under the ADA and FHA must be dismissed.

## CONCLUSION

For each of the reasons set forth above, the New York Corporation respectfully requests that Plaintiff's claims be dismissed in their entirety, with prejudice, for failure to state a claim.

By:
/s/ Kevin Hensley
Kevin M. Hensley (BBO#554824)
BARTON GILMAN LLP
75 Federal Street, 9th floor
Boston, Massachusetts 02110
617-654-8200
khensley@bglaw.com

Thomas P. Gies
Christine B. Hawes
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
202-624-2500
tgies@crowell.com
chawes@crowell.com

Attorneys for Defendant The Salvation Army, a New York corporation (the "New York Corporation")

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 2, 2021.

                                                            /s/ Kevin Hensley

DCACTIVE-62292189.2