IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, RANDY OWENS, AND JONATHAN ANDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>THE SALVATION ARMY NATIONAL CORPORATION; THE SALVATION ARMY, A NEW YORK CORPORATION,<br><br>Defendants. | CASE NO. 1:21-CV-10806 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(F) AND 23(D)**

Pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and 23(d), Defendants The Salvation Army National Corporation (the "National Corporation") and The Salvation Army, a New York corporation (the "New York Corporation") hereby respectfully move this Court to dismiss in its entirety Plaintiffs' First Amended Class Action Complaint ("FAC") and to strike and eliminate the class allegations in the FAC.[1]

## INTRODUCTION

The FAC should be dismissed in its entirety for a number of reasons, as set forth below and in Defendants Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), filed

---

[1] The FAC abandons claims asserted against three other defendants, corporate entities for which there was no personal or subject matter jurisdiction, in response to Defendants' motions to dismiss the original complaint.

concurrently herewith (the "12(b)(1) Motion").[2]  For purposes of this Motion, Plaintiffs failed to state a claim under their three statutory causes of action both because they are barred by the relevant statutes of limitations and because Defendants are statutorily exempt from certain of those claims.

Additionally, this case is a poor candidate for class treatment, and the Court should strike the class action allegations. Plaintiffs Mark Tassinari, Richard Espinosa, Randy Owens, and Jonathan Anderson (together, "Plaintiffs") allege that Defendants discriminated against them and a purported nationwide class on the basis of discrimination in a varied series of actions at The Salvation Army Adult Rehabilitation Centers ("ARCs") within the United States.  However, as explained in detail in the 12(b)(1) Motion, the named Plaintiffs lack standing for any claims against the National Corporation, and two of the four named Plaintiffs lack standing for claims against the New York Corporation because they allege that they were harmed as a result of actions related to ARCs outside of the Eastern Territory.  There can be no nationwide claims asserted against these Defendants for lack of personal jurisdiction and also because the defendant entities are not the proper defendants for many of the alleged nationwide claims.  Additionally, the proposed class purports to cover claims that would be time-barred by the applicable statutes of limitations.  Finally, the purported class is not suited to class-wide determinations of liability, because each of the named Plaintiffs' claims and the claims of the putative class members would require individualized, fact-specific assessment in order to determine liability.

## LEGAL STANDARD

### *A.  Rule 12(b)(6)*

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable

---

[2] Defendants incorporate by reference the summary of facts set forth in the 12(b)(1) Motion.  These facts are important to an understanding of the issues discussed in this Memorandum.

2

factual inferences in favor of the plaintiff. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570. "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224).

### *B. Rule 12(f) and Rule 23(d)*

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 23(c)(1) requires courts to determine "at an early practicable time" whether the proposed class satisfies class certification requirements, and Rule 23(d)(1)(D) allows the Court to "require that the pleadings be amended to eliminate allegations about representations of absent persons."

The First Circuit has recognized that it is appropriate to strike class allegations before discovery where "it is obvious from the pleadings that the proceeding cannot possibly move forward on a class-wide basis[.]" *See Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly

3

encompassed within the named plaintiff's claim."). Under appropriate circumstances, district courts in this Circuit have not hesitated to grant motions to strike class allegations from putative class action complaints at the pleadings stage. *See MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.,* 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *Rovinelli v. Trans World Ent. Corp.,* 2021 WL 752822 (D. Mass. Feb. 2, 2021); *Monteferrante v. Williams-Sonoma, Inc.,* 241 F. Supp. 3d 264, 273 (D. Mass. 2017); *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 2 (D. Mass. 2003). The same approach has been endorsed by courts in other circuits *See, e.g., Donelson v. Ameriprise Fin. Servs., Inc.,* 999 F.3d 1080, 1086 (8th Cir. 2021) (class allegations may be dismissed on a motion to strike where it is "apparent from the pleadings that the class cannot be certified."); *Pilgrim v. Univ. Health Card*, *LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming striking of class allegations where it was plain that no class could be certified notwithstanding any amount of discovery); *Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009) (striking class allegations that presented individualized issues that were not manageable on a class-wide basis).

