**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARK TASSINARI, RICHARD ESPINOSA,  )
RANDY OWENS, and JONATHAN ANDERSON  )
individually and on behalf of all  )
others similarly situated,  )
                             )         Civil Action No.: 1:21-cv-10806-LTS
        *Plaintiffs,*     )
                             )         **JURY TRIAL DEMAND**
v.                         )
                             )
THE SALVATION ARMY NATIONAL  )
CORPORATION; THE SALVATION ARMY,  )
A NEW YORK CORPORATION  )
                             )
                             )
        *Defendants.*    )
                             )

## PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO DISMISS

### INTRODUCTION

Defendants' motions are based on one central premise: Salvation Army is above the law. This is not so. Plaintiffs respectfully request that this Court deny Defendants' Motions to Dismiss.

Plaintiffs challenge a nationwide Salvation Army policy excluding individuals with Opioid Use Disorder (OUD) from their residential Adult Rehabilitation Centers (ARC) when those individuals are taking doctor-prescribed Medication-Assisted Treatment (MAT) to manage their disability. This disability discrimination violates Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq*., and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12182 and 12203. Defendants assert that their exclusion of people taking MAT is based on Salvation Army's religious principles, and that

1

this divests this Court of jurisdiction. Defendants thus move to dismiss under Rule 12(b)(1) and submit, in support, fragments of Salvation Army's policy documents that ultimately fail to support the religious principles at the center of their motion.

There are several fundamental flaws in Defendants' argument:

- The question of whether Defendants' discrimination is excused because it is based on religious principles goes to the merits of Plaintiffs' claims and is not appropriate to resolve under Rule 12(b)(1).  This Court should disregard any evidence outside Plaintiffs' First Amended Class Action Complaint (FAC), ECF No. 30.

- The FAC adequately pleads claims for disability discrimination, coercion, and interference in violation of Section 504, the FHA, and the ADA, and that fall outside any general or specific religious exemption.

- Even if the question of a religious exemption were appropriate to resolve under Rule 12(b)(1), Defendants have not submitted evidence sufficient to support their contention that the use of MAT– ostensibly the basis for the challenged discrimination – contravenes Salvation Army beliefs. To the contrary, in other programs Defendants use and permit the use of precisely the substances they claim violate their religion. *See* FAC ¶ 144 n.18.

Contrary to the cases on which Defendants rely, the discrimination alleged in the FAC will not embroil this Court in questions of religious doctrine or belief. Here, Plaintiffs do not ask this Court to dictate the selection of Salvation Army ministers or the owners, under canon law, of its property. Defendants remain free to believe that MAT is morally wrong and to preach against its use. They may not, however, insulate their conduct from laws of general application, especially at this stage without further discovery.

Section 504 does not contain any language providing for a religious exemption, and Defendants do not attempt to argue that it does. In addition, by the plain language of the Fair Housing Act, Defendants do not fall within its specific religious exemption. Finally, Defendants are not entitled to dismissal without discovery on the specific religious exemption in the ADA.

This Court has personal jurisdiction over both Defendants based on their waiver of service and their contacts with the United States as a whole and with the state of Massachusetts.

This case is properly brought against Salvation Army-National because the ARCs are governed by a policy handbook – "The Salvation Army Adult Rehabilitation Centers Handbook of Standards, Principles and Policies," found in Ex. A of the Declaration of Lt. Colonel Dennis Gensler (Gensler Decl.), ECF No. 38-1– approved by Salvation Army's Commissioners' Conference and applicable to ARCs nationwide. Because the violations alleged in the FAC are dictated by Salvation Army policy, they fall under the continuing violation doctrine, and no statutes of limitations have lapsed.

Finally, it is premature to address class certification without class discovery. The class definition in the FAC is sufficiently ascertainable at this juncture, and ascertainability is not, in any event, required for a Rule 23(b)(2) class action.

## **ARGUMENT**

### I.    **Salvation Army Is Not Entitled to a Ministerial or Religious Autonomy Exception to Federal Jurisdiction.**

Defendants move to dismiss pursuant to Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction over Plaintiffs' claims because Salvation Army's religious beliefs are the basis for Defendants' policy prohibiting MAT in ARCs. Even if that were the case, Plaintiffs

are not asking Defendants to change their beliefs, only their discriminatory conduct against people with disabilities who use or seek to use MAT.

      A.     Rule 12(b)(1) is not the proper standard.

Defendants argue that this Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1) and submit several declarations in support. However, the cases on which Defendants rely for this argument all required courts to adjudicate religious doctrine. For example, many of the cases addressed employment issues relating to clergy, issues that the Supreme Court has held are subject to a ministerial objection. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060-2061 (2020) (teachers at religious schools challenging their termination); *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012) (same); *Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006) (school chaplain challenging gender discrimination by religious school). Indeed, in *Hartwig v. Albertus Magnus College*, 93 F.Supp.2d 200 (D. Conn. 2000), on which Defendants rely, a professor sued a religious college for breach of contract and defamation. The Third Circuit dismissed the defamation claim on the grounds that it would "require a trier of fact to choose between two conflicting ecclesiastical definitions of the term 'priest,'" but held that disputed facts precluded dismissal of the breach of contract claim. *Id*. at 212, 218. Other cases cited by Defendants asked courts to decide the proper leader of a church, *Moon v. Moon,* 431 F.Supp.3d 394 (S.D.N.Y Dec. 19, 2019); whether church doctrine required defrocking a bishop, *Serbian E. Orthodox Diocese for U.S. of America and Canada v. Milivojevich,* 426 U.S. 696 (1976); or whether the archbishop of a church was entitled, under canon law, to use and occupancy of a church, *Kreshik v. Saint Nicholas Cathedral*, 363 U.S. 190 (1960).

None of those circumstances applies here. Instead, Plaintiffs – lay consumers of social services – challenge their exclusion from a program that Defendants admit is open to all regardless of belief, Mem. Supp. Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(2) at 4-5,ECF No. 38 (Mem. Supp. Defs.' Mot. to Dismiss for Lack of Jurisdiction), on grounds that are not, on their face, religious: use of a certain type of prescription medication. As in *Defiore v. City Rescue Mission of New Castle*, 995 F. Supp. 2d 413 (W.D. Pa. 2013), whether this implicates religion is a question of fact inappropriate for resolution on a motion to dismiss and insufficient to divest this Court of jurisdiction.

There are no grounds to resolve Defendants' motions under Rule 12(b)(1) and thus consideration of material extraneous to the FAC is inappropriate.

B.        Analyzed under Rule 12(b)(6), Plaintiffs have Pleaded Claims That Are Not
          Subject to a Religious Exception.

