IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, RANDY OWENS, AND JONATHAN ANDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>V.<br><br>THE SALVATION ARMY NATIONAL CORPORATION; THE SALVATION ARMY, A NEW YORK CORPORATION,<br><br>Defendants. | CASE NO. 1:21-CV-10806 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE CLASS ALLEGATIONS**
<u>LEAVE TO FILE GRANTED ON OCTOBER 20, 2021</u>

Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dckt. 44) ("Opp.") confirms that the First Amended Complaint ("FAC") should be dismissed. In addition to their misguided arguments about the First Amendment, Plaintiffs' attempt to extrapolate from a single plaintiff's questionable claim arising in this forum to a nationwide class action is unavailing. So is the allegation that vague notions of "fairness" require that a non-resident party should be forced to litigate in this forum.

**A. The First Amendment Prohibits Adjudication of Plaintiffs' Claims**

Plaintiffs argue (Opp. at 8) that it is appropriate for this Court to evaluate the sincerity of Defendants' religious beliefs, citing language in *Burwell v. Hobby Lobby,* 573 US 682 (2014), about the ability of courts to "weed out insincere claims." But that passage addressed claims

made by institutionalized persons (typically prisoners) under a federal statute, not the First Amendment, and is thus inapposite. Plaintiffs' challenge to the sincerity of Defendants' religious beliefs is unfounded,[1] and inadvertently concedes that adjudication of this dispute would inevitably entangle the Court in questions of faith and religious doctrine. *See, e.g., Hernandez v. IRS*, 490 U.S. 680 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.") (quoting *Thomas* v. *Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 716 (1981)).

Furthermore, Plaintiffs' assertion (Opp. at 8) that the New York Corporation's policy against use of certain medication-assisted treatment ("MAT") medications within the Adult Rehabilitation Center ("ARC") program is not a religious tenet or policy ignores Defendants' sworn statements that this policy is based on The Salvation's Army's sincere, long-standing religious beliefs. Plaintiffs' conclusory assertion is insufficient to meet their burden to survive a Motion to Dismiss under Rule 12(b)(1). *See Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir. 1993) (a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'").

Plaintiffs misread the governing law in arguing that the First Amendment's protections against religious entanglement only apply to disputes about religious leadership or property. *See* Opp. at 4-5. The First Amendment prevents this Court from deciding issues of internal religious policies, not just issues related to clergy or religious leadership. *See Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 883 (9th Cir. 1987); *Dausch v. Rykse*, 52 F.3d 1425 (7th Cir. 1994); *Burgess v. Rock Creek Baptist Church,* 734 F. Supp. 30 (D.D.C. 1990) (church actions

---

[1] The cases cited by Plaintiffs regarding purported "insincerity" of beliefs are irrelevant, as they address questions of individual religious beliefs, and not the beliefs of the religious institution itself. *See* Opp. at 8.

regarding termination of congregant's membership were precluded from Court review); *see also Fulton v. Philadelphia*, 593 U.S. \_\_\_, 2021 WL 2459253 (2021) (interference with church's religious beliefs in operating its adoption program violated the First Amendment).

Plaintiffs are also wrong, *see* Opp. at 9, in observing that beneficiaries of an entirely different, secular program may use MAT medications. *See* Gensler Reply Decl. at ¶ 4 (explaining that the Harbor Light Center programs operated by the New York Corporation are wholly secular programs, unlike the religious ARC programs). Plaintiffs cite no authority for the curious proposition that a religious belief must be applied by a church even in secular programs in order for it to be entitled to First Amendment protections for its core religious beliefs and practices, because there is no such authority. For example, there could be no suggestion that the Catholic Church, or any other religious entity providing social services, loses the protections of the First Amendment by operating a soup kitchen or other secular program.

### B. This Court Lacks Personal Jurisdiction Over Claims Against the National Corporation

Plaintiffs ignore Defendants' substantial evidence that personal jurisdiction over the National Corporation is lacking because, among other things, it has no role in operating the New York Corporation or any ARCs. Plaintiffs instead rely on conclusory statements, based on three contentions, that the National Corporation and the New York Corporation are "a single integrated enterprise." *See* Opp. at 16, 31. Such allegations are not sufficient to meet Plaintiffs' burden. *See Ticketmaster-N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994) *(*the Court will not "credit conclusory allegations or draw farfetched inferences" in deciding motions to dismiss for lack personal jurisdiction); *Barrett v. Lombardi,* 239 F.3d 23, 27 (1st Cir. 2001) (it is the plaintiff's burden to "verify the facts alleged through materials of evidentiary quality").

