**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARK TASSINARI, RICHARD ESPINOSA, and JOSEPH ALMEIDA,** individually and on behalf of all others similarly situated, <div align="right">*Plaintiffs,*</div><br>vs.<br><br>**THE SALVATION ARMY, A NEW YORK CORPORATION,** <div align="right">*Defendant.*</div> | Civil Action No. 1:21-cv-10806 |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**</u>

<u>**INTRODUCTION**</u>

Defendant The Salvation Army, a New York Corporation ("Defendant" or "Eastern Territory") has produced approximately 60 documents in total, with only three months left in the discovery period. Plaintiffs, who are slated to take Defendant's 30(b)(6) deposition and other depositions early next month, cannot wait any longer for Defendant to provide complete responses to discovery. The parties' efforts to meet and confer over the past five months regarding Defendant's deficient response have borne no fruit. Accordingly, pursuant to Fed. R. Civ. P. 33, 34, and 37 and Local Rule 37.1, Plaintiffs move this Court to compel Defendant to respond fully to the discovery requests set forth below.

Defendant concedes that it maintains a discriminatory policy that excludes Plaintiffs and others with opioid use disorder ("OUD") from participation in its Adult Rehabilitation Centers ("ARCs") if they take doctor-prescribed medication-assisted treatment ("MAT") including buprenorphine or methadone—the life-saving standard of care for individuals with their disability. Plaintiffs bring classwide claims under Section 504 of the Rehabilitation Act and the Fair Housing Act challenging this harmful policy. Defendant asserts that the First Amendment precludes liability for its discriminatory policy because the policy is, it contends, religiously motivated. Defendant further contends that it is not covered by Section 504 because its ARCs

<div align="center">1</div>

allegedly do not receive direct federal financial assistance and, while Defendant concededly *does* receive federal funding for other programs, Defendant contends that the Salvation Army is not "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A). Defendant further contends that requiring it to accommodate Plaintiffs and others with OUD who need MAT would impose an undue burden.

The discovery Plaintiffs seek to compel is directly related to the merits of Plaintiffs' claims, each of Defendant's asserted defenses, and the propriety of class certification. Specifically, Plaintiffs seek documents concerning: (a) information about putative class members, including information about the experiences of participants and applicants to ARCs, (b) Defendant's receipt and use of government funding and information about the programs that Defendant operates, and (c) Defendant's internal and external communications, including communications about the discriminatory policy that Plaintiffs challenge in this action.

Defendant should be compelled to provide complete responses and productions by no later than February 7, 2023, to allow Plaintiffs to adequately prepare for depositions and complete discovery by the March 31, 2023 deadline.

## BACKGROUND

### A. Progression of the Case and Discovery

The Complaint and Initial Discovery Requests. Plaintiff Mark Tassinari filed the original complaint on May 14, 2021. ECF 1. The Complaint challenges an across-the-board Salvation Army policy that excludes individuals with OUD from Defendant's ARCs when taking doctor-prescribed MAT to manage their disability and denies ARC participants access to MAT, including buprenorphine and methadone—the life-saving standard of care for their disability. The First Amended Complaint, filed August 23, 2021, added Plaintiff Espinosa and two additional named plaintiffs. ECF 30. On June 22, 2022, the Court granted in part and denied in part Defendants' motions to dismiss, allowing Plaintiff Tassinari's and Espinosa's class claims under Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Plaintiff Tassinari's class claim under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., to proceed

2

against the Eastern Territory. ECF 72. The Court expressly rejected Defendant's argument that adjudicating these discrimination claims would violate its First Amendment rights. As the Court reasoned, "the Plaintiffs ask the Court to apply neutral federal laws to the MAT policy. In doing so, the Court need not wade into an ecclesiastical dispute, evaluate religious doctrine, or determine the validity of [Defendant's] religious beliefs." ECF 72 at 5.

Following a scheduling conference, the Court adopted a case schedule with a fact-discovery deadline of March 31, 2023. ECF 76. After initial disclosures, on August 1, 2022, Plaintiffs served their first sets of interrogatories and requests for production of documents, as well as a Rule 30(b)(6) deposition notice. *See* Declaration of Matthew J. Murray ("Murray Decl.") ¶ 6 and Exs. 1-3.[1] On August 22, 2022, the Court adopted the parties' stipulation to file a Second Amended Complaint adding named plaintiff Joseph Almeida. ECF 82, 83.

Discovery Responses and Productions. From August through December 2022, the parties met and conferred multiple times on discovery-related issues, including the scheduling of Plaintiffs' depositions, an ESI protocol, a protective order, and objections to various discovery requests, including a subpoena that Plaintiffs served on the National Corporation. Murray Decl. ¶¶ 7, 11, 13, 18, 27, 38, 43. On October 14, 2022, the parties each served written discovery responses and initial productions of documents. *Id.* ¶¶14-15 & Exs. 4, 5.

Plaintiffs have since substantially completed their discovery responses. Despite having limited resources and significant life challenges, including frequent health and housing instability, Plaintiffs have responded to Defendant's discovery requests and produced nearly ten thousand pages of documents, which required, among other things, numerous requests to multiple third-party healthcare and housing providers for records at not insignificant expense. Murray Decl. ¶¶14, 18, 24. Plaintiffs Espinosa and Almeida have also each sat for day-long depositions, and the parties have been in ongoing efforts to schedule the deposition of Plaintiff

---

[1] All exhibit citations refer to exhibits to the Murray Declaration.

Tassinari, which has been complicated by Plaintiff Tassinari's health issues and housing instability. *Id.* ¶¶9, 32, 44.

Defendant, by contrast, has provided far less than complete discovery responses. Defendant initially objected to the production of most documents without a stipulated protective order, even though there is a standing default protective order available in this Court. *See generally*, Murray Decl. ¶11, 13 and Ex. 5 (stating that documents would be produced subject to the entry of an agreed-upon protective order). On October 31, 2022, Plaintiffs proposed that the parties adopt a protective order modeled on the protective order entered in *Spillman v. The Salvation Army*, Case No. CGC-21-501364 (S.F. Superior Ct., Jan. 27, 2022). *See* Murray Decl. ¶¶20-21 and Exs. 8, 9. To date, Defendant has not responded to that proposal. *Id.* ¶22. Defendant has also repeatedly delayed in negotiations about an ESI protocol (the parties only finally reached an agreement on an ESI protocol today), and thus Defendant has refused to produce any electronically stored information, including emails, metadata like document custodians, or other key data. *Id.* ¶15. By contrast, Plaintiffs have collected, searched, and produced their own ESI.

In October, Defendant began a limited rolling production. Murray Decl. ¶15. Defendant has stated it would produce documents on a rolling basis, but to date still has not identified a date certain when its document production will be complete, despite the requirement in Fed. R. Civ. P. 34(b)(2)(B) that it do so. *Id.* ¶13 and Ex. 34 at 6. As of January 6, 2023, Defendant has produced a total of approximately 60 documents, including only a single PDF email, only two "beneficiary files" (of named Plaintiffs Tassinari and Espinosa), only three documents related to funding, one of which includes a single set of one-paragraph descriptions of Defendant's main non-ARC programs, and a series of policy documents that confirm that Defendant maintains the discriminatory policy prohibiting MAT that Plaintiffs challenge. *Id.* ¶¶ 15, 25, 36, 41, 47. Despite repeated requests to schedule the 30(b)(6) deposition(s) that Plaintiffs noticed on August 1, 2022, Defendant did not offer potential available dates for such deposition(s) until December 29, 2022, when Defendant stated that one deponent would be available the week of February 6, 2023, and others might also be available that week. *Id.* ¶48 and Ex. 31.

4

The parties have met and conferred repeatedly by phone and have exchanged numerous emails and letters regarding the deficiencies in Defendant's discovery responses and Plaintiffs' attempts to reach compromise. The primary correspondence are summarized and attached to the accompanying Murray Declaration.  *See* Murray Decl. ¶¶23, 26, 27, 29, 31, 34-35, 37-38, 42-43, 45-46 & Exs. 10-12, 14, 16-18, 20, 25-30. As discussed below, Defendant has refused to provide sufficient discovery responses regarding at least three categories of information, despite Plaintiffs' good faith meet and confer efforts to compromise.

<u>ARC Applicants and Participants (ROG No. 4, RFP Nos. 2, 14, 15):
Beneficiary Files, BITS Database, and Applicant Files and Call Logs</u>

Plaintiffs seek information related to putative class members, including their identities and experiences applying for and participating in ARCs. Defendant concedes that it maintains "beneficiary files" for each person who attends an ARC, and those files contain information that, among other things, identifies the participant and may identify why they were at the ARC, what medications they used, what activities they engaged in while living at the ARC, and why they were discharged. Ex. 4 at 18-19. Defendant also concedes that it maintains an electronic "BITS" database that includes a subset of information about most ARC participants, and that Defendant keeps applicant files and phone logs that document contacts with prospective ARC participants including information about why applicants were denied access, and in some cases referral sources like the courts or other social services programs. Ex. 24 at 8. Information from each of these sources—the "beneficiary files," BITS database, and "applicant files" or call logs—is directly relevant to the propriety of class certification, the identification of class members, and potential damages. It is also directly relevant to the merits of Plaintiffs' claims and Defendant's asserted defenses, including because it is likely to provide evidence of how Defendant's medication policy functions, what activities ARC participants engage in, and what aspects of the ARC program are or are not religious, from the point of view of the applicants and participants.

Defendant, however, has refused to produce any personally identifiable information (PII) about anyone other than the three named plaintiffs. Ex. 4 at 14-15, Ex. 5 at 6-8. Defendant

contends that PII in its beneficiary files, BITS database, and applicant files and call logs is protected from disclosure by 42 C.F.R. Part 2, which regulates "federally assisted drug abuse program[s]." 42 C.F.R. § 2.12(a). At the same time, Defendant has contended that its ARCs do *not* operate drug abuse or treatment programs. Ex. 4 at 22. Defendant has also failed to produce *any* beneficiary files or BITS data from anyone other than two of the named plaintiffs even with redacted PII and has stated that it will not produce more than a small handful of redacted beneficiary files and related BITS database information for other ARC participants without a stipulation limiting production to that small handful, on the ground that producing more would be unduly burdensome. Murray Decl. ¶¶45-46 and Exs. 28, 30.

Over the past many months, the parties have met and conferred repeatedly to reach a compromise stipulation that would involve Defendant promptly producing a sufficiently large and broad sample of beneficiary files, BITS data, applicant files, and call logs with PII redacted to allow Plaintiffs to defer complete discovery of these sources until after class certification (when complete unredacted discovery will be necessary to develop a class list and address remedies issues). After initial meet and confer efforts on October 26, 2022, Plaintiffs on November 2, 2022, sent Defendant a proposed stipulation regarding discovery of beneficiary files and applicant information and a modification of the case management schedule; Defendant responded on November 9, 2022. Murray Decl. ¶¶23, 26 and Exs. 10-12. Plaintiffs proposed that Defendant produce, as a sample, all beneficiary files and corresponding BITS data from 17 of the 36 ARCs that have operated since May 1, 2018 onward and 10% of the beneficiary files and corresponding BITS data from the remaining ARCs. Ex. 11. Defendant refused.

On November 10, 2022, Defendant informed Plaintiffs that a "discharge summary" report could be run from the BITS database identifying the number of participants in Eastern Territory ARCs who were discharged during a given period and the reasons for discharge in categories such as "drug use," "medical," and "higher level of care." Murray Decl. ¶¶27-28 and Ex. 13. Defendant proposed running a discharge summary for the 12-month period from September 30, 2021 through October 1, 2022, and providing Plaintiffs with redacted BITS data and beneficiary

files for participants discharged for "drug use" or "higher level of care" during that period, a total of just 392 out of the more than 33,000 participant files in Defendant's possession. *Id.* ¶27. The parties met and conferred further on December 8 and December 12, 2022. *Id.* ¶¶34, 37-38, 42-43. In an attempt at compromise, Plaintiffs proposed that Defendant produce now all beneficiary files and corresponding BITS database information, with PII redacted, from May 1, 2018 to the present from the Boston, Providence, and Springfield ARCs (where the three named plaintiffs had been participants); and beneficiary files and corresponding BITS database information, with PII redacted, for individuals identified in the BITS ARC Discharge Summary for that period, Ex. 21, as having a Primary Abused Substance of "Opiates" or as having a Discharge Reason of "Drug Use," "Higher Level of Care," "Medical," or "Possession of Drugs / Alcohol." *Id.* ¶42 and Exs. 25, 26. Defendant indicated this request would encompass approximately 4,000 files. *Id.* ¶43 and Ex. 27. Defendant would not agree to produce more than approximately 400 files, only 1% of the files from the three-year period before the complaint was filed. *Id.* ¶45 and Ex. 28.

In a final attempt to compromise and avoid this motion, Plaintiffs proposed that Defendant stipulate to a series of facts that Plaintiffs believe the beneficiary files and BITS data would tend to prove. Murray Decl. ¶46 and Exs. 29, 30. For example, "numerous participants have been discharged from ARCs due to use of MAT, including but not limited to methadone or buprenorphine," and "ARC participants include individuals that practice a variety of religions and those who do not practice any religion." Ex. 30. If Defendant were to stipulate to these basic facts, further discovery of beneficiary files and BITS database information could be postponed until after class certification, when that discovery would become necessary to identify class members and for damages purposes. *Id.* Defendant, however, has refused to stipulate to the proposed facts. Murray Decl. ¶51 and Ex. 35.

<u>Government Funding and Non-ARC Programs (ROG No. 12, RFP Nos. 4, 5, 6, 7):</u>
<u>All Documents</u>

Plaintiffs also seek information related to Defendant's government funding (including "federal financial assistance") and programs other than the ARCs. As discussed above,

Defendant concedes that it has financial documents and communications, and that it receives various kinds of federal and other governmental funding, but it has refused to produce more than three very high-level summary documents related to its finances and has produced only a single document with brief one-paragraph summaries of non-ARC programs, on the ground that in Defendant's view "Plaintiffs do not need any additional information." Ex. 18 at 1-2.

<div align="center">

Communications About Challenged MAT Policy (RFP No. 17):
All Communications

</div>

Plaintiffs further seek information about the development of Defendant's anti-MAT ARC medication policy (a policy that Defendant concedes it currently maintains and enforces) and Defendant's internal and external communications regarding MAT, including communications regarding the use of any form of MAT by ARC participants or participants of Defendant's other programs, including its Harbor Light drug treatment program, which advertises MAT access. Defendant has flatly refused to provide responses, contending that the First Amendment justifies its refusal to provide this basic pre-trial discovery. Ex. 5 at 29-30; Ex. 18 at 6.

**B. Text of Specific Discovery Requests at Issue and Defendant's Asserted Objections**

Specifically, Defendant has refused to respond or otherwise severely limited responses to:

ARC Applicants and Participants

INTERROGATORY NO. 4, which asks Defendant to:

> Identify all applicants to and participants in each of your ARCs during the covered period, including: the dates of their applications; whether they were referred to an ARC by a court or parole or probation office; the dates of their ARC stays; and reason they left the ARC or reasons they were not admitted into the ARC.

REQUEST NO. 2, which requests:

> All documents, including all databases or other data, sufficient to identify each applicant to and participant in each of your ARCs, including but not limited to documents sufficient to identify for each such individual the date of application, and: (a) If the application was denied, the date and reason for the denial; or (b) If the application was approved, the dated of enrollment, when the participant left the ARC, and the reasons why the participant left the ARC.

REQUEST NO. 14, which requests:

All documents related to the dismissal of any individual from an ARC for non-compliance with any of your policies and procedures, including but not limited to documents that list the reason for dismissal.

REQUEST NO. 15, which requests:

All documents concerning the practice of religion by applicants and participants in ARCs. This request includes, but is not limited to, nondiscrimination policies and practices, including policies and practices regarding religious accommodation requests; policies and practices applicable to when, where, and in what manner an ARC participant may practice their religion, including any restrictions placed on an ARC participant's practice of their religion; any demographic data you collect, including on intake forms or otherwise, regarding the religious affiliation of ARC applicants and participants; copies of any documents presented to ARC participants regarding their practice of religion; and policies and practices related to the enforcement of any requirement that ARC participants practice or refrain from practicing any particular religion.

Government Funding and Non-ARC Programs

INTERROGATORY NO. 12, which asks Defendant to:

Identify and describe each source of funding you have received during the covered period, including but not limited to all federal, state, or local government financial assistance you have received, and any restrictions placed on your use of funds from each funding source.

REQUEST NO. 4, which requests:

All documents concerning all policies, practices, and procedures regarding the operation of ARCs. This request includes, but is not limited to: …d. Documents concerning all policies, practices, and procedures relating to any requirements or processes through which ARC participants apply for, remit to the Salvation Army, and/or assign the Salvation Army as a beneficiary of any government benefits, including but not limited to benefits under the Supplemental Nutrition Assistance Program (SNAP) and Social Security Disability Insurance program (SSDI)…

REQUEST NO. 5, which requests:

All documents concerning or related to each source from which you or any Other Salvation Army Entities received any funding, either as a whole or for any particular program, or in any other manner, including but not limited to any federal financial assistance, during the covered period. This request includes, but is not limited to, financial and accounting documents including tax returns, grant applications and awards, reports to any entity regarding the receipt or use of funds from that entity, ledgers, balance sheets, and other accounting reports.

REQUEST NO. 6, which requests:

All financial documents of the Salvation Army Eastern Territory, including any documents detailing transfers of money or any item of value between the Eastern Territory and any Other Salvation Army Entity. This request also includes, but is not limited to, documents sufficient to show any representations you have made to creditors, taxing authorities, grantors, or other third parties (including any Other Salvation Army

Entity) regarding your annual revenue and expenses; IRS Form 990s or similar or substituted state or local tax forms that include statements of revenue and expenses filed by you or any subsidiary of you; your annual audited financial statements; applications for payroll assistance or other local, state, or federal financial assistance; documents concerning your receipt of funding through government benefits programs including SNAP and SSDI, either through remittance from ARC participants, directly from the government as an assigned beneficiary, or otherwise; and all financial information you reported to or shared with any Other Salvation Army Entity.

REQUEST NO. 7, which requests:

All documents sufficient to show all your activities and programming in addition to the operation of ARCs. This request includes, but is not limited to, documents showing funding, staff time, and other resources you committed to ARC operations and to other activities or programming sufficient to show the extent, purpose, and content of all those other activities or programming.

<u>Communications About the Challenged MAT Policy</u>

REQUEST NO. 17, which requests:

All documents concerning or relating to any communications you or any of your officers, employees, or agents have made, sent or received regarding MAT, including but not limited to any communications regarding the use of any form of MAT by ARC participants or participants or beneficiaries of any of your other programs, including but not limited to the Harbor Light program.

Defendant objected to Interrogatory ("ROG") 4 and Requests for Production ("RFPs") 2, 14, and 15 on grounds that the requests were overbroad, unduly burdensome, irrelevant, and called for personal identifying information of individuals who are not part of this lawsuit and have not consented to the disclosure of their information. Ex. 4 at 14; Ex. 5 at 6-8, 24-27. Defendant asserted that its estimates show that there may be up to 33,000 beneficiaries served across all the Eastern Territory's ARCs from May 1, 2018, through the present. *Id.* Defendant asserted that producing copies of the hardcopy beneficiary files would be unduly burdensome, but Defendant has conceded that data can be extracted from the BITS database in bulk or based on search terms. Murray Decl. ¶49 and Ex. 32. Defendant has agreed to produce all "applicant files" in its possession (albeit with all PII redacted) but has not yet done so. Murray Decl. ¶40 and Ex. 22; Ex. 24 at 8.

Defendant objected to ROG 12 and RFPs 4-7 as irrelevant, overbroad, unduly burdensome, and an unjustifiable intrusion into confidential funding and financial information.

Defendant agreed to produce documents it deemed "sufficient" to show that the Eastern Territory receives funding from the federal government but that the ARC programs do not, and the financial resources it commits to ARC operations, but it refused to produce any further information about federal or other funding. Ex. 4 at 24-25; Ex. 5 at 11-17.

Defendant objected to RFP 17 as irrelevant, overbroad, unduly burdensome, and seeking information protected from disclosure by the First Amendment. Ex. 5 at 28-30.

## ARGUMENT

Fed. R. Civ. P. 26(b)(1) provides for discovery of any material which is relevant and nonprivileged. The burden of demonstrating relevance "is not onerous," and relevance itself is "broadly defined." *Aronstein v. Mass. Mut. Life Ins. Co.*, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017). Courts in this district construe Rule 26 "broadly" to facilitate the goal of clarifying and defining disputed issues for trial. *See, e.g.*, *Fernandes v. Bouley*, 2022 WL 2915702, at *2 (D. Mass. July 25, 2022). Defendant, as the party attempting to avoid its discovery obligations, "bear[s] 'the burden of showing some sufficient reason why discovery should not be allowed.'" *Katz v. Liberty Power Corp., LLC*, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) (citation omitted). Defendant cannot meet that burden here.

### A. Plaintiffs are Entitled to Discovery of Beneficiary Files, BITS Data, and Applicant Files and Call Logs.

This case is a proposed class action challenging Defendant's policy prohibiting ARC participants from accessing the life-saving standard of care, MAT, for their substance use disorders. Information in Defendant's beneficiary files and BITS database is directly relevant to the identification of class members, the application and scope of the challenged policy, the merits of Defendant's asserted First Amendment defense, and potential damages.

The proposed class encompasses all individuals affected by Defendant's challenged MAT policy. That could potentially include any of the 33,000-plus individuals with beneficiary files Defendant has identified and any of the people addressed in Defendant's applicant files and call logs. Information in those files and databases is likely to be directly relevant to identifying class

members. Plaintiffs have attempted to reach a compromise that would allow Defendant to defer complete production of all the beneficiary files and BITS data until after class certification, while ensuring timely production of a sufficient subset of those files now to allow Plaintiffs to fully litigate the anticipated motion for class certification and Defendant's anticipated motion for judgment in its favor based on the First Amendment. Defendant has not agreed to any of Plaintiffs' proposals, including Plaintiffs' proposal that Defendant could defer further discovery if Defendant stipulated to certain basic facts that Plaintiffs believe the beneficiary files and BITS data are likely to show. *Supra* at 6-7. Defendant cannot refuse to stipulate to the relevant facts that these documents are likely to show while also refusing to produce the documents.

Plaintiffs are entitled to discovery of all of Defendant's BITS database information and all the ARC beneficiary files and applicant files and call logs, without redaction. The information in these files is likely to be relevant to, among other things, the identification of class members, how Defendant's medication policy actually functions, what activities ARC participants actually engage in, and what aspects of the ARC program are or are not religious, from the point of view of the applicants and participants. Discovery of information about prospective class members is routinely required in class actions. *See, e.g.*, *Fiorentine v. Sarton Puerto Rico, LLC*, 2021 WL 2070535, at *2 (D.P.R. May 20, 2021) ("pre-certification discovery is often necessary to … define the scope of the class"). As is discovery about the details of a challenged policy and a defendant's asserted defenses. *See, e.g.*, *AMAG Pharms., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 2022 WL 16950437, at *2 (D. Mass. Nov. 15, 2022) (discovery under Rule 26 "must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Moreover, the beneficiary files and BITS database information are not coextensive. For example, the beneficiary file for Plaintiff Tassinari includes express documentation stating that he was discharged from the ARC for use of suboxone in violation of Salvation Army policy and copies of correspondence with a court probation department informing them of his discharge for that reason, yet neither information appears in

12

the BITS screenshots for Plaintiff Tassinari that Defendant has produced. Murray Decl. ¶25. The BITS database, in contrast, categorizes discharge reasons and primary "abused" substances in ways that the beneficiary files appear not to capture. Murray Decl. ¶28. Accordingly, Plaintiffs are entitled to production of both sources, not either or.

Defendant asserts that disclosure of PII about applicants and participants other than the named plaintiffs is regulated by 42 C.F.R., Part 2. Those regulations apply to covered documents "created by" a "federally assisted drug abuse program," 42 C.F.R. §§2.12(a), (e)(1), such as "treatment or rehabilitation programs ... who hold themselves out as providing, and provide substance use disorder diagnosis, treatment, or referral for treatment," *id.* §§ 2.11, 2.12(e)(1). Thus, for 42 C.F.R., Part 2, to apply to ARC beneficiary files and BITS data, the ARCs must be "federally assisted drug abuse program[s]," and the provision of drug and alcohol abuse treatment must be their "primary function." *Ctr. for Legal Advoc. v. Earnest*, 320 F.3d 1107, 1111 (10th Cir. 2003). Defendant has stated that the Salvation Army would be willing to stipulate that its ARCs "operate 'federally assisted drug abuse program[s],' 42 C.F.R. § 2.12(a), as defined by 42 C.F.R., Part 2, by virtue of the fact that Defendant is a 501(c)(3) program operating a treatment program within the meaning of 42 C.F.R. § 2.12(b)(4)." Ex. 26 at 2-3. But at the same time Defendant has asserted that its ARCs do *not* operate drug treatment programs, and do not receive federal financial assistance. Ex. 4 at 8, 22, 25. Defendant cannot have it both ways. The Court should compel the production of putative class member PII unless Defendant proves, and the Court finds, that the ARCs in fact operate federally assisted drug treatment programs.

Defendant has also contended that production of beneficiary files and BITS data would be unduly burdensome. That objection is meritless. To date, Defendant has produced a total of *two* beneficiary files (for Plaintiffs Tassinari and Espinosa), and a handful of metadata-free screenshots (i.e., not data exports, just pictures of the computer screen) from BITS. Murray Decl. ¶25 and Ex. 29. This production is vastly inadequate considering it has been more than five months since Plaintiffs served their discovery requests. Furthermore, based on Defendant's

representations about the purported burden of producing additional files, it appears that Defendant has not even begun efforts to begin collecting and producing *any* additional beneficiary files or significant BITS data.

There is nothing overbroad or unduly burdensome about Plaintiffs' requests. Defendant concedes that data can be extracted and exported from the BITS database, and that searches can then be run on that data. Ex. 32. There is no reason the full database cannot be extracted and produced to Plaintiffs to allow Plaintiffs to search that data. *See, e.g., Zangri v. Unit4 Bus. Software, Inc.*, 2021 WL 6202694, at *1 (D.N.H. Apr. 13, 2021) (courts "regularly require parties to produce reports from dynamic databases" in the course of discovery (citation omitted)).

With respect to the hardcopy beneficiary files, Defendant is the only party with access to the information required, and Plaintiffs have already attempted to narrow the scope of their request to lessen the burden on Defendant. It is not unusual for courts in this Circuit to compel defendants to review and produce large quantities of records, as "plaintiffs are entitled to conduct discovery concerning the class which they seek to certify." *N.O. v. Callahan*, 110 F.R.D. 637, 645 (D. Mass. 1986); *see, e.g.*, *McEvoy v. Hillsborough Cnty.*, 2011 WL 1813014, at *8 (D.N.H. May 5, 2011) (production of up to 5,500 hardcopy medical records). This is true even when confidentiality concerns are implicated, as this Court can mandate that disclosure occur under a suitable protective order—like the one Plaintiffs proposed in October and to which Defendants have not yet responded. *See* Murray Decl. ¶¶20-22 and Ex. 9; *Fiorentine*, 2021 WL 2070535, at *4-5 (protective order sufficient to address confidentiality).

The fact that Defendant's beneficiary files are in hardcopy does not exempt them from discovery. *See, e.g.*, *McEvoy*, 2011 WL 1813014, at *8 n.5 (ordering production of thousands of hardcopy medical records, because "to relieve defendants of discovery obligations" on the basis that the records "must be manually reviewed" "would, in effect, reward defendants for inefficient record-keeping"). Defendant has retained one of the largest defense law firms in the country and is itself part of an international business valued in the billions. Defendant may not simply resort to recitations of undue burden where, as here, "plaintiff has a demonstrable need for the

documents, the defendant undisputedly has possession of them, and the plaintiff has no other access to them." *Katz*, 2020 WL 3492469, at *2 (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)).

**B.  Additional Information Regarding Government Funding and Defendant's Other Programs Is Directly Relevant to the Claims and Defenses in this Action.**

Defendant cannot reasonably dispute that federal or other government funding received by any part of the Salvation Army, including grants, contracts, or other sources of government funds such as SSDI, SNAP, or other government benefits that are sent to, assigned to, or used by the ARCs, are directly relevant to Plaintiffs' claims and Defendant's asserted defenses. Defendant contends that the First Amendment exempts it from discrimination claims, but government funding—and the limitations and representations that may accompany that funding—is obviously directly relevant to any such claim for an exemption.

Defendant has also repeatedly stated an intention to argue that Section 504 does not apply to the ARCs because the ARCs allegedly do not receive federal funding and Defendant allegedly is not primarily engaged in the categories of activities listed in 29 U.S.C. § 794. Section 504 applies to (1) all the operations of a facility "to which Federal financial assistance is extended," *or* (2) "all of the operations of … an entire corporation" if any part of the corporation receives federal financial assistance and the corporation "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," 29 U.S.C. § 794(b)(3)(A)-(B). Defendant's ARCs thus are covered by Section 504 if the ARCs receive federal financial assistance *or* if any part of Defendant receives federal funding (which it concededly does) and Defendant is "principally engaged" in any combination of the activities enumerated in § 794(b)(3)(A). *See Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 527 (7th Cir. 2015) (corporation is covered by Section 504 "[i]f any one of the designated activities is principal" *or* "if it engages in a mix of the statutorily enumerated services"). Plaintiffs simply seek the information necessary to make their case that Defendant is covered by Section 504—either because of direct federal financial assistance to ARCs or based

15

on the type of work Defendant engages in across all its programs—and to adequately respond to these defenses.

To date, Defendant has produced a total of three documents related to its funding and its non-ARC programs: (1) its Consolidated Financial Statements (TSA0000487-531), which indicate that the Eastern Territory receives some government funding, but do not clearly indicate any specifics of that funding, such as how that funding is distributed throughout the Eastern Territory, what representations the Salvation Army made to the government to receive that funding, or whether there are conditions attached to the receipt of that funding; (2) The Salvation Army Net Remittance Report (TSA0000864-867), which (contrary to Defendant's contention) does not clearly demonstrate that the ARCs receive no federal funding, and appears to solely encompass the fiscal year from September 30, 2021, and therefore does not even cover the full class period; and (3) the Offering Memorandum related to the Salvation Army's Commercial Paper Program from June 30, 2022 (TSA0000868-963), which does not provide any of the missing information discussed above, does not indicate the amount of resources expended to support any particular programs with specificity, and only encompasses fiscal years 2020, 2021, and 2022. Murray Decl. ¶36 and Exs. 6, 15, 19. Plaintiffs are not seeking information that would disclose the identity of individual donors or other non-governmental funding sources, but Plaintiffs are entitled to information regarding government funding, including representations made while applying, receiving, or administering that funding.

Furthermore, Plaintiffs have requested information regarding federal benefits received by ARCs, including benefits from SNAP and SSDI, that are sent to, assigned to, or used by the ARCs. Ex. 2 at 12. To date, Defendant has produced no documents or information responsive to these requests. Ex. 34 at 3. Plaintiffs are entitled to this discovery because it is directly relevant to both Defendant's assertion that ARCs do not receive federal financial assistance for purposes of Section 504, and Defendant's assertion that its discrimination against applicants and participants is protected by the First Amendment.

In summary, Defendant has refused to produce documentation showing the nature, extent, and conditions on its government funding, or representations the Salvation Army made to the government to receive that funding. Defendant has also failed to produce sufficient information about its non-ARC programs to allow Plaintiffs to challenge Defendant's contention that it—The Salvation Army—is not principally engaged in the activities enumerated in 29 U.S.C. § 794(b)(3)(A). The Court should compel Defendant to produce complete responsive documents related to all non-ARC programs and related to all federal, state, or other government funding to any part of the Salvation Army.

**C. Defendant's Communications Related to its Medication Policy are Relevant to the Claims and Defenses in this Action and are Not Protected by the First Amendment.**

Plaintiffs' claims challenge a discriminatory policy that excludes individuals with OUD from participation in Defendant's ARCs. As such, communications relating to Defendant's development and implementation of the challenged policy are directly relevant. For example, one way Plaintiffs may succeed on their FHA claims would be to prove that the policy was motivated by an intent to discriminate. *See S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 96 (D. Mass. 2010) (discussing disparate treatment and disparate impact). Discriminatory intent can be shown through either direct or circumstantial evidence, or by demonstrating that the proffered reasons for enactment were pretextual. *Id.* Each of these methods of proof requires inquiring into the process of developing the challenged policy.

Similarly, Defendant contends that requiring The Salvation Army to accommodate individuals with OUD by allowing access to the life-saving standard of care, MAT, would impose an undue burden. But communications about how Defendant developed and modified its medication policy, and how it has addressed questions about MAT and other similar medications for individual ARC applicants and participants, are clearly relevant to that asserted defense. Defendant cannot contend that it would not be possible to accommodate individuals with the disability at issue here without undue burden and then refuse to produce any communications

related to its policy or its responses to situations in which applicants or participants sought or received MAT or other medications.

Communications sent or received regarding MAT use by ARC participants or applicants are directly relevant to Plaintiffs' claims and the Salvation Army's defenses. Communications regarding MAT use by participants, applicants, or beneficiaries of any other Salvation Army programs, including Harbor Light, are likewise relevant to Defendant's First Amendment defense and its assertion that it is not principally engaged in the activities described in 29 U.S.C. § 794(b)(3)(A).

The First Amendment does not protect the disclosure of these communications. First Circuit law is clear that, no matter how sincere their beliefs, faith-based institutions "cannot ... use the First Amendment as a pre-emptive strike" to avoid generally applicable discovery obligations. *In re The Bible Speaks*, 69 B.R. 643, 648 (Bankr. D. Mass. 1987). For example, in *United States v. Freedom Church*, 613 F.2d 316, 320 (1st Cir. 1979), the First Circuit affirmed the issuance of an administrative summons issued by the Internal Revenue Service to a church during an investigation into the church's tax liability. Likewise, in *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344 (D. Mass. 1996), the court granted a motion to compel discovery in an employment discrimination case despite the employer's assertion that the discharge in question was based on religious principles. Significantly, the court emphasized that the information sought—employment policies and names of other discharged employees—was "relevant and concern[ed] the enforcement of Title VII, an act of Congress designed to serve society in a non-discriminatory manner." *Id.* at 347. The defendant's First Amendment arguments regarding the religious motivations of its conduct were "addressed more to the ultimate merits of [the] defense ... than to the pending question of discovery." *Id.*; *see also In re The Bible Speaks*, 69 B.R. 643 (requiring a church to produce communications between a former member and church leaders, including those relating to religious doctrines and subjects, as part of a bankruptcy proceeding). The same is true here.

Each of the cases Defendant has relied on to justify its obstructive discovery conduct is inapposite. *Our Lady of Guadalupe School v. Morrissey-Berru* and *E.E.O.C. v. Catholic University of America* have nothing to do with pre-trial discovery. Both cases instead address religious institutions' ability to hire and fire employees who speak for their institutions. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064–65 (2020); *E.E.O.C. v. Cath. Univ. of Am.*, 83 F.3d 455, 466–67 (D.C. Cir. 1996). Plaintiffs' discovery requests seek only the production of documents that any other private entity would be expected to provide in the routine course of litigation.

Defendant also relies on *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), which addressed a discovery dispute under circumstances that are nothing like those in this case. Among other things, the dispute in *Smith* involved the issuance of a subpoena to the director of a *third-party* religious entity who 1) had already been deposed and 2) had already produced more than 4,000 documents in connection with the suit. 896 F.3d at 375. Here, Defendant is a party and has not yet provided a 30(b)(6) deponent nor anywhere near the same proportion of documents. In *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit addressed discovery requests seeking internal political campaign information that could prevent religious participation in public policy. There is no similar concern here. Plaintiffs ask only that Defendant "respond to discovery requests" directly relevant to their challenged discriminatory policy, "as any other similarly situated litigant would be required." *Ambassador Coll. v. Geotzke*, 675 F.2d 662, 664 (5th Cir. 1982) (rejecting First Amendment challenges to requests for production in a fraud case).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court enter an order:

a. Compelling Defendant to provide a complete response to Interrogatory 4 and produce all unredacted beneficiary files, all unredacted BITS data, and all unredacted applicant files and call logs regarding all Adult Rehabilitation Center (ARC) participants and applicants from May 1, 2018 to the present for RFPs 2, 14, & 15;

b.  Compelling Defendant to provide a complete response to Interrogatory 12 with respect to all federal, state, or other government funding;

c.  Compelling Defendant to produce complete responsive documents related to all federal, state, or other government funding to any part of Defendant the Salvation Army, including but not limited to grants, contracts, or other sources of government funds to any Salvation Army program and including Social Security Disability Insurance (SSDI), Supplemental Nutrition Assistance Program (SNAP), or other government benefits for participants that are sent to, assigned to, or used by the ARCs in any way for RFPs 4, 5 & 6;

d.  Compelling Defendant to produce complete responsive documents related to all its non-ARC activities and programming, including expenditures on all programs, for RFPs 6 & 7;

e.  Compelling Defendant to produce all internal and external communications responsive to Plaintiffs' discovery requests that Defendant has withheld on First Amendment grounds, including all communications regarding medication-assisted treatment (MAT) requested in RFP 17;

f.  Compelling Defendant to provide all the above responses and productions by no later than February 7, 2023;

g.  Granting reasonable attorneys' fees associated with pursuing this motion; and

h.  Any and all other relief this Court deems appropriate.


Respectfully submitted,

Dated: January 6, 2023                    By: /s/_Matthew J. Murray_____

                                          Matthew J. Murray* (CA Bar No. 271461)
                                          Christine M. Salazar* (CA Bar No. 330468)
                                          **ALTSHULER BERZON LLP**
                                          177 Post Street, Suite 300
                                          San Francisco, CA 94108
                                          Phone: (415) 421-7151
                                          Fax: (415) 362-8064

Email: mmurray@altber.com
       csalazar@altber.com
*Pro Hac Vice*

Lucy B. Bansal* (D.C. Bar No. MD06639)
Mariyam Hussain* (IL Bar No. 6304816)
Janet Herold (Bar No. 632479)
**Justice Catalyst Law**
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
lbansal@justicecatalyst.org
mhussain@justicecatalyst.org
jherold@justicecatalyst.org
*Pro Hac Vice*