IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, and JOSEPH ALMEIDA individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE SALVATION ARMY,<br>A NEW YORK CORPORATION<br><br>*Defendants.* | Civil Action No.: 1:21-cv-10806-LTS |

## ESI STIPULATION AND ORDER

Defendant The Salvation Army, a New York Corporation ("Defendants") and Plaintiffs Mark Tassinari, Richard Espinosa, and Joseph Almeida ("Plaintiffs"), by and through their respective undersigned counsel, hereby agree on this ESI Stipulation to facilitate the collection, processing, production and exchange of documents and information in this Action by the Parties in the form of ESI. The Parties expressly recognize and agree that this ESI Stipulation is solely limited to this action and shall not govern any other future litigation between the Parties whether arising in this Court or any other court, mediation, or arbitration forum.

**General Provisions**

I. **Applicability**: This Stipulation and Order will govern the production of the Parties' computer-generated or electronically generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media ("ESI") and the production of the Parties' paper documents.

1

**II.** **Cooperation**: The parties shall cooperate to identify and facilitate access to the contents of encrypted, password-protected, corrupted, or difficult-to-access files produced. The parties will work cooperatively to fashion reasonable, precise and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control. Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and encouraged to bring technically adept personnel together to resolve e-discovery issues.

**III.** **Definitions**

- A. **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.
- B. **"Electronically stored information" or "ESI,"** means and refers to computer-generated or electronically generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non-limiting examples of ESI include:
  - i. Digital communications (e.g., e-mail, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, etc.));
  - ii. E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB)
  - iii. Word processed documents (e.g., Word or WordPerfect files and drafts);
  - iv. Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
  - v. Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
  - vi. Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

    vii.   Sound Recordings (e.g., .WAV and .MP3 files);

   viii.   Video and Animation (e.g., .AVI and .MOV files);

    ix.   Databases (e.g., Access, Oracle, SQL Server data, SAP);

    x.   Contact and Relationship Management Data (e.g., Outlook, ACT!);

    xi.   Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

    xii.   Online Access Data (e.g., Temporary Internet Files, History, Cookies);

   xiii.   Presentations (e.g., PowerPoint, Corel Presentations)

   xiv.   Network Access and Server Activity Logs;

    xv.   Project Management Application Data;

   xvi.   Computer Aided Design/Drawing Files;

   xvii.   Backup and Archival Files (e.g., Veritas, Zip, .GHO); and

  xviii.   Cloud based or other virtualized ESI, including application, infrastructure and data.

C. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

3

D. **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

E. **"Load File"** means a file that relates to a set of scanned or electronic images or electronically processed files that indicate where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File may also contain data relevant to the individual documents, such as Metadata, coded data, text, and the like. Load Files must be obtained and provided in prearranged formats to ensure transfer of accurate and usable production images and data.

F. **"OCR text"** means text that is generated by converting Static Images into searchable text format.

**Standard for ESI Production**

IV. Within 30 days after the filing of this ESI Stipulation, or at a later time if agreed to by the parties, each party shall disclose to the other parties:

A. **Third-Party Data Sources.** To the extent any party's ESI is housed with a third party (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and the party is not able to access or otherwise preserve information stored in the third-party data source, the party will provide a list of third party data sources.

B. **Inaccessible Data.** A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably

accessible under Fed. R. Civ. P. 26(b)(2)(C)(i). Data sources set forth in section VI below do not need to be included on this list.

**Standard for Preservation of ESI:**

A party has an obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to ESI, the following provisions apply:

V.  Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control. All parties shall supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded below).

VI. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   A. Deleted, slack, fragmented, or other data only accessible by forensics.

   B. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   C. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   D. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

E.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.

F.  Server, system, or network logs.

G.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

H.  Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

I.  The parties are to confer on any other categories of ESI that may not need to be preserved, in light of the General Provisions set forth above, and determine whether the parties can agree that such categories can be added to this non-preservation list.

**Standard for Addressing Privilege**

VII.  The parties shall confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document by document logs can be exchanged. Parties are not required to include in privilege logs privileged or attorney work product information generated after the filing of the original complaint in this action. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery and need not be listed on a privilege log.

**ESI Discovery Protocol:**

VIII. **Search methodology.** When applicable, the Parties shall try to reach agreement on appropriate search terms and custodians before any query is performed. If one party proposes search terms and custodians for a search, the other party will respond within seven (7) days.

IX. **Format.** The parties agree to produce ESI documents in Group IV Black and White single page tiffs.  Documents that do not tiff properly (e.g., excel spreadsheets, audio and video files) will be produced in native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree to produce non-ESI in PDF or TIF format as provided below under Hard Copy Documents. Each document image file shall be named with a unique Bates Number (e.g. the unique Bates Number of the page of the document in question, followed by the extension "TIF" or "PDF"). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page images and associated multi-page text files containing extracted text or with appropriate software load files containing all requisite information for use with the document management system.  The parties agree that duplicate documents need not be produced.

X. **Load Files:** All production items will be provided with a delimited data file or "load file" in .dat format.  An OPT or LFP load file will be utilized to load image files.

XI. **Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business must be preserved. The Producing Party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged or implicate the privacy or confidentiality rights of third parties, and in that case, the family will be Bates numbered and the items removed will be logged on the Privilege Log. If the Producing Party wishes to remove non-responsive documents from the families, it must meet and confer with the Receiving Party regarding that issue and if the Parties cannot reach agreement, they shall submit their dispute to the Court for resolution.

XII. **Metadata fields.** The parties shall confer and agree on whether metadata is to be produced and if so, what metadata will be produced, or whether metadata shall be excluded from discovery. Absent special circumstances, load files shall include the metadata fields listed below, or substantially identical metadata fields, to the extent already in existence and reasonably accessible.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | E-mail, E-Doc and Other[1] |
| ENDBATES | Ending production number for a given file/document | E-mail, E-Doc and Other |

---

[1] Other is defined as documents for which internal metadata is not exchanged, including but not limited to, scanned documents and documents obtained from the Internet.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGATTACH | Production number of first page of first attachment All electronic documents attached to an e-mail will be produced contemporaneously and sequentially immediately after the parent e-mail. | E-mail, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment All electronic documents attached to an e-mail will be produced contemporaneously and sequentially immediately after the parent e-mail. | E-mail, E-Doc and Other |
| ATTACHMENT COUNT | Number of attachments associated with parent | E-mail |
| PARENTID | BEGBATES of parent document | E-mail, E-Doc and Other |
| CUSTODIAN | Person, shared file or other source from whom or which files were collected | E-mail, E-Doc and Other |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| DUPLICATE CUSTODIAN | To identify other custodians whose files contained a particular document that was eliminated through de-duplication | E-mail and E-Doc |
| FILEEXT | File extension (e.g. PDF, DOC, PPT) | E-mail and E-Doc |
| HASH | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| SUBJECT | Subject line extracted from e-mail message | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |
| BCC | Blind Copyee | E-mail |
| DATESENT | Date & Time Sent in the following format (Parties will specify time zone data is processed in): MM/DD/YYYY HH:MM:SS AM/PM | E-mail |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| DATERECEIVED | Date & Time Received in the following format (Parties will specify time zone data is processed in): MM/DD/YYYY HH:MM:SS AM/PM | E-mail |
| DATELASTMOD | Date modified | E-Doc |
| DATECREATED* | Date document was created Parties acknowledge that the Date Created field may not actually be the Date Created due to the ease of change to that field and the technical definition of the field (e.g., the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location) | E-Doc |
| FILENAME | Original file or attachment name | E-Doc |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| NATIVEFILE PATH | Path to native file as produced | Native |
| TEXTPATH | Relative path to OCR or extracted text file | E-mail, E-Doc and Other |
| AUTHOR* | Name of person who created document  Parties acknowledge that the Author field may not actually be the Author of the document. | E-Doc |

XIII.   **Redaction.** If a document is redacted, the Producing Party shall produce OCR text of the un-redacted portions of the document. No text from the redacted portion of the document will appear in the text file.  Additionally, the Producing Party may withhold metadata for redacted documents, to the extent that the metadata discloses privileged information. Failure to withhold OCR text from a redacted portion of a document by a Producing Party shall not be deemed a waiver of any privilege associated with that document.

XIV.   **Costs.** The costs of discovery shall be borne by each party unless otherwise ordered by the Court.

XV.   **Hard Copy Documents.** Hard copy documents shall be scanned using Optical Character Recognition (OCR) technology and searchable ASCII text files shall be produced (or

Unicode text format if the text is in a foreign language), unless otherwise agreed to by the Parties. Each file shall be named with a unique Bates Number (e.g. the Unique Bates Number of the first page of the corresponding TIFF or PDF). The Parties shall cooperate in identifying custodians of hard copy materials where not apparent from the document. In the event that either Party contends that the cost of using OCR technology to scan any particular hard copy materials becomes unduly burdensome, the Parties agree to meet and confer to seek a reasonable resolution.

| | |
|---|---|
| Dated: January 6, 2023 | Justice Catalyst Law<br>Altshuler Berzon LLP<br><br>By: _s/ Matthew Murray_<br>LUCY BANSAL (*Pro Hac Vice*)<br>MARIYAM HUSSAIN (*Pro Hac Vice*)<br>JANET HEROLD (Bar No. 632479)<br>MATTHEW MURRAY (*Pro Hac Vice*)<br>CHRISTINE SALAZAR (*Pro Hac Vice*)<br>Attorneys for Plaintiffs |
| Dated: January 6, 2023 | Crowell & Moring LLP<br>Barton Gilman, LLP<br><br>By: _s/ Thomas Gies_<br>THOMAS GIES (*Pro Hac Vice*)<br>KATIE ERNO (*Pro Hac Vice*)<br>KEVIN HENSLEY (Bar No. 554824)<br>Attorneys for Defendant |

# ORDER

**The foregoing ESI Stipulation is approved, and**

**IT IS SO ORDERED.**

Dated:
    1/9/2023

/s/ Leo T. Sorokin
_____
THE HONORABLE LEO T. SOROKIN
JUDGE, U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS