# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, and JOSEPH ALMEIDA, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs,*<br><br>  vs.<br><br>THE SALVATION ARMY, A NEW YORK CORPORATION,<br><br>     *Defendant*. | Civil Action No. 1:21-cv-10806-LTS |

## [PROPOSED] REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES (ECF 89)

### INTRODUCTION

  Defendant cannot have it both ways. Either it must participate in discovery to complete the record on which all subsequent motions will rely, or it must agree to sufficient stipulated facts to substitute for that record. Instead, Defendant seeks to produce only what it needs for its own motion practice, leaving Plaintiffs hamstrung to respond or pursue their case. Two months from the <u>only</u> discovery deadline, Defendant has produced almost no information about the putative class members, communications about Defendant's discriminatory medication policy, basic details of government funding it receives, or any meaningful discovery about the Salvation Army's non-ARC programming. With no bifurcation or phased discovery order in place, Defendant has refused to engage in merits or class discovery, cutting off Plaintiffs' ability to move for a preliminary injunction, class certification, or summary judgment. Defendant has no defense to discovery; it demands an early resolution of its alleged First Amendment defense while producing only a fraction of the record relevant to that defense or any other issue in the case. Defendant should be compelled to provide complete discovery responses and document productions without further delay or prejudice to Plaintiffs.

1

# ARGUMENT

## A. Defendant's Recent Productions Do Not Rectify Its Deficient Responses.

As a preliminary matter, Defendant claims it is "continuing to produce responsive documents under the rolling production protocol agreed to by the parties." ECF 106 at 3 n.5. But Defendant still has not produced even all the documents it has promised to produce, nor has it identified a date when its production will be complete. Moreover, Defendant's eleventh-hour productions last week, made only after Plaintiffs' motion to compel was filed (including a production less than an hour before Defendant filed its opposition), are inadequate. A significant portion of the documents Defendant recently produced are only re-productions of previously produced documents. Moreover, Defendant claims those productions "included many of the documents at issue here," *id.*, but they did not. Defendant continues to refuse to produce more than a minimal number of beneficiary files or BITS data (ECF 106 at 8-12), any additional financial information or information regarding non-ARC programs (*id.* at 12-15), or any communications regarding the challenged policy (*id.* at 15-20)—the three categories of discovery at issue in Plaintiffs' Motion.

## B. Defendant Misrepresents the Putative Class Definition to Avoid Discovery.

Defendant's sampling proposal suspends reality. Contrary to Defendant's wish, the putative class is not limited to individuals discharged from Adult Rehabilitation Centers (ARCs) for "drug use" or because they needed a "higher level of care." ECF 106 at 6. This arbitrary limitation does not even encompass all the named plaintiffs and would unfairly restrict Plaintiffs from learning how to identify class members—which will be necessary to develop a class list and address remedies issues following class certification. Defendant's proposal also would prevent discovery into the actual experiences of the class and how Defendant's discriminatory medication policy affects ARC applicants and participants in practice—including those not specifically discharged for violating the policy. Defendant is not seeking a reasonable compromise; it is seeking to run out the clock and avoid meaningful discovery altogether.

The putative class includes:

> [1] all individuals with OUD who are or were excluded from participating in The Salvation Army's ARCs in the United States because of their use of doctor-prescribed MAT drugs [2] and/or are or were denied access to [doctor-prescribed MAT drugs while participating in ARCs][3] and/or are or were impeded from receiving, doctor-prescribed MAT drugs while participating in The Salvation Army ARCs in the United States.

ECF 83 ¶209. Thus, Defendant's proposal to produce 400 files (of 33,000+) from a single year within the class period based on extremely narrow BITS data fields is <u>not</u> a 10% sample as Defendant claims. ECF 106 at 11. It is a at best an approximately only 1% sample that is artificially constrained and ignores the vast majority of putative class members. For example, Plaintiff Espinosa, who was prevented from accessing doctor-prescribed methadone throughout his time at the ARC and was not discharged for "drug use" or "higher level of care," would not be within Defendant's self-serving sample, but clearly meets the class definition in the complaint. ECF 83 ¶¶94-96. Moreover, Defendant concedes that the BITS database on which it bases its constrained "sample" is incomplete, ECF 92-14 at 11 ¶3, and does not explain how its narrow proposal could possibly cover the full class.

Defendant misses the point of Plaintiffs' request that Defendant produce the full universe of beneficiary files and BITS data, not just the few with red flags obvious to Defendant. Plaintiffs are not trying to argue that everyone who attended an ARC program has opioid use disorder (OUD), or that everyone who attended an ARC program is necessarily a member of the putative class. But many individuals in need of life-saving medication for OUD (MAT) could look very similar to, for example, anyone else in need of the housing and services provided in the ARC program, whether because they are actively working on sobriety, avoiding continued incarceration, seeking housing, or for many other reasons.[1] The fact that someone's primary or prominently documented reason for seeking admission to an ARC may be something other than

---

[1] Indeed, Defendant acknowledges that participants in the ARC program "are addressing numerous other unfortunate life situations, including individuals who are homeless or recovering from alcohol abuse." ECF 106 at 11. Defendant does not explain how an individual seeking housing or alcohol recovery services could not also have OUD and a need for MAT.

their substance use, such as a need for a bed at night, does not preclude them from having OUD or being a class member.

The impacts of Defendant's challenged medication policy are wide-reaching and any number of the 33,000+ participants Defendant identifies could be members of the putative class. Without discovery, Plaintiffs cannot know what information Defendant has or does not have about ARC participants that could be used to identify or differentiate class members within those many files. Therefore, at a minimum, Plaintiffs would need a significant sample of beneficiary files—not based on Defendant's revisionist class definition, but reflecting the class definition in the complaint—to adequately assess what information is captured in those files. Plaintiffs must do this to meet their burden at the class certification stage.[2]

Similarly, to the extent Defendant has proposed to negotiate search terms for the BITS database in lieu of producing a full export of the database, Plaintiffs cannot negotiate search terms in the dark and Defendant's proposal appears to have been contrived without testing. Defendant has not explained how searching "methadone," for example, would produce meaningful or useful results. It appears from the limited BITS data produced about the named plaintiffs so far that information about Plaintiffs' OUD medications or need for MAT is not recorded in BITS at all. What *is* recorded is a broad cross-section of information about each participant's time and activities at the ARC—details that could, together, help identify class members. ECF 106-3 ¶3 (describing the information tracked in BITS).

Defendant rejected Plaintiffs' proposal to substitute factual stipulations that the beneficiary files and BITS database would tend to establish (postponing discovery of the full files until necessary after class certification). ECF 92 ¶46; ECF 92-30. It is not reasonable for Defendant to refuse to agree to the facts that the files and BITS database are likely to establish and simultaneously refuse to produce these documents. Defendant cannot have it both ways.

---

[2] Plaintiffs proposed a reasonable sample, but Defendant rejected that proposal. ECF 92 ¶¶42-43; ECF 92-26 at 4-5; ECF 92-27 at 3.

**C.   Defendant's "Word" That It Does Not Use Federal Funding for ARCs and Does Not Provide Social Services Is Not Enough.**

Defendant does not dispute that it has produced only *three* financial documents, and a single document vaguely describing its non-ARC programs. These documents are not sufficient and do not show what Defendant says they show. ECF 90 at 16. Rather than addressing the substance of Plaintiffs' concerns regarding the insufficiency of the extremely limited financial statements produced to date, Defendant submitted a declaration that it alleges "confirm[s] the ARCs do not receive government funding." ECF 106 at 13. Plaintiffs are not willing to take Defendant's word in lieu of evidence.

Defendant's opposition brief supports Plaintiffs' need for additional information regarding Defendant's receipt of government funding, including the conditions placed on that funding. For example, Defendant states that its government funding agreements are subject to "terms" dictating that the funding cannot be used by the ARCs. ECF 106-4 ¶6. Similarly, Defendant has represented previously that its Harbor Light facilities, for example, "must be operated in a secular fashion (to be eligible to receive government funding)." *See, e.g.*, ECF 92-5 at 30 (Response to RFP No. 17). Plaintiffs are entitled to review the specific terms and conditions placed on government funding to Defendant to assess whether, for instance, Defendant agreed to comply with Section 504 in order to receive that funding—a fact that would be clearly relevant to Plaintiffs' claims and Defendant's First Amendment and other defenses. Such information is also relevant to demonstrating how Defendant represents itself and its programs and services to the government.

Moreover, Defendant is wrong on the law about when an entity is a recipient of federal financial assistance for purposes of Section 504 and seemingly relies on this error to avoid discovery. ECF 106 at 14. In the Medicare/Medicaid context, for example, courts have broadly held that Medicare and Medicaid payments to healthcare entities make them recipients of federal financial assistance under Section 504 and subject to that law's antidiscrimination provisions. *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1042-43 (5th Cir. 1984); *Massey v. Churchview Supportive Living, Inc.*, No. 17 C 2253, 2018 WL 999900, at *3 (N.D. Ill. Feb. 21,

2018) (collecting cases). Here, Plaintiffs seek information regarding the Salvation Army's receipt of federal funding through Social Security benefits (SSI/SSDI) and the Supplemental Nutritional Assistance Program (SNAP). Whether either funding source makes the Salvation Army a "recipient" of federal financial assistance for purposes of Section 504 involves fact questions about which Plaintiffs are entitled to discovery.

With respect to Social Security benefits, in *Iwata v. Intel Corp.*, 349 F. Supp. 2d 135, 155–56 (D. Mass. 2004), this Court held that a private ERISA plan that offset disability benefits by amounts the participant received from Social Security was a "recipient" of federal financial assistance for purposes of Section 504, notwithstanding that it was a "somewhat indirect transfer." For similar reasons, the Salvation Army's receipt of SSI/SSDI benefits could render the ARCs recipients of federal financial assistance for Section 504 purposes, to the extent that the Salvation Army has no obligation to offset its operating costs and participant maintenance with participants' SSI/SSDI benefits and has a free choice to accept or reject those funds.

The same is true for Food Stamp/SNAP benefits. Various provisions of the Food Stamp Act allow for the redemption of SNAP benefits by organizations on a wholesale basis. *See, e.g.*, 7 U.S.C.A. § 2019 (providing that "private nonprofit organizations or institutions which serve meals to narcotics addicts or alcoholics in drug addiction or alcoholic treatment and rehabilitation programs" may redeem benefits in certain circumstances). Further, the Department of Agriculture ("USDA") has clear regulations requiring compliance with Section 504, including by recipients of SNAP benefits. *See, e.g.*, 7 C.F.R. §§15b.3, 15b.4, 7 C.F.R. Pt. 15b, App. A (listing federal financial assistance distributed by USDA, including the food stamp program and WIC). As with SSI/SSDI benefits, the Salvation Army is under no obligation to take, manage, and spend the SNAP benefits of ARC participants. The definition of "recipient" under USDA's Section 504 regulations includes "any successor, assignee, or transferee of a recipient." 7 C.F.R. §15b.3(f). And the appendix to the regulations lists food stamp and WIC benefits as "types of Federal financial assistance administered by [USDA]." 7 C.F.R. §Pt. 15b, App. A. Plaintiffs are

entitled to discovery into the facts regarding SSI/SSDI and SNAP funding at ARCs to support their argument that such funding constitutes federal financial assistance under Section 504.

In an analogous case involving a private entity's receipt of a local community development grant, the defendant argued that it was not an "intended recipient" of federal financial assistance because the actual intended grant recipients were state and local governments, not private organizations. The First Circuit rejected that argument. In its analysis, the Court noted that the statute:

> specifically envisions a role for private entities in achieving the community development objectives of the statute. Most relevantly, the statute specifically enumerates certain activities that may be carried out by for-profit organizations …. The statute further authorizes the Secretary to extend federal loan guarantees to public agencies for various purposes, including the private economic development activities enumerated in § 5305(a)(17). [citation]. Thus, the text of the statute demonstrates that private developers … engaged in economic development activities are in fact "intended recipients" of the federal financial assistance.

*United States v. Hersom*, 588 F.3d 60, 68 (1st Cir. 2009). Here, the relevant statutes for SNAP similarly include provisions contemplating the receipt and use of SNAP benefits by drug and alcohol rehabilitation and treatment programs, shelters, and so forth. For ARCs to redeem participants' benefits wholesale, they would need to fall into one of the recognized categories of entities authorized to do so. Accordingly, the ARCs can be viewed as intended recipients of these benefits. Plaintiffs are entitled to discovery to understand the scope of Defendant's practices regarding SNAP benefits for this reason, too.[3]

Finally, as to Defendant's incorrect argument that none of its non-ARC programs are "social services," merits arguments about Plaintiffs' Section 504 claim do not insulate Defendant

---

[3] *Vasquez v. Smith's Food & Drug Ctrs., Inc.*, 2017 WL 1233840, at *5 (D. Ariz. Apr. 4, 2017), cited by Defendant, is plainly distinguishable. The court there held that a food and drug store's general policy allowing shoppers to use their SNAP benefits when purchasing items did not make the store a recipient of federal funds, but rather simply allowed the store to sell goods and remain competitive in the market. That is far afield from an entity like the Salvation Army choosing to augment its funding by being assigned benefits from individual recipients to purchase food wholesale to support its provision of social services.

7

from complying with its basic discovery obligations. *See* ECF 100 at 15-17. The Court should order Defendant to promptly respond to this discovery.

D. **Defendant's Communications About the Medication Policy Speak to How the Policy Is Applied to Discriminate Against ARC Participants and Members of the Public.**

Defendant's arguments regarding the First Amendment ignore the substance of Plaintiffs' actual requests, and, in any event, are incorrect arguments on the merits that are irrelevant at this stage. *See, e.g.*, ECF 100 at 5-8, 12-15. Plaintiffs do not dispute that the Salvation Army has a religious belief in abstinence for its members (i.e. Salvationists). Plaintiffs are only concerned with the contours of the challenged medication policy and how it operates in practice in relation to ARC participants and the public at large. ECF 100 at 7-8. Defendant's communications regarding the challenged policy are not only relevant, but necessary to Plaintiffs' ability to understand the application of the policy at the heart of this case and respond to Defendant's contentions about it.

Defendant's arguments only confirm Plaintiffs' need for this information. For example, Defendant contends that "[a]n undue burden obviously exists here." ECF 106 at 19. But undue burden is an affirmative defense on the merits of Plaintiff's statutory claims, one which Plaintiffs are entitled to discovery to respond to. Neither Plaintiffs nor the Court are required to substitute Defendant's word for actual evidence.

## CONCLUSION

For the reasons stated above, in Plaintiffs' Motion to Compel Further Discovery Responses (ECF 89, 90), and Plaintiffs' Opposition to Defendant's Request For A Partial Stay Of Discovery (ECF 100), the Court should grant Plaintiffs' motion to compel and order the relief requested therein.

Respectfully submitted,

Dated: January 24, 2023					By: /s/ *Matthew J. Murray*
						Matthew J. Murray* (CA Bar No. 271461)
						Christine M. Salazar* (CA Bar No. 330468)
						**ALTSHULER BERZON LLP**

177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Fax: (415) 362-8064
Email: mmurray@altber.com
csalazar@altber.com
*Pro Hac Vice*

Lucy B. Bansal* (D.C. Bar No. MD06639)
Mariyam Hussain* (IL Bar No. 6304816)
Janet Herold (Bar No. 632479)
**Justice Catalyst Law**
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
lbansal@justicecatalyst.org
mhussain@justicecatalyst.org
jherold@justicecatalyst.org
*Pro Hac Vice*