# Exhibit 5

Volume: I
Pages: 1-154
Exhibits: 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 1:21-CV-10806-LTS

*************************************

MARK TASSINARI, RICHARD ESPINOSA AND JOSEPH ALMEIDA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

vs.

THE SALVATION ARMY, A NEW YORK CORPORATION,

Defendants.

************************************

AUDIOVISUAL DEPOSITION of DONALD COOMBS, a witness called on behalf of the Plaintiffs, before Michele DeCoste, a Professional Court Reporter and Notary Public, in and for the Commonwealth of Massachusetts, at 101 Arch Street, Boston, MA, on Friday, March 24, 2023, commencing at 9:08 a.m.

A P P E A R A N C E S

MATTHEW J. MURRAY, ESQ.
CHRISTINE SALAZAR, ESQ. (Via Zoom)
Altshuler Berzon, LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
mmurray@altshulerberzon.com
Counsel for the Plaintiffs

THOMAS P. GIES, ESQ.
PAUL W. MOURNING, ESQ. (Via Zoom)
Crowell & Moring, LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
(212) 223-4000
tgies@crowell.com
Counsel for the Defendant

ALSO PRESENT:
Alex Jandrow, Videographer
Rose Farley, Justice Catalyst (via Zoom)

# I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| DONALD COOMBS | | | | |
| (By Mr. Murray) | 5 | | | |

# E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 167 | NBCC List of Credentials | 20 |
| Exhibit 103 | Organizational Chart | 22 |
| Exhibit 116 | 10/18/02 Medication Guide | 42 |
| Exhibit 168 | NIDA Pamphlet | 46 |
| Exhibit 118 | 2012 ARC Medications Guide | 66 |
| Exhibit 117 | Talbott’s Medication Guide Revision 1.0 | 68 |
| Exhibit 119 | 9/8/22 ARC Medications Guide | 99 |
| Exhibit 130 | Compliance Testing PowerPoint | 120 |
| Exhibit 169 | HIV Medication Chart | 122 |
| Exhibit 123 | 2012 Supplements Policy | 126 |
| Exhibit 124 | CARES Assessment PowerPoint | 129 |

Salvation Army?
A Since 1989, except for a few years ago when I was a youth pastor in New Hampshire. And then I also have a private practice, so I'm self-employed as well.
Q What do you do in your private practice?
A Counseling.
Q And when was the few years when you were a youth pastor?
A Early '90s, after I left Dayton, Ohio.
Q So what was your first position with the Salvation Army?
A I was a counselor down at Hartford.
Q What is your current job title at the Salvation Army?
A Director of Program Development.
Q And how long have you had that position?
A If memory serves me correct, I think since 2001.
Q Can you please walk me through the other positions you've held at the Salvation Army since before that?
A I was a counselor in Hartford. Then I think they call it program directors or senior counselor at Dayton. And then in Springfield I was the senior

Q Do you provide training about drug testing?
A We call it compliance testing.
Q And what is compliance testing?
A It's testing someone's urine and breath to see if they're complying with our rules of abstinence or guidelines for abstinence.
Q And do you provide training about compliance testing?
A I believe there is a PowerPoint on it if memory serves correct, and that's part of the annual -- might be annual or once every five years. I'd have to look. But it's discussed when we did the annual support visit.
Q And what is the Salvation Army's policy regarding compliance testing?
A That we test people pretty much every time they come into the building to see if they're complying with our rule to be absent from alcohol. And then periodically we do a urinary compliance test to make sure they're being abstinent from substances known to be misused.
Q If a urine test comes back positive for methadone or buprenorphine, what is the Salvation Army's policy?

A Well, typically, it’s one of two ways. If a person said that they use those medications, then they’re referred to a higher level of care. And then if they deny using those, then we send it out to a lab for confirmation.
Q And what do you mean by “referred to a higher level of care”?
A A clinical program.
Q Does that mean that they leave the ARC?
A Yes, they would be referred to a program or to there -- actually, most likely, it’s referred back to the prescriber. They have the best resources to determine where a person will benefit.
Q So if a person was at an ARC and took methadone or buprenorphine, the Salvation Army would refer them to the healthcare provider that prescribed that medication, they would leave the ARC, and it would be up to the healthcare provider to give them a referral to go somewhere else?
A Yes, they would know best what’s best for a person that they gave that medication to.
Q The next bullet point on Exhibit 103 says, “L-A-S-K interviews” --

The lame walk, the blind see.

Q Can the Salvation Army ARC program cure opioid use disorder?

A We contribute to people's well being. I would not say that I or a program cures a person. I think that's an act of God.

Q So can participation in an adult rehabilitation center result in curing opioid use disorder?

A I believe that God uses many means of healing, absolutely.

Q I'm going to show you a document that's been marked as Exhibit 116.

A Okay.

THE COURT REPORTER: Has that already been marked, or am I marking it 116?

MR. MURRAY: Could you mark? It has previously been marked, but if you can mark it as well just for the record.

THE COURT REPORTER: Okay.

(Exhibit Number 116, 10/18/02 Medication Guide, was Marked for Identification.)

Q Do you recognize this document?
A Yes.
Q What is this?
A This is one of our early attempts at the medications guide. And, also, I believe mental health, too, right? Yes.
Q This is a guide that applies to the ARCs across the Eastern Territory?
A It did.
Q When did it apply?
A Usually down in the left corner is the date, so 10/18/2002 -- 2012, sorry.
Q Were you involved in writing this guide?
A Yes.
Q And did you write this guide?
A If memory serves correct, yes.
Q And was anyone else involved in writing the guide?
A We have consulted with various people. Like, we had an officer who was actually a pharmacist at one point, so she may have been involved. I can't remember. And then my supervisor.
Q Who was your supervisor?
A I think in 2012 it would be Lieutenant Colonel

pharmacy, but they had really great descriptive words. Very helpful. But it's been a decade since I've looked at it.

Q Do you know if the resource you looked at still exists?

A One of these -- I think the number one doesn't, but I haven't checked wallsrx in a long time.

Q And then back up in the paragraph, starting "medications," toward the bottom of that paragraph there's a sentence that says, (Reading):

> "The ARCC prohibits the general use of medications that are known to be abusive and addictive to our typical population."

Do you see that?

A Yes.

Q So what does ARCC mean?

A Adult rehabilitation center Command.

Q Did you write that sentence?

A Probably, yes.

Q Is that an accurate description of the basis of

the ARCC medication policy?
A Yes. To our population, people residing in our centers, yes.
Q How do you know when a medication is known to be abusive and addictive to your typical population that you just referred to?
A How do I know the medication is?
Q Yes, how do you know that it's known to be abusive and addictive?
A Usually, whether it's the Talbott's Medication Guide, the Wallsrx, the prescription addiction website, just a host a variety of resources. I think if you actually look under cautions/contraindications on most websites, they will warn you of possible misuse and abuse of narcotic medications.
Q And when you say "narcotic medications," what do you mean by that?
A I'm classifying substances from the use.
Q So on the next page of this document, Page 436, do you see where it says, "Over-the-counter medications allowed in the ARC to treat common ailments"?
A Yes.

Q Okay. Is it a medication that is used for maintenance therapy for opioid use disorder?
A I don't know. I don't know.
Q I'm going to show you a document marked Exhibit 119.

(Exhibit Number 119, 9/8/22 ARC Eastern Territory Medication Guide, was Marked for Identification.)

Q I'll say this is in black and white because that's how it was produced to us. I assume the original document is in color?
A Yes.
Q Is that a fair assumption?
A Mm-hmm.
Q Do you recognize this document?
A Yes.
Q And what is this?
A This is an updated version of the previous document that we were discussing.
Q So Exhibit 119 is the --
A Updated medications guide.

Q And just so I understand correctly, after someone has a physician's note of approval, do the supplements, etcetera, still need to be centrally stored to avoid unauthorized sharing or abuse?
A Yes.
Q I see, okay.
A Otherwise, the roommate or -- I mean, that's part of our rationale for essentially storing everything is because someone could steal it. Someone could also inadvertently use some of the others items. It could be an issue, so yes.
Q I'm going to show you a document that's been marked 124.
A Okay.

(Exhibit Number 124, CARES Assessment PowerPoint, was Marked for Identification.)

Q For the record, this starts at page 1053, and it says "CARES Assessment" on the first page. Do you recognize this document?
A I believe so, but usually I put a revision date

on it, so either I forgot to do that or that’s missing. Because I tend to tweak things, so I tend to put a revision date.
Q Is this a PowerPoint that you created?
A Probably, yes.
Q Do you use this PowerPoint?
A Pardon?
Q Do you use this PowerPoint?
A Yes.
Q How do you use it?
A To reference and send it out to centers.
Q When did you create it?
A That’s why there would be a revision date on there or, you know -- I don’t remember.
Earlier, when we were talking about that, when the CARES started, this would be about the same time. And I don’t remember the exact date.
Q You testified earlier about when the CARES process started?
A A few years ago, but...
Q So you created this PowerPoint when the CARES process started, is that right?
A Either then or shortly thereafter.

Q And have you revised this PowerPoint since then?
A I would have to look on my computer. I am known to tweak things.
MR. MURRAY: All right. I'll say also for the record that if there's a more recent version that would be responsive to our document requests, then we request it, please.
Q Does this PowerPoint describe the CARES process?
A I believe so, yes.
Q If you can look at page 1061.
A Yes.
Q Do you see on the right, it says, (Reading):

"Sample medication, question, do we allow Gabapentin," and the answer says, "We typically allow it for neuropathy, but not for mood. This issue is a great reason to consult the CHQ through CARES."

Do you see that?
A Yes.
Q Does that accurately describe the Eastern

# C E R T I F I C A T E   P A G E

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF NORFOLK, SS

I, Michele C. DeCoste, a Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing audiovisual deposition of Donald Coombs was taken before me on March 24, 2023. The said witness was duly sworn before the commencement of his testimony; that the said testimony was taken audiographically by myself and then transcribed under my direction. To the best of my knowledge, the within transcript is a complete, true and accurate record of said testimony.

I am not connected by blood or marriage with any of the said parties, nor interested directly or indirectly in the matter at hand.

In witness whereof, I have hereunto set my hand and Notary Seal this 9th day of April 2023.

michele decoste

Michele C. DeCoste

RE: MARK TASSINARI VS. THE SALVATION ARMY

DON COOMBS, JOB NO. 5775883

E R R A T A  S H E E T

PAGE 15 LINE 11 CHANGE "prevent" to "permit"

REASON Error; See line 22 of the same page

PAGE 19 LINE 25 CHANGE Add "I am also a Board Certified Professional Christian Counselor though

REASON Clarification; the American Association of Christian Counselors."

PAGE 25 LINE 3 CHANGE "... essentially" to "centrally"

REASON Error

PAGE 26 LINE 17 CHANGE "I have never compared that proportion that I recall."

REASON Addition, clarification

PAGE 34 LINE 17 CHANGE "... ever ..." I believe this needs quotation marks.

REASON Clarification

PAGE 34 LINE 20 CHANGE "I just can't remember at this time."

REASON Clarification

[signature] 5-10-23

WITNESS Date

1-5

RE: MARK TASSINARI VS. THE SALVATION ARMY
DON COOMBS, JOB NO. 5775883

E R R A T A  S H E E T

PAGE 43 LINE 1,2,5 CHANGE "Linda" to "Lynda"

REASON Spelling error

PAGE 60 LINE 24 CHANGE Add word "to make these decisions, that's not my role."

REASON Clarification

PAGE 64 LINE 14 CHANGE "... and then a prescriber prescribed a medication ..."

REASON Clarification

PAGE 64 LINE 22 CHANGE "Covey", not "Curry"

REASON Spelling error

PAGE 65 LINE 11 CHANGE I believe the word "contraindicated" should be in quotes.

REASON Punctuation

PAGE 65 LINE 13 CHANGE "... in Springfield before I was at Command ..."

REASON Clarification

______________________________ 5-10-23
WITNESS Date

2-5

RE: MARK TASSINARI VS. THE SALVATION ARMY

DON COOMBS, JOB NO. 5775883

E R R A T A S H E E T

PAGE 73 LINE 11 CHANGE word from "essentially" to "centrally"

REASON Typo

PAGE 75 LINE 11 CHANGE "word from essentially" to "centrally"

REASON Typo

PAGE 76 LINE 14 CHANGE "antipsycologist" needs to be "antipsychotics"

REASON Typo

PAGE 76 LINE 6 CHANGE "assess" to "assist"

REASON Clarification

PAGE 82 LINE 19 CHANGE "skirt" to "discourage"

REASON Clarification

PAGE 91 LINE 20 CHANGE to "... from all mood altering and non-prescribed drugs ..."

REASON Error correction

5-10-23

WITNESS Date

3-5

RE: MARK TASSINARI VS. THE SALVATION ARMY

DON COOMBS, JOB NO. 5775883

E R R A T A S H E E T

PAGE ~~92~~ 97 LINE 12 CHANGE "That's put on a person"

REASON Clarification

PAGE 96 LINE 9 CHANGE Add the word "at" to "read" ... not able to use it at all."

REASON Typo

PAGE 101 LINE 12 CHANGE "I may seek supervisor approval."

REASON Clarification

PAGE 108 LINE 24 CHANGE "essentially" to "centrally"

REASON Transcription error

PAGE 118 LINE 14 CHANGE "know if we've done fentanyl or not" to "... if you've done ..."

REASON Clarification

PAGE 127 LINE 18 CHANGE "on their physical more than their spiritual"

REASON Clarification

WITNESS [signature] 5-10-23 Date

RE: MARK TASSINARI VS. THE SALVATION ARMY

DON COOMBS, JOB NO. 5775883

E R R A T A   S H E E T

PAGE 127 LINE 22 CHANGE delete redundant word "detriment"

REASON Transcription error

PAGE 128 LINE 5 CHANGE "kidneys, or not good for their kidneys."

REASON Clarification

PAGE 133 LINE 8 CHANGE "essentially" to "centrally store"

REASON Transcription error

PAGE 142 LINE 4 CHANGE "That's a pro-life medication."

REASON Correction

PAGE 143 LINE 22 CHANGE "... program resource disk, ..."

REASON Spelling

PAGE ____ LINE ____ CHANGE ________

REASON ________

________________ 5-10-23

WITNESS Date

5-5