**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, and JOSEPH ALMEIDA, individually and on behalf of all others similarly situated,<br>*Plaintiffs,*<br>vs.<br>THE SALVATION ARMY, A NEW YORK CORPORATION,<br>*Defendant.* | Civil Action No. 1:21-cv-10806-LTS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Facts .......... 2

B. Prior Proceedings .......... 4

LEGAL STANDARD .......... 5

ARGUMENT .......... 5

I. Section 504 and the FHA Prohibit Defendant from Categorically Banning from ARCs Individuals with OUD Who Take Prescribed Methadone or Buprenorphine. .......... 5

II. Defendant Does Not Have a First Amendment Right to Violate Nondiscrimination Requirements That It Voluntarily and Knowingly Agreed to Follow. .......... 6

A. There is no First Amendment right to violate nondiscrimination conditions a party voluntarily and knowingly accepts in exchange for federal funding. .......... 6

B. By accepting federal funds, Defendant voluntarily and knowingly agreed to comply with Section 504's nondiscrimination requirements throughout all its social services programs and activities, including its ARCs. .......... 9

C. The church autonomy doctrine is inapplicable here. .......... 11

D. Defendant waived its First Amendment defenses. .......... 12

III. The First Amendment Does Not Exempt Defendant from the Neutral, Generally Applicable Nondiscrimination Requirements in Section 504 and the FHA. .......... 13

A. Defendant does not have a free exercise right to avoid complying with Section 504 and the FHA. .......... 13

B. Defendant does not have a free speech or expressive association right to avoid complying with Section 504 and the FHA. .......... 16

IV. RFRA Does Not Bar Plaintiffs' Claims. .......... 19

V. Summary Judgment Is Not Proper Against the Damages Classes. .......... 20

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013)....8

*Alexander v. Choate*,
469 U.S. 287 (1985)....5

*Barnes v. Gorman*,
536 U.S. 181 (2002)....6

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
481 U.S. 537 (1987)....19

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020)....15

*Bennett v. Council 31 of the AFSCME*,
991 F.3d 724 (7th Cir. 2021)....7

*Bienkowski v. Northeastern Univ.*,
285 F.3d 138 (1st Cir. 2002)....5

*Billard v. Charlotte Catholic High Sch.*,
101 F.4th 316 (4th Cir. 2024)....20

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000)....18

*Brown v. Hot, Sexy and Safer Prods., Inc.*,
68 F.3d 525 (1st Cir. 1995)....15

*Brox v. Hole*,
83 F.4th 87 (1st Cir. 2023)....13

*Charter Commc'ns, Inc. v. Cnty. of Santa Cruz*,
304 F.3d 927 (9th Cir. 2002)....12

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)....13

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989)....18

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288 (1984)....16

*Cohen v. Cowles Media Co.*,
501 U.S. 663 (1991) ........................................................................ 7, 12

*Combs v. Homer-Center Sch. Dist.*,
540 F.3d 231 (3d Cir. 2008) ........................................................................ 16

*Conlon v. InterVarsity Christian Fellowship*,
777 F.3d 829 (6th Cir. 2025) ........................................................................ 13

*Consol. Rail Corp. v. Darrone*,
465 U.S. 624 (1984) ........................................................................ 10

*Crowe v. Or. State Bar*,
112 F.4th 1218 (9th Cir. 2024) ........................................................................ 18

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) ........................................................................ 1, 6, 7

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967) ........................................................................ 12

*DePoutot v. Raffaelly*,
424 F.3d 112 (1st Cir. 2005) ........................................................................ 16

*Diaz-Fonseca v. Puerto Rico*,
451 F.3d 13 (1st Cir. 2006) ........................................................................ 12

*Doe v. The Salvation Army*,
685 F.3d 564 (6th Cir. 2012) ........................................................................ 1, 11

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021) ........................................................................ 14

*E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*,
884 F.3d 560 (6th Cir. 2018) ........................................................................ 15, 20

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
494 U.S. 872 (1990) ........................................................................ 2, 13

*Evans v. City of Berkeley*,
38 Cal.4th 1 (2006) ........................................................................ 7

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
503 U.S. 60 (1992) ........................................................................ 10

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ........................................................................ 13, 14, 15

*Gary S. v. Manchester Sch. Dist.*,
241 F. Supp. 2d 111 (D.N.H. 2003)....................15

*Gary S. v. Manchester Sch. Dist.*,
374 F.3d 15 (1st Cir. 2004)....................15

*Grove City Coll. v. Bell*,
465 U.S. 555 (1984)....................1, 7, 10, 12

*Grove City Coll. v. Bell*,
687 F.2d 684 (3d Cir. 1982)....................7

*Hankins v. Lyght*,
441 F.3d 96 (2d Cir. 2006)....................20

*Haybarger v. Lawrence County Adult Probation & Parole*,
551 F.3d 193 (3d Cir. 2008)....................10

*Hernandez v. Delgado*,
375 F.2d 584 (1st Cir. 1967)....................12

*Hernández-Gotay v. U.S.*,
985 F.3d 71 (1st Cir. 2021)....................16

*Hicks v. Johnson*,
755 F.3d 738 (1st Cir. 2014)....................5

*Hollonbeck v. U.S. Olympic Comm.*,
513 F.3d 1191 (10th Cir. 2008)....................11

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012)....................11, 12, 20

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*,
515 U.S. 557 (1995)....................18

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*,
655 F.Supp.2d 1150 (D. Idaho 2009)....................5

*Isaacs v. Dartmouth-Hitchcock Med. Ctr.*,
2014 WL 1572559 (D.N.H. Apr. 18, 2014)....................11

*Janus v. AFSCME, Council 31*,
585 U.S. 878 (2018)....................12

*Koslow v. Commonwealth of Pennsylvania*,
302 F.3d 161 (3d Cir. 2002)....................8

*Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cnty.*,
149 F.3d 277 (4th Cir. 1998) ........................................................................................12

*Leake v. Long Island Jewish Med. Ctr.*,
869 F.2d 130 (2d Cir. 1989).........................................................................................11

*Leonard v. Clark*,
12 F.3d 885 (9th Cir. 1993) ..........................................................................................12

*Listecki v. Off. Comm. of Unsecured Creditors*,
780 F.3d 731 (7th Cir. 2015) ........................................................................................20

*Masterpiece Cakeshop v. Colo. Civ. Rights Comm'n*,
584 U.S. 617 (2018) .....................................................................................................17

*McCullen v. Coakley*,
573 F. Supp. 2d 382 (D. Mass. Aug. 22, 2008) ............................................................16

*Miller v. McDonald*,
130 F.4th 258 (2d Cir. 2025) ........................................................................................16

*N.C.A.A. v. Smith*,
525 U.S. 459 (1999).......................................................................................................11

*Newman v. Piggie Park Enters., Inc.*,
390 U.S. 400 (1968).......................................................................................................14

*Nose v. Attorney General of U.S.*,
993 F.2d 75 (5th Cir. 1993) ..........................................................................................12

*Olympus Spa v. Armstrong*,
138 F.4th 1204 (9th Cir. 2025) ................................................................................18, 19

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
591 U.S. 732 (2020).......................................................................................................12

*Overbey v. Mayor of Baltimore*,
930 F.3d 215 (4th Cir. 2019) ........................................................................................12

*Pace v. Bogalusa City Sch. Bd.*,
403 F.3d 272 (5th Cir. 2005) ..........................................................................................8

*Parker v. Hurley*,
514 F.3d 87 (1st Cir. 2008)...........................................................................................15

*Petruska v. Gannon Univ.*,
462 F.3d 294 (3d Cir. 2006)..........................................................................................13

*Ramos-Ramos v. Haddock*,
2023 WL 6318066 (D.P.R. Sept. 27, 2023)....................7

*Regan v. Tax'n with Representation of Wash.*,
461 U.S. 540 (1983)....................8, 9

*Rivera v. Mora Dev. Corp.*,
624 F. Supp. 3d 80 (D.P.R. 2022)....................5

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)....................14, 15, 19

*Rumsfeld v. Forum of Acad. & Inst. Rights, Inc.*,
547 U.S. 47 (2006)....................16, 17, 19

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*,
786 F.3d 510 (7th Cir. 2015) ....................10

*Rust v. Sullivan*,
500 U.S. 173 (1991)....................8

*Rweyemamu v. Cote*,
520 F.3d 198 (2d Cir. 2008)....................20

*Salvation Army v. Dep't of Cmty. Affs. of State of N.J.*,
919 F.2d 183 (3d Cir. 1990)....................2, 14

*Sch. Bd. of Nassau Cnty. v. Arline*,
480 U.S. 273 (1987)....................5

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
788 F.3d 25 (1st Cir. 2015)....................20

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) ....................20

*Swartz v. Sylvester*,
53 F.4th 693 (1st Cir. 2022)....................14

*Texas v. Johnson*,
491 U.S. 397 (1989)....................16, 17

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ....................16

*Tomic v. Catholic Diocese of Peoria*,
442 F.3d 1036 (7th Cir. 2006) ....................20

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*,
477 U.S. 597 (1986)....................7

*U.S. v. Am. Libr. Ass'n*,
539 U.S. 194 (2003)....................8

*U.S. v. Mezzanatto*,
513 U.S. 196 (1995)....................12

*U.S. v. O'Brien*,
391 U.S. 367 (1968)....................16

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)....................17

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
536 U.S. 150 (2002)....................17

*Wilkicki v. Brady*,
882 F. Supp. 1227 (D.R.I. 1995)....................12

*Woods v. Foster*,
884 F. Supp. 1169 (N.D. Ill. 1995)....................5

*Wooley v. Maynard*,
430 U.S. 705 (1977)....................17

**Constitution and Statutes**

U.S. Constitution, Amendment I....................13

20 U.S.C. §1681....................7

29 U.S.C. §794....................3, 5, 7, 9

42 U.S.C. §2000d....................7

42 U.S.C. §3604....................5

42 U.S.C. §3607....................14

42 U.S.C. §6102....................7

42 U.S.C. §18116....................7

Civil Rights Restoration Act, 102 Stat. 28 (1988)....................1, 10

**Regulations**

24 C.F.R. §8.50 .......... 2

28 C.F.R. §42.504 .......... 2

38 C.F.R. §18.405 .......... 2

45 C.F.R. §84.5 .......... 2

**Other Authorities**

S. Rep. No. 100-64 .......... 10

## INTRODUCTION

Defendant The Salvation Army is a billion-dollar corporation "principally engaged in the business of providing social services," including through its 29 Adult Rehabilitation Centers (ARCs) in the Eastern United States, which provide housing and other services to members of the general public. Doc. No. 133 ¶1. Defendant has chosen to accept millions of dollars in annual federal funding. Defendant admits that, in accepting this funding, it "voluntarily and knowingly consented to … compl[y] with Section 504 of the Rehabilitation Act" at the ARCs. Doc. No. 133 ¶2; *see Doe v. The Salvation Army*, 685 F.3d 564 (6th Cir. 2012).

Despite having promised the Federal Government that it will not exclude individuals from receiving otherwise publicly available ARC housing and social services on the basis of a disability, Defendant maintains a policy of categorically banning from its ARCs all individuals with opioid use disorder (OUD) who take standard-of-care prescribed methadone or buprenorphine medications for opioid use disorder (MOUD). At the preliminary injunction stage, this Court held that Defendant's policy likely constitutes disability discrimination under Section 504 and the Fair Housing Act (FHA) (while not reaching Defendant's asserted First Amendment defense), and Defendant's summary judgment motion does not argue otherwise. Instead, Defendant seeks summary judgment solely on the ground that, even if its MOUD ban constitutes otherwise unlawful discrimination prohibited by Section 504 and the FHA, it cannot be held liable consistent with the First Amendment as a matter of "church autonomy," free speech, or expressive association, because it is a religious organization. Doc. No. 275 ("Mot.").

Defendant's arguments are squarely foreclosed by binding Supreme Court precedent, for two independently sufficient reasons. First, there is no First Amendment right to accept federal funds on voluntarily agreed-upon conditions of nondiscrimination and then renege on that contractual promise. *Grove City Coll. v. Bell*, 465 U.S. 555, 575 (1984), *superseded by statute on other grounds*, Civil Rights Restoration Act, 102 Stat. 28 (1988). Like all Spending Clause legislation, Section 504 operates solely as a matter of consent; nothing compels Defendant to accept federal funding. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216

(2022). Second, both Section 504 and the FHA are neutral, generally applicable laws, and "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990); *see Salvation Army v. Dep't of Cmty. Affs. of State of N.J.*, 919 F.2d 183, 196 (3d Cir. 1990) (rejecting free exercise challenge to application of housing law to ARC).

Moreover, if Defendant chooses, as it has, to provide services and housing to the general public (not just to its own ministers or members), requiring it to do so on a nondiscriminatory basis in no way implicates the church autonomy doctrine or any speech or expressive association rights. The Religious Freedom Restoration Act (RFRA) also does not bar Plaintiffs' claims, and, at a minimum, summary judgment is not proper against the certified Damages Classes.

## BACKGROUND

### A. Facts

Defendant is a billion-dollar corporation. Combined Statement of Facts ("SoF") ¶49. Defendant "is principally engaged in the business of providing social services" to the general public and "receives federal financial assistance, including grant funding, loans, and other assistance from the federal government." Doc. No. 133 ¶1; SoF ¶51. Defendant receives millions of dollars of federal funding for its public-serving social services programs each year. SoF ¶67.

Defendant has stipulated that it "voluntarily and knowingly consented to the conditions of federal financial assistance received, including by providing written assurances of compliance with Section 504 of the Rehabilitation Act … with respect to programs or activities that received federal funding to the extent required by the terms of the federal financial assistance or by law." Doc. No. 133 ¶2.[1] Section 504 prohibits disability discrimination under "any program or activity receiving Federal financial assistance," and broadly defines "program or activity" to "mean[] all of the operations of … an entire corporation … which is principally engaged in the business of

---

[1] Federal agencies require "assurances" from funding recipients that they will comply with Section 504's prohibition on discrimination. *See, e.g.*, 24 C.F.R. §8.50; 28 C.F.R. §42.504; 38 C.F.R. §18.405; 45 C.F.R. §84.5.

providing … social services," "any part of which is extended Federal financial assistance." 29 U.S.C. §794(b). Accordingly, Defendant's stipulation means that it voluntarily and knowingly agreed to comply with Section 504 with respect to all of its social services, including its ARCs.

Defendant operates 29 ARCs in the Eastern United States, which offer housing, food, counseling, healthcare, recreation, and other services to individuals with substance use disorders. SoF ¶¶52, 56. Defendant has chosen to provide ARC housing and services to the general public without regard to the religion of participants. SoF ¶¶61, 63, 65. "Less than one percent" of ARC participants are members of the Salvation Army church. SoF ¶63. At least 90 percent of ARC participants are indigent, and approximately a third are required to complete the ARC program as a condition of probation or parole. SoF ¶¶54-55. The ARCs operate at a deficit, so Defendant partially funds them with its general funds from other sources. SoF ¶69.

The opioid epidemic in our country afflicts more than 9.3 million Americans and kills more than 80,000 every year. SoF ¶35. Amid this deadly crisis, Defendant categorically bans individuals with OUD who take prescribed methadone or buprenorphine from ARCs, even though it knows those life-saving medications are the "standard of care" for OUD. SoF ¶¶40, 71-72. Defendant enforces its ban in several ways: Defendant bans individuals who take or have taken MOUD from participating in ARC housing and services. SoF ¶73. For example, Defendant rejects ARC applicants who received a buprenorphine injection up to a year before applying and who no longer take MOUD. SoF ¶74. Once Defendant admits participants into ARCs, it prohibits them from taking doctor-prescribed MOUD and kicks them out if they take it. SoF ¶¶75, 77. There are no exceptions to Defendant's categorical policy. SoF ¶71. Defendant also bars from ARCs individuals with physical disabilities and those it considers too old. SoF ¶79.

Defendant asserts that its MOUD policy is based on its religious belief in abstinence. Mot. at 4-6. But Defendant's MOUD policy was originally based on outdated guidance from the Talbott Recovery Campus, a non-religious rehabilitation provider that now promotes MOUD. SoF ¶80. Defendant admits that "it is not against the Salvation Army religion for a nonmember to use doctor prescribed methadone or buprenorphine." SoF ¶81. Indeed, Defendant itself

provides buprenorphine to participants with OUD at its Harbor Light Centers, which also provide services to individuals with substance use disorders and which Defendant advertises together with its ARCs. SoF ¶82. Defendant has explained that providing MOUD to Harbor Light Center participants does not violate its religion "because the program is done in conjunction with government funding and government regulations, so we understand that by doing that program and that service, that we have to abide by those guidelines." SoF ¶83. Defendant also sometimes allows ARC participants who do *not* have OUD to take methadone or buprenorphine. SoF ¶78.

Defendant allows ARC participants to take other prescription medications, including "narcotic" medications and medications that Defendant claims carry risk of "abuse." SoF ¶85. Defendant prevents "abuse" of those medications by storing them in a central, locked location and requiring participants to take them under staff supervision. SoF ¶86. ARC participants also attend appointments at outside clinics, and outside providers visit ARCs to provide treatment. SoF ¶¶87-89. Defendant could apply the same procedures to participants who need MOUD. SoF ¶¶90-93. Defendant concedes that it allows ARC participants to use nicotine, which is addictive and can be abused, and such nicotine use does not prevent Defendant from practicing its religion because ARC participants are "not members of the Salvation Army." SoF ¶84.

### B. Prior Proceedings

Plaintiffs challenge Defendant's categorical MOUD ban under Section 504 and the FHA. This Court denied Defendant's motion to dismiss, rejecting its argument that the Court lacks jurisdiction because the case involves the adjudication of religious disputes. Doc. No. 72. The Court explained that this is a secular dispute involving the application of "neutral federal laws to the [MOUD] policy" and the First Amendment does not prohibit courts from deciding such disputes. *Id.* at 5. At the preliminary injunction stage, the Court concluded that Plaintiffs are likely to succeed in showing that Defendant discriminates against individuals with OUD on the basis of disability by failing to provide them with reasonable accommodations at ARCs, in violation of Section 504 and the FHA. Doc. No. 218 at 21, 23-24. The Court declined to issue an injunction because it reserved ruling on the religious issues presented here. *Id.* at 22-23. The

Court then certified one Injunction Class and two Damages Classes. Doc. No. 265. The parties agreed to resolve the Injunction Class's claims before providing the Damages Classes notice and an opportunity to opt out. Doc. No. 271.

## LEGAL STANDARD

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014). In ruling on a motion for summary judgment, the Court "must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 140 (1st Cir. 2002).

## ARGUMENT

### I. Section 504 and the FHA Prohibit Defendant from Categorically Banning from ARCs Individuals with OUD Who Take Prescribed Methadone or Buprenorphine.

Congress enacted the Rehabilitation Act and the FHA to remedy pervasive discrimination against individuals with disabilities in our society. In the Rehabilitation Act, Congress sought to "eliminate the 'glaring neglect' of [people with disabilities]." *Alexander v. Choate*, 469 U.S. 287, 296 (1985). To that end, it "enlisted all programs receiving federal funds in an effort 'to share with handicapped Americans the opportunities for an education, transportation, housing, health care, and jobs that other Americans take for granted.'" *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 277 (1987); *see* 29 U.S.C. §794(b). Similarly, Congress enacted the FHA, which prohibits disability discrimination in the provision of housing, 42 U.S.C. §3604(f)(2), as a "'broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals.'" *Rivera v. Mora Dev. Corp.*, 624 F. Supp. 3d 80, 88 (D.P.R. 2022) (citation omitted). Both statutes require the provision of "reasonable accommodations" to individuals with disabilities. *Alexander*, 469 U.S. at 301; 42 U.S.C. §3604(f)(3)(B).[2]

[2] Defendant stipulated that Section 504 applies here, Doc. No. 133 ¶1, and does not dispute that the FHA applies. ARCs and other longer-term facilities for treating those with substance use disorders constitute "dwelling[s]" under the FHA. *See Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 655 F.Supp.2d 1150, 1157 (D. Idaho 2009); *Woods v. Foster*, 884 F. Supp. 1169, 1175 (N.D. Ill. 1995); SoF ¶58.

At the preliminary injunction stage, this Court concluded that Plaintiffs are likely to succeed in showing that Defendant discriminates against individuals with OUD by imposing its categorical ban and thus failing to provide reasonable accommodations in violation of Section 504 and the FHA, subject to the religious issues briefed here. Doc. No. 218 at 16-21, 23-24. Defendant could allow individuals with OUD to access their own prescribed medications through self-administration, monthly injections, or clinic visits consistent with Defendant's existing procedures for accessing other medications. *Id.* at 16-21; SoF ¶¶85-93. Defendant does not argue in its motion that these accommodations would require a fundamental alteration of ARC programs such that they would be unreasonable as a matter of statutory law. Instead, Defendant asks the Court to hold that it has a First Amendment right to avoid complying with Section 504 and the FHA, even assuming that its categorical ban violates these statutes. Mot. at 6. That argument is foreclosed by binding precedent, as explained below.

## II. Defendant Does Not Have a First Amendment Right to Violate Nondiscrimination Requirements That It Voluntarily and Knowingly Agreed to Follow.

Defendant cannot avoid the nondiscrimination requirements in Section 504 because it stipulated that it "voluntarily and *knowingly consented* to the conditions of federal financial assistance" it received, which include the specific requirement that Defendant not discriminate based on disability at ARCs. Doc. No. 133 ¶2 (emphasis added).

### A. There is no First Amendment right to violate nondiscrimination conditions a party voluntarily and knowingly accepts in exchange for federal funding.

"Congress has broad power under the Spending Clause of the Constitution to set the terms on which it disburses federal funds." *Cummings*, 596 U.S. at 216. "Unlike ordinary legislation, which 'imposes congressional policy' on regulated parties 'involuntarily,' Spending Clause legislation operates based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" *Id.* at 219. "Just as a valid contract requires offer and acceptance of its terms, '[t]he legitimacy of Congress' power to legislate under the spending power … rests on whether the [recipient] voluntarily and knowingly accepts the terms of the "contract."'" *Barnes v. Gorman*, 536 U.S. 181, 186 (2002).

Exercising its broad power under the Spending Clause, "Congress has passed a number of statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected characteristics." *Cummings*, 596 U.S. at 216. Section 504 is one such statute, and it "bars funding recipients from discriminating because of disability." *Id.* at 218; *see* 29 U.S.C. §794(a).[3] Under Section 504, "Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). Here, Defendant has stipulated that it voluntarily and knowingly agreed to comply with the nondiscrimination requirements in Section 504 in exchange for federal funding. Doc. No. 133. That admission is dispositive of Defendant's First Amendment arguments.

Because Section 504 operates like a contract, Defendant cannot "assert an alleged [F]irst [A]mendment right to be free of the strictures of [Section 504]'s prohibitions of [disability] discrimination and also claim the right to continued federal funding." *Grove City Coll. v. Bell*, 687 F.2d 684, 702 (3d Cir. 1982), *aff'd*, 465 U.S. 555 (1984). The Supreme Cout explained in *Grove City* that "Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that [private organizations] are not obligated to accept," and a private organization "may terminate its participation in the [federal funding] and thus avoid the requirements." 465 U.S. at 575. The Court squarely held that "[r]equiring the [organization] to comply with [a statutory] prohibition of discrimination as a condition for its continued eligibility to participate in the [federal funding] infringes no First Amendment rights of the [organization]." *Id.* at 575-76. That binding holding controls here.[4]

---

[3] Other statutes that impose nondiscrimination conditions on federal funding include Title VI, 42 U.S.C. §2000d; the Age Discrimination Act, 42 U.S.C. §6102; Title IX, 20 U.S.C. §1681; and the Affordable Care Act, 42 U.S.C. §18116. *See Cummings*, 596 U.S. at 218.

[4] *See also Evans v. City of Berkeley*, 38 Cal.4th 1, 10 (2006); *Bennett v. Council 31 of the AFSCME*, 991 F.3d 724, 731 (7th Cir. 2021) (First Amendment "does not, without more, render unenforceable any 'legal obligations' … that … are self-imposed' through a contract") (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991)); *Ramos-Ramos v. Haddock*, 2023 WL 6318066, at *13 (D.P.R. Sept. 27, 2023).

A voluntarily accepted funding condition is not unconstitutional simply because it may "affect the recipient's exercise of its First Amendment rights." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). For example, the Court has held that the government could constitutionally prohibit recipients of federal funds from providing "counseling, referral, and the provision of information regarding abortion," which are undoubtedly First Amendment activities. *Rust v. Sullivan*, 500 U.S. 173, 193 (1991). That is because a "refusal to fund protected activity, without more, cannot be equated with the imposition of a penalty on that activity." *Id.* (internal quotation marks and citation omitted). The "legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 549 (1983); *see also U.S. v. Am. Libr. Ass'n*, 539 U.S. 194, 212 (2003).

"As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *All. for Open Soc'y*, 570 U.S. at 214.[5] Defendant has recognized this principle, acknowledging that its own direct provision of buprenorphine to participants with OUD at its Harbor Light Centers does not violate its religion "because the program is done in conjunction with government funding and government regulations." SoF ¶¶82-83. To the extent Defendant wishes to categorically ban ARC participants from accessing methadone and buprenorphine, Section 504 leaves it "free to do so without federal assistance." *Am. Libr. Ass'n*, 539 U.S. at 212.[6]

---

[5] Defendant stipulated that its agreement not to discriminate in the provision of ARC housing and services was entirely "voluntar[y]." Doc. No. 133 ¶1. It thus cannot argue that the government coerced Defendant, which has "formidable institutional resources," into agreeing to that condition by offering funding. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 174 (3d Cir. 2002) (federal government did not coerce states, which have "formidable institutional resources," into waiving sovereign immunity by conditioning federal funds on waiver); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 286-87 (5th Cir. 2005) (similar). Nor did the government use the funding to impose regulations outside of the program. *See All. for Open Soc'y*, 570 U.S. at 214-15. Congress has clearly defined "program or activity" under Section 504 and similar statutes to encompass all social services activities of a corporation that is principally engaged in providing social services, in order to prevent federal funds from being used to discriminate in the provision of public services. *See infra* at 9-11.

[6] The FHA independently prohibits disability discrimination against individuals who take prescribed MOUD and need access to housing. *Supra* at 5-6; *infra* 13-16.

### B. By accepting federal funds, Defendant voluntarily and knowingly agreed to comply with Section 504's nondiscrimination requirements throughout all its social services programs and activities, including its ARCs.

Defendant attempts to downplay its stipulation as merely a tool to "limit[] the discovery burden" and suggests that it did not consent to follow Section 504's nondiscrimination requirements in its ARCs because Defendant's *other* social services programs were the direct recipients of federal funds. Mot. 18-19. As a preliminary matter, there is a genuine dispute of fact regarding whether Defendant supports its ARCs with federal funding. The ARCs consistently operate at an annual deficit of more than $40 million per year. SoF ¶69. Defendant makes up for that deficit with general funds from other sources, which include millions of dollars of federal funding. SoF ¶¶67, 69. Defendant is able to spend its general funds on programs like ARCs that are operating at a deficit because it has chosen to operate a single, integrated entity. Doc. No. 133 ¶1; SoF ¶¶3, 70; *cf. Regan*, 461 U.S. at 544-45 (organization could create separate affiliates to avoid spending public funds "on an activity Congress chose not to subsidize"). Defendant successfully avoided discovery into its finances by agreeing to the stipulation; it cannot avoid the consequences of that choice now. Doc. No. 133 at 2.

The Court need not rely on that factual dispute, however, because Defendant's argument ignores the plain text of the stipulation and of Section 504, which prohibits disability discrimination under "any program or activity receiving Federal financial assistance," 29 U.S.C. §794(a), and broadly defines "program or activity" to "mean[] all of the operations of … an entire corporation … or other private organization … which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation … any part of which is extended Federal financial assistance." *Id.* §794(b). Defendant stipulated it is a corporation that "is principally engaged in the business of providing social services," and it "receives federal financial assistance." Doc. No. 133 ¶1. Accordingly, under Section 504's plain text and long-settled precedent, Section 504's requirements apply to "all of the operations of … [Defendant's] entire corporation," including the ARCs. 29 U.S.C. §794(b). Defendant

stipulated that it "voluntarily and knowingly consented" to those "conditions of federal financial assistance received … to the extent required … by law." Doc. No. 133 ¶2.

The legislative history of Section 504 reinforces that the phrase "program or activity" covers all social services programs and activities of a corporation that, like Defendant, is principally in the business of providing social services. Indeed, after the Supreme Court in 1984 interpreted the nondiscrimination requirements of the Rehabilitation Act to apply only to "the specific program that receives federal funds," *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 636 (1984); *see also Grove City*, 465 U.S. at 569-74 (similar in Title IX context), Congress passed the Civil Rights Restoration Act of 1988, 102 Stat. 28 (1988), and expressly rejected that narrow interpretation, adding the current, broad definition of "program or activity" to the Rehabilitation Act. *See Haybarger v. Lawrence County Adult Probation & Parole*, 551 F.3d 193, 199-200 (3d Cir. 2008); *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 73 (1992).

Congress explained that its intent was to "restore the … broad, institution-wide application" of Section 504 after the Supreme Court "unduly narrowed" its application, 102 Stat. 28 §2, and to "restore the broad prohibition on the use of federal funds to discriminate," S. Rep. No. 100-64 at 16. Congress specifically intended Section 504's "institution-wide coverage" to apply to private organizations that are "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation" because those are traditionally "governmental functions" and "areas of public services" that are "most important." S. Rep. No. 100-64, at 18, 20, 27; *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 525 (7th Cir. 2015). "[P]rivate corporations choosing to provide these [public] services … to the public at large" while accepting any federal funding are subject in their entirety to Section 504's nondiscrimination requirements. *Runnion*, 786 F.3d at 525.[7]

Since Congress added the broad definition of "program or activity" to the Rehabilitation Act, courts have interpreted its nondiscrimination requirements—consistently with Congress'

[7] By contrast, private entities not principally engaged in providing those services are excluded from Section 504's "institution-wide coverage," unless federal funding is provided to the whole entity. S. Rep. No. 100-64 at 17.

unambiguous intention in the 1988 amendments—to apply to entire entities receiving federal funding. *See, e.g.*, *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *17-18 (D.N.H. Apr. 18, 2014); *Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1195 n.1 (10th Cir. 2008); *Leake v. Long Island Jewish Med. Ctr.*, 869 F.2d 130, 131 (2d Cir. 1989); *N.C.A.A. v. Smith*, 525 U.S. 459, 465-67 (1999) (based on analogous definition of "program or activity" in Title IX, "if any part of the NCAA received federal assistance, all NCAA operations would be subject to Title IX"). Indeed, in a case involving Defendant, the Sixth Circuit held that Section 504 would apply to the Columbus ARC—even though the parties in that case agreed that the ARC did not receive any federal financial assistance—if the record showed that Defendant was a corporation "principally engaged in the business of providing … social services." *Doe*, 685 F.3d at 568-69. That well-settled interpretation had long been the law when Defendant—a corporation "principally engaged in the business of providing social services"—accepted federal funding and when it stipulated in this case that it voluntarily and *knowingly* consented to comply with Section 504's requirements in exchange for federal funding.

**C. The church autonomy doctrine is inapplicable here.**

Defendant's primary argument is that the "church autonomy" doctrine grants it the right to violate Section 504 (and the FHA). This Court has already rejected that argument at the motion-to-dismiss stage and should do so again here. As the Court explained, this case does not require the Court to "wade into an ecclesiastical dispute, evaluate religious doctrine, or determine the validity of [Defendant's] religious beliefs." Doc. No. 72 at 5; *see* Mot. 9-10. Instead, this is a secular dispute regarding the "appl[ication of] neutral federal laws to the [MOUD] policy." Doc. No. 72 at 5.

Defendant's reliance on cases involving the ministerial exception, which prohibits the government from interfering with the church's "authority to select and control who will minister to the faithful," is misplaced. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 195 (2012). This case is not about the selection and control of "who will minister to the faithful," but rather whether Defendant may exclude on the basis of disability members of

the *general public* from otherwise publicly available social services, many of whom are required to attend ARCs as a condition of probation or parole—after Defendant knowingly and voluntarily agreed *not* to discriminate in exchange for federal funding. There is no question that ARC participants are not ministers of the Salvation Army Church. SoF ¶¶8, 14; *cf. Hosanna-Tabor*, 565 U.S. 565 at 191 (ministerial exception applies to religious school teacher "held … out as a minister, with a role distinct from that of most of its members"). The church autonomy doctrine does not give "religious institutions … a general immunity from secular laws," but rather "protect[s] their autonomy with respect to *internal management decisions* that are essential to the institution's central mission," such as the selection of ministers. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) (emphasis added). Holding Defendant to its voluntary and knowing promise not to discriminate against members of the public does not intrude on any internal "matters of church government" protected by the First Amendment. *Id.*

**D. Defendant waived its First Amendment defenses.**

Holding Defendant to its promise not to discriminate infringes no First Amendment right. *Grove City*, 465 U.S. at 575-76; *Cohen*, 501 U.S. at 671; *supra* at 6-11. But even if binding precedent did not dictate that conclusion—as it does—Defendant has waived its objections to complying with Section 504. "Even fundamental constitutional rights may be waived." *Hernandez v. Delgado*, 375 F.2d 584, 586 (1st Cir. 1967); *e.g.*, *U.S. v. Mezzanatto*, 513 U.S. 196, 201 (1995); *Nose v. Attorney General of U.S.*, 993 F.2d 75, 78-79 (5th Cir. 1993). "It is well-settled that a [party] may choose to waive" First Amendment rights "pursuant to a contract with the government." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 223 (4th Cir. 2019).[8] A waiver of First Amendment rights is effective if it is voluntary and knowing. *See Janus v. AFSCME, Council 31*, 585 U.S. 878, 930 (2018); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967).

[8] *See also Charter Commc'ns, Inc. v. Cnty. of Santa Cruz*, 304 F.3d 927, 935 & n.9 (9th Cir. 2002) (waiver through cable television franchise agreement with county); *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cnty.*, 149 F.3d 277, 280-82 (4th Cir. 1998) (contract with county); *Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993) (collective bargaining agreement with city); *Wilkicki v. Brady*, 882 F. Supp. 1227 (D.R.I. 1995); *cf. Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 33 (1st Cir. 2006) (waiver of Eleventh Amendment immunity under Section 504 through acceptance of federal funds).

Defendant voluntarily and knowingly consented to comply with Section 504's requirements with respect to its ARCs in exchange for millions of dollars of federal funding annually. SoF ¶68; *supra* at 9-11. As Defendant recognizes in its policies for its Harbor Light Center facilities, the government may prohibit it from barring individuals who take prescribed MOUD from its programs as a condition of federal funding. *See* SoF ¶¶82-83 (Defendant provides buprenorphine to participants with OUD at its Harbor Light Centers because of "government funding and government regulations"). Defendant has waived its First Amendment objections.[9]

## III. The First Amendment Does Not Exempt Defendant from the Neutral, Generally Applicable Nondiscrimination Requirements in Section 504 and the FHA.

Defendant's First Amendment arguments as to both Section 504 and the FHA fail for another, independent reason: Under binding precedent, Defendant has no right to avoid complying with these neutral laws of general applicability under any First Amendment theory.

### A. Defendant does not have a free exercise right to avoid complying with Section 504 and the FHA.

The Free Exercise Clause provides that "Congress shall make no law … prohibiting the free exercise" of religion. U.S. Const. amend. I. Under *Smith*, 494 U.S. 872, a court "review[s] a law that burdens religious exercise but that is neutral with respect to religion and generally applicable only to ensure that it has a rational basis." *Brox v. Hole*, 83 F.4th 87, 93 (1st Cir. 2023) (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)). "Such a neutral and generally applicable law" is not subject to strict scrutiny, "even if the law incidentally burdens religious exercise." *Id.* (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993)). These binding precedents foreclose Defendant's free exercise defense.

[9] In *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 (3d Cir. 2006) (cited Mot. at 19), the court held that an employer did not waive a First Amendment ministerial exception defense to a Title VII claim simply by announcing that it was an "equal opportunity employer" or by "accepting federal and state funds." Unlike here, the defendant in *Petruska* did not "voluntarily and knowingly" agree not to discriminate in exchange for federal funds, and the case involved the "ministerial exception" to Title VII, which is not applicable here. Defendant also cites *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2025) (Mot. at 18), for the proposition that the "ministerial exemption" to employment claims is a "structural limitation" that "can never be waived." As discussed *supra* at 11-12, the ministerial exemption addresses who a religious entity chooses as its leaders or spokespeople and has no application here. To the extent Defendant raises other First Amendment arguments based on free exercise, free speech, or expressive association, not only do those arguments fail on the merits, *infra* at 16-19, but it waived those challenges by knowingly and voluntarily agreeing not to discriminate in exchange for federal funds.

Defendant does not dispute that Section 504 and the FHA are neutral and generally applicable laws subject to rational basis review, *see* Mot. 15-16, nor can it. The laws are neutral. They do not "single out religion or religious practices" by facially discriminating against religion, "'proceed[ing] in a manner intolerant of religious beliefs[,] or restrict[ing] practices because of their religious nature.'" *Does 1-6 v. Mills*, 16 F.4th 20, 29-30 (1st Cir. 2021) (quoting *Fulton*, 593 U.S. at 533). The laws are also generally applicable. They do not "selectively burden conduct motivated by religion while simultaneously exempting the conduct's secular counterpart," nor do they "permit[] 'individualized governmental assessment of the reasons for the relevant conduct.'" *Swartz v. Sylvester*, 53 F.4th 693, 700 (1st Cir. 2022).[10]

There is no question that Section 504 and the FHA are "rationally related to [the] legitimate governmental interest" of prohibiting disability discrimination. *Mills*, 16 F.4th at 29; *cf. Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 n.5 (1968) (argument that Title II of Civil Rights Act violated Free Exercise Clause by prohibiting racial discrimination in public accommodations was "patently frivolous"); *Salvation Army*, 919 F.2d at 196 (rejecting free exercise challenge to application of neutral, generally applicable state housing law to ARCs). This Court need go no further.

In any event, the laws would pass constitutional muster even if strict scrutiny applied. The government has a compelling interest in preventing disability discrimination by social services providers that voluntarily and knowingly agree not to discriminate in exchange for federal funds and by housing providers generally. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984) ("eliminating discrimination and assuring its citizens equal access to publicly available goods and services" are "compelling state interests of the highest order"). The government's interest here is especially compelling in light of the ongoing opioid epidemic that is afflicting more than 9.3 million Americans and killing more than 80,000 every year, and the fact that a

[10] The FHA's statutory exemption does not change this analysis, and Defendant does not argue otherwise. The exemption provides that the FHA does not "prohibit a religious organization … from limiting the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose to persons of the same religion, or from giving preference to such persons." 42 U.S.C. §3607(a). That provision does not grant an exemption to FHA's prohibition on disability discrimination and thus is not relevant here.

third of ARC participants are *required* to attend as a condition of parole or probation. SoF ¶¶35, 55. The government has "compelling … interests of the highest order" in ensuring that social services providers—especially ones receiving millions of dollars in federal funding per year—are not discriminating against individuals with OUD in the midst of this deadly crisis. *Roberts*, 468 U.S. at 624. In addition, the laws are narrowly tailored because Section 504 applies only to entities that choose to accept federal money (and applies to all services provided by only those entities primarily in the business of providing social services usually provided by the government, *supra* at 10), and the FHA includes a religious discrimination exemption for religious organizations providing housing to persons of the same religion.[11]

Defendant's attempts to avoid *Smith* are easily refuted. Defendant contends that *Smith* applies only to individuals, not religious organizations. Mot. at 16. But in a recent case, the Supreme Court directly applied *Smith*'s analytical framework to a Catholic foster care agency, which is a religious organization. *Fulton*, 593 U.S. at 533. Defendant also argues that *Smith* is inapposite because this case involves the "church autonomy" doctrine. Mot. at 16. As explained above, that doctrine does not apply here, as Plaintiffs' claims do not implicate who Defendant chooses as its ministers or how it makes internal church governance decisions. *Supra* at 11-12.

Equally meritless is Defendant's attempt to avoid *Smith* by asserting that its defense is based on a "hybrid" of the Free Exercise Clause and "other constitutional protections." Mot. 16-17. The passing reference to "hybrid" situations in *Smith* was dicta, and the First Circuit has declined to apply heightened scrutiny and rejected "hybrid" claims where, as here, there are no independently viable constitutional claims. *See Parker v. Hurley*, 514 F.3d 87, 98 (1st Cir. 2008); *Gary S. v. Manchester Sch. Dist.*, 374 F.3d 15, 18-19 (1st Cir. 2004) (citing *Gary S. v. Manchester Sch. Dist.*, 241 F. Supp. 2d 111, 121 (D.N.H. 2003)); *Brown v. Hot, Sexy and Safer*

[11] *Cf. E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 595 (6th Cir. 2018) ("anti-discrimination laws are 'precisely tailored' to achieving the government's 'compelling interest in providing an equal opportunity to participate in the workforce' without facing discrimination"), *aff'd*, *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020).

*Prods., Inc.*, 68 F.3d 525, 539 (1st Cir. 1995), *abrogated on other grounds by DePoutot v. Raffaelly*, 424 F.3d 112, 118 n.4 (1st Cir. 2005); *supra* at 11-12; *infra* at 16-19.[12]

**B. Defendant does not have a free speech or expressive association right to avoid complying with Section 504 and the FHA.**

Defendant's other First Amendment arguments are also meritless. Defendant attempts to cast its provision of housing and social services to the general public as "expressive conduct" and the requirement to comply with nondiscrimination laws as compelled speech. If that framing were correct, then any business or organization providing services to the public could claim a right to avoid complying with public accommodations laws. The First Amendment's free speech provision does not require that radical result.

The Supreme Court has "extended First Amendment protection only to conduct that is *inherently* expressive." *Rumsfeld v. Forum of Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006) (emphasis added). "[C]onduct cannot 'be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Hernández-Gotay v. U.S.*, 985 F.3d 71, 80 (1st Cir. 2021) (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968)). Rather, conduct must be "sufficiently imbued with elements of communication to fall within the scope of the First [Amendment]." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). In deciding whether conduct is entitled to First Amendment speech protection, courts ask whether "it was 'intended to be communicative'" and "whether it, 'in context, would reasonably be understood by the viewer to be communicative.'" *Hernández-Gotay*, 985 F.3d at 80 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984)). "It is the duty of the party seeking to engage in allegedly expressive conduct to demonstrate that the First Amendment applies to that conduct." *Id.*

Defendant cannot establish as a matter of law that the provision of housing and social services to the general public—including people required to attend as a condition of probation or parole—is "inherently expressive" conduct entitled to First Amendment protection. Even if

[12] *See also Miller v. McDonald*, 130 F.4th 258, 270 (2d Cir. 2025); *Tingley v. Ferguson*, 47 F.4th 1055, 1089 n.5 (9th Cir. 2022); *McCullen v. Coakley*, 573 F. Supp. 2d 382, 419-20 (D. Mass. Aug. 22, 2008); *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 245 (3d Cir. 2008).

Defendant intends its conduct to be communicative, it is not "sufficiently imbued with elements of communication" such that a viewer would reasonably understand it to be communicative. *Johnson*, 491 U.S. at 404. Viewing the facts and inferences in Plaintiffs' favor as the Court must on summary judgment, from the perspective of a member of the general public, the physical act of providing ARC housing and services to the public (as distinct from statements Defendant might make about its services) is like the physical act of providing any other good or service offered to the public. This conclusion is apparent when contrasted with the kinds of conduct that the Supreme Court has recognized as "symbolic speech … deserving of First Amendment protection," *Rumsfeld*, 547 U.S. at 65 (internal quotation marks omitted), which are inherently expressive and include, for example, "nude dancing, burning the American flag" "wearing a black armband, [and] conducting a silent sit-in," *Masterpiece Cakeshop v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 657 (2018) (Thomas, J., concurring).[13]

Furthermore, requiring Defendant to comply with Section 504 and the FHA would not violate its First Amendment right against compelled speech by "undermin[ing] its faith-based message" regarding rehabilitation. Mot. 13. Requiring Defendant to allow ARC participants to take their own doctor-prescribed medications for OUD would not compel Defendant to engage in any speech. *See Rumsfeld*, 547 U.S. at 64. Nor would it "suggest[] that [Defendant] agree[s] with any speech by" the government or ARC participants, or "restrict[] what the [Defendant] may say about the [government's] policies." *Id.* at 65. Defendant remains free to promote abstinence-based rehabilitation among ARC participants. As the Supreme Court has explained, it is not difficult to "appreciate the difference between speech [an organization] sponsors and speech [the organization] permits because legally required to do so, pursuant to an equal access policy." *Id.*

[13] Defendant attempts to suggest that the combination of the Free Exercise and Free Speech Clauses somehow transforms its conduct into "expressive religious activities" protected by the First Amendment. The cases Defendant cites, though, involve speech or symbolic speech that is nothing like its provision of housing and social services to the general public, and none of them establish a category of First Amendment-protected "expressive religious activities" that should be analyzed under a framework different from the one applicable to expressive conduct generally. *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 167 (2002) (going door to door to speak to neighbors or distribute pamphlets); *Wooley v. Maynard*, 430 U.S. 705 (1977) (displaying state motto on license plates); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943) (reciting Pledge of Allegiance and saluting flag).

That distinction is even clearer here because compliance with Section 504 and the FHA does not require Defendant to permit anyone else's speech at ARCs. It would simply require allowing ARC participants with OUD to take their medications in the same way as any other prescription medications. Providing housing and services to members of the public is not compelled speech.

Likewise, Defendant does not have a right of "expressive association" that exempts it from complying with Section 504 and the FHA. "Not all interactions with other people that 'might be described as "associational" in common parlance … involve the sort of expressive association that the First Amendment has been held to protect." *Crowe v. Or. State Bar*, 112 F.4th 1218, 1234 (9th Cir. 2024) (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989)). When a corporation chooses to provide goods or services to the general public, requiring it not to discriminate does not infringe on a protected right to "expressive association." *See Olympus Spa v. Armstrong*, 138 F.4th 1204, 1222 (9th Cir. 2025) (Korean health spa prohibited from excluding transgender women); *cf. Stanglin*, 490 U.S. at 24 (law restricting certain dancehalls to teenagers constitutional because dance-hall patrons not engaged in "expressive activity" protected by First Amendment). Defendant has chosen to provide housing and social services to the public, including those compelled to participate as a condition of probation or parole. It is not engaged in any joint expressive activity *with* ARC participants. Rather, ARC participants are in the same position as the "patrons of [the] business establishment[s]" at issue in *Olympus Spa* and *Stanglin*. *Stanglin*, 490 U.S. at 24. If Defendant's argument were correct, then it—and any other provider of housing or social services—could ban any group on the basis of any protected characteristic by asserting a radically expansive right to "expressive association."

This case is entirely unlike the cases in which the Supreme Court has held that "[f]orcing a group to accept certain members" may violate the group's expressive activities. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000); *see id.* at 649-50, 656 (requiring Boy Scouts to accept gay assistant scoutmaster, who would be responsible for "inculcat[ing youth members] with the Boy Scouts' values," would "significantly affect [the group's] expression"); *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995) (requiring parade

organizers to include "group imparting a message the organizers do not wish to convey … violates the First Amendment"). First, Defendant voluntarily and knowingly agreed to comply with Section 504; that statute did not force Defendant to do anything. Second, Plaintiffs' claims do not affect who Defendant chooses to be its leaders or members. Instead, this case concerns whether a provider of housing and social services to the general public may discriminate against a *nonmember* on the basis of a protected characteristic, which does not violate any right to expressive association. *See Rumsfeld*, 547 U.S. at 64-65 ("[A] speaker cannot 'erect a shield' against laws requiring access 'simply by asserting' that mere association 'would impair its message.'"). The Court does not need to go further.

In any event, the Supreme Court has held that the right to expressive association is "not … absolute" and that "infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623. Even if Section 504 and the FHA did infringe on Defendant's right of expressive association (they do not), such infringement would be "justified because it serves the [government's] compelling interest in eliminating discrimination" on the basis of disability. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *see supra* at 14-15.

Finally, despite Defendant's argument, an injunction requiring it to issue a statement announcing a change in its MOUD policy would not violate the First Amendment. *See Rumsfeld*, 547 U.S. at 62 (compelling speech that is "plainly incidental to the … regulation of conduct" is constitutional); *Olympus Spa*, 138 F.4th at 1216; Mot. 14-15. Even if it did, this issue concerns only the scope of relief, not the merits of Plaintiffs' claims. If the Court concludes that requiring such a statement would violate the First Amendment, the Court could enjoin the policy without requiring the statement.

## IV. RFRA Does Not Bar Plaintiffs' Claims.

Defendant waived any exemption under RFRA from Section 504's nondiscrimination requirements when it voluntarily and knowingly agreed to comply with those requirements in

exchange for federal funding. Doc. No. 133. In any event, RFRA does not apply to Plaintiffs' Section 504 and FHA claims because "RFRA is not applicable in cases where the government is not a party," including this case. *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015); *see also Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 328 (4th Cir. 2024); *Harris Funeral Homes*, 884 F.3d at 584; *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006), *abrogated on other grounds by Hosanna-Tabor*, 565 U.S. at 195 n.4; *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 834, 837-43 (9th Cir. 1999). Only one circuit court has concluded otherwise, *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006), but even that court has since called its decision into question, *Rweyemamu v. Cote*, 520 F.3d 198, 203 & n.2 (2d Cir. 2008), *abrogated on other grounds by Hosanna-Tabor*, 565 U.S. at 195 n.4. Even if RFRA applied, Section 504 and the FHA satisfy strict scrutiny. *See supra* at 14-15.

## V. Summary Judgment Is Not Proper Against the Damages Classes.

Defendant's motion for summary judgment against the Damages Classes is improper and should not be granted under any circumstance. After the Court issued its class certification order, Doc. No. 265 at 46, the parties agreed to resolve the Injunction Class's claims before providing notice and an opportunity to opt out to the Damages Classes, and Defendant waived any due process objections to that approach. Doc. No. 271 at 2-3, 16-17. Defendant nevertheless now moves for summary judgment against both the Injunction *and* Damages Classes. Doc. No. 274. Because the Damages Classes have not been provided notice and an opportunity to opt out, they cannot be bound by summary judgment. *See Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 30-31 (1st Cir. 2015).

## CONCLUSION

For these reasons, the Court should deny Defendant's motion for summary judgment.

Respectfully submitted,

Dated: August 14, 2025

By: /s/ *Matthew J. Murray*
Matthew J. Murray* (CA Bar No. 271461)
Connie K. Chan* (CA Bar No. 284230)
Alice X. Wang* (CA Bar No. 335224)
**ALTSHULER BERZON LLP**

177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Fax: (415) 362-8064
Email: mmurray@altber.com
cchan@altber.com
awang@altber.com
*Pro Hac Vice*

Janet Herold (Bar No. 632479)
**Justice Catalyst Law**
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
Email: jherold@justicecatalyst.org