**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARK TASSINARI, RICHARD ESPINOSA, AND JOSEPH ALMEIDA** individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>**v.**<br><br>**THE SALVATION ARMY, A NEW YORK CORPORATION,**<br><br>Defendant. | **CASE NO. 1:21-CV-10806-LTS** |

**REPLY IN SUPPORT OF THE SALVATION ARMY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs do not dispute that The Salvation Army ("TSA") is a church that views the provision of social services to the public as part of its religious ministry, including its Adult Rehabilitation Centers ("ARCs"); that TSA sincerely believes in abstinence from addictive substances and that long-term use of narcotics to treat addiction is not true rehabilitation; and that TSA prohibits methadone and buprenorphine at its ARCs due to its religious-based medication policy informed by those beliefs. *See* Combined Statement of Facts, Doc. No. 281 ("SoF").[1] Based on these undisputed facts, the question for the Court is straightforward: Does TSA have a First Amendment right to provide faith-based rehabilitation at its residential churches notwithstanding its acceptance of federal funding for unrelated programs? The answer is a resounding yes.

## ARGUMENT

### I. Plaintiffs ignore or misapprehend the crux of TSA's First Amendment arguments.

**Church autonomy.** Church autonomy is deeply rooted in the Constitution; it is a structural limitation on the government's authority to enact or enforce laws in ways that restrict or coerce religious institutions in matters of faith, internal church governance, or religious practice. *See generally* Doc. No. 275 at 6-9. Plaintiffs attempt to cabin church autonomy to the ministerial exemption and state the obvious: this is not a ministerial exemption case. Doc. No. 280 at 11-12. But the Supreme Court has been clear: the ministerial exemption is but one manifestation of this broader principle. *See, e.g.*, *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) (church autonomy "does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that

[1] Plaintiffs inserted an additional 44 "facts" in their response to TSA's SoF. Neither LR 56.1 nor this Court's standing order seems to contemplate this tactic. Because these "facts" are irrelevant and improperly raised, the Court should ignore them. By not responding individually to each, TSA does not concede their accuracy or admissibility.

are essential to the institution's central mission. And *a component* of this autonomy is the selection of the individuals who play certain key roles") (emphasis added). Just as a church has a constitutional right to select its ministers notwithstanding generally applicable anti-discrimination laws, so too does TSA have an absolute right to conduct its religious ministry, including to administer spiritual rehabilitation in its ARCs, consistent with its core religious beliefs. This means that its religion-based medication policy "[is] exempt … from the application of the federal laws at issue in this lawsuit"—definitively answering a question that the Court said was not ripe at the motion to dismiss stage (Doc. No. 72 at 5) but is ripe now on the undisputed record.

**Free Speech and Expressive Association.** Plaintiffs also contend that TSA's ARC ministry is not entitled to protection as both free speech and expressive association because "the provision of housing and social services" is not "inherently expressive." Doc. No. 280 at 16. The expressive association is not the provision of services per se; it is the right of TSA through its ARC ministry to associate with others who share in its belief in abstinence for the express purpose of administering rehabilitation through salvation to those who are open to proselytization—the method is the message. Doc. No. 275 at 14. To say TSA does not have a First Amendment right to do so defies common sense and the law. The ARCs are not just "any business or organization providing services to the public[,]" akin to spas or dance halls. Doc. No. 280 at 16-18. They are residential churches operated by a religious organization—the "archetype of associations formed for expressive purposes[,]" Doc. No. 275 at 13—that serve as "outward, visible expressions of the Army's strong religious principles." *Id.* The heart of those religious principles is the abstinence-based program that teaches rehabilitation through salvation—the very definition of conduct "intended to be communicative" and reasonably "understood by the viewer to be communicative." *See, e.g.*, *Hernández-Gotay v. United States*, 985 F.3d 71, 80 (1st Cir. 2021) (citation omitted)

(Doc. No. 280 at 16); *see also* Doc. No. 281 at 3 (conceding the ARCs are a form of religious practice).

TSA cannot effectively advance through its own speech and expressive association a spiritually based, abstinence-only policy while simultaneously accommodating the use of substances that violate that policy. *See Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 63-66 (2006) (explaining that the government cannot force a speaker to accommodate a message that interferes with or contradicts its own message). Indeed, *303 Creative LLC v. Elenis*, another landmark precedent Plaintiffs ignore, makes clear that public accommodation laws do not trump First Amendment rights. 600 U.S. 570, 590-92 (2023); *see also* Doc. No. 275 at 14-15.

**Free Exercise.** Plaintiffs' continued insistence that *Smith* compels dismissal of TSA's free exercise claims (Doc. No. 280 at 13-15) ignores the church autonomy doctrine, overstates First Circuit precedent, and fails even to acknowledge the Supreme Court's holding in *Mahmoud v. Taylor*, 600 U.S. ----, 145 S. Ct. 2332, 2351 (2025). Specifically, Plaintiffs grossly misread *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008), and rely on *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525 (1st Cir. 1995), in contending that when *Smith* referred to "hybrid" claims, it did not really mean it. Doc. No. 280 at 15-16. But *Parker* expressly acknowledged the potential for hybrid claims and *Brown* on its facts runs into the brick wall of *Mahmoud*, 145 S. Ct. at 2361 ("[W]hen a law imposes a burden of the same character as that in Yoder, strict scrutiny is appropriate regardless of whether the law is neutral or generally applicable."), which Plaintiffs ignore. Here, TSA has shown that Plaintiffs' relief will, if granted, significantly burden its First Amendment rights several times over, entitling TSA to summary judgment on its hybrid claims.

## II. TSA did not waive its First Amendment rights.

Notably, Plaintiffs devote a large portion of their brief to the argument that TSA, in "knowingly and voluntarily" accepting federal funding for unrelated programs on the condition of general compliance with anti-discrimination law, *waived* its right to administer its ARC program consistent with its religious beliefs. This position—which applies exclusively to the Section 504 claim and thus cannot save the FHA claim—is untenable and simply ignores the law, including what many of the cases that Plaintiffs themselves rely on actually say.

From the unremarkable premise that Congress is generally able to set the conditions for federal funding, which a recipient is free to decline (Doc. No. 280 at 6-9), it does not follow that TSA *waived* its constitutional right to administer its residential churches consistent with its religious beliefs when it accepted federal funds. As Plaintiffs' own authority makes clear, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 219 (2022) (citation omitted); *Grove City Coll. v. Bell*, 465 U.S. 555, 575 (1984) (conditions of federal funding must be "reasonable and unambiguous"). "After all, when considering whether to accept federal funds, a prospective recipient would surely wonder not only what rules it must follow, but also what sort of penalties might be on the table." *Cummings*, 596 U.S. at 220.

Plaintiffs posit that in accepting federal funds for other programs, TSA was put "on notice" that it could—through private litigation—be (1) enjoined from providing exclusively abstinence-based, spiritual rehabilitation services at its ARCs, and (2) forced to conform its religious-based medication policy to accommodate secular principles of rehabilitation in a program that is not governed by any federal agreement. *See id.* This proposition fails for three reasons. *First*, rights that fall within the zone of church autonomy cannot be waived. *See* Doc. No. 275 at 18 (citing

*Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015)). *Second*, government is prohibited in the first instance from imposing conditions that impede constitutional rights beyond the funded program. *See Agency for Int'l Dev. v. All for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 221 (2013) (conditioning federal funding on "the affirmation of a belief that by its nature cannot be confined within the scope of the Government program" "violates the First Amendment"); *Rumsfeld*, 547 U.S. at 59 ("the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit") (citing cases and cleaned up); *accord Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (holding unconstitutional a benefits program forcing recipient to choose between the benefits or "abandoning … the precepts of her religion"); *see generally* Doc. No. 275 at 12 (the First Amendment "doubly protects" religious speech").

*Third*, even if waivable, there is no evidence TSA in fact waived, *i.e.*, "intentional[ly] relinquish[ed] or abandon[ed,]" its sacrosanct constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights.") (internal quotation marks and citation omitted); *see also Petruska v. Gannon Univ.*, 350 F. Supp. 2d 666, 682 (W.D. Pa. 2004), *aff'd in part*, 462 F.3d 294 (3d Cir. 2006) (various pronouncements to "voluntarily conform to the principle of nondiscrimination," including as a condition of federal funding, is not "a clear and unambiguous waiver" of First Amendment rights); *see also* Doc. No. 275 at 18-19.

In accepting federal grants—which undisputably said nothing about its First Amendment rights—TSA did not waive its religious liberties for programs that receive no such funding.

## CONCLUSION

TSA respectfully requests that the Court enter summary judgment in its favor on all claims.

Respectfully submitted,

Dated: September 15, 2025

/s/ *Daniel W. Wolff*
Daniel W. Wolff
Kathryn Erno
Christine Hawes
Crowell & Moring LLP
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116 (fax)
Email: dwolff@crowell.com
chawes@crowell.com (*pro hac vice*)
kerno@crowell.com

Andrew Holmer
Crowell & Moring LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email: aholmer@crowell.com

BARTON GILMAN LLP
*/s/Kevin M. Hensley*
Kevin M. Hensley (BBO#554824)
Barton Gilman, LLP
75 Federal Street, 9th floor
Boston, Massachusetts 02110
617-654-8200
khensley@bglaw.com

*Attorneys for Defendant The Salvation Army, a New York Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **REPLY IN SUPPORT OF THE SALVATION ARMY'S MOTION FOR SUMMARY JUDGMENT** was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 15, 2025.

*/s/ Daniel W. Wolff*
Daniel W. Wolff