**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**MARK TASSINARI, RICHARD ESPINOSA, AND JOSEPH ALMEIDA**

individually and on behalf of all others similarly situated,

Plaintiffs,

**v.**

**THE SALVATION ARMY, A NEW YORK CORPORATION,**

Defendant.

**CASE NO. 1:21-CV-10806-LTS**

**DEFENDANT THE SALVATION ARMY'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

## TABLE OF CONTENTS


SUPPLEMENTAL STATEMENT OF FACTS ........................................ 1

ARGUMENT ........................................ 2

I. TSA is entitled to judgment as a matter of law on Plaintiffs' statutory claims. ........................................ 2

II. Neither Section 504 nor the FHA requires TSA to fundamentally alter the ARC program. ........................................ 3

  A. A person is not "otherwise qualified" if they need an accommodation that fundamentally alters the program in question. ........................................ 4

  B. Plaintiffs' accommodations would fundamentally alter the ARC program. ........................................ 4

III. Each of Plaintiffs' three theories of liability fail as a matter of law. ........................................ 6

  A. The undisputed record does not support Plaintiffs' disparate treatment theory. ........................................ 7

    1. The record belies any discriminatory intent. ........................................ 7

    2. Plaintiffs' claims do not survive the McDonnell-Douglass framework. ........................................ 10

  B. The record does not support discrimination on a disparate impact theory. ........................................ 11

  C. Plaintiffs' desired accommodation is unreasonable as a matter of law. ........................................ 13

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barry v. Town of Rollinsford*,
No. Civ. 02-147M, 2003 WL 22290248 (D.N.H. Oct. 6, 2003) ....... 9

*Bello-Martinez v. Caribbean Sch., Inc.*,
No. 14-1609 (PG), 2014 WL 3895224 (D.P.R. Aug. 8, 2014) ....... 6

*Bercovitch v. Baldwin Sch., Inc.*,
133 F.3d 141 (1st Cir. 1998) ....... 14

*Borges ex. Rel. S.M.B.W. v. Serrano-Isern*,
605 F.3d 1 (1st Cir. 2010) ....... 2, 3

*Cordeiro v. Driscoll*,
No. 06-10854-DPW, 2007 WL 763907 (D. Mass. Mar. 8, 2007) ....... 3, 4

*Echevarria v. AstraZeneca Pharm. LP*,
856 F.3d 119 (1st Cir. 2017) ....... 14

*el Kouni v. Trs. of Bos. Univ.*,
169 F. Supp. 2d 1 (D. Mass. 2001) ....... 4

*Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*,
71 F. Supp. 3d 715 (E.D. Mich. 2014) ....... 5, 14

*Joseph M. v. Becker Coll.*,
531 F. Supp. 3d 383 (D. Mass. 2021) ....... 4

*Luceus v. Rhode Island*,
923 F.3d 255 (1st Cir. 2019) ....... 11, 12

*McGrath v. Tavares*,
757 F.3d 20 (1st Cir. 2014) ....... 3

*Nunes v. Mass. Dep't of Corr.*,
766 F.3d 136 (1st Cir. 2014) ....... *passim*

*Oxford Invs., L.P. v. City of Phila.*,
21 F. Supp. 3d 442 (E.D. Pa. 2014) ....... 11

*Pottgen v. Missouri State High Sch. Activities Ass'n*,
40 F.3d 926 (8th Cir. 1994) ....... 4

*PSI, LLC v. Nautilus Ins. Co.*,
No. 12-12073, 2014 WL 7409578 (D. Mass. Dec. 30, 2014)....................2, 10

*Raytheon Co. v. Hernandez*,
540 U.S. 44 (2003)....................7

*Reed v. LePage Bakeries, Inc.*,
244 F.3d 254 (1st Cir. 2001)....................14

*Reyes-Garay v. Integrand Assur. Co.*,
818 F. Supp. 2d 414 (D.P.R. 2011)....................4, 6

*Rios-Jimenez v. Principi*,
520 F.3d 31 (1st Cir. 2008)....................10

*Rivera v. Mora Dev. Corp.*,
624 F. Supp. 3d 80 (D.P.R. 2022)....................11, 12

*Ruskai v. Pistole*,
775 F.3d 61 (1st Cir. 2014)....................5

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015)....................13

*Tri-Cities Holdings LLC v. Tennessee Admin. Procs. Div.*,
260 F. Supp. 3d 913 (E.D. Tenn. 2017), *aff'd,* 726 F. App'x 298 (6th Cir. 2018)....................5

*Zobrest v. Catalina Foothills Sch. Dist.*,
509 U.S. 1, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993)....................15

**Statutes**

Fair Housing Act.................... *passim*

Section 504 of the Rehabilitation Act.................... *passim*

**Regulations**

24 C.F.R. § 100.500....................13

**Rules**

Fed. R. Civ. Proc. 56(2)....................2

Defendant The Salvation Army ("TSA") submits this supplemental brief pursuant to the Court's order requesting briefing on statutory bases for granting summary judgment. Doc. No. 294. The statutory bases are simply the other side of the same coin. The parties agree that TSA is a church and that TSA's prohibition of methadone and suboxone (together "MOUD") at its Adult Rehabilitation Centers ("ARCs") is based on TSA's religious doctrine of salvation through abstinence, manifested through its spiritual ministry to disassociated adults at its ARC programs, including those suffering from opioid use disorder ("OUD"). Doc. No. 281 at 1, 3-4, 12, 17-18 (Combined Statement of Material Facts ("SOF") ¶¶ 1, 5, 22, 32). Not only would compelling TSA to affirmatively engage in conduct contrary to this religious doctrine violate TSA's First Amendment rights several times over; it would result in a fundamental alteration of the spiritually based abstinence model of the program and unduly burden TSA's religious beliefs and practice. Neither Section 504 of the Rehabilitation Act ("Section 504") nor the Fair Housing Act ("FHA") requires this drastic result. Further, on the fully developed record, Plaintiffs cannot establish that TSA's religious-based medication policy is discriminatory against individuals with OUD in the first place under any theory of liability. Accordingly, TSA respectfully submits that summary judgment is appropriate for these additional statutory reasons, in addition to the fundamental constitutional bases set out in TSA's separate motion for summary judgment.

## SUPPLEMENTAL STATEMENT OF FACTS

Plaintiffs do not dispute that TSA is a church and that the ARC program ministers an abstinence-based model of spiritual rehabilitation to beneficiaries based on TSA's religious doctrine. Doc. No. 281 at 1, 3-4, 12, 17-18 (SOF ¶¶ 1, 5, 22, 32); Declaration of Katie Erno in Support of TSA's Supplemental Summary Judgment Motion ("Erno Decl. ISO Supp. MSJ"), Ex. 8 (Motion for Summary Judgment Hearing Transcript ("MSJ Hr'g Tr.") 42:22-23 (Plaintiffs' counsel: "We don't have quarrels about whether something is really their doctrine."))). Plaintiffs

also do not dispute that two medications that TSA prohibits at its ARCs due to its religious-based medication policy, informed by this religious doctrine, are methadone and buprenorphine—two out of three medications used to treat OUD. Doc. No. 281 at 12, 17-18 (SOF ¶¶ 22, 32). There is similarly no genuine dispute that (1) having OUD does not, by itself, render an applicant unqualified to participate in the ARC program; (2) beneficiaries are not discharged from the ARC program simply because they have OUD; or (3) individuals with OUD—including Plaintiffs—can and do participate in the ARC program. Supplemental Combined Statement of Material Facts ("SCSOF"), ¶¶ 1, 2. Far from singling out individuals with OUD for exclusion from the ARC program, TSA opens its doors to them on the same terms and conditions as any other applicant or beneficiary willing to abide by its requirements—including the core religious components. Doc. No. 281 at 14 (SOF, ¶ 27); SCSOF, ¶ 1. There is no evidence in the record that TSA's general prohibition of ongoing use of narcotics disproportionality affects individuals with OUD, as compared to those without OUD. And requiring the ARCs to accommodate the use of methadone and buprenorphine by beneficiaries to treat OUD, contrary to TSA's religious beliefs in abstinence, central to the ARC ministry, would undermine and unduly burden TSA's entire approach to the program. SCSOF ¶ 8; *see also* Doc. No. 275 (Memorandum in Support of TSA's Motion for Summary Judgment on First Amendment Grounds ("MISO MSJ First Amendment")).

## ARGUMENT

### I. TSA is entitled to judgment as a matter of law on Plaintiffs' statutory claims.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(2). Once the movant meets this burden, "the non-moving party… must come forward with specific admissible facts showing that there is a genuine issue for trial." *PSI, LLC v. Nautilus Ins. Co.*, No. 12-12073, 2014 WL 7409578, at *1 (D. Mass. Dec. 30, 2014) (citing *Borges ex. Rel.*

*S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)). "As a general rule, that requires the production of evidence that is 'significantly probative.'" *Borges*, 605 F.3d at 5 (citation omitted); *see also Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 142 (1st Cir. 2014) ("Generally speaking, a party cannot raise a genuine dispute merely 'by relying on the hope that the jury will not trust the credibility of the witness,' but must instead present 'some affirmative evidence' on the point, except perhaps where the testimony is 'inherently unbelievable.'") (quoting *McGrath v. Tavares*, 757 F.3d 20, 28 n.13 (1st Cir. 2014)).

The material facts are not in genuine dispute. TSA is entitled to judgment as a matter of law because (1) neither Section 504 nor the FHA requires TSA to fundamentally alter its religious, abstinence-based program to accommodate Plaintiffs' medication-assisted rehabilitation; and (2) Plaintiffs cannot establish the essential elements of their claims under any of the three theories advanced.

## II. Neither Section 504 nor the FHA requires TSA to fundamentally alter the ARC program.

Introducing methadone and buprenorphine into the ARC program "undermines the whole approach [TSA is] taking from a faith tradition to the rehabilitation of someone's life." Doc. No. 281 at 17-18 (SOF ¶ 32). Plaintiffs' claims are premised on the contention that MOUD is better (from a scientific standpoint) for rehabilitating individuals with OUD than TSA's religious-based abstinence model. Whatever the veracity of *that* proposition (and TSA disputes it), it is not material. TSA's right to summary judgment turns not on whether its approach to rehabilitation is "better," but on whether its approach is foreclosed by Section 504 and the FHA categorically. It is not. Both statutes—and the case law interpreting them—make clear that an entity (secular or religious) is not required to fundamentally alter the nature of its program or incur an undue burden to accommodate individuals with disabilities. *See, e.g., Cordeiro v. Driscoll*, No. 06-10854-DPW,

2007 WL 763907, at *7 (D. Mass. Mar. 8, 2007).[1] Because a fundamental alteration of the ARC program is precisely what Plaintiffs seek here, the statutory claims fail on their merits.

**A. A person is not "otherwise qualified" if they need an accommodation that fundamentally alters the program in question.**

The question of fundamental alteration first arises under the "otherwise qualified" prong of Plaintiffs' *prima facie* case. Both statutes require Plaintiffs to demonstrate, *inter alia*, that they are "otherwise qualified" for the ARC program notwithstanding their disability—meaning "(1) that [they] could satisfy the essential eligibility requirements of the program, *i.e.,* those requirements that bear more than a marginal relationship to the [program] at issue. And (2) if not, whether any reasonable accommodation by the [defendant] would enable the plaintiff to meet these requirements." *Joseph M. v. Becker Coll.*, 531 F. Supp. 3d 383, 396–97 (D. Mass. 2021) (citations omitted) (granting summary judgment on Section 504 claim because plaintiff failed to satisfy his "burden to establish he is qualified."); *el Kouni v. Trs. of Bos. Univ.*, 169 F. Supp. 2d 1, 4 (D. Mass. 2001) (it is plaintiff's burden to show a reasonable accommodation that "would have enabled him to perform the essential functions of the program."). "[A]n accommodation in this context cannot be considered reasonable if it would substantially change the fundamental nature of the program at issue." *Id.* at 4 (citation omitted); *Joseph M.*, 531 F. Supp. 3d at 396 (reasonable accommodations "do not require a modification of the essential nature of the program") (citations omitted); *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929–30 (8th Cir. 1994) (similar).

**B. Plaintiffs' accommodations would fundamentally alter the ARC program.**

Having OUD is not, by itself, a disqualifying condition (SCSOF ¶ 1), but ongoing use of narcotics that run afoul of TSA's abstinence-based model of rehabilitation, like methadone and

[1] The FHA and Rehabilitation Act are both analyzed under this framework. *See Reyes-Garay v. Integrand Assur. Co.*, 818 F. Supp. 2d 414, 436 n.29 (D.P.R. 2011) (collecting cases).

buprenorphine, is. Indeed, Plaintiffs do not dispute that "[i]t is TSA's sincerely held belief based on Salvationist doctrine that long-term use of narcotics to treat addiction is not true rehabilitation and runs contrary to its religious mission and practice at the ARC programs, and that true rehabilitation can only be obtained through abstinence." Doc. No. 281 at 17-18 (SOF ¶ 32) (citing, *inter alia*, the testimony of TSA's 30(b)(6) witness, Maj. Muhs, that "[b]eing forced to [permit methadone/buprenorphine] would be completely at odds with our religiously based view that fostering abstinence is critical to our approach to rehabilitation."); Erno Decl. ISO Supp. MSJ, Ex. 8 (MSJ Hr'g Tr. 42:22-23). It necessarily follows that to render Plaintiffs "otherwise qualified," TSA would need to make an exception to the eligibility requirements that fundamentally alters its abstinence-based model—*i.e.*, "the whole approach [TSA is] taking from a faith tradition to the rehabilitation of someone's life." Doc. No. 281 at 17-18 (SOF ¶ 32) (citing, *inter alia*, the testimony of Lt. Col. Betts, former ARC Commander). The ARC program cannot continue to be abstinence-based while simultaneously permitting ongoing use of methadone and buprenorphine (or any other narcotic for any purpose, including for treatment of any other medical condition). Plaintiffs' theory would render all abstinence-based programs that welcome individuals suffering from OUD obsolete. The law does not require this result. *See, e.g., Ruskai v. Pistole*, 775 F.3d 61, 80–81 (1st Cir. 2014) (plaintiff failed to state a Section 504 claim because the remedy she sought would constitute a fundamental alteration to the grantee's program.)*; Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 730 (E.D. Mich. 2014) (tenant was not entitled to an accommodation under the FHA for medical marijuana use because it would fundamentally alter the nature of the manager's operation by thwarting Congress' mission to provide drug-free federally assisted housing); *Tri-Cities Holdings LLC v. Tennessee Admin. Procs. Div.*, 260 F. Supp. 3d 913, 926–27 (E.D. Tenn. 2017),

*aff'd,* 726 F. App'x 298 (6th Cir. 2018) ("In cases involving waiver of applicable rules and regulations, the overall focus should be on whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.") (internal quotations omitted).

The maxim that public accommodation laws do not compel a fundamental alteration of public-facing programs applies with no less force when that fundamental alteration "undermines the entire approach" of a faith-based program of a church and, in so doing, burdens a church's First Amendment rights. Interpreting these laws as giving less importance to religious-based components fundamental to a program than other (non-religious-based) fundamental components would bring this Court straight back to the constitutional problems identified in TSA's initial motion. *See* Doc. No. 275 (MISO MSJ First Amendment).

## III. Each of Plaintiffs' three theories of liability fail as a matter of law.

Plaintiffs cannot sustain the rest of their *prima facie* case as a matter of law. A plaintiff asserting a claim under Section 504 must establish that (1) he is disabled; (2) he sought services from a covered entity; (3) he is "otherwise qualified" to receive those services; and (4) he was denied those services "solely by reason of [his] . . . disability." Doc. No. 218 at 8 (citing cases). "The FHA and Rehabilitation Act, as well as the Americans with Disabilities Act, utilize a similar legal framework and thus the analysis under these statutes is largely the same." *Reyes-Garay v. Integrand Assur. Co.*, 818 F. Supp. 2d 414, 436 n.29 (D.P.R. 2011) (collecting cases); *Bello-Martinez v. Caribbean Sch., Inc.*, No. 14-1609 (PG), 2014 WL 3895224, at *2 (D.P.R. Aug. 8, 2014) ("The prima facie case under the [Rehabilitation Act] mirrors that under the ADA, with only one relevant exception: Under the Rehabilitation Act, Plaintiff must show that he was excluded *solely by reason of his disability*.") (citation omitted) (emphasis added). Plaintiffs have advanced

three theories of disability discrimination: (1) intentional or disparate treatment; (2) disparate impact; and (3) failure to make a reasonable accommodation. Each theory fails as a matter of law.

### A. The undisputed record does not support Plaintiffs' disparate treatment theory.

To maintain a disparate treatment claim, Plaintiffs must establish that "the disability actually motivated the defendant's challenged adverse conduct." *Nunes*, 766 F.3d at 144 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003)). To prove disparate treatment, Plaintiffs must either point to (1) direct evidence of discriminatory intent; or (2) use the *McDonnell Douglas* burden-shifting framework. Doc. No. 218 at 24 (citing cases). Plaintiffs cannot do either; there simply is no direct evidence that TSA treats beneficiaries with OUD any differently than any other applicant or beneficiary who seeks long-term use of a narcotic.

#### 1. The record belies any discriminatory intent.

The evidence is undisputed that individuals diagnosed with OUD are welcomed into, and routinely participate in, the ARC program. OUD does not disqualify individuals from admission. SCSOF, ¶ 1. ARC records demonstrate that 941 individuals who self-identified their primary substance of abuse as opiates were admitted to the ARC program during relevant time periods, and that number is likely under-inclusive, since most applicants do not identify a primary substance abused. *Id*. As Plaintiffs concede in their Counter-Statement of Facts (Doc. 281 at 29-30), "[m]ost ARC participants have substance use disorders, and most younger participants have OUD." Beneficiaries who suffer from OUD are permitted to take other medications while participating in the ARC program, including Vivitrol, which is a form of MOUD. SCSOF ¶ 11; Doc. No. 281 at 14 (SOF ¶ 26). And all three named Plaintiffs were admitted to the ARC program at times when they were otherwise qualified, notwithstanding their respective OUD diagnoses. *See* Doc. No. 144 at 2-3 (Declaration of Plaintiff Tassinari ("Tassinari Decl.") ¶ 13, stating he was admitted to the

ARC program in 2018); Doc. No. 145 at 2 (Declaration of Plaintiff Espinosa ("Espinosa Decl.") ¶ 10, stating he completed the ARC program in 2010-2011 and was admitted again in 2018); Doc. No. 146 at 2 (Declaration of Plaintiff Almeida ("Almeida Decl.") ¶ 7, stating that he was admitted to the ARC program in 2009).

There is also no material dispute that TSA prohibits ongoing use of *any* narcotic, for *any* reason for all beneficiaries—whether they have OUD or not. SCSOF, ¶¶ 5-7. There is no exception to TSA's medication policy for any form of long-term use of narcotics. *Id*. Just like in *Nunes*, where the First Circuit affirmed summary judgment in favor of defendants on a disparate treatment claim where plaintiffs were denied HIV medications under a program that also excluded other medications, TSA treats individuals with OUD the same as others—they "have not been singled out in this respect: many other medications are also excluded from the program." 766 F.3d at 145. Plaintiffs therefore cannot establish, as required, that they were excluded from the ARC program or denied the benefits "solely by reason of [their] disability," or even that their disability was a contributing factor. This is particularly true since it is undisputed that the ARC's medication policy is due to TSA's religious belief that the best way to help individuals with addiction to rehabilitate (including those with OUD) is through its spiritual program. *See* Section II, *supra*; *see also* Doc. No. 275 (MISO MSJ First Amendment).

Plaintiffs have premised their disparate treatment claim on the innocuous fact that TSA *may* permit short-term use of narcotics (including, but not limited to, methadone or buprenorphine) for pain management. This argument is a red herring and does not create a genuine issue of material fact. First, the distinction turns on the duration of the use of the medication—which is significant because of TSA's religious beliefs—not the individual's underlying diagnosis. SCSOF ¶ 5. Correlation is not causation. Second, Plaintiffs have not alleged that they were denied access to

the ARCs because they sought to use MOUD on a short-term basis; they have consistently premised their discrimination claims on TSA's failure to allow ongoing, indefinite access to these medications. *See, e.g.,* Erno Decl. ISO Supp. MSJ, Ex. 7 (Deposition Transcript of Plaintiff's Expert Witness Dr. Rodriguez at 57:3-58:13 (testifying that "[t]here's no point at which [MOUD treatment] should be discontinued per se…some people choose to be on treatment long-term….at the same time I have had patients that have come off treatment after, you know, two, three, five years and sustained remission from substance abuse.")); *see also* Doc. No. 144 at 2 (Tassinari Decl. ¶ 7); Doc. No. 145 at 4 (Espinosa Decl. ¶ 24); Doc. No. 146 at 2 (Almeida Decl. ¶ 7) (all three Plaintiffs declaring that they need methadone and/or buprenorphine throughout their stay at the ARC). Third, the only evidence of any exceptions actually made to the use of methadone or buprenorphine for any reason is (1) testimony from Rev. Coombs that methadone was allowed once, ten years ago, and Rev. Coombs had "not a clue" what the individual's condition was or whether he took the medication for "more than a few days" (SCSOF ¶ 6) and (2) testimony from Plaintiffs' witness, Mr. Arcidiacono, who claims that he was permitted to use buprenorphine to treat his OUD for "a few days" at an ARC. *Id.* ¶ 7. This evidence does not create a genuine issue of fact that individuals with OUD are treated differently from those without OUD.

There is simply no direct evidence that Plaintiffs' *status* as individuals with OUD (as opposed to their *conduct* of taking particular narcotic medications) actually motivated TSA's prohibition of long-term use of narcotics or that the policy is discriminatory against individuals with OUD on its very terms. *See Barry v. Town of Rollinsford*, No. Civ. 02-147M, 2003 WL 22290248, at *5 (D.N.H. Oct. 6, 2003) (granting summary judgment on FHA claim where, *inter alia*, none of the challenged regulations "expressly limit the housing opportunities available to handicapped elderly persons" and plaintiffs "also failed [to] produce sufficient evidence to go forward on their claim

that discriminatory intent motivated defendant's application of the challenged zoning ordinances."); *Nunes*, 766 F.3d at 145 (affirming summary judgment on Section 504 and ADA claims where there was "no evidence of any intent by the department to impose that burden on the plaintiffs because they have HIV"). To the contrary, the undisputed evidence shows that the motivation behind TSA's spiritually based abstinence model is to help all otherwise qualified individuals rehabilitate, including those with OUD. *See, e.g.,* Doc. No. 281 at 3-4, 7-8, 12 (SOF ¶¶ 4, 5, 16, 17, 22).

**2. Plaintiffs' claims do not survive the *McDonnell-Douglass* framework.**

Though Plaintiffs have yet to advance a theory under the *McDonnell-Douglas* burden-shifting framework, any attempt to do so would be futile. Under this approach, a plaintiff must first show by a preponderance of the evidence that they have established all elements of the *prima facie* case. *See, e.g., Rios-Jimenez v. Principi*, 520 F.3d 31, 40-41 (1st Cir. 2008). Then, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged decision and to produce credible evidence to show that the reason advanced was the real reason for the challenged action. *Id*. The burden then shifts back to the plaintiff "to establish that the proffered reason is pretext intended to conceal discriminatory intent." *Id.* "The ultimate burden of proving unlawful action rests at all times with [plaintiff]." *Id.* (affirming grant of defendant's summary judgment motion of plaintiff's claims under the Rehabilitation Act using the *McDonnell Douglas* framework.); *see also PSI, LLC v. Nautilus Ins. Co.*, No. 12-12073-DJC, 2014 WL 7409578, at *3 (D. Mass. Dec. 30, 2014) (same, under the FHA).

The undisputed factual record does not support Plaintiffs' *prima facie* case. *See* Sections II, III.a.1, *supra.* Moreover, TSA has articulated a legitimate, non-discriminatory reason for the challenged policy: its sincerely held religious beliefs. *See* Section II, *supra*; Doc. No. 275 (MISO MSJ First Amendment). There is zero evidence that these religious beliefs are pretext for

discrimination. Quite the opposite—Plaintiffs do not question the sincerity of TSA's abstinence-based policy. *E.g.,* Doc. No. 281 at 1, 3-4, 12, 17-18 (SOF ¶¶ 1, 5, 22, 32); Erno Decl. ISO Supp. MSJ, Ex. 8 (MSJ Hr'g Tr. 42:22-23).

**B. The record does not support discrimination on a disparate impact theory.**

The record similarly fails to support a disparate impact theory of liability, which requires Plaintiffs to "(1) identify a challenged practice or policy and 'pinpoint' Defendant's use of it; (2) 'demonstrate a disparate impact on a group characteristic that falls within the protective ambit of Section 504' [or the FHA]; and (3) 'demonstrate a causal relationship between the identified practice and the disparate impact.'" Doc. No. 218 at 25 (citing cases).

There is no evidence that TSA's facially neutral medication policy *disparately* impacts individuals with OUD, and thus, Plaintiffs fail to meet the required standard. *See, e.g., Nunes,* 766 F.3d at 145 (to maintain a disparate impact claim, plaintiffs must point to facts showing that TSA's policy "fall[s] more harshly on one group than another and cannot be justified by business necessity."); *Rivera v. Mora Dev. Corp.*, 624 F. Supp. 3d 80, 92 (D.P.R. 2022) (*prima facie* disparate impact case requires evidence of "a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices") (citations omitted). "[A] plaintiff must prove that defendants' policies have a *greater* adverse impact on persons with disabilities than on non-protected persons." *Oxford Invs., L.P. v. City of Phila.*, 21 F. Supp. 3d 442, 456-57 (E.D. Pa. 2014) (citation omitted, emphasis added). Typically, this is demonstrated through statistics, and "a *prima facie* case may be established where gross statistical disparities [are] shown." *Id.* at 457 (citation omitted); *Luceus v. Rhode Island*, 923 F.3d 255, 257 (1st Cir. 2019) ("Except in unusual cases of overwhelming evidence, intuition is not to be trusted, and in order to reach the required prima facie threshold . . . evidence of a statistical

character is needed to show that any disparities are 'unlikely to have occurred by chance.'") (citations omitted).

Here, Plaintiffs have failed to adduce any statistically sound evidence to establish their *prima facie* case. Plaintiffs offer no way of proving that TSA's medication policy may have a disparate effect on individuals with OUD, much less that the policy creates "gross statistical disparities." Instead, Plaintiffs' disparate treatment argument rests on nothing more than rank conjecture that, because *some* individuals with OUD are excluded because of the medication policy, individuals with OUD are necessarily disparately impacted. This is insufficient to sustain a disparate impact claim. Plaintiffs have referenced TSA's call logs and emails (which say only that methadone and buprenorphine are not allowed—*not* that individuals with OUD cannot participate) and, from there, surmise that hundreds of individuals with OUD—who may or may not be otherwise qualified—are turned away routinely, ergo individuals with OUD are disparately impacted by the policy. *E.g.,* Doc. No. 168 at 12-13. This leap in logic necessarily fails for several reasons. First, the mere fact that an individual uses methadone or buprenorphine, which can be legitimately prescribed for conditions other than OUD, does not mean that the individual has OUD. SCSOF ¶ 12. Nor does the fact that an individual has OUD mean that they want or need methadone or buprenorphine. *Id.* ¶ 13. But more fundamentally, Plaintiffs offer their numbers in a bubble, without any comparators to show that this facially neutral policy, which generally prohibits numerous medications for a range of conditions, disproportionately impacts individuals with OUD, as opposed to those without OUD. *See Luceus*, 923 F.3d at 257 ("to reach the required *prima facie* threshold a plaintiff ordinarily must demonstrate that there is 'a significant statistical disparity[.]'"); *see also Rivera*, 624 F. Supp. 3d at 92; *Nunes,* 766 F.3d at 145. The only relevant evidence on point is that hundreds of individuals with OUD are routinely admitted into, and

participate in, ARC programs. *See, e.g.,* SCSOF ¶ 1. This undisputed fact necessarily defeats Plaintiffs' discrimination theories as to both disparate treatment and disparate impact.

Even if Plaintiffs could make the requisite evidentiary showing of a *prima facie* case of disparate impact, TSA would still be entitled to judgment as a matter of law. A policy that has a discriminatory effect is still lawful if it is "necessary to achieve one or more substantial, legitimate, nondiscriminatory interests" and "those interests could not be served by another practice that has a less discriminatory effect." 24 C.F.R. § 100.500; *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 541 (2015) ("[t]his step of the analysis is analogous to the business necessity standard under Title VII and provides a defense against disparate-impact liability."). Requiring applicants and beneficiaries to adhere to the religious, abstinence-based rehabilitation model as a condition of participation is as necessary to the integrity of the ARC program as any of the other religious requirements, like attending worship services and meeting with a spiritual counselor. Stripped of those requirements, the ARC program loses its very essence and mission. There is no other way for TSA to minister abstinence-based, spiritual rehabilitation other than by enforcing adherence to its religious-based medication policy. *See, e.g.*, SCSOF ¶ 8 (quoting testimony of Maj. Beth Muhs stating her personal belief that "The Salvation Army would elect to shut down the ARC programs rather than operating them in a way that violates The Salvation Army's spiritual tenets."). Plaintiffs' disparate impact claim necessarily fails.

**C. Plaintiffs' desired accommodation is unreasonable as a matter of law.**

Plaintiffs third and final theory of disability discrimination—failure to reasonably accommodate—also fails. As detailed above, Section II, *supra*, Plaintiffs seek an accommodation that is unreasonable as a matter of law—namely, to make exceptions to the religious-based

medication policy of TSA, a church, to permit narcotics in TSA's otherwise abstinence-based ARC programs.

To defeat summary judgment, Plaintiffs must point to facts that show both "(1) due to the plaintiff's disability, he needs an individualized change to a covered entity's facially neutral policies, practices, or procedures if he is to meaningfully access some opportunity; but (2) the entity unjustifiably failed to make that change." Doc. No. 218 at 13-14 (citing cases). "Plaintiffs bear the burden of demonstrating that their proposed accommodations would enable them to access the services provided by Defendant, and that the accommodations are feasible for Defendant 'at least on the face of things.'" *Id.* (citing *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 127 (1st Cir. 2017) and *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 258-9 (1st Cir. 2001)). If Plaintiffs succeed in carrying this burden, Defendant can show that the proposed accommodations are not reasonable, because they would result in a fundamental alteration of Defendant's services or impose an "undue burden." *Id.*

Plaintiffs' requested accommodation is not "feasible on its face" because it is undisputed that it would "undermine[] the whole approach [TSA is] taking from a faith tradition to the rehabilitation of someone's life,"— *i.e.*, would necessitate programmatic changes that would in turn violate TSA's First Amendment rights under the Religion Clauses. *See* Section II, *supra* (relating to fundamental program changes); Doc. No. 275 (MISO MSJ First Amendment). Even if that were "feasible," such a change "call[s] for 'substantial modifications' of defendant's program, [such that] the accommodations are not reasonable, and will not be required." *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 152 (1st Cir. 1998) (vacating preliminary injunction issued in favor of plaintiff requiring that a school admit him despite disability-related disciplinary issues); *Forest City Residential Mgmt., Inc.,* 71 F. Supp. 3d at 730 (granting summary judgment on a FHA

claim where requested accommodation would fundamentally alter housing program); *see also* Section II, *supra.*

**CONCLUSION**

For the reasons stated above, the Court can grant summary judgment to TSA without reaching the important constitutional issues implicated in this case because Plaintiffs cannot demonstrate liability under Section 504 or the FHA under any theory. But, to be clear, if the Court determines that it cannot grant TSA summary judgment on statutory grounds alone, TSA is still entitled to summary judgment for the constitutional reasons previously briefed and argued (Doc. No. 275 (MISO MSJ First Amendment)), and doing so would not run afoul of the "prudential rule" of constitutional avoidance given that the constitutional issues have been fully briefed and provide a complete defense to Plaintiffs' claims. *Zobrest v. Catalina Foothills Sch. Dist.,* 509 U.S. 1, 7-8, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993).

Respectfully submitted,

Dated: February 27, 2026

/s/ *Daniel W. Wolff*

Daniel W. Wolff (*pro hac vice*)
Kathryn Erno (*pro hac vice*)
Christine Hawes (*pro hac vice*)
Crowell & Moring LLP
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116 (fax)
Email: dwolff@crowell.com
kerno@crowell.com
chawes@crowell.com

Andrew Holmer (*pro hac vice*)
Crowell & Moring LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email: aholmer@crowell.com

BARTON GILMAN LLP

*/s/Kevin M. Hensley*
Kevin M. Hensley (BBO#554824)
Barton Gilman, LLP
75 Federal Street, 9th floor
Boston, Massachusetts 02110
Telephone: (617) 654-8200
Facsimile: (617) 482-5350
khensley@bglaw.com

*Attorneys for Defendant The Salvation Army, a New York Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **THE SALVATION ARMY'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT** was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 27, 2026.

*/s/ Daniel W. Wolff*
Daniel W. Wolff