**ARGUMENT**

**A.     Plaintiffs' FAC Should Be Dismissed for Failure to State a Claim**

1.  Plaintiffs' Time-Barred Claims Should be Dismissed

Plaintiffs rely on alleged conduct that variously took place in 2010, 2011, 2018, and 2019. For instance, any alleged actions by the New York Corporation that purportedly caused harm to Plaintiff Tassinari took place in April 2018, when he was discharged from the Saugus ARC. However, the statutory claims Plaintiffs assert in this lawsuit each have a three-year or shorter statute of limitations. "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable

4

estoppel, dismissal is appropriate." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)

Because neither Title III of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12182) nor Section 504 of the Rehabilitation Act ("Section 504") (29 U.S.C. § 794) contain a statute of limitations, courts apply the statute of limitations from the most closely analogous forum state statute, which in this case is three years under the Massachusetts personal injury statute. *See, e.g., Goldstein v. Harvard Univ.,* 77 F. App'x 534, 536, 536 n.1 (1st Cir. 2003) (borrowing the personal injury statute of limitations, Mass. Gen. Laws. Ch. 206, § 2A); *Cunningham v. Potter*, 2009 WL 10694441 (D. Mass. June 18, 2009) (holding that claims under Title III of the ADA and the Rehabilitation Act are subject to a three-year statute of limitations); *Downs v. Mass. Bay Transp. Auth.,* 13 F. Supp.2d 130, 136 (D. Mass. 1998) (borrowing the personal injury statute of limitations, Mass. Gen. Laws. Ch. 206, § 2A).

The statute of limitations under the Fair Housing Act for private claims of housing discrimination is two years. 42 U.S.C. § 3613(a)(1)(A); *see also In re Koplow*, No. 13-mc-91184-DPW, 2013 WL 4737199 at *2 (D. Mass. Sept. 3, 2013) (Woodlock, J.); *Richardson v. City of Bos. Hous. Auth.*, No. 12-0661-RGS, 2012 WL 1570808 at *3 (D. Mass. May 1, 2012) (Stearns, J.).

Therefore, all claims arising out of actions prior to May 2018 must be dismissed in their entirety as time-barred under all three statutes listed in the FAC. Such claims include Tassinari's allegations about being dismissed from the Saugus ARC in April 2018, as well as Espinosa's claims about conduct at the Providence ARC in 2010 and 2011. FAC ¶¶ 69, 92. All claims of actions prior to May 2019 must be dismissed under the Fair Housing Act as time-barred, including the remainder of Mr. Espinosa's claims, as he alleges he left the Providence ARC

within 5 months after November 1, 2018.  FAC ¶ 90, 96.

### 2. Tassinari has Failed to Revive His Time-Barred Claims

Knowing that his original claims were time-barred, Tassinari attempted a stunt in May 2021, just before filing this action, purporting to inquire about use of buprenorphine at the Saugus ARC.  FAC ¶ 79.  Tassinari's claims regarding his discharge from the 2018 Saugus ARC remain time-barred and cannot now form a basis for any claim.  Although the statutory claims asserted here may permit "continuing violation" claims to string together a series of actions untimely actions with at least one action within the statute of limitations, this principle does not apply to Tassinari's allegations.  Tassinari's discharge from the Saugus ARC was a "discrete act" that cannot form the basis for "continuing violation."  *See*, e.g., *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (noting that under the ADA, discrete acts that occur on a single day, and that could each be independently discriminatory, are not considered under the continuing violation doctrine); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 503-504 (S.D.N.Y. 2015) (holding that under the Fair Housing Act, the continuing violation theory does not apply to separate actions, like denial of financing or foreclosure).

Moreover, Tassinari only alleges two acts as the basis for his claims in this matter, in 2018 and 2021, without any connective conduct.  The First Circuit assesses alleged continuing violations based on three criteria:

> 1) is the subject matter of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts?
>
> 2) are the acts isolated and discrete or do they occur with frequency or repetitively or continuously?
>
> 3) are the acts of sufficient permanence that they should trigger an awareness of the need

to assert one's rights?

*O'Rourke v. City of Providence*, 235 F.3d 713, 731 (1st Cir. 2001) (internal citations omitted).

Here, the two alleged "acts" – discharge and a comment by phone that Tassinari could not take certain medication while participating in the ARC program - are isolated, with three years between them, and did not occur continuously or with frequency. As such, these two actions cannot be considered a "continuing violation" under the *O'Rourke* test and all allegations related to conduct in 2018 should be dismissed.[3]

### 3. Defendants Are Exempt from Claims Under the ADA and FHA

Both Title III of the ADA and the FHA expressly exempt religious organizations from their coverage. The Salvation Army, and the New York Corporation operating a branch of The Salvation Army, is a church, and has been held to be a church for purposes of all federal laws. *See, e.g., McClure v. The Salvation Army*, 460 F.2d 553, 554, *cert denied* 409 U.S. 896 (5th Cir. 1972); *The Salvation Army v. Dept. of Comm. Affairs of N.J.*, 919 F.2d 183 (3d Cir. 1990); *National Labor Relations Board v. The Salvation Army of Massachusetts Dorchester Day Care Center*, 763 F.2d 1 (1st Cir. 1985). Therefore, the prohibitions of the ADA and FHA do not apply. Plaintiffs cannot allege any facts to plausibly suggesting otherwise. Accordingly, Plaintiffs' claims under the ADA and FHA should be dismissed.

Title III of the ADA prohibits any person who owns, leases, or operates a place of public accommodation from discriminating on the basis of that individual's disability. 42 U.S.C. § 12182(a). Title III, by its express terms, does not apply to "religious organizations or entities controlled by religious organizations, including places of worship." 42 U.S.C. § 12187. The

---

[3] Additionally, to the extent any aspects of the FAC survive the instant series of Motions to Dismiss, Defendants respectfully move pursuant to Fed. R. Civ. P. 12(f) that all allegations related to any alleged discrimination or harm outside of the relevant statutes of limitations should be stricken from the pleadings as immaterial and impertinent. All such allegations, being time-barred and improper, can have no bearing, for any purpose, on any other claims.

interpreting regulations make clear that this exemption is expansive:

> The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations. Religious organizations have no obligations under the ADA. Even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage. Thus, if a church itself operates a day care center, a nursing home, a private school, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part. The religious entity would not lose its exemption merely because the services provided were open to the general public. The test is whether the church or other religious organization operates the public accommodation, not which individuals receive the public accommodation's services.

28 C.F.R. pt. 36 App. C.

Where a defendant in an ADA Title III claim is a church or other religious organization, the claim is subject to dismissal under Rule 12(b)(6), as Plaintiffs cannot state a claim upon which relief may be granted. *See, e.g, Simanov v. Karidat*, 2020 WL 5807956 at *6 (D. Guam Sept. 29, 2020) (dismissing without leave to amend claims under Title III of the ADA against defendant that was an "arm" of a Catholic Archdiocese); *Babcock v. First Methodist Church of Trumansburg,* 2017 WL 1284736 at *3 (N.D.N.Y. Mar. 7, 2017) (recommending dismissal with prejudice of ADA Title III claim where defendants were a church and its pastor) (approved and adopted by 2017 WL 128370 (N.D.N.Y. April 5, 2017)); *Howard v. McCready*, 2017 WL 6625565 at *3 (D. Md. Dec. 28, 2017) (dismissing ADA Title III claim, based on religious organization exemption, where defendants were pastors and religious organizations).

The FHA exempts religious organizations from housing discrimination claims based on religion, so long as religious membership is not restricted "on account of race, color, or national origin." 42 U.S.C. § 3607(a). Admission to the ARCs operated by the New York Corporation, including the Saugus and Providence ARCs, is limited to those who can commit to certain of The Salvation Army's religious tenets, including attending worship services, and complying with the

8

principles of being sober-minded, treating their bodies as a temple, and therefore not partaking in addictive substances (including narcotic medications). *See* Gensler Decl. at ¶¶ 18-19. The ARCs, as discussed at length in the 12(b)(1) Motion, are an essential part of the Salvation Army's faith.

As a result, because participation in the ARC is limited to those who will follow these teachings and principles of The Salvation Army's religious mission, any allegations regarding discharge from the ARC program or denied admission to such programs based on failure to comply with the religious tenets and religious-based policies are exempted from FHA coverage. For example, in *Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 996-97 (9th Cir. 2011), the Ninth Circuit held that a Christian homeless shelter was exempt from the FHA because it restricted participation in its programs to those who were Christian or willing to *become* Christian, demonstrated by religious requirements mandated as part of the program, including requirements to attend church services and partake in religiously-based substance abuse treatment.

Defendants, as a church, are not required to comply with Title III of the ADA in the operation of any religious programs, such as the ARCs. And Defendants are likewise exempt from the FHA with respect to decisions in its ARCs that are based on its policy of admitting those who are willing to follow the religious tenets and mandates of The Salvation Army through the ARC program. Thus, Plaintiffs' claims under the ADA and FHA must be dismissed.

## B. Plaintiffs' Class Allegations Should be Stricken or the FAC Should Be Amended to Eliminate Such Allegations

To certify a class, a court must first find that the plaintiff has satisfied four elements: 1) Numerosity - the class contains so many plaintiffs that joinder of all would be impossible; 2) Commonality - "there are questions of law or fact common to the class;" 3) Typicality - the

9

DCACTIVE-63101205.3

named parties' claims are typical of the class claims; and 4) Adequacy of Representation - the named parties will "fairly and adequately protect the interests" of absent class members. *See* Fed. R. Civ. P. 23(a). If that showing is made, the Court must also find that: Defendants have acted or refused to act on grounds that generally apply to the class such that final injunctive relief is appropriate for the class as a whole, or that questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id*. 23(b)(2)-(3).

Plaintiffs cannot satisfy these requirements for the following reasons:

- The proposed class definition is overbroad because it includes purported claims on behalf of putative class members who would have claims only against entities who are not parties to this action.
- The proposed nationwide class definition is overbroad because it includes claims for which this Court lacks personal jurisdiction.
- The proposed class definition is not ascertainable because the class is not defined with respect to concrete objective criteria, but rather by facts that require individualized determinations of disputed issues that to go to the very heart of each plaintiff's claim.
- The proposed class definition is overbroad and includes no time limitations as to the underlying claims.

Moreover, even if Plaintiffs could overcome those four independent obstacles to class treatment, any bid for class certification fails on the pleadings because they cannot satisfy Rule 23(b)(2) or (3), because any purportedly common issue(s) would be overwhelmed by

individualized merit inquiries. Determining each putative member's right to recovery would require a mini-trial on multiple fact-specific issues.

Plaintiffs' failure to properly plead allegations that could be subject to class treatment should be addressed as early as possible. Striking such allegations at this time, prior to discovery, is appropriate because no amount of discovery could cure these deficiencies.

### 1. The Proposed Class Definition Is Overbroad

Plaintiffs' class definition is overbroad in at least three ways. First, it purports to include a class of participants in all "ARCs in the United States," despite the fact that Plaintiffs have not properly included the correct defendants or pled appropriate allegations to permit this court to consider class claims that involve ARCs located outside of The Salvation Army's Eastern Territory. Plaintiffs lack standing to bring any claims at all against the National Corporation. And two of the four named plaintiffs lack standing to bring claims against the New York Corporation, because, at most, they have alleged harm as a result of their interactions with ARCs operated by other entities rather than Defendants. Putative class members with similar claims likewise would lack standing. *See, e.g., Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant...."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (noting that if class definition is "so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad").

Second, the purported nationwide class definition is overbroad because this Court lacks personal jurisdiction over Defendants for claims of putative class members arising outside of the Commonwealth of Massachusetts. The Supreme Court has held that personal jurisdiction is required over each defendant for the claims of each plaintiff. *Bristol-Myers Squibb Co. v. Super.*

11

*Ct. of Cal.*, 137 S. Ct. 1773 (2017). Several district courts have held that *Bristol-Myers Squibb* applies to personal jurisdiction over claims of absent class members. *See, e.g., Carpenter v. PetSmart, Inc.*, 441 F. Supp 3d 1028, 1035-38 (S.D. Cal 2020) (applying *Bristol-Myers Squibb* to nationwide class action, and striking allegations of a nationwide class because of lack of specific personal jurisdiction on behalf of putative class members whose claims arose outside of the forum state); *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) (same); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) (dismissing nationwide class action allegations brought by out of state class members); *Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17-cv-2612, 2018 WL 1468821 (N.D. Oh. Mar. 26, 2018) (same). The First Circuit has not yet addressed whether the personal jurisdiction requirements of *Bristol-Myers Squibb* apply to class actions. However, several Circuit Courts have applied this rule to collective actions. *Canaday v. The Anthem Cos.*, 9 F.4th 392, 403 (6th Cir. 2021); *Vallone v. CJS Solutions Grp., LLC*, 9 F.4th 861, 865-66 (8th Cir. 2021); *see also Lyngaas v. Curaden AG*, 992 F.3d 412, 441 (6th Cir. 2021) (Thapar, dissenting) (noting that personal jurisdiction over each putative class member's claims is required, and that even where a defendant is already properly in the forum for one claim its "due process interests do not vanish just because it has been haled into a forum"); *Molock v. Whole Foods Market Grp.*, 952 F.3d 293, 303 (D.C. Cir. 2020) (Silberman, dissenting) ("If a named plaintiff's claim of entitlement to represent a class is defective as a matter of law, for example, because the court would lack personal jurisdiction over the defendant with respect to class claims, a defendant's motion to dismiss or narrow the representative claim on those grounds is not premature.")[4]. Because there cannot be any personal jurisdiction over Defendants in this Court with respect to any class

---

[4] Other courts disagree with applying this standard to class actions under Rule 23. *See, e.g., Mussat v. IQVIA Inc.*, 953 F.3d 441 (7th Cir. 2020).

12

members' claims arising out of conduct in states other than Massachusetts, the nationwide class definition should be stricken.

Third, the class definition encompasses "all individuals," regardless of the time of their claims or the statutory limitations on recovery rights. This is overbroad. "[A] court may strike class allegations that plainly encompass individuals whose claims are barred by jurisdictional or time limitations." *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d. 264, 269 (D. Mass. 2017). As demonstrated supra at 4-6, Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act are subject to a three-year statute of limitations, and their Fair Housing Act claim is subject to a two-year statute of limitations. On its face, the FAC fails to limit the scope of the claims or the proposed class to any time period, much less a time period covered by the relevant statutes of limitations. FAC ¶ 186. This is made even clearer by the fact that the FAC includes express allegations of discrimination against the named Plaintiffs (and proposed class representatives) that are extremely untimely, including allegations of conduct that took place in 2010, 2011, 2018, and 2019, and are subject to dismissal as set forth above. *See* FAC ¶¶ 59, 69, 92, 118. As a result, the class definition and allegations that seek class treatment without time limitation should be stricken.

### 2. The Proposed Class Is Not Ascertainable

This Court should strike the class allegations on the grounds that the proposed class is not ascertainable. *See Van West v. Midland Nat. Life Ins. Co.*, 199 F.R.D. 448, 451 (D.R.I. 2001) (class must be precisely defined and ascertainable). A class is only ascertainable if the members are defined by the application of "stable and objective factors." *Id*. "[T]he First Circuit has stated that when 'class members [are] impossible to identify prior to individualized fact-finding and litigation, the class fails to satisfy one of the basic requirements for a class action under Rule

13

23." *Shanley v. Cadle*, 277 F.R.D. 63, 68 (D. Mass. 2011) (citing *Crosby v. SSA*, 796 F.2d 576, 580 (1st Cir. 1986)). "This threshold inquiry is essential because a class must be unambiguously defined in order for a court to decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." *Kent v. Sun Am. Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000). In *Shanley*, the court found that the proposed class was unascertainable because the court "would necessarily have to determine the particular circumstances surrounding each putative class member's debt and of the collection efforts undertaken by the Defendants, or else risk sweeping into the class individuals whose factual circumstances either were materially different than those of the class representatives or implicated no legally-proscribed conduct." *Shanley*, 277 F.R.D. at 68.

Here, even before reaching the individualized inquiries concerning liability and damages, several highly fact-intensive inquiries must be performed simply to identify class member status. For starters, individualized inquiries must be made into: (1) whether the individual sought admission to an ARC program; (2) whether the individual had OUD; (3) whether the individual was prescribed a MAT medication; (4) whether the prescribed MAT medication was prohibited by a relevant ARC policy; (5) whether the individual needed MAT medication at the time of admission; (6) whether the individual informed the ARC of the need for MAT medication; (7) whether the individual was denied admission because of the need for MAT medication; (8) whether the individual was admitted to the ARC; (9) whether the individual complied with any relevant medication policy while at the ARC; (10) whether the individual was discharged from the ARC; and (11) if so, whether the discharge was related to MAT medication.

Each of the four named Plaintiffs has alleged a unique set of facts as to how they were allegedly impacted by a purported policy prohibiting use of MAT at specific ARCs. Each of

14

these scenarios would result in different answers to the key questions listed above, and would result in different assessments of the qualifications for class status or for liability more generally. Certainly, putative class members within the proposed class would require even more fact-specific inquiries as to whether they qualify for class treatment, much less liability or damages.

There is also no way to identify or notify putative class members within the definition of the FAC because the majority of ARCs covered by the definition are outside the control of the Defendants. Additionally, identifying class members would require identifying those who have OUD (which may or may not be identified by a participant); and then determining those who were a) excluded as a result of their use of MAT; b) denied access to MAT; or c) were "impeded" (which is wholly undefined) from receiving MAT. Making these determinations would require a fact-intensive analysis on a case by case basis and would not be administratively feasible, even if the claims were proper against the defendants that remain in this litigation. Thus, the determination of class membership would necessitate mini-trials regarding the main elements of Plaintiffs' claims.

### 3. Plaintiffs Cannot Establish Predominance and Superiority Under Rule 23(b)(3)

In addition to demonstrating compliance with Rule 23(a), Plaintiffs must also satisfy at least one of the three requirements listed in Rule 23(b). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs assert that they bring a class action under either Rule 23(b)(2) or 23(b)(3). Plaintiffs cannot meet Rule 23(b)(2)'s requirements that there were actions generally applicable to the class, because four different entities controlled the actions at the ARCs across the United States, divided by location, and there was no generally applicable control or policies that applied to all ARCs nationwide. Plaintiffs have recently dismissed relevant parties and do not have standing or allegations to assert personal jurisdiction over those parties if they had

15

DCACTIVE-63101205.3

remained part of this lawsuit. As a result, they cannot establish the requirements of Rule 23(b)(2) for their proposed class under any set of facts.

Plaintiffs also cannot meet Rule 23(b)(3)'s requirements that "questions of law or fact common to class members predominate over" individualized issues and that a class action is "superior to other available methods for fairly and efficiently resolving the controversy." Importantly, Rule 23(b)(3)'s predominance criterion is more demanding than the analysis of Rule 23(a). *See Romulus v. CVS Pharm., Inc.*, 321 F.R.D. 464, 471 (D. Mass. 2017). "Part of the rationale for requiring predominance … to bring a class action is to ensure that the action 'will achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *George v. Mat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 178 (D. Mass. 2012) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997)).

Here, Plaintiffs' theory of liability is that Defendants allegedly discriminated against a wide class of individuals because of their OUD, in a number of ways, including refusing to admit them, discharging them, and taking no action at all against them such that they successfully graduated the ARC program. Under this theory, an individual analysis would be required with respect to allegedly impacted putative class members to determine whether they qualified for the class, whether they were denied admission, whether they were discharged from the program after admission, whether they were permitted to stay in the ARC program without discharge, whether they successfully graduated the ARC program, whether they sought to use prohibited medications during their participation in an ARC program, whether they did in fact use such medications during participation in an ARC program, and whether a request to use such medications, or actual use of such medications, impacted the individual's participation in an

16

ARC program in any way.

Plaintiffs allege, instead, that there are just three questions in this case, and that they are all legal questions. *See* FAC ¶ 188. However, each of those questions (whether an ARC refused to provide services to individuals, whether an ARC refused to permit individuals to participate in MAT, or whether an ARC "impeded" individuals from participating in MAT) is in fact an individualized – not a common – question, because it requires a multi-faceted determination that the individual 1) was otherwise qualified to participate in the ARC; 2) has OUD; 3) was prescribed an MAT medication that violates relevant policy for the relevant ARC; 4) made their need for MAT known to the ARC; 5) applied for admission to the ARC program; AND 6) was denied admission because of the need for MAT OR was admitted but prevented from using prescribed MAT because of application of relevant medication policy OR was discharged for using an MAT medication in violation of relevant medication policy. These questions turn on individualized experiences in different ARC locations.

The four named Plaintiffs' own highly different allegations highlight the individualized nature of these questions. For example, Plaintiff Tassinari's only claim within the relevant statute of limitations is that he was told by an unnamed person on the phone that taking MAT was prohibited, and thus he decided not to apply for admission to the ARC. By contrast, Plaintiff Espinosa alleges that he was admitted to the Providence ARC but never requested to use MAT, and that he attended the program for five months without using MAT prior to leaving without being discharged. Different yet again, Plaintiff Owens alleges that he was admitted to the New Orleans ARC, had MAT medications taken from him upon intake but took MAT medication from others and was discharged from the ARC program after failing a drug test. Finally, Plaintiff Anderson alleges that he was admitted to the St. Louis ARC, that he took MAT

17

medication during his participation in the ARC program, that he was not discharged from the program, and that he successfully graduated from the ARC program.

Thus, even assuming that all other factual inquiries were satisfied, the very nature of Plaintiffs' proposed action requires that each of the putative class members must go through a fact-intensive inquiry to determine both eligibility for class membership as well as liability. Plaintiffs' proposed class should be stricken for failure to meet the requirements of Rule 23(b)(2) or (b)(3).

## **CONCLUSION**

For each of the reasons set forth above, Defendants respectfully request that Plaintiffs' claims be dismissed for failure to state a claim upon which relief can be granted and that Plaintiffs' class allegations be stricken or eliminated.

By:
/s/ Kevin M. Hensley
Kevin M. Hensley (BBO#554824)
BARTON GILMAN LLP
75 Federal Street, 9th floor
Boston, Massachusetts 02110
617-654-8200
khensley@bglaw.com

Thomas P. Gies (*pro hac vice*)
Christine B. Hawes (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
202-624-2500
tgies@crowell.com
chawes@crowell.com

Attorneys for Defendants The Salvation Army National Corporation and The Salvation Army, a New York corporation

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2021.

/s/ Christine B. Hawes

19

DCACTIVE-63101205.3