The Supreme Court has long recognized that the Free Exercise clause does not excuse the failure to comply with a valid, neutral law of general applicability on the grounds that the law is contrary to a religious belief. *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 878-879 (1990). Accordingly, while the First Amendment protects a religious organization's beliefs, it does not shelter a religious organization's conduct from nondiscrimination laws. Congress and the courts have long recognized that when *any* enterprise holds itself open to the public, there are certain minimum standards that must apply for the safety and welfare of the general public. *Newman v. Piggie Park Enterprises*, *Inc.*, 390 U.S. 400, 402, n.5 (1968) (*per curiam*); *Hurley v. Irish–Am. Gay, Lesbian and Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 572 (1995) ("Provisions like these are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and

they do not, as a general matter, violate the First or Fourteenth Amendments"). Indeed, in *Salvation Army v. Dep't of Community Affairs of State of New Jersey,* 919 F.2d 183, 196 (3d Cir. 1990), on which Defendants rely, the Third Circuit held that the Salvation Army's ARC program – at issue here – was not exempt from the state's general laws governing the operation of boarding houses.

As Defendants recognize in their own brief, civil courts may adjudicate secular issues that arise in the context of church disputes "when inquiry 'into religious law and polity' is not required." *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 249–50 (S.D.N.Y. 2014) (quoting *Serbian E. Orthodox Diocese for U.S. of Am. and Canada v. Milivojevich,* 426 U.S. 696, 709 (1976)). This is precisely what Plaintiffs are asking this Court to do. Determining whether Defendants have discriminated against Plaintiffs due to their disabilities in violation of Section 504, the FHA, and the ADA does not require this Court to determine whether Defendants' policy against using MAT is based on religious beliefs, religious law, and/or religious polity, let alone require this Court to evaluate the merits of such religious beliefs, law, or polity.[1] If this Court determines that Defendants have engaged in unlawful discrimination and issues an order prohibiting such discrimination in the future, those decisions will have no impact on Salvation Army's beliefs or teachings. Any adherent to Salvation Army's faith is free now, as they will be free in the future, to decline MAT.

The First Amendment's protection of the freedom of religion does not give Defendants a free pass to impose discriminatory rules for people with disabilities, or people with a particular

---

[1] While a court may not be able to determine whether religious beliefs are true or reasonable, it *can* decide whether religion is asserted as a pretext for discrimination. *See DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993). This determination is premature on a motion to dismiss.

disability such as OUD. In other words, the Salvation Army and its members can hold any belief they want but cannot use those beliefs as a pretext to discriminatorily deny and/or interfere on the basis of disability with the housing and medical treatment of non-members who they solicit to participate in their ARCs.

Nowhere in the FAC do Plaintiffs ask that this Court find the *beliefs* of Salvation Army or its members unlawful. Nothing in the FAC asks this Court to order Defendants to change the beliefs of their organization or those of its members about MAT use. Nowhere in their FAC do Plaintiffs ask this Court to order Defendants to *provide* Plaintiffs or others with MAT during their participation in its ARC program, to *pay for* MAT for those participating in that program, or to *encourage or endorse* the use of MAT. Instead, Plaintiffs are simply asking this Court to order Defendants to cease discriminating against Plaintiffs in violation of federal law, allowing Plaintiffs and similarly situated people with OUD to participate in its ARC programs and services on the same terms as people without that disability. In this case, it would mean that all participants must be permitted, without regard to disability, to follow the treatment plan of their doctor, even if it includes MAT.

Because Plaintiffs are not asking the Court to require Defendants change their beliefs or engage in conduct inconsistent with those beliefs, the First Amendment does not shelter Defendants from application of Section 504, the FHA, and the ADA. This Court should deny Defendants' Motion to Dismiss.

C.     Even if Reviewed under Rule 12(b)(1), Defendants' Evidence Does Not Support a Religious Exemption

Defendants assert in their brief that they exclude from the ARCs individuals using doctor-prescribed MAT based on "long-standing religious beliefs against the use of" . . .

"intoxicants or mind-altering substances, including illicit drugs, alcohol, and narcotic or addictive prescription medications."Mem. Supp. Defs.' Mot. to Dismiss for Lack of Jurisdiction 5, ECF No. 38. This is not supported by the record on which Defendants rely. The only evidence that Defendants' religious principles extend beyond an aversion to alcohol is contained in the text of the Gensler Decl. Gensler Decl. ¶¶ 20-25, ECF No. 38-1. Mr. Gensler cites to and attaches two Salvation Army  policy documents, neither of which references drugs of any kind, much less prescription medications. The three-page excerpt from the over 389-page "Adult Rehabilitation Centers Handbook of Standards, Principles and Policies" makes no mention of drugs or alcohol, Gensler Decl. Ex. A, and SA's "Positional Statement: Alcohol in Society" addresses only alcohol, *id.* Ex. B.

While it is not appropriate for Plaintiffs or this Court to evaluate the reasonableness of Defendants' asserted religious belief rejecting MAT, it has long been the province of Courts to evaluate the sincerity of such beliefs. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 718 (2014) (noting "that Congress was confident of the ability of the federal courts to weed out insincere claims"). "[T]his analysis is most useful where extrinsic evidence is evaluated. For example, an adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief." *Int'l Soc. For Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 441 (2d Cir. 1981). The Barber court cited to *Dobkin v. District of Columbia*, holding that a member of the Jewish faith who works on Saturdays cannot claim a free exercise violation by being compelled to appear in court on the Sabbath. 194 A.2d 657 (D.C. 1963), *cited in Barber*, 650 F.2d at 441. Similarly, in *Caviezel v. Great Neck Pub. Sch.*, 701 F.Supp.2d 414 (E.D. N.Y. 2010), the Second Circuit affirmed the holding that the plaintiffs' professed religious belief against vaccinating their child based on "a reluctance to have unnecessary marks on their bodies" was insincere

based on the extrinsic evidence that their other children had been vaccinated and that the child in question had pierced ears. *Caviezel*, 701 F. Supp. 2d 429-30; *see also United States v. Jeffs*, No. 2:16-CR-82 TS, 2016 WL 6745951, at *5 (D. Utah Nov. 15, 2016) (rejecting as insincere a belief requiring church members to donate their assets and meet their needs from a common "Storehouse," based on the fact that the defendant – a church leader – "used Storehouse funds to purchase the items he and his family wanted that could not be obtained from the Storehouse"); *Sherr v. Northport-E. Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 96 (E.D.N.Y. 1987) (rejecting sincerity of anti-vaccination belief; plaintiff had testified that "although he opposed any 'intrusion' into the body on religious grounds, he had [the child in question] X-rayed when it was believed that the boy had broken his leg, allowed dentists to remove decay from cavities his children might have, and had his children circumcised.").

Here, extrinsic evidence – cited in the FAC – shows that other Salvation Army programs use and endorse MAT, precisely the treatment Defendants claim in this case to contravene their religious beliefs. For example, Defendant's Harbor Light program uses MAT including buprenorphine, and its "Licensed Treatment Centers" do the same, acknowledging, "MAT is considered by experts to be the gold standard of care when treating opio[i]d addiction disorders." *See* FAC ¶ 144 n.18.[2] This extrinsic evidence demonstrates that Defendants' belief rejecting

---

[2] The Salvation Army Harbor Light program uses MAT including buprenorphine (https://centralusa.salvationarmy.org/emi/harbor-light/) (last accessed August 20, 2021); The Salvation Army's contract with the Department of Corrections in Alaska requires "evidence-based substance abuse treatment" (https://doc.alaska.gov/doc/DOC%20and%20Salvation%20Army%20team%20up%20to%20provide%20substance%20abuse%20treatment.pdf); The Salvation Army's "Licensed Treatment Centers" use MAT including buprenorphine and acknowledge, "MAT is considered by experts to be the gold standard of care when treating opio[i]d addiction disorders." (https://centralusa.salvationarmy.org/usc/licensed-treatment-centers/) (last accessed August 20, 2021).

MAT is not sincere, and, at the very least, it is a fact issue inappropriate to resolve on a motion to dismiss.

## II.      Defendants are Subject to Section 504

Defendants' Motion to Dismiss does not raise any grounds, aside from the statute of limitations, for dismissing Plaintiffs' claims under Section 504 of the Rehabilitation Act. Section 504 states that "(n)o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). This statute does not contain an exception for churches or religious organizations, and thus such organizations are responsible on the same terms as any other enterprise that receives federal funding to comply with Section 504's antidiscrimination mandates. *See, e.g., Doe v. Salvation Army in U.S.*, 685 F.3d 564, 569-73 (6th Cir. 2012) (holding that there is no categorical religious exception under Section 504). Although not explicitly stated in their motions, to the extent Defendants argue for a religious exception to Section 504, that argument must be rejected.

## III.     Defendants are Subject to the Requirements of the FHA

Defendants' ARC programs and services include the provision of housing to program participants. Defendants do not dispute that ARC housing are dwellings covered by the Fair Housing Act. *See* 42 U.S.C. § 3604(f)(1) (prohibiting disability discrimination with respect to dwellings). Instead, Defendants argue that the Fair Housing Act's exemption for religious organizations extends to ARC housing.

This is incorrect. By its plain language, the FHA's religious exemption is designed to allow religious organizations to give preferential treatment in the provision of housing to

members of its religion. It does not authorize any other type of discrimination in the provision of

housing:

> Nothing in this subchapter shall prohibit a religious organization, association,
> or society, or any nonprofit institution or organization operated, supervised or
> controlled by or in conjunction with a religious organization, association, or
> society, **from limiting the sale, rental or occupancy of dwellings which it**
> **owns or operates for other than a commercial purpose to persons of the**
> **same religion, or from giving preference to such persons**, unless
> membership in such religion is restricted on account of race, color, or national
> origin.

42 U.S.C. § 3607(a) (emphasis added).

Defendants make ARC programs and services, including the housing provided as an

integral part of its ARCs, available to the public regardless of religion. Defendants do not

restrict, nor give preference for, ARC housing to people of any particular religion.[3] Accordingly,

the FHA's religious exemption is inapplicable and Salvation Army is subject to the FHA's

prohibition of discrimination against people with disabilities. Defendants' motion to dismiss on

these grounds should be rejected.

### IV.     Defendants are Subject to the Requirements of the Americans with Disabilities Act

Plaintiffs bring two claims under the ADA, one under Title III, 42 U.S.C. § 12181 *et seq.*,

prohibiting disability discrimination by places of public accommodation, and one under Title V,

*id.* § 12203, prohibiting (among other things) interference with rights protected by Title III.

Defendants' motion puts forward no argument regarding why Defendants' status as a religious

entity requires dismissal of Plaintiffs' claims for Defendants' impeding and interfering with

---

[3] Notably, simply requiring someone in ARC housing to attend religious services "does not fall
within the meaning of giving preference to 'persons of the same religion.'" *Intermountain Fair
Hous. Council v. Boise Rescue Mission Ministries*, 717 F. Supp. 2d 1101, 1114 (D. Idaho 2010),
*aff'd on other grounds*, 657 F.3d 988 (9th Cir. 2011) (quoting 42 U.S.C. § 3607(a)).

Plaintiffs' participation in and access to healthcare,[4] specifically MAT prescribed by their health care providers. Like Section 504, there is no religious exemption in Title V of the ADA. Defendants' motion to dismiss Plaintiffs' Title V claims has no basis and should be denied.

Likewise, Defendants' arguments as to Title III are unavailing. Defendants' ARC programs and services, including its housing program, are places of public accommodation. Title III's statutory language defines as places of public accommodation any "facility operated by a private entity whose operations affect commerce" including "a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment." 42 U.S.C. § 12181(7)(K). The ARCs are social service centers that Defendants claim and advertise as providing housing and "work therapy, group and individual counseling sessions" for adults dealing with addiction. *See* The Salvation Army, *Rehabilitation*, https://www.salvationarmyusa.org/usn/rehabilitation (last visited Oct. 1, 2021). As such, these centers and programs are covered under Title III of the ADA.

While Title III of the ADA provides a limited exemption for religious organizations, 42 U.S.C. § 12187, Defendants improperly attempt to impose a blanket exemption that would allow them to shield themselves from liability for discriminating against people with disabilities while simultaneously focusing their entire ARC program on, and profiting from, disabled people. No such blanket exemption exists. Rather, when an organization like Salvation Army engages in both religious and secular activity, courts have found that a factual inquiry is required into

---

[4] Healthcare providers are covered by Titles II (public hospitals) and III of the ADA, 42 U.S.C. § 12181(7)(F) (health care providers and other service establishments); thus, interfering with access to healthcare is interfering with rights protected by the ADA. *See* 42 U.S.C. § 12101(a)(3) (expressing Congressional intention to eliminate discrimination against individuals with disabilities in "health services").

whether the organization is a religious entity falling within the ADA's exemption. Such inquiry

is premature if Plaintiffs have not been given the opportunity to develop the record regarding the

facts relevant to this multi-faceted question through discovery. *See e.g.*, *Defiore v. City Rescue*

*Mission of New Castle*, 995 F. Supp. 2d 413 (W.D. Pa. 2013); *U.S. v. Columbus Country Club*,

915 F.2d 877 (3rd Cir. 1990).

In *Defiore*, a blind man sued the Crossroads Shelter Program after it refused to serve him due

to his service animal. Defiore and the United States filed lawsuits claiming, *inter alia*, that

Crossroads had violated the ADA. Crossroads contended it was a religious organization exempt

from coverage by the ADA. In its analysis, the court explained that whether an organization is a

religious entity exempted from the ADA is a mixed question of law and fact. *Id*. at 416 (citing

*LeBoon v. Lancaster Jewish Cmty. Center Ass'n*, 503 F.3d 217, 226–227 (3d Cir. 2007)). The

*Defiore* court further explained that the analysis of whether an organization comes within the

ADA's exemption required the weighing of multiple factors—including "whether the entity

holds itself out to the public as secular or sectarian," whether the entity produces a secular

product,[5] whether it is affiliated or financially supported by a formally religious entity, or

whether its membership is made up by members of the same religion—and that "Plaintiffs […]

are entitled to discovery to identify and weigh the aforementioned commonly considered

factors." *Id*. at 417-418; Here, discovery has not yet begun, so Plaintiffs have not had any

opportunity to identify the scope of Defendants' secular and religious activities relevant to these

---

[5] Plaintiffs note that on Defendants' websites and other advertising materials which they use to
solicit people with substance use disorders to participate in Salvation Army ARC programs and
services, Defendants provide assurances that they are "serving all without discrimination" on the
basis of race, religion, or disability. *See* The Salvation Army, *Rehabilitation*,
https://www.salvationarmyusa.org/usn/rehabilitation (last visited Oct. 1, 2021).

factors. Defendants' motion to dismiss Plaintiffs' claims under Title III of the ADA is premature

and should be deferred until the Plaintiffs have been accorded the opportunity to conduct

discovery and develop the record necessary for the Court to conduct the multi-pronged factual

analysis to determine the applicability of the ADA's Title III religious exemption.[6]

## V.   This Court Has Jurisdiction over Both Defendants

Contrary to Defendants' arguments, this Court has personal jurisdiction over Salvation

Army National Corporation for all claims in Plaintiffs' FAC. This Court also has personal

jurisdiction over Salvation Army New York Corporation for the claims of Plaintiffs Tassinari

and Espinosa. Because Plaintiffs have filed this federal court case under federal law in the

District of Massachusetts, this Court may exercise personal jurisdiction over the defendants if (1)

the plaintiff validly effects service of process or waiver of service; and (2) the defendants have

"adequate contacts" with the United States as a whole. *Waters v. Day & Zimmermann NPS, Inc.*,

464 F. Supp. 3d 455, 457 (D. Mass. 2020), *motion to certify appeal granted*, No. 19 Civ. 11585,

2020 WL 4754984 (D. Mass. Aug. 14, 2020) (citing *United States v. Swiss Am. Bank*, 274 F.3d

---

[6] Discovery would necessarily include inquiring how ARCs interact with courts, probation departments, and the criminal justice system. Here, Plaintiffs have alleged facts which may reach the constitutional limits of Title III's religious exemption even if Salvation Army is determined to be a "religious organization" under *Defiore*, further supporting Plaintiff's need for discovery. *See* FAC ¶¶ 60, 64, 74-75, 122-23, 158, 165 (describing relationship between ARCs and criminal justice system as applied to Plaintiffs). If the exemption, as applied to the facts, would have the "primary effect of advancing religion and creating excessive government entanglement" it violates the Establishment Clause to apply it. *See Dodge v. Salvation Army*, No. S88-0353, 1989 WL 53857, at *4 (S.D. Miss. Jan. 9, 1989) (finding that The Salvation Army is a church and refusing to apply religious exemption in Section 702 of the Civil Rights Act of 1964 to The Salvation Army with regard to discrimination against an employee whose position was funded through state and federal grant money because doing so would unconstitutionally entangle state and federal governments with religion, raising Establishment Clause concerns). Thus, no version of Defendants' argument insulates it from discovery.

610, 618 (1st Cir. 2001). Because Plaintiffs have effected waiver of service and Defendants have adequate contacts with the United States as a whole, this Court has jurisdiction over both Defendants for all of Plaintiffs' claims. To clarify any ambiguity, Plaintiffs Anderson and Owens do not assert any claims against the Eastern Territory. Their claims are against only the National Corporation, which is why the FAC asks that they be made class representatives only as to claims against the National Corporation. Plaintiffs would agree to stipulate to a class definition that clarifies this point, if deemed necessary.

The waivers of service of summons filed by Plaintiff Tassinari are valid and satisfied the requirements of Federal Rule of Civil Procedure 4(k)(1)(A). Upon filing the original class action Complaint, Plaintiff Tassinari effected waiver of service consistent with a federal statute or civil rule.[7] *See* Defs.' Waivers of the Service of Summons, returned executed, ECF Nos. 11-15. He thus satisfied the conditions in Rule 4(k)(1): "waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." This Court is located in Massachusetts and Defendants are subject to the jurisdiction of a Massachusetts court under the Massachusetts "long-arm" statute; thus, Plaintiff Tassinari satisfied Rule 4(k)(1) when he filed Defendants' waivers of service.

The Massachusetts long-arm statute – invoked by Rule 4(k)(1) – allows a Massachusetts court to exercise personal jurisdiction over an entity "transacting any business in this

---

[7] The Federal Rules of Civil Procedure do not require additional service of process on a defendant that has already been brought before the court by the original named plaintiff's satisfaction of the conditions for valid service of process or waiver under Rule 4. Thus, Plaintiffs' filing of the FAC, adding additional named plaintiffs and subtracting other defendants, has no effect on this Court's personal jurisdiction over the parties already properly before it.

commonwealth[.]" Mass. Gen. Laws, Ch. 223A, § 3(a) (emphasis added). Specifically, "the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." *Tatro v. Manor Care, Inc*., 625 N.E.2d 549, 551 (Mass. 1994) (citing *Good Hope Indus., Inc. v. Ryder Scott Co*., 389 N.E.2d 76, 82 n.17 (Mass. 1979)). These requirements are to be generously construed in favor of asserting personal jurisdiction. *See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp*., 960 F.2d 1080, 1087 (1st Cir. 1992); *Lyle Richards Int'l, Ltd. v. Ashworth, Inc*., 132 F.3d 111, 114 (1st Cir. 1997).

Defendant Eastern Territory does not dispute that its business in Massachusetts satisfies the Massachusetts long-arm statute and admits that the Court may exercise personal jurisdiction over it as to the claims of Plaintiff Tassinari. Plaintiff Tassinari also amply pleaded that the National Corporation's conduct in the Commonwealth of Massachusetts (*i.e*., "transaction of business") gives rise to his claims. Indeed, Plaintiff Tassinari alleged that the National Corporation and Eastern Territory operate as a single unified enterprise and jointly control and operate the ARCs that discriminated against him in Massachusetts. *See, e.g*., FAC ¶ 138. These well-pleaded facts are sufficient to satisfy the long-arm statute and, therefore, Rule 4. Accordingly, the waivers of service Plaintiff Tassinari filed from the Defendants, ECF Nos. 11 (National), 12 (New York Corporation), are valid and end the Court's first prong of the personal jurisdiction analysis.

      a.  **Exercise of personal jurisdiction over Defendants comports with Fifth Amendment due process because Defendants have adequate contacts with the United States.**

Defendants' contacts with the United States are adequate to comport with due process under the Fifth Amendment. *United Elec., Radio and Mach. Workers of Am.*, 960 F.2dat 1085. Specifically, Defendants operate over 100 ARCs throughout the United States (National Corporation) and at least 30 ARCs throughout the states of Connecticut, Delaware, Kentucky, Maine, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont and Commonwealth of Massachusetts (Eastern Territory) and Plaintiffs adequately alleged they are covered by the federal antidiscrimination laws at issue in this case.[8]

In their FAC, Plaintiffs challenge Defendants as to their application of a national policy to discriminate against individuals with OUD under three federal nondiscrimination statutes and make specific allegations that the Defendants are covered by those laws. Thus, they have adequate contacts with the United States as a whole, satisfying the second prong of the personal jurisdiction analysis in this federal question case. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 102 n.5 (1987).

## b. This court has personal jurisdiction over the claims of non-resident plaintiffs and absent non-resident class members.

A plaintiff like Mr. Tassinari injured in the forum state who brings federal claims in federal court acts as an anchor for the purpose of personal jurisdiction. Through the customary exercise of pendent jurisdiction, used to prevent the waste of the scarce resources of the federal court system, the court may hear the claims of other plaintiffs if they arise from the same nucleus of operative fact, whether or not those plaintiffs were injured in the forum state. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004) (permitting

---

[8] FAC ¶¶ 202-05 (ADA coverage); 224-229 (Rehabilitation Act coverage); 247-248 (FHA Coverage).

court to assert pendent personal jurisdiction over a defendant for a claim that arises out of a common nucleus of operative fact); *see also, Chavez v. Stellar Mgmt. Grp. VII, LLC*, No. 19 Civ. 01353, 2020 WL 4505482, at *10 (N.D. Cal. Aug. 5, 2020) (exercising pendent jurisdiction over out-of-state plaintiffs where the defendant's practices were uniform). As discussed below, each of the named Plaintiffs in this lawsuit, who are named to serve as representatives of the prospective class, may also represent absent class members with similar claims.

This court's exercise of personal jurisdiction over Defendants as to Anderson, Owens, and Espinosa's claims, as well as in relation to their representative role for the claims of absent class members, does not burden Defendants or raise federalism concerns. Defendants have the same lawyers and benefit from the judicial economy of resolving these identical federal claims based on one national policy for the entire class in one case, instead of in dozens of proceedings scattered about federal courts nationwide. There are no state claims involved in this action, so the federalism concerns driving Defendants' claims regarding jurisdiction have no application here.

Defendants erroneously rely on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773 (2017), which concerned a multi-state action on behalf of plaintiffs pursuing claims under an array of *state* laws and, thus, rightly required balancing of federalism concerns, including balancing the rights of different states who might wish to address and adjudicate claims arising under these state laws. Contrary to Defendants' portrayal of the ruling in *Bristol-Meyers*, as the Supreme Court itself specifically explained, in that ruling, the Court did not upend "settled principles" of personal jurisdiction. *Bristol-Meyers*, 137 S. Ct. at 1783. Courts have historically exercised personal jurisdiction over nationwide class actions based on the claims of the named plaintiff(s) alone and continue to do so because it is efficient and promotes justice. *See infra* n.22 (citing cases holding

*Bristol-Meyers* does not apply to class actions). *See also Bristol-Meyers*, 137 S. Ct. at 1783-84 (explicitly noting that its decision did not reach or concern "the Fifth Amendment" and "the exercise of personal jurisdiction by a federal court.").

> **c.  Even if the Fourteenth Amendment were to apply, Plaintiffs have established specific personal jurisdiction.**

The Fifth Amendment, not the Fourteenth Amendment, controls the assertion of jurisdiction here. However, assuming *arguendo*, that the Fourteenth Amendment analysis were applied as Defendants suggest, Defendants still are subject to the personal jurisdiction of this Court. Under the Fourteenth Amendment, to establish specific personal jurisdiction, a plaintiff must satisfy both the requirements of the forum state's long-arm statue and the constitutional constraints of Fourteenth Amendment due process. *Tatro,* 625 N.E.2d 769-71; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1024-25. The requirements of Massachusetts's long-arm statute, as noted above, are met.

To meet the requirements of Fourteenth Amendment due process, Plaintiffs need only show purposeful availment, relatedness, and reasonableness.[9] Contrary to its demands  for dismissal, the Eastern Territory concedes that the court may exercise specific personal jurisdiction over it for the claims of Plaintiff Tassinari.[10] As noted above, Plaintiffs have alleged that the National Corporation and Eastern Territory operate as a single unified enterprise,

---

[9] *Knox v. MetalForming, Inc*., 914 F.3d 685, 690 (1st Cir. 2019).
[10] As explained above,  this admission is sufficient for the court to hear the identical claims of Plaintiff Espinosa, who was also harmed by the Eastern Territory's application of Salvation Army's national policy to discriminate against individuals with OUD, pursuant to pendent jurisdiction.

meaning that the specific jurisdiction this Court has over the Eastern District applies equally to the National Corporation, since they operate as two corporate parts of one unified entity.[11]

Defendants' contacts with Massachusetts are entirely voluntary and intentional, satisfying the purposeful availment element of the Fourteenth Amendment due process analysis. *See Knox*, 914 F.3d at 691. As pleaded by Plaintiffs, their conduct also well evidences an "intent to serve the forum," *Id.* at 692 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 111-12 (1987) (opinion of O'Connor, J.)), as the National Corporation engages in extensive advertising regarding its ARCs nationwide, including in Massachusetts, secures federal funding to support its operations, and solicits and oversees the collection of physical donations (clothes, furniture) and cash donations specifically earmarked for use on Salvation Army programs in Massachusetts, including Massachusetts ARCs, rather than referring those collections to the Eastern Territory or a Massachusetts division.[12] The Eastern District is present on the ground in

---

[11] The National Corporation ensures that it is layered into every stage of work undertaken by the Eastern Territory, including in Massachusetts. For example, the President of the National Corporation is the Chairman of the Board of the Eastern Territory. FAC ¶ 138. This strategic placement ensures that the National Corporation's contact with the forum does not "rest on the unilateral activity of another party or a third person" (e.g., the Eastern Territory). *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 9 (1st Cir. 2018) (quotations omitted). Instead, by installing its President as chair of the Eastern Territory's Board, the National Corporation ensures that Salvation Army programs and services, including ARCs in Massachusetts, adhere to National's policies, including the national policy prohibiting MAT. The National Corporation further intends and ensures that its policies will reach Massachusetts because it requires the Massachusetts ARCs to follow national operational guidance, decided on at the Commissioners' Conference (which the President also presides over, FAC ¶ 139), and which Defendants admit is applicable to and followed in Massachusetts ARCs. *See Mem. Supp. Defs.' Mot. to Dismiss for Lack of Jurisdiction at 11,* ECF No. 38(citing ECF Gensler Decl. and Exhibit A to the Gensler Decl. (the Handbook of Standards, Principles and Policies), ECF No. 38-1 ).

[12] *See, e.g.*, The Salvation Army, https://www.salvationarmyusa.org/usn/ (last visited Oct. 11, 2021). (At the top right corner, select the red button labeled "donate locally." A drop-down donation page will appear. On the left-hand side, under "Donate Goods," a visitor to Salvation

Massachusetts, daily soliciting  participants – including by making representations and advertisements to the Commonwealth's judges and probation officials – playing its role specifically in Massachusetts as part of the unified national Salvation Army enterprise.

Defendants' contacts with Massachusetts easily are "related" to the claims at issue, since the National Corporation's contacts (as well as the Eastern Territory, which does not appear to be challenging specific jurisdiction) include coordinating the collection of physical donations that are processed by ARC participants and sold to fund ARCs in Massachusetts and ensuring compliance with the national policy prohibiting MAT in Massachusetts by having the National Corporation's President serve as Chair of the Eastern Territory's Board and preside over the Commissioners' Conference. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy,* Inc., 825 F.3d 28, 36 (1st Cir. 2016) (the standard to assess "relatedness" between a defendant's contacts with the forum and the claims at issue is "flexible and relaxed.").

As to reasonableness, it is well settled that "[t]he defendant bears the burden of establishing that the exercise of jurisdiction would be unreasonable." *Plixer*, 905 F.3d at 12 (1st Cir. 2018). Under the "Gestalt Factors" articulated in *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184, the National Corporation cannot do so.[13]

---

Army's page can enter any zip code and click "Go." This directs the visitor to a centralized goods donation platform e.g., https://satruck.org/Donate/Choose?zip=01906 (Saugus, 01906), where Salvation Army allows the visitor to select what they want to donate and shows Salvation Army's availability for pick-ups. Pick-up availability varies based on the zip code the visitor enters. Similarly, if instead of "Donate Goods" the visitor selects "Give Now," Salvation Army allows the visitor to make a monetary donation earmarked for any city in the country.)

[13] Given this, there is no need to reach the question of general jurisdiction. "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business . . .", those are just examples. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (emphasis in original). "A corporation, like an individual,

Under either Fifth Amendment or Fourteenth Amendment analysis, this Court has personal jurisdiction over both Defendants. When effective process and adequate contacts with the United States are established in a federal question case, so too is the federal court's exercise of personal jurisdiction. This is because there is no Constitutional burden – no unfairness – to requiring a defendant who has acted in the United States to answer for violations of nationally applicable federal law in a United States court.[14]

## VI.    Plaintiffs' Claims Are Not Barred by the Statute of Limitations

Plaintiffs agree with Defendants that the applicable statute of limitations for FHA claims is two years, and for ADA and Rehabilitation Act claims, three years. ECF No. 40 at 13. However, Defendants erroneously argue that Plaintiffs' claims under each statute are time barred. It is a well-established principle that where continuous rights violations occur "a plaintiff

---

may have a number of homes." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020). The Eastern Territory is "at home" in Massachusetts: it operates a Divisional Headquarters in Canton, Massachusetts, it has operated four ARCs (Saugus, Worcester, Brockton, and Springfield), and 32 service locations across the Commonwealth. https://easternusa.salvationarmy.org/massachusetts. Eastern Territory's "general business operations in a state in which it is neither incorporated nor headquartered are sufficiently "'substantial and of such a nature as to render the corporation at home in that State.'" *See Kuan*, 956 F.3d at 57  (quoting *Daimler*, 134 S. Ct. at 761 n.19). As noted above, since plaintiffs allege that Defendants operate as a single unified enterprise, the Eastern District's operation in Massachusetts as a "home" requires the same conclusion as to the National Corporation. Given this, general jurisdiction would be appropriately asserted here.

[14] Defendants argue for a version of personal jurisdiction in which there is no court in the United States in which the National Corporation can be sued in the same case, for the same conduct, as one of its separately incorporated Territories, even though they operate as a unified enterprise. If there is any attempt at gamesmanship in the selection (or rejection) of forum, surely it is on the part of Defendants, not a plaintiff who sued in his home state for harm he experienced because of national policy applied to him there and to others elsewhere. *See Ford Motor Co.*, 141 S. Ct. at 1039 n.5 (2021) (Gorsuch, J., concurring) ("What's the . . . real worry anyway—that corporations might lose special protections? The Constitution has always allowed suits against individuals on any issue in any State where they set foot.").

may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." *Tobin v. Liberty Mut. Ins. Co*, 553 F.3d 121, 130 (1st Cir. 2009).  Furthermore, "the doctrine does not apply to 'discrete acts' … only to discriminatory conduct that takes place 'over a series of days or perhaps years.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). In this case, Plaintiffs did not allege discrete acts, but a longstanding and ongoing discriminatory policy in conjunction with a series of discriminatory actions that lasted for months and years in some cases. *See generally* FAC ¶¶ 50 – 133.

To establish a continuing violation, the plaintiff "must allege that a discriminatory act occurred or that a discriminatory policy or practice existed" within the statutory period. *Muñiz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994) (quoting *Johnson v. General Electric*, 840 F.2d 132, 137 (1st Cir. 1988)). Further, there are two types of continuing violations, serial and systemic. *See e.g., Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 405 (1st Cir. 2002) (Traditionally we have recognized that "[c]ontinuing violations may be serial or systemic" and have distinguished between such violations.) (quoting *Provencher v. CVS Pharmacy, Div. of Melville Corp.,* 145 F. 3d 5, 14 (1st Cir. 1998)).  A serial continuing violation consists of repeated discriminatory acts, one of which must fall within the limitations period. *See Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir.1990); *Muñiz-Cabrero*, 23 F.3d at 610. In contrast, for a systemic continuing violation such as that at issue here, a plaintiff need only demonstrate that he or she has been harmed by the application of a discriminatory policy or practice and that said policy or practice continues into the limitations period. *Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, a Div. Of Pepsico Puerto Rico, Inc., 265 F.3d 15, 21 (1st Cir. 2001); *Jensen*, 912 F.2d at 523 ("A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or

practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint."). Throughout their FAC, Plaintiffs allege that Salvation Army has had and continues to have in place a policy that discriminates against them in violation of Section 504, the FHA, and the ADA by prohibiting MAT use in its ARC programs and that they and similarly situated others have been harmed by this policy. In their Memoranda in support of the instant Motions, Defendants acknowledge the existence of this policy. Given that there is no dispute the policy exists and remains ongoing, Plaintiffs' claims are timely.

## VII.   Plaintiffs Have Article III Standing Against Salvation Army-National Because They Challenge that Entity's Nationwide Policy.[15]

Plaintiffs have standing to sue Salvation Army-National because the MAT policy they challenge is a nationwide policy, based in a Handbook drafted by the Salvation Army's Commissioners' Conference, and applicable in ARCs around the country. The Commissioners' Conference is presided over by the National Commander and includes leadership from each of the Territories. FAC ¶ 139.

Ultimately, the National Corporation is thus not an absentee parent with purely administrative functions. It is the head of the U.S. Branch of Salvation *Army*, a vastly

---

[15] Defendants also argue that Plaintiffs Owens and Anderson do not have standing to sue the Eastern Territory. Plaintiffs Owens and Andersons' allegations are limited to the National Corporation and they do not seek to represent a class of individuals harmed by the Eastern Territory. FAC "Prayer for Relief" A.

hierarchical organization with strict chain-of-command forming its very identity, and the President of the National Corporation holds the highest Salvation Army office in the country.[16]

This type of control over the accessibility of ARCs to individuals with disabilities falls squarely within the meaning of "to operate" under Title III of the ADA and the similarly construed FHA and Section 504. *See Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 202 (D. Mass. 2012) (a defendant is an operator if it "specifically controls the modification of the [things at issue] to improve their accessibility to the disabled.") (quoting *Neff v. Am. Dairy Queen Corp.,* 58 F.3d 1063, 1066 (5th Cir.1995)). Additionally, the National Corporation's conduct falls within the plain language of the anti-interference provisions of Title V of the ADA, the FHA, and Rehabilitation Act,[17] each of which applies broadly to *anyone* who "coerce[s], intimidate[s], threaten[s], [or] interfere[s] with any [person/individual] in the exercise or enjoyment of, or on account of [their] having exercised or enjoyed . . . any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b) (ADA Title V - interference); *see also* 29 U.S.C. § 794(d) (Rehabilitation Act provision incorporating by reference section 12203);[18] 42 U.S.C. § 3617 (FHA – interference). This includes the right not to be impeded from accessing a medical facility or doctor to receive healthcare, including MAT, and the right not to be impeded from or

---

[16]

https://web.archive.org/web/20210122083632/https://ctri.salvationarmy.org/SNE/Organizational

[17] Plaintiffs plead interference claims under each antidiscrimination statute, FAC ¶¶ 212; 236; 252.

[18]  *See also M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico*, 528 F.3d 9, 15 (1st Cir. 2008) (citing 29 U.S.C. § 794a(a)(2), 34 C.F.R. § 104.61, and *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (recognizing a retaliation claim under Title IX)).

intimidated for using MAT as directed by a doctor. The National Corporation's promulgation and enforcement of a national MAT ban directly interferes with these rights.

### VIII.   Plaintiffs have adequately alleged that they suffered and continue to suffer concrete injuries in fact.

Defendants' challenge to standing based on Plaintiffs' alleged failure to plead "injury in fact" again ignores the well-pleaded allegations in the FAC. Each plaintiff has alleged in detail how Defendants' enforcement of the national policy prohibiting MAT has injured, and continues to injure, them. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205(2021).

Plaintiffs' FAC details multiple concrete injuries to each Plaintiff from Defendants' MAT prohibition. For example, Mr. Tassinari experienced "physical pain, anxiety, frayed emotions, loss of appetite, and difficulty sleeping." FAC ¶¶ 61-63, 179. He also experienced psychological distress, property loss, insecurity, hospitalization, and displacement. *Id.* ¶¶ 70, 72, 80-81, 177, 179. Similarly, Mr. Espinosa experienced physical symptoms including prolonged pain along with psychological trauma and fear. *Id.* ¶¶ 88, 91, 93-97. Likewise, Mr. Owens experienced pain which was initially so severe he required hospitalization as well as psychological distress and displacement. *Id.* ¶¶ 107, 109, 111-13, 180. Like the other Plaintiffs, Mr. Anderson also experienced physical pain, displacement, and psychological distress. *Id.* ¶¶ 118, 125-26, 128-31, 172, 175-76.

In addition, Plaintiffs each alleged ongoing harm arising from Defendants' continuing policy and practice of discriminating against them, preventing them from participating in and/or returning to any ARC, despite their needs and qualifications. *Id.* ¶ 183. They also alleged that because of Defendants' discriminatory conduct toward each of them, they "suffered and continue to suffer irreparable harm including threat of imminent physical injury, pain and suffering,

emotional distress, humiliation, hardship and anxiety, serious illness, and death." *Id.* ¶¶ 214, 238, 254. These negative physical and psychological impacts are concrete injuries from Defendants' MAT prohibition.

A.     Defendants' attempt to adjudicate class certification before a discovery is premature.

Striking Plaintiffs' class allegations at this early stage is inappropriate because Plaintiffs have alleged plausible class claims and have shown a clear path to class-wide discovery, certification, and relief.

Motions to strike are disfavored, especially motions to strike class allegations. *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). This is because "it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (citation omitted); *see also Cholakyan v. Mercedes–Benz USA, LLC*, 796 F.Supp.2d 1220, 1245 (C.D.Cal. 2011) (noting "it is in fact rare to [strike class allegations] in advance of a motion for class certification" and collecting cases). "[A] court should typically await the development of a factual record before determining whether the case should move forward on a representative basis." *Id.* Here, each of Defendants' bases for striking the class allegations should fail.

First, for the reasons stated above, every named plaintiff and putative class member has a claim against the National Corporation, which is jointly responsible with each of the Territories for discrimination based on the national policy prohibiting MAT. Second,  this court has personal jurisdiction over every claim alleged in the FAC, including the claims of absent non-resident class members. *See Munsell v. Colgate-Palmolive Co.*, 463 F.Supp.3d 43, 54–55 (D. Mass. May

20, 2020) (declining to extend *Bristol-Meyers Squibb* to class actions); *Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 325–26 (D. Mass. Jan. 24, 2020) (same).[19] Third, plaintiffs have adequately alleged that the class definition is ascertainable and based on objective criteria.

As an initial matter, ascertainability is not required in classes certified under Rule 23(b)(2), seeking only injunctive relief. *See, e.g., Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (where certification of a (b)(2) injunctive class is sought, "actual membership of the class need not . . . be precisely delimited" because "notice to the members . . . is not required.") *abrogated on other grounds in Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 479 n.2 (1978); *Shook v. El Paso Cty*., 386 F.3d 963, 972 (10th Cir. 2004) (relying on *Yaffe*, and finding proposed class definition sufficiently definite, explaining that "Rule 23(b)(2) [is] well suited for cases where the composition of a class is not easily ascertainable" due to the "shifting" nature of the population); *McCuin v. Sec. of Health and Human Svcs*., 817 F.2d 161, 167 (1st Cir. 1987) ("[W]here only declaratory and injunctive relief is sought for a class, plaintiffs are not required to identify the class members once the existence of the class has been demonstrated.").

---

[19] *See also Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020) (*Bristol-Myers* does not apply to nationwide class actions filed in federal court under a federal statute); *Rosenberg v. LoanDepot.com LLC*, No. 19 Civ. 10661, 435 F.Supp.3d 308, 325–36, (D. Mass. Jan. 24, 2020) ("Given th[e] inherent differences and the well-reasoned caselaw holding that the *Bristol-Myers* case does not apply in the class action context, this Court similarly declines to extend the reach of the *Bristol-Myers* decision."); *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, No. 17 Civ. 564, 2017 WL 4224723, *3-*5 (N.D. Cal. Sept. 22, 2017) ("[T]he Court is not persuaded to extend *Bristol-Myers* to the class action context on these facts."); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 464-65 (M.D. Pa. 2019) ("[A] majority of the district courts who have faced these questions have determined that *Bristol-Myers Squibb* does not apply to class actions" (collecting cases)).

[19] https://www.cdc.gov/drugoverdose/training/oud/accessible/index.html;

In addition, Plaintiffs' class definition is sufficiently ascertainable to satisfy Rule 23(b)(3), as it is based on objective criteria that can and should be fleshed out in discovery:.

| Objective criteria from class definition | Discovery necessary to test objective criteria |
|---|---|
| *"[A]ll individuals with OUD"* | "Opioid use disorder" is not a complicated diagnosis. The CDC looks to the "DSM-5 Diagnostic Criteria," which is a short checklist from a psychiatric manual for identifying mental disorders.[20] If even two of the relevant criteria are met, an OUD diagnosis is reasonable.[21] Factors include: "a persistent desire or unsuccessful efforts to cut down or control opioid use" (which could be said of nearly anyone who checks into residential rehabilitation for opioid use); "craving, or a strong desire or urge to use opioids" (same); and "continued opioid use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of opioids." (same).<br><br>Discovery will reveal how and whether Defendants collect information about why ARC participants are at the ARC and whether they have health or medical conditions, making it possible to ascertain which individuals have OUD. |
| *"[W]ho are or were excluded from participating in The Salvation Army's ARCs in the United States"* | Discovery will reveal how and whether Defendants track expulsions from ARCs as well as denials of services to individuals who seek admittance, making it possible to ascertain who was excluded. Plaintiffs alleged that Salvation Army has a policy of allowing individuals to return to an ARC after expulsion or leaving voluntarily, FAC ¶185; discovery will reveal how and whether Salvation Army keeps records of who comes and goes to affect such a return. |
| *"[B]ecause of their use of doctor-prescribed MAT drugs"* | Discovery will reveal how and whether Salvation Army tracks the reasons for individuals' departure from or rejection from ARCs. For example, Salvation Army may keep a log of when and why each person was turned away or kicked out of an ARC, or note individuals' disposition in a personal file. This information may reveal class members who were excluded because of MAT use. |
| *"[A]nd/or are or were denied access to"; "and/or are or were impeded from* | Discovery related to the "blackout" period when participants first arrive at an ARC and Salvation Army's policies and procedures related to participants visiting doctors will reveal how and whether Salvation Army restricts participants from accessing MAT from |

---

[20] https://www.cdc.gov/drugoverdose/training/oud/accessible/index.html; https://www.psychiatry.org/psychiatrists/practice/dsm
[21] https://www.cdc.gov/drugoverdose/training/oud/accessible/index.html.

| | |
|---|---|
| *receiving"; "doctor-prescribed"* | doctors or pharmacies (in violation of the anti-interference provisions of the ADA, FHA, and Rehabilitation Act) and interferes with participants' relationships with their doctors, making it possible to ascertain who was prevented from getting MAT from a doctor. Discovery related to Salvation Army's intimidation and coercion of participants regarding MAT may also reveal class members who were "impeded." |
| *"MAT drugs"* | "MAT drugs include methadone (including methadone with hydrochloride), buprenorphine (including buprenorphine with naloxone), and naltrexone." FAC ¶ 186. Salvation Army acknowledges its national policy prohibits the use of MAT drugs in its ARC programs across the United States. No discovery is needed on this issue. |
| *"[W]hile participating in The Salvation Army ARCs in the United States."* | Discovery will reveal how and whether Salvation Army keeps records of individuals enrolled in ARCs, making it possible to ascertain US participants. |

If discovery reveals that the class definition needs refining, the Plaintiffs and the court have discretion to narrow the definition or introduce subclasses on a motion for class certification. *See Manning,* 725 F.3d at 60 (the "court has many tools at its disposal to address concerns regarding the appropriate contours of the putative class, including redefining the class during the certification process or creating subclasses").

As discussed above, other than in the case of continuing violations or equitable tolling, Plaintiffs agree a two-year statute of limitations generally applies to FHA claims, and a three-year statute generally applies under the ADA and Rehabilitation Act. However, statutes of limitations are an affirmative defense. Fed. R. Civ. P. 8(c); *Bowles v. Russell*, 551 U.S. 205, 219 (2007). It defies logic – and principles of fairness – that class allegations could be stricken on a motion to dismiss on the basis that the class definition is not time-limited unless the claims of the named plaintiffs are dismissed entirely as untimely under Rule 12(b)(6), in which case a motion

to strike under 12(f) would be moot. Instead, Plaintiffs should be allowed to narrow the temporal scope of their class definition, if appropriate, when they move for class certification after discovery.

As previously noted, Plaintiffs satisfy Rule 23(b)(2) because Plaintiffs challenge a single national policy generally applicable to the whole class and imposed uniformly by the National Corporation and the Eastern Territory,[22] which together form a single integrated enterprise. No other party is needed, and a single disposition will be efficient.

Additionally, the predominance inquiry under 23(b)(3) is satisfied because the question at the heart of this case is whether Plaintiffs and class members were subjected to a blanket national policy which discriminates against individuals with disabilities by prohibiting MAT – the standard of care for OUD – in ARCs. Defendants claim that the allegations of the named plaintiffs are all different. However, each class member has OUD, each sought services at ARCs, and each was subject to the national policy prohibiting MAT, leading to physical pain, psychological distress, physical and mental discomfort, fear, and uncertainty. The challenge presented by calculating individual damages resulting from Defendants uniform policies and practices is entirely surmountable. Application of a damages formula after a finding of liability will avoid the need for extensive individual proceedings.

---

[22] As stated above, Plaintiffs challenge the national policy as imposed by the Eastern Territory and National Corporation in 12 states, and by the National Corporation nationwide.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the court deny the Defendants'

motions to dismiss.


Dated: October 12, 2021                    Respectfully submitted,


/s/_Benjamin Elga_____
Benjamin Elga (Bar No. 697933)
Lucy B. Bansal* (D.C. Bar No. MD06639)
Janet Herold (Bar No. 632479)

**Justice Catalyst Law**
123 William Street, 16th Floor
New York, NY 10038
Main: 518-732-6703
belga@justicecatalyst.org
lbansal@justicecatalyst.org
jherold@justicecatalyst.org

*Pro Hac Vice*


Martha M. Lafferty* (TN Bar# 019817)
**Civil Rights Education and Enforcement Center**
525 Royal Parkway, #293063
Nashville, TN 37229
Main: 615-913-5099
mlafferty@creeclaw.org

*Pro Hac Vice*

Amy F. Robertson* (CO Bar# 25890)
**Fox & Robertson, PC**
1550 Larimer Street
Suite 1113
Denver, CO 80202
Tel: 303.951.4164
arob@foxrob.com

*Pro Hac Vice*

Maria del Pilar Gonzales Morales *
**Civil Rights Education and
Enforcement Center**
1825 N. Vermont Ave., #27916
 Los Angeles, CA 90027
 Main: 805-813-8896
pgonzales@creeclaw.org

*Pro Hac Vice Admission Pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system on October 12, 2021, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


<u>/s/ Kyle E. Neumann</u>
Paralegal
Civil Rights Education and Enforcement Center