Plaintiffs are mistaken in contending that there is personal jurisdiction over the National

3

Corporation because the National Commander of the Salvation Army holds one of ten seats on the Board of Trustees of the New York Corporation. Opp. at 20 n.11. The National Commander is an ecclesiastical role, not a role connected with the National Corporation. Johnson Reply Decl. at ¶ 3. The National Corporation does not have any seats on the Board of Trustees of the New York Corporation. Gensler Reply Decl. at ¶ 3. In any case, the presence of a single Trustee on a ten-person board, without any extraordinary voting or veto power, is insufficient to create personal jurisdiction over a separate legal entity. Courts repeatedly have held that there is no personal jurisdiction over a parent company (with much more control over a wholly-owned subsidiary entity than one single vote out of ten) from the connections between its subsidiary and the forum state. *E.g., Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006).

Plaintiffs are also wrong in speculating that, because leaders of the New York Corporation participate in the "Commissioners' Conference," an ecclesiastical body through which The Salvation Army church leaders meet to discuss policies that may have nationwide impact, this Court has jurisdiction over the National Corporation. The National Corporation is not the Commissioners' Conference, exists entirely separate from the Commissioners' Conference, and has no control over it. Johnson Reply Decl. at ¶ 4.

Plaintiffs fare no better in arguing that a purported nationwide policy regarding the use of MAT medication in ARC programs justifies the conclusion that the National Corporation is subject to the personal jurisdiction of this Court. Even assuming, *arguendo*, such a uniform policy existed and was followed by the ARCs nationally (which is not the case), Plaintiffs' assumption is belied by the evidence submitted by Defendants about the role of the National Corporation. Plaintiffs apparently believe that the mere fact that the National Corporation has "National" in its legal name means that it has implemented policies that Plaintiffs, without a

shred of evidentiary support, call "national" or "nationwide."

Finally, Plaintiffs miss the mark in asserting that, because individuals can make donations from anywhere on a website, this Court has jurisdiction over the National Corporation. The mere ability to access or interact with a website from a forum state is not sufficient to confer specific personal jurisdiction in cases in which the website has no bearing on the claims at issue. *See, e.g., Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 92 (D. Mass. 2021) ("courts in the First Circuit have . . . required not only a nationally available website coupled with an injury felt in the forum state but also intentional conduct by defendant calculated to cause injury in that state"). Plaintiffs' argument must fail, as there is not even an allegation, much less competent evidence, that Plaintiffs' claims are based on any website interactions.

## C. This Court Lacks Personal Jurisdiction Over the Claims of Plaintiffs Owens, Anderson, and Espinosa

A complaint must plausibly allege personal jurisdiction over *each* Plaintiff's claims. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 582 U.S. ___, 137 S. Ct. 1773, 1781 (2017); *see also Remick v. Manfredy*, 238 F.3d 248, 256-60 (3d Cir. 2001) (conducting specific-jurisdiction analysis as to each individual cause of action); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for *each claim* asserted against a defendant." (emphasis added)). This requires a tie between the claims and conduct occurring in the forum state. There is no supplemental theory of specific personal jurisdiction that allows Plaintiffs to skirt this procedural requirement.

Plaintiffs have not plausibly alleged sufficient ties between their claims and the Commonwealth of Massachusetts, with the exception of Plaintiff Tassinari. Instead they try to strap their claims against the National Corporation and their claims that arise entirely outside of

5

Massachusetts, to the back of Tassinari, supposedly in the name of "prevent[ing] the waste of the scarce resources of the federal court system." Opp. at 17.[2] But that novel assertion does not overcome the law that this Court lacks personal jurisdiction over the claims of Plaintiffs Owens, Anderson, and Espinosa, all of which arise outside this forum. *See, e.g., In re: Zofran (Ondansetron) Products Liability Litigation,* 2016 WL 2349105, at *5 n.5 (D. Mass. May 4, 2016) (rejecting application of pendent jurisdiction over claims of other plaintiffs for whose claims there is no independent personal jurisdiction); *see also Lexington Insurance Co. v. Zurich Insurance (Taiwan) Ltd.,* 286 F. Supp.3 d 982, (W.D. Wis. Dec. 21, 2017) ("There is no 'pendent' or 'supplemental' theory of specific personal jurisdiction."; *McKee v. Audible, Inc.*, 2018 WL 112623238 at *10 (C.D. Cal. Mar. 12, 2018) (rejecting concept that named plaintiffs can "collectively" show personal jurisdiction, despite allegations that the defendant engaged in the same activities in the states in which the named plaintiffs were harmed).

## D. Plaintiffs Lack Standing

Plaintiffs' Opposition reveals their misunderstanding of the law of standing. *First*, Plaintiffs Owen and Anderson now admit they are not bringing claims against the New York Corporation, as they lack standing. Opp. at 24 n.15. This new statement is belied by Plaintiffs' allegations in the FAC, requiring that their claims as pled against the New York Corporation must be dismissed for lack of standing. *See, e.g.,* FAC at ¶¶ 1 (defining "The Salvation Army"

---

[2] Plaintiffs also attempt to draw a distinction between due process protections under the Fifth and Fourteenth Amendments. It is not clear that there is any meaningful difference here between the due process protections of those provisions. *See, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (describing the personal jurisdiction analysis applying under both Amendments, and collecting cases supporting same). However, even if a different Fifth Amendment standard existed, it would only apply to claims brought under federal statutes that allow for nationwide service of process, which does not apply here. *See Clinton-Brown v. Hardick*, 2021 WL 1427635 at *3 (D. Mass. 2021) (no provision for nationwide service of process in the FHA, and refusing to find that execution of a waiver of service form prevented findings of lack of personal jurisdiction); *McCarthy v. Waxy's Keene, LLC*, 2016 WL 4250290 (D.N.H. Aug. 10, 2016) (no nationwide service of process under the ADA). Therefore, under either the Fifth or Fourteenth Amendments, the application of the Massachusetts long-arm statute requires a tie between the claims at issue and this forum. That standard is not met by Plaintiffs Owens, Anderson, or Espinosa.

as Defendants the National Corporation and the New York Corporation), 103-133 (describing allegations related to "The Salvation Army" involving Plaintiffs Owens and Anderson), 186 (describing the class proposed to be represented by all four plaintiffs related to "The Salvation Army"), and 203 (alleging that "Defendants" own and operate the New Orleans and St. Louis ARCs in which Plaintiffs Owens and Anderson's claims arose).

*Second,* as discussed above, Plaintiffs conflate what they perceive as a "national" policy with a separate legal entity – the "National Corporation" – which does not operate or control the Territories or the ARCs within them. Plaintiffs fail to plausibly plead how their claims in any way relate to the National Corporation, or how they have suffered any "concrete injury in fact" caused by the National Corporation. This requires dismissal of all claims against the National Corporation.

### E.  Plaintiffs' Claims Are Untimely

Plaintiffs incorrectly contend that their allegations that precede three years from the filing of the Original Complaint are still timely because their allegations are part of a "systemic" continuing violation. *First,* this is nowhere alleged in the FAC. *Second*, the types of alleged violations mentioned in the FAC are not the types of "systemic" violations considered to be continuing violations under applicable law. Instead, they are discrete acts – of being discharged from, or denied admission to, ARC programs. In evaluating a continuing violation claim, this Court assesses the frequency of the alleged violations, even where there is alleged to have been "systemic" violations. Here, Plaintiff Tassinari alleges that more than three years passed between his discharge from the Saugus ARC and when he was later told that MAT medications were not permitted to be used by beneficiaries. This is insufficient to demonstrate a continuing violation. *See Phillips v. City of Methuen,* 818 F. Supp. 2d 325, 330 (D. Mass. 2011) ("Cases

7

where the equitable exception have been applied have focused on situations where a course of discriminatory conduct took place over an extended period of time, without any single incident rising to the level of a recognizable injury."); *Williams v. City of Brockton*, 59 F. Supp. 3d 228, 243 (D. Mass. 2014) (refusing to apply continuing violation theory to individual actions outside of the statute of limitations that could have been brought as individual claims at the time).

## F. Statutory Exemptions Preclude Plaintiffs' Claims

Plaintiffs argue that their ADA claim is not barred by the statutory exemption for religious entities. They cite to a series of cases involving entities claiming to "owned, affiliated with, or financially supported" by a religious entity and claim that a multi-factor test must be applied to determine if the entity falls within the exception. *See* Opp. at 12-14. Plaintiffs misstate settled law; the multi-factor test comes from an application of Title VII of the Civil Rights Act, has been rejected by other courts assessing the ADA, and has never been applied to the very clear religious exemption under the ADA in this Circuit. *See, e.g., Longo v. The Good Shepherd Child Care Center*, 2014 WL 4105299 at *4 (M.D. Penn. Aug. 19, 2014). Moreover, where the defendant *itself* is a religious entity, the statutory exception applies without regard to whether the religious entity also offers non-religious or secular services. This distinction is well accepted, including cases Plaintiffs cite. *See, e.g., Defiore v. City Rescue Mission of New Castle*, 995 F. Supp. 2d 413 (W.D. Pa. 2013) ("determination of whether an entity qualifies as a religious organization is often a straightforward exercise as many organizations have been deemed clearly religious, such as churches or synagogues."). Simply stated, The Salvation Army is a church, and Title III of the ADA does not apply to it.[3]

---

[3] Plaintiffs now rely on Title V of the ADA, claiming that their claim should not be dismissed because there is no religious exemption to Title V. But that argument also fails. Title V does not have an independent enforcement scheme. A Title V claim must be predicated on a claim under another title of the ADA, and where, like here, Plaintiffs have no rights to assert under another title of the ADA, such claims must fail. *See Melerski v. Virginia*

Plaintiffs similarly misstate the religious exemption to the FHA. Plaintiffs attempt to mislead the Court by citing a district court opinion for the proposition that the FHA applies in circumstances like the ARCs. *See* Opp. at 11 n.3 (citing *Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 717 F. Supp. 2d 1101, 1114 (D. Idaho 2010)). And, while Plaintiffs admit that the case was appealed and that it was affirmed on "other grounds," they fail to acknowledge that the Ninth Circuit, on appeal, found that the relevant program was exempt from the FHA because of the requirements to comply with religious practices, attend worship services, and be open to converting to the religion, as is the case with the ARCs. *Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 657 F.3d 988 (9th Cir. 2011)

**G. Plaintiffs' Class Allegations Must Be Stricken**

Plaintiffs' Opposition barely responds to the arguments in the Opening Briefs illustrating the fatal defects in the class allegations in the FAC. Among other things, Plaintiffs ignore the fact that their four individual circumstances are so different that their claims could not be resolved together under settled Rule 23 principles, much less respond to Defendants' showing that that the claims of a nationwide class would require even more individual determinations.

Plaintiffs rely heavily on the fact that they have sought injunctive relief, and class treatment under Fed. R. Civ. P. 23(b)(2), as an explanation for why they have not properly defined an ascertainable class. *See* Opp. at 28. But that is insufficient. This is plainly *not* a case in which Plaintiffs are "seeking *only* injunctive relief." Opp. at 28 (emphasis added), meaning that Plaintiffs must plausibly plead the requirements of Rule 23(b)(3). *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544, 555-56. This includes pleading an ascertainable class, a standard that requires a plausible showing that it is administratively feasible for a court to determine individual

---

*Dep't of Behavioral Health & Developmental Servs.*, 4:15-CV-00039, 2016 WL 154144, at *3 (W.D. Va. Jan. 11, 2016) ("A Title V retaliation action must rest upon a previous Title's subject" and dismissing Title V claim where it was based on Title I of the ADA but the defendant had no liability under Title I).

9

members of the class. *See, e.g., Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000). The FAC does not remotely meet this standard. Instead, it is evident that Plaintiffs' proposed class definition requires individualized determinations of numerous factors. Plaintiffs attempt to avoid this conclusion through a non-evidentiary chart that attempts to add detail to the FAC allegations in order to explain the various vague, confusing, and individual aspects of the proposed class definition. But this chart both ignores Defendant's arguments, and actually highlights the individual factors that will impact class determinations. Opp. at 28-29 (i.e., determining whether individuals have OUD would be dependent on information participants may or may not have shared with the ARC; whether an individual was "kicked out," "turned away," or impeded would be fact-specific). The notion that Plaintiffs should be entitled to discovery to cure this obvious pleading defect is wrong. *See, e.g., Rovinelli v. Trans World Ent. Corp.,* 2021 WL 752822 (D. Mass. Feb. 2, 2021) (striking class allegations prior to discovery, noting that discovery does not substitute for proper pleading under Fed. R. Civ. P. 8).

## CONCLUSION

For each of the reasons set forth in Defendants' Opening Briefs (Dckts. 38, 40) and above, Defendants respectfully request that Plaintiffs' claims be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, and that Plaintiffs' class allegations be stricken.

By:
/s/ Christine B. Hawes
Kevin M. Hensley
BARTON GILMAN LLP
75 Federal Street, 9th floor
Boston, Massachusetts 02110
617-654-8200
khensley@bglaw.com

Thomas P. Gies
Christine B. Hawes
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
202-624-2500
tgies@crowell.com
chawes@crowell.com

Attorneys for Defendants The Salvation Army National Corporation and The Salvation Army, a New York corporation

DCACTIVE-63537866.1

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 26, 2021.

                                                /s/ Christine B. Hawes

12

DCACTIVE-63537866.1