**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK TASSINARI, RICHARD ESPINOSA, and JOSEPH ALMEIDA, individually and on behalf of all others similarly situated,<br>*Plaintiffs,*<br>v.<br>THE SALVATION ARMY, A NEW YORK CORPORATION,<br>*Defendant.* | Civil Action No. 1:21-cv-10806-LTS |

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 297]**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

SUPPLEMENTAL FACTS ..... 2

ARGUMENT ..... 3

I. The record supports each of Plaintiffs' theories of discrimination. ..... 3

A. A factfinder could find that TSA's policy constitutes facial intentional discrimination. ..... 3

B. A factfinder could find that TSA's challenged policy has the "effect" of discriminating based on disability. ..... 9

C. As this Court has already recognized, a factfinder could find that TSA's policy precludes reasonable accommodations based on disability. ..... 10

II. Both the law and the disputed facts preclude summary judgment based on TSA's "fundamental alteration" defense. ..... 11

CONCLUSION ..... 15

REQUEST FOR ORAL ARGUMENT ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate*,
469 U.S. 287 (1985) .......... 10, 11, 12, 13

*Astralis Condo. Ass'n v. Sec'y, U.S. H.U.D.*,
620 F.3d 62 (1st Cir. 2010) .......... 1

*Austin v. Mainely Constr. Rentals, LLC*,
2022 WL 539311 (D. Me. Feb. 23, 2022) .......... 14

*Bangerter v. Orem City Corp.*,
46 F.3d 1491 (10th Cir. 1995) .......... 12

*Barry v. Town of Rollinsford*,
2003 WL 22290248 (D.N.H. Oct. 6, 2003) .......... 5

*Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*,
179 F.3d 725 (9th Cir. 1999) .......... 11, 13

*Bercovitch v. Baldwin Sch., Inc.*,
133 F.3d 141 (1st Cir. 1998) .......... 12

*Bragdon v. Abbott*,
524 U.S. 624 (1998) .......... 8

*Brookline Opportunities, LLC v. Town of Brookline*,
682 F. Supp. 3d 168 (D.N.H. 2023) .......... 4

*C.K. Smith & Co. v. Motiva Enters. LLC.*,
269 F.3d 70 (1st Cir. 2001) .......... 1

*Caballero v. New York State Dep't of Corr. & Cmty. Supervision*,
349 F.R.D. 45 (N.D.N.Y. 2024) .......... 4

*Chadwick v. WellPoint, Inc.*,
561 F.3d 38 (1st Cir. 2009) .......... 6

*Chalk v. U.S. Dist. Ct. Cent. Dist. of California*,
840 F.2d 701 (9th Cir. 1988) .......... 13

*Cmty. House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007) .......... 4, 12

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*,
421 F.3d 170 (3d Cir. 2005)....................4, 5

*Cook v. State of R.I., Dep't of Mental Health, Retardation, & Hosps.*,
10 F.3d 17 (1st Cir. 1993)....................13

*Cordeiro v. Driscoll*,
2007 WL 763907 (D. Mass. Mar. 8, 2007)....................12

*Costin v. Glens Falls Hosp.*,
103 F.4th 946 (2d Cir. 2024)....................1

*Courage to Change Ranches Holding Co. v. El Paso Cnty., Colorado*,
73 F.4th 1175 (10th Cir. 2023)....................4

*Curto v. A Country Place Condo. Ass'n, Inc.*,
921 F.3d 405 (3d Cir. 2019)....................4

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020)....................10

*Doe v. Deer Mountain Day Camp, Inc.*,
682 F. Supp. 2d 324 (S.D.N.Y. 2010)....................4

*Doe v. Salvation Army*,
685 F.3d 564 (6th Cir. 2012)....................1

*Dudley v. Hannaford Bros. Co.*,
333 F.3d 299 (1st Cir. 2003)....................10, 13, 14

*E.E.O.C. v. Hussey Copper Ltd.*,
696 F. Supp. 2d 505 (W.D. Pa. 2010)....................10

*E.S. by & through R.S. v. Regence BlueShield*,
2024 WL 1173805 (W.D. Wash. Mar. 19, 2024)....................5

*EEOC v. Mod. Grp., Ltd.*,
725 F. Supp. 3d 577 (E.D. Tex. 2024)....................5

*el Kouni v. Trs. of Bos. Univ.*,
169 F. Supp. 2d 1 (D. Mass. 2001)....................12

*Gather Church v. Lewis Cnty.*,
2025 WL 3771421 (W.D. Wash. Dec. 31, 2025)....................5

*Gillen v. Fallon Ambulance Serv., Inc.*,
283 F.3d 11 (1st Cir. 2002)....................8

*Godwin v. George Washington, LP*,
2022 WL 18027827 (W.D. Pa. Dec. 30, 2022)....10

*Guckenberger v. Bos. Univ.*,
974 F. Supp. 106 (D. Mass. 1997)....4, 9

*Hall v. U.S. Postal Serv.*,
857 F.2d 1073 (6th Cir. 1988)....14

*Happel v. Bishop*,
2024 WL 1508561 (W.D. Pa. Feb. 22, 2024)....1

*Henderson v. Bodine Aluminum, Inc.*,
70 F.3d 958 (8th Cir. 1995)....8

*Joseph M. v. Becker Coll.*,
531 F. Supp. 3d 383 (D. Mass. 2021)....12

*Kiman v. New Hampshire Dep't of Corr.*,
451 F.3d 274 (1st Cir. 2006)....8, 9

*Klossner v. IADU Table Mound MHP, LLC*,
565 F. Supp. 3d 1118 (N.D. Iowa 2021)....15

*Larkin v. State of Mich. Dep't of Soc. Servs.*,
89 F.3d 285 (6th Cir. 1996)....4, 12

*Lovell v. Chandler*,
303 F.3d 1039 (9th Cir. 2002)....11

*M.C. v. Jefferson Cnty., N.Y.*,
2024 WL 3992527 (N.D.N.Y. Aug. 29, 2024)....1

*McGregor v. Nat'l R.R. Passenger Corp.*,
187 F.3d 1113 (9th Cir 1999)....10

*McGugan v. Aldana-Bernier*,
752 F.3d 224 (2d Cir. 2014)....8

*McKissick v. Cnty. of York*,
2010 WL 1930132 (M.D. Pa. Mar. 19, 2010)....1

*McWright v. Alexander*,
982 F.2d 222 (7th Cir. 1992)....5

*MX Group, Inc. v. City of Covington*,
293 F.3d 326 (6th Cir. 2002)....11

*New Directions Treatment Servs. v. City of Reading*,
490 F.3d 293 (3d Cir. 2007)....................................................................................5

*Nunes v. Mass. Dep't of Correction*,
766 F.3d 136 (1st Cir. 2024)....................................................................................7

*P.G. v. Jefferson Cnty., New York*,
2021 WL 4059409 (N.D.N.Y. Sept. 7, 2021)..........................................................1, 5

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013)....................................................................................5

*Pandazides v. Va. Bd. of Educ.*,
946 F.2d 345 (4th Cir. 1991)....................................................................................12

*Parker v. Universidad de P.R.*,
225 F.3d 1 (1st Cir. 2000)....................................................................................1

*Pesce v. Coppinger*,
355 F. Supp. 3d 35 (D. Mass. 2018)..........................................................1, 5, 14

*PGA Tour, Inc. v. Martin*,
532 U.S. 661 (2001)..........................................................................10, 12, 15

*Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*,
71 F. Supp. 3d 715 (E.D. Mich. 2014)....................................................................15

*Pottgen v. Missouri State High Sch. Activities Ass'n*,
40 F.3d 926 (8th Cir. 1994)....................................................................................13

*Reid v. BCBSM, Inc.*,
984 F. Supp. 2d 949 (D. Minn. 2013)....................................................................8

*Rodriguez v. ConAgra Grocery Prods. Co.*,
436 F.3d 468 (5th Cir. 2006)....................................................................................10

*Rokita v. Pennsylvania Dep't of Corr.*,
273 A.3d 1260 (Pa. Commw. Ct. 2022)....................................................................1

*Ruskai v. Pistole*,
775 F.3d 61 (1st Cir. 2014)....................................................................................9

*Sch. Bd. of Nassau Cnty. v. Arline*,
480 U.S. 273 (1987)..........................................................................8, 12, 13

*Se. Cmty. Coll. v. Davis*,
442 U.S. 397 (1979)....................................................................................11

*Smith v. Aroostook Cnty.*,
376 F. Supp. 3d 146 (D. Me. 2019), *aff'd*, 922 F.3d 41 (1st Cir. 2019)....................1, 9, 10, 12

*Smith v. Spizzirri*,
601 U.S. 472 (2024)..........................................................................................12

*Strickland v. Delaware Cnty.*,
2022 WL 1157485 (E.D. Pa. Apr. 19, 2022) ..............................................................1

*Tri-Cities Holdings LLC v. Tennessee Admin. Procs. Div.*,
260 F. Supp. 3d 913 (E.D. Tenn. 2017),
*aff'd*, 726 F.App'x 298 (6th Cir. 2018)....................................................................14

*U.S. v. Asare*,
2018 WL 2465378 (S.D.N.Y. June 1, 2018) ...........................................................5, 14

*UAW v. Johnson Controls, Inc.*,
499 U.S. 187 (1991)..............................................................................................4

*United States v. Columbus Country Club*,
1992 WL 189403 (E.D. Pa. July 30, 1992)..............................................................4, 11

*United States v. Hughes Mem'l Home*,
396 F. Supp. 544 (W.D. Va. 1975) .........................................................................11

*Ward v. Massachusetts Health Rsch. Inst., Inc.*,
209 F.3d 29 (1st Cir. 2000).....................................................................................14

*Washington v. Indiana High Sch. Athletic Ass'n, Inc.*,
181 F.3d 840 (7th Cir. 1999) ..................................................................................13

*Zinski v. Liberty Univ., Inc.*,
777 F. Supp. 3d 601 (W.D. Va. 2025) ......................................................................4

**Statutes**

29 U.S.C. §705(20)(D)...........................................................................................8

42 U.S.C. §3604.......................................................................................................8

42 U.S.C. §3607(a) ..................................................................................................1

42 U.S.C. §12113(b) ................................................................................................8

**Regulations**

24 C.F.R. §8.4(b)(4)..................................................................................................9

24 C.F.R. §8.12(a)......................................................................................................9

34 C.F.R. §104.52(a)(4) ....................................................................................................9

45 C.F.R. §84.68(b)(3)(i) ....................................................................................................9

45 C.F.R. §84.68(b)(8) ....................................................................................................9

**Other Authorities**

H.R. Rep. No. 100–711 (1988) ....................................................................................12

## INTRODUCTION

The Salvation Army (TSA) categorically excludes from its Adult Rehabilitation Centers (ARCs) all individuals who take prescribed methadone or buprenorphine medication (MOUD) to treat opioid use disorder (OUD). Courts have repeatedly held that a categorical policy barring recipients of government-supported services from accessing MOUD constitutes unlawful disability discrimination.[1] Likewise here, construing all facts and inferences for Plaintiffs as required on summary judgment, *C.K. Smith & Co. v. Motiva Enters. LLC.*, 269 F.3d 70, 72 (1st Cir. 2001), the factfinder could find that TSA's categorical MOUD ban constitutes (1) disparate treatment of individuals treating their OUD with MOUD, (2) the imposition of criteria with the unlawful effect of screening out disabled individuals, and/or (3) failure to accommodate.

TSA first sought summary judgment only on the ground that it has a First Amendment right to discriminate, despite its promise to the government not to do so in exchange for millions in federal funds.[2] Now TSA seeks judgment under the statutes, arguing that the Rehabilitation Act (§504) and Fair Housing Act (FHA) allow discrimination against individuals with disabilities based on religious belief. Doc. No. 298 (Mot.). But §504 has no religious exception, *see Doe v. Salvation Army*, 685 F.3d 564, 571 (6th Cir. 2012), and TSA does not dispute its ARCs do not fall within the FHA's exemption for religious discrimination, 42 U.S.C. §3607(a). TSA's asserted religious motive thus provides no *statutory* defense for its policy.

TSA's statutory argument essentially is that *any* government-funded service provider may

---

[1] *See, e.g.*, *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 42, 47 & n.4 (D. Mass. 2018) (categorically prohibiting inmates' access to methadone "discriminatory on its face" under ADA); *Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 159-61 (D. Me. 2019) (barring access to buprenorphine constituted disparate treatment and failure to accommodate), *aff'd*, 922 F.3d 41 (1st Cir. 2019); *Happel v. Bishop*, 2024 WL 1508561, at *7 (W.D. Pa. Feb. 22, 2024) (buprenorphine); *Strickland v. Delaware Cnty.*, 2022 WL 1157485, at *3 (E.D. Pa. Apr. 19, 2022) (methadone); *Rokita v. Pennsylvania Dep't of Corr.*, 273 A.3d 1260, 1274 (Pa. Commw. Ct. 2022) ("disability-related medication to treat opioid use disorder"); *P.G. v. Jefferson Cnty., New York*, 2021 WL 4059409, at *4-5 (N.D.N.Y. Sept. 7, 2021) (methadone); *McKissick v. Cnty. of York*, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (methadone); *cf. M.C. v. Jefferson Cnty., N.Y.*, 2024 WL 3992527, at *1 (N.D.N.Y. Aug. 29, 2024) (consent decree); Wang Decl. Exs. B-D, H-I, W-X (settlements); *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 955 (2d Cir. 2024) (plaintiff stated §504 claim challenging hospital's "blanket policies" of testing and reporting all patients who receive Subutex). Courts "rely interchangeably" on cases applying §504, the ADA, and FHA. *Parker v. Universidad de P.R.*, 225 F.3d 1, 4 (1st Cir. 2000); *Astralis Condo. Ass'n v. Sec'y, U.S. H.U.D.*, 620 F.3d 62, 66 (1st Cir. 2010).

[2] This Court already held that Plaintiffs are likely to succeed on at least some of their claims, while reserving consideration of TSA's religious defense. Doc. No. 218.

choose not to serve people who take MOUD to treat their disability, based on a firmly held subjective opinion about how best to treat OUD. TSA says it applies its policy because TSA believes "a drug is a drug." Yet, assessed objectively based on facts and science, MOUD is not the same as heroin, fentanyl, or any of the opioids that might have led to a person's OUD disability. It is settled medically that MOUD is life-saving, standard-of-care treatment for the brain disorder which is OUD. People with OUD are not able to become "addicted" to MOUD. For many, MOUD is the most or only effective treatment for their disability. Categorical policies like TSA's, fueled by stigma and stereotypes contrary to objective medical understanding, are precisely what §504 and the FHA are designed to prevent.

TSA attempts to drape its First Amendment arguments in statutory language by contending that §504 and the FHA do not require "fundamental" program alterations, and that excluding individuals treating OUD with MOUD is "fundamental" to the ARCs. But courts long ago rejected this type of circular reasoning, which if accepted would eviscerate the anti-discrimination laws by allowing *any* provider of social services (religious or not) to define the discrimination itself as "fundamental" to their program. *See infra* at 11-13. "Fundamental alteration" simply is no defense to a policy that *facially* discriminates, as TSA's does, nor is it a defense to discrimination that is rooted in stigma and bias, such as the misconception that MOUD is a "drug" like any other "addictive" narcotic. Moreover, even if TSA's policy were not facially discriminatory or rooted in bias, TSA still could take no refuge in a "fundamental alteration" defense because the evidence in this record shows that enjoining TSA's categorical exclusion policy does not require TSA to alter any of its services or programming, and TSA could accommodate at least some class members. TSA's motion should be denied.

## SUPPLEMENTAL FACTS

TSA bars from its ARCs all individuals who treat their OUD with prescribed MOUD, without exception. Doc. No. 281/287 (Stmnt. of Facts (SoF)) 71-75, Supp. Stmnt. of Facts (SSF) 4(b). TSA may allow ARC participants individualized permission to take methadone or buprenorphine for conditions *other* than OUD. SoF 78. TSA also permits access to other

prescription medications, including those that may be "addictive" or subject to "abuse," but it denies those same accommodations to people who take MOUD. SoF 84-85, SSF 5(c), 29-30.

MOUD is the standard-of-care treatment for OUD. SoF 40-43; SSF 14-19. For some people, MOUD is the most or *only* effective treatment for their condition. SoF 48; SSF 17-18. Individuals with OUD do not and cannot get "addicted" to MOUD. SoF 42, 45; SSF 32. There is medical consensus that denying access to MOUD is harmful and ineffective. SoF 40-43, 48; SSF 15, 17. A belief that individuals with OUD should not be permitted to access MOUD medications is contrary to medical understanding and not objectively reasonable. SoF 39-48; SSF 14-15. TSA's opposition to MOUD stems from stigma that a "drug is a drug." SSF 16. That stigma informed the outdated and erroneous Talbott medical guidance on which TSA claims its policy is based (before doctors understood OUD as a brain disorder which alters the brain's operation). SoF 36-37, 80; SSF 31. The federal government has made clear that its policy is to expand access and counter opposition to MOUD. SSF 19-20. Denying access to MOUD harms public health and imposes crushing costs on all levels of government. SoF 35, 38, 40, 95; SSF 14, 19.

TSA could, as a practical matter, allow ARC participants to access MOUD. SoF 82-93; SSF 21-27. Doing so would not require TSA to change its program at all—it could continue providing the same housing, counseling, education, recreation, "work therapy," and even preach the same message, including that not taking MOUD is the better course. SoF 59; SSF 27, 33. Other social services and housing providers promote "abstinence" while permitting individuals with OUD to take prescribed MOUD. SSF 34. TSA itself operates such programs through its Harbor Light Centers, where TSA allows participants access to MOUD. SoF 82-83; SSF 35-37.

## ARGUMENT

### I. The record supports each of Plaintiffs' theories of discrimination.

#### A. A factfinder could find that TSA's policy constitutes facial intentional discrimination.

TSA ignores both the law and the record in moving for summary judgment on Plaintiffs' disparate treatment theory. Summary judgment must be denied because a reasonable factfinder,

construing the evidence in Plaintiffs' favor, could find both that (1) TSA's categorical MOUD ban is facially discriminatory, regardless of TSA's motive, and (2) TSA's categorical MOUD ban is in fact rooted in unfounded stereotypes about the "addictive" nature of MOUD, contrary to medical consensus. Either theory establishes intentional discrimination.[3]

First, TSA is fundamentally mistaken in arguing that a disparate treatment claim requires proof of animus or ill will. When a defendant "expressly treats someone protected by" §504 or the FHA "in a different manner than others, a plaintiff need not prove" any "malice or discriminatory animus … to make out a case of intentional discrimination." *Courage to Change Ranches Holding Co. v. El Paso Cnty., Colorado*, 73 F.4th 1175, 1193 (10th Cir. 2023) (cleaned up). Rather, "[t]he plaintiff is only required to 'show that a protected characteristic played a role in the defendant's decision to treat her differently.'" *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005). "[D]iscrimination is 'intentional' when it reflects a deliberate choice to take the discriminatory act." *Caballero v. New York State Dep't of Corr. & Cmty. Supervision*, 349 F.R.D. 45, 54 (N.D.N.Y. 2024) (policy screening out prisoners for program based on mental health status was "but-for cause" and "intentional discrimination").[4]

Here, TSA made a "deliberate choice" to categorically deny access to its ARCs to individuals treating their OUD with prescribed MOUD. Under the statutes, TSA's deliberate denial of access to individuals because they take standard-of-care medication to treat a disability *is* intentional disability discrimination, regardless of motive. *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 344 (S.D.N.Y. 2010) (discrimination on basis of medication for a

---

[3] "The *McDonnell Douglas* test is inapplicable to … challenges to a facially discriminatory policy." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1049 (9th Cir. 2007) (FHA claim; citing cases); *Curto v. A Country Place Condo. Ass'n, Inc.*, 921 F.3d 405, 410 & n.3 (3d Cir. 2019). Even if *McDonald Douglas* applied, TSA's motion would fail at the second step. It has not "articulated a legitimate, non-discriminatory reason" merely because it articulated its "sincerely held religious beliefs." Mot. at 10. *See, e.g.*, *United States v. Columbus Country Club*, 1992 WL 189403, at *3 (E.D. Pa. July 30, 1992) (religiously motivated refusal to sell or lease dwellings to non-Catholics violated FHA); *cf. Zinski v. Liberty Univ., Inc.*, 777 F. Supp. 3d 601, 633 (W.D. Va. 2025) (institution cannot avoid Title VII liability for discrimination based on sex merely because discrimination was motivated by religion).

[4] *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("[A]bsence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."); *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir. 1996) (facial classifications are intentional discrimination even if "motivated by a benign desire to help the disabled"); *Guckenberger v. Bos. Univ.*, 974 F. Supp. 106, 133-34 (D. Mass. 1997); *Brookline Opportunities, LLC v. Town of Brookline*, 682 F. Supp. 3d 168, 184 (D.N.H. 2023).

disability "constitutes discrimination on the basis of [that] disability" itself).[5] Disparate treatment exists where there is a "law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013).[6] Barring access to those who take a particular HIV medication discriminates against people with HIV requiring that medication. *U.S. v. Asare*, 2018 WL 2465378, at *6 (S.D.N.Y. June 1, 2018). Barring use of hearing aids discriminates against those whose hearing disability is treated with hearing aids. *E.S. by & through R.S. v. Regence BlueShield*, 2024 WL 1173805, at *2 (W.D. Wash. Mar. 19, 2024). Barring insulin would discriminate against diabetics who require insulin to manage their diabetes. Thus, a policy that "facially target[s] health services designed for, and that cannot be divorced from, people with SUD [substance use disorders]" "on its face discriminates against people suffering from SUD by limiting their access to … health services." *Gather Church v. Lewis Cnty.*, 2025 WL 3771421, at *10 (W.D. Wash. Dec. 31, 2025). TSA specifically excludes from its ARC those who "use … certain medication-assisted treatment ('MAT'), including methadone and buprenorphine." SoF 71; SSF 1(a) (TSA prohibits "certain addictive drugs that are often prescribed to individuals with OUD, specifically methadone and buprenorphine"). Because TSA's policy facially bars people who take MOUD, a factfinder could find that it is facially discriminatory.[7]

---

[5] *See Pesce*, 355 F. Supp. 3d at 47 ("Absent medical or individualized security considerations," policy to "deny access to medically necessary treatment" of MOUD is "discriminatory on its face.") (quotation omitted); *P.G.*, 2021 WL 4059409, at *4-5 (policy barring methadone is facial discrimination).

[6] "[D]iscrimination 'because of' handicap is frequently directed at an effect or manifestation of a handicap rather than being literally aimed at the handicap itself." *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) (citations omitted) (describing exclusions of service dogs, wheelchairs); *see Wind Gap Mun. Auth.*, 421 F.3d at 178.

[7] *Cf. New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 305 (3d Cir. 2007) ("a law that singles out methadone clinics for different zoning procedures is facially discriminatory under ... the Rehabilitation Act"); *EEOC v. Mod. Grp., Ltd.*, 725 F. Supp. 3d 577, 629 (E.D. Tex. 2024) ("Defendants' basing their decision on Dare's prescription medication usage [methadone and Xanax] while having knowledge of the impairments those medications can be used to treat is so closely linked to Dare's purported disabilities that the court is unable to determine, as a matter of law, whether Defendants revoked Dare's offer [of employment] because of his alleged disabilities."). TSA cites *Barry v. Town of Rollinsford*, 2003 WL 22290248, at *5 (D.N.H. Oct. 6, 2003), but the zoning ordinance there did not turn on whether residents received treatment or support for any disability.

It does not matter that TSA does not exclude *all* individuals with OUD. A disparate treatment claim is not defeated merely because "not all members of a disfavored class are discriminated against." *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009) (discussing "sex plus" discrimination). Moreover, disability law requires a focus on each individual's condition. A policy barring service dogs or wheelchairs would not exclude all individuals with sight or mobility disabilities, but each policy would exclude individuals who need that particular support, on the basis of that disability. Many people have a form of OUD that cannot be treated with Vivitrol or without medication. SoF 47-48; SSF 17-18. TSA's policy facially prohibits access for that subgroup, based on their disability. That establishes liability.[8]

Moreover, a factfinder could find that TSA prohibits those with OUD from using methadone and buprenorphine in any capacity, while permitting others to use those same medications for other reasons. Don Coombs, who wrote, revises, and administers TSA's medication policy, testified that "there are circumstances where an ARC participant could use buprenorphine not for opioid use disorder, but for some other reason," and that is "also true of methadone." SoF 78. In its PI order, the Court construed this evidence to support TSA's contention that its policy turns on duration of the medication, not the underlying diagnosis. Doc. No. 218 at 25; Mot. at 8. But on the developed record and drawing all inferences in Plaintiffs' favor as required here, a factfinder could find otherwise. TSA's 30(b)(6) witness testified that TSA bans MOUD for people with OUD, even short-term use of MOUD, because "[a] drug is a drug." SSF 16; *see also id.* (ARC administrator asserted that MOUD is "government sponsored drug abuse"). TSA concedes the only medically accepted use of methadone or buprenorphine that TSA calls long term is to treat OUD. SoF 25; SSF 12(a). And there is no objective medical basis for permitting access to these medications for only any arbitrarily brief period. SoF 39-44.[9] A factfinder could thus find that TSA's policy facially discriminates based on OUD.

---

[8] The Court did not address this theory in the preliminary injunction order. *See* Doc. No. 218 at 24-25.

[9] As with some HIV medications, insulin for diabetics, or statins to control cholesterol, some people are prescribed MOUD for extended maintenance while others are successfully treated for a limited time. SoF 43-44; SSF 16. There is no objective basis for denying access to services based on the duration of such a prescription.

TSA says it also bars other medications beside MOUD. Mot. at 8. There is at least a factual dispute, though, as to whether TSA treats MOUD for the treatment of OUD consistently with other medications. SSF 28-30. For example, TSA's procedures permit ARC participants to take other "narcotic" medications besides MOUD. SoF 84-85. TSA also makes individualized exceptions for long-term use of other medications that it recognizes as potentially subject to "abuse," SoF 85, but TSA's designee testified that no such exceptions are possible for people with OUD, SoF 71. TSA allows participants to attend medical appointments, get prescriptions, and receive care at outside clinics for conditions other than OUD, including, e.g., to receive dialysis. SoF 85, 87; SSF 23. TSA permits outside providers to come into ARCs to provide treatment, including injections. SoF 88; SSF 21. In contrast to that individualized process for those with other conditions, TSA categorically refuses to consider or grant any individualized exceptions for any individuals with OUD who require MOUD treatment. SoF 71, 85.[10]

Second, regardless of how sincerely held a belief TSA says it has for its policy prohibiting access to "addictive" medications, there are triable issues of fact that TSA's specific application of this policy to exclude methadone and buprenorphine for treatment of OUD is grounded in factually debunked stereotypes about MOUD. According to TSA, permitting MOUD would be "completely at odds with [its] religiously-based view that fostering abstinence is critical" to rehabilitation because it would be "just replacing one narcotic with another." SoF 32; SSF 8. A factfinder could find that view about MOUD is contrary to medical evidence, as a person with OUD cannot become *addicted* to MOUD, and *denying* access to MOUD sharply increases the likelihood of death. SoF 40, 43, 45; SSF 14, 16, 32.

Putting aside TSA's First Amendment defense, it is well established that federally funded entities subject to disability discrimination laws may not merely act according to their own beliefs about a disability, even if "sincerely held." The Rehabilitation Act is "carefully structured

[10] In *Nunes v. Mass. Dep't of Correction*, 766 F.3d 136 (1st Cir. 2024), defendants did not deny access to HIV medication; they provided "full access" in a different manner than the plaintiffs preferred—one that not only "led to significant cost savings" by reducing medication waste but also "contributed to a material improvement in the health of HIV prisoners." *Id.* at 139-41, 145-46. By contrast, TSA is intentionally denying access to prescribed treatment.

to replace such reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments." *Sch. Bd. of Nassau Cnty. v. Arline,* 480 U.S. 273, 284-85 (1987). Drawing on that principle when interpreting the ADA, the Supreme Court held that a defendant who refuses to provide a treatment or accommodation based on claimed health or safety risks to others must make that determination "based on medical or other objective evidence." *Bragdon v. Abbott*, 524 U.S. 624, 649-50 (1998).[11] A subjective belief, even if not based on ill will, does not excuse liability if it fails to account for the "objective, scientific information available." *Id.* "Even if the … belief is honestly held, on particular facts a jury still might conclude that it rested on an unfounded stereotype (and, therefore, constituted discrimination)," *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 29 (1st Cir. 2002), and so "subjective beliefs about an applicant's limitations must have a sufficient factual foundation to make them objectively reasonable" based on relevant medical evidence, *id.* at 33. Just as "a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge—is practicing [unlawful] discrimination," *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014); *see Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006), so too is it unlawful for a service provider to deny access based on medical treatment without an objectively reasonable basis in medical knowledge.[12]

Here, there is no "objective, scientific" basis for TSA's MOUD ban. While TSA asserts an overarching religious belief in abstinence, its specific decisions about what medications to include on its list of prohibited "addictive" medications were based on "the Talbott Medical Guide," not religion—and Talbott has since updated its stance to endorse MOUD. SoF 72, 80; SSF 31-32. The overwhelming medical and government consensus is that prescribed methadone

[11] Section 504, FHA, and ADA provide statutory affirmative defenses that allow barring access to an individual whose contagious disease or infection would pose a "direct threat to the health or safety of other individuals." 29 U.S.C. §705(20)(D); 42 U.S.C. §3604; 42 U.S.C. §12113(b). TSA has not asserted such a defense, nor could it.

[12] *See, e.g.*, *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 960 (8th Cir. 1995) (insurer's denial of coverage for high-dose chemotherapy treatment for breast cancer likely violated ADA where evidence showed treatment was not "experimental"); *Reid v. BCBSM, Inc.*, 984 F. Supp. 2d 949, 955 (D. Minn. 2013) (insurer's denial of coverage for behavioral therapy to treat autism spectrum disorder would violate ADA).

and buprenorphine are standard-of-care, life-saving medications, and they are not addictive for people with OUD. SoF 39-48, 72; SSF 14-19, 32. The absence of any objective, scientific basis for TSA's policy supports the inference that it unlawfully relies on stereotypes and stigma. *See, e.g.*, *Smith*, 376 F. Supp. 3d at 160 (policy barring access to MOUD, aka MAT, is "consistent with the broader stigma against MAT" of "equat[ing] MAT to giving addicts drugs rather than giving people treatment"); *see also Kiman*, 451 F.3d at 284-85 (treatment decisions based on "stereotypes of the disabled rather than an individualized inquiry into the patient's condition" can constitute evidence of intentional discrimination).

**B. A factfinder could find that TSA's challenged policy has the "effect" of discriminating based on disability.**

Even if TSA's MOUD ban were facially neutral, the record supports a factual finding that TSA's MOUD ban violates §504 because it has the "effect" of discriminating against individuals with OUD, 45 C.F.R. §84.68(b)(3)(i) (HHS); 34 C.F.R. §104.52(a)(4) (Ed.), and because it "screen[s] out or tend[s] to screen out" individuals with OUD, 45 C.F.R. §84.68(b)(8) (HHS); *see also* 24 C.F.R. §§8.4(b)(4), 8.12(a) (HUD).[13] "This tend-to-screen-out concept … makes it discriminatory to impose policies or criteria that, while not creating a direct bar to individuals with disabilities, diminish an individual's chances of such participation." *Guckenberger*, 974 F. Supp. at 134-35 (quotations omitted); *Ruskai v. Pistole*, 775 F.3d 61, 78 (1st Cir. 2014) (§504 applies where "persons with disabilities [a]re denied meaningful access to a government program or benefit"). TSA's MOUD ban imposes criteria that bar access to ARCs for that class of individuals with OUD who need MOUD. SoF 71; SSF 9(a-c), 18. *See Ruskai*, 775 F.3d at 78-79 ("exclusionary" criteria violate §504).

TSA faults Plaintiffs for not providing statistical evidence. Mot. at 11-13. But a discriminatory "effect" claim under §504 "does [not] require the type of sophisticated statistical evidence typical of disparate impact claims in Title VII cases." *Ruskai*, 775 F.3d at 78-79.[14] In

---

[13] TSA receives funding from HUD, HHS, Ed., and other federal agencies. *See* Doc. No. 283-1.

[14] TSA's Title VII and FHA disparate impact cases and regulations (none of which address *Ruskai*) are inapplicable to Plaintiffs' §504 "effect"/"screening out" theory. Doc. No. 83 (Second Amended Complaint) ¶258.

construing §504 in *Alexander v. Choate*, 469 U.S. 287 (1985), "[r]ather than try to classify particular instances of discrimination as intentional or disparate-impact, the Court focused on whether disabled persons had been denied 'meaningful access'" to services, and "did not limit its consideration to whether the policy applied on the same terms to people with disabilities as it did to those without." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020). What matters is that TSA's challenged criteria have the "effect" or tendency to "screen out" individuals with a form of OUD that is only effectively treated with MOUD. SoF 71, 73-75; SSF 17-18, 20. The policy by definition excludes precisely that group of disabled individuals.

### C. As this Court has already recognized, a factfinder could find that TSA's policy precludes reasonable accommodations based on disability.

A categorical policy that prohibits *any* accommodation violates §504 and the FHA. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 312 (1st Cir. 2003); *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir 1999); *cf. PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (to comply with ADA, "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable").[15] The Court already found Plaintiffs are likely to succeed in establishing that TSA's categorical ban violates §504 and the FHA's requirements that it provide reasonable accommodations, so long as doing so would not require a "fundamental alteration" of TSA's program. Doc. No. 218 at 13-24.[16]

A factfinder could find that TSA, as a practical matter, could allow access to ARCs for individuals with OUD who access MOUD from their own healthcare providers. SoF 82-93; SSF 21-27. TSA could allow ARC participants to access monthly Sublocade injections or self-

[15] *See E.E.O.C. v. Hussey Copper Ltd.*, 696 F. Supp. 2d 505, 517 (W.D. Pa. 2010) (genuine dispute existed whether employer refused to hire based on subjective opinions about methadone use that were not objectively reasonable); *Godwin v. George Washington, LP*, 2022 WL 18027827, at *2 (W.D. Pa. Dec. 30, 2022) (employer's "blanket policy" of rejecting all applicants "who tested positive for methadone, without further inquiry, would violate the ADA"); *Smith*, 376 F. Supp. 3d at 160 (exemption to jail's prohibition on buprenorphine likely required as a reasonable accommodation); *cf. Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 482 (5th Cir. 2006) (employer's blanket policy not to hire any diabetic not using medication to control their diabetes violated ADA). In *Rodriguez*, the court explained that such a blanket policy that turned on how the employee treated their disability and was based on speculation about the nature of the illness untethered to actual medical evidence from each individual case would make an "end-run" around the ADA's prohibition on discrimination. 436 F.3d at 482. TSA's blanket ban is similarly based on its subjective, not evidence-based beliefs about the nature of MOUD.

[16] TSA does not dispute that any request for an accommodation from its categorical ban would be futile.

administer oral buprenorphine or methadone following the same practices it applies to other medications. Doc. No. 218 at 20-24; SoF 85-92; SSF 21, 25. The Court held that the record at the PI stage did not support a likelihood of success requiring TSA to allow *all* affected individuals to receive daily methadone medication at outside clinics. Doc. No. 218 at 19-20. But to succeed on summary judgment, TSA bears the burden of proving on the undisputed facts that *no* accommodation of any individual is possible. Many ARCs are within just one minute of a methadone clinic. SoF 93. A factfinder could find that TSA could accommodate at least *some* class members by allowing them to access a nearby clinic on the same terms TSA permits other participants to leave the ARCs. SSF 21-27.

## II. Both the law and the disputed facts preclude summary judgment based on TSA's "fundamental alteration" defense.

The record precludes summary judgment on TSA's fundamental alteration defense for four independent reasons. Each one is sufficient to deny TSA's motion.

First, as explained above, because TSA is facially discriminating on the basis of a protected disability, "the fundamental alteration test has no application." *Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) (citing *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 734 (9th Cir. 1999) ("*BAART*") (ordinance facially discriminated against methadone clinics); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 345 (6th Cir. 2002)).

Were the law otherwise, covered entities "could evade [§504] by claiming it would fundamentally alter their program to eliminate a facially discriminatory provision of a challenged program, and Congress' intent in enacting [§504] would be defeated." *Lovell*, 303 F.3d at 1054 (discussing ADA).[17] While §504 does not require "fundamental alteration[s] in the nature of a program," *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979), "[t]he benefit itself" a disabled individual seeks access to "cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Choate*, 469 U.S. at

[17] Likewise for the FHA: the fact that a discriminatory principle is a defining element of a program does not excuse it from the FHA's reach. *See, e.g.*, *Columbus Country Club*, 1992 WL 189403, at *3 (Country Club's refusal to sell dwellings to non-Catholics because of religious ties); *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 548 (W.D. Va. 1975) (requirement from private trust that children's home only accept white children).

301. "Antidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit." *Id.* at 301 n.21.[18]

Nor can TSA defend its facially discriminatory policy by making the circular argument that members of the Injunction Class are not "otherwise qualified" for ARC housing and services *because* TSA categorically prohibits access to people who take prescribed MOUD. Mot. at 4-6.[19] "[D]efendants cannot merely mechanically invoke any set of requirements and pronounce the handicapped applicant … not otherwise qualified. The district court must look behind the qualifications. To do otherwise reduces the term 'otherwise qualified' and any arbitrary set of requirements to a tautology." *Pandazides v. Va. Bd. of Educ.*, 946 F.2d 345, 349 (4th Cir. 1991).[20]

Second, an assessment of whether someone is "qualified" or an accommodation would create a "fundamental alteration" requires the court "to conduct an individualized inquiry and make appropriate findings of fact" to protect against "prejudice, stereotypes, or unfounded fear" while accounting for legitimate concerns. *Arline*, 480 U.S. at 287; *see Martin*, 532 U.S. at 688. "Fundamental alteration" thus is no defense to a categorical policy that is driven by stigma and contrary to objective facts. *See supra* at 7-9; *Smith*, 376 F. Supp. 3d at 160. In assessing whether someone is "otherwise qualified" for service, "[a]n unfounded assumption …, even if arrived at

---

[18] The same is true under the FHA. The very idea of requiring accommodations is "that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling." H.R. Rep. No. 100–711, at 25 (1988). TSA's cited cases are not to the contrary. *See Cordeiro v. Driscoll*, 2007 WL 763907, at *6-8 (D. Mass. Mar. 8, 2007) (applicant to high school did not meet facially neutral academic standards for admission unrelated to disability, based on school's individualized assessment); *Joseph M. v. Becker Coll.*, 531 F. Supp. 3d 383, 397 (D. Mass. 2021) (student was not qualified where college expelled him for engaging in violent threatening and racist behavior toward another student); *el Kouni v. Trs. of Bos. Univ.*, 169 F. Supp. 2d 1, 4 (D. Mass. 2001) (plaintiff was not qualified for graduate medical training program based on failing grades, poor research, and lack of progress in lab experiments, which had "no causal relationship" with his disability); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 152 (1st Cir. 1998) (school was not required to exempt student from discipline for harming other students), *abrogated on other grounds by Smith v. Spizzirri*, 601 U.S. 472, 475 (2024).

[19] There is no separate dispute about qualifications. The Injunction Class is defined to encompass only those individuals with OUD who take MOUD "who are otherwise qualified for [ARC] housing or services." Doc. No. 265 at 17, 45. This Court has already found Plaintiffs "are likely to succeed in showing that they are 'otherwise qualified' to receive ARC services." Doc. No. 218 at 12.

[20] Rather than applying the fundamental alteration standard, most circuits that have addressed the standard for justifying facial discrimination under the FHA apply the more exacting test that "a defendant must show either: (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House, Inc.*, 490 F.3d at 1050 (citing *Larkin,* 89 F.3d at 290; *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503-04 (10th Cir. 1995)). TSA does not attempt to defend its categorical policy on either basis, nor could it.

in good faith, is not sufficient to forestall liability under section 504. The [defendant's] belief must be objectively reasonable. It cannot rest on stereotypes and broad generalizations." *Cook v. State of R.I., Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 27 (1st Cir. 1993) (citations omitted); *see Arline*, 480 U.S. at 284; *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 706 (9th Cir. 1988) (defendant's speculative belief about AIDS contrary to weight of medical evidence could not make plaintiff otherwise unqualified); *supra* at 7-9.[21]

Holding social services and housing providers to the objectively reasonable medical standard in their policies regarding MOUD "is particularly important because, as with individuals with contagious diseases, '[f]ew aspects of a handicap give rise to the same level of public fear and misapprehension,' [*Arline,* 480 U.S. at 284,] as the challenges facing recovering drug addicts." *BAART*, 179 F.3d at 736. TSA says it has defined one of the essential elements of its program to be not serving people treating their OUD with MOUD because "[a] drug is a drug." SoF 73; SSF 16; *see id.* (MOUD is "government sponsored drug abuse"). That view is contrary to the medical evidence. SoF 40; *supra* at 7-9. Accepting TSA's position would allow any provider of *any* federally funded social services to assert that an "essential element" of its philosophy is that individuals should not rely on medical intervention to treat their disabilities, but rather should rely on self-discipline or dedication to overcome their condition; on that asserted basis, a provider could refuse to serve those with physical disabilities because they use walkers, hearing aids, take prescribed insulin, take a daily statin, etc. That approach would render Congress's prohibitions on disability discrimination a dead letter. *See Choate*, 469 U.S. at 301.

Third, although TSA bears the evidentiary burden to demonstrate that providing a reasonable accommodation would fundamentally alter its program, *see Dudley*, 333 F.3d at 308, TSA fails to articulate how allowing for the possibility of exceptions to its categorical MOUD

[21] In *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994) (cited Mot. at 4), by contrast, the court held that an age limit was an essential eligibility requirement for high school athletics based on objective facts about the impacts on others, including that the rule reduces competitive inequity and "protects younger athletes from harm." Moreover, the Seventh Circuit has criticized *Pottgen*'s focus on the "general purposes" of the challenged rule rather than focusing on "the effect an exception for a disabled individual would have on those purposes." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 851 (7th Cir. 1999).

ban would require it to change the housing or services it provides. TSA could admit to the ARCs many members of the Injunction Class—including those who receive their prescribed MOUD outside the ARCs—without taking any affirmative action at all. SSF 21, 27; *supra* at 3. TSA could continue to provide the same housing, counseling, education, recreation, healthcare, and "work therapy," and preach the same messages discouraging MOUD. SoF 59; SSF 33. Plaintiffs do not seek a change to TSA's *program*. Plaintiffs seek a change in *access* to that program.[22]

Fourth, disputed facts preclude summary judgment as to whether TSA could accommodate *some* class members. The court must engage in "a fact-intensive inquiry," where TSA bears the burden, considering not only TSA's description but also other evidence of the characteristics of the program. *Ward v. Massachusetts Health Rsch. Inst., Inc.*, 209 F.3d 29, 35 (1st Cir. 2000).[23] The individualized inquiry required is ill-suited for summary judgment, *Austin v. Mainely Constr. Rentals, LLC*, 2022 WL 539311, at *4 (D. Me. Feb. 23, 2022), especially since TSA must prove that no possible accommodation could exist for any class member. *Cf. Pesce*, 355 F. Supp. 3d at 42 (commitment to "drug-free environment" did not justify methadone ban).

To start, Plaintiffs factually dispute TSA's assumption that methadone and buprenorphine are "addictive" and thus would need to be barred under TSA's "religious-based medication policy that prohibits use of certain drugs that are known to be addictive." SoF 32; *see* SoF 29(a); SSF 5(b); *supra* at 8-9. Additionally, TSA makes exceptions for some addictive substances, such as nicotine. SoF 18(a), 84; SSF 29-30. Further, while TSA asserts an overarching religious belief in abstinence, its specific decisions about how that belief applied to MOUD were based *not* on

[22] By contrast, in *Tri-Cities Holdings LLC v. Tennessee Admin. Procs. Div.*, 260 F. Supp. 3d 913, 927 (E.D. Tenn. 2017), *aff'd*, 726 F.App'x 298 (6th Cir. 2018) (cited Mot. at 5-6), accepting the plaintiff's argument that disability entitled them to be "automatically exempt from all statutory and regulatory criteria" and thus to have their application to build a health facility "automatically approved" would make the State's neutral planning process requiring a Certificate of Need for new facilities a nullity.

[23] *See also Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (reversing grant of summary judgment where district court relied on employer's assertion of the essential elements rather than engaging in the "highly *fact-specific* inquiry" of the "actual functioning and circumstances"); *Dudley*, 333 F.3d at 309 (store's categorical "refusal to reconsider" was not "sufficiently essential to its stated goals" because "the policy, as applied, is overinclusive, and … a more flexible policy can offer comparable protections while complying with both the letter and spirit of the ADA"); *Asare*, 2018 WL 2465378, at *6 (denying summary judgment where blanket refusal to operate on individuals taking antiretroviral medication screened out individuals with HIV, rejecting fundamental alteration defense because defendant failed to evaluate "on an individual basis").

religion, but on an outdated version of "the Talbott Medical Guide." SoF 72, 80; SSF 31-32; *supra* at 8. TSA admits it does not require ARC participants to agree with every TSA belief—nor are participants required to be members of TSA's religion. SoF 63. TSA never explains why its program would be fundamentally altered if it accepted people who disagree with TSA's stigma-based, unscientific beliefs about these particular medications, yet who are committed to receiving the "abstinence"-based services the ARCs provide while seeking outside medical treatment.

Other "sober living" houses and social service providers committed to "abstinence" allow access to their programs for recipients who treat their OUD with MOUD. SSF 34.[24] Indeed, at its own Harbor Light Centers, TSA provides services and housing—including religious services—akin to the services it provides at the ARCs, and allows and even dispenses MOUD to participants. SoF 82; SSF 35-37. TSA says it allows individuals who take MOUD access to its Harbor Light Centers "because the program is done in conjunction with government funding and government regulation." SoF 83. The same is true for TSA's ARCs. Doc. No. 280. When TSA accepted federal funding, it agreed not to discriminate on the basis of disability in *all* its social services programs. *Id.* A factfinder could find that TSA can operate its ARCs while complying with that promise in the same manner it does so with TSA's Harbor Light Centers. *See Martin*, 532 U.S. at 683-85 (allowing golfer to use cart was not a "fundamental alteration" in part because defendants "allow[] the use of carts during certain [other] tournament rounds").[25]

**CONCLUSION**

Religious motivation is not a statutory defense to disability discrimination prohibited by §504 and the FHA. For reasons previously explained, the First Amendment is no defense either. Doc. No. 280. For all the foregoing reasons, summary judgment should be denied.

---

[24] TSA's citation to *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715 (E.D. Mich. 2014), does not help it. There, federal regulations *required* a federally subsidized housing provider to prohibit admission of anyone currently using marijuana, including medical marijuana, so to require "a reasonable accommodation to use marijuana would be to require Plaintiff to violate federal law," which would "thwart[] Congress's mission." *Id.* at 730. The opposite is true here. *Supra* 8-9, 11, 13.

[25] *See also Klossner v. IADU Table Mound MHP, LLC*, 565 F. Supp. 3d 1118, 1133 (N.D. Iowa 2021) (fact that defendants operated other properties where they accepted Section 8 vouchers, "albeit very few," including where accepting vouchers was "required by law," demonstrated that an exception to defendants' policy of not accepting Section 8 vouchers at another property would not cause a "fundamental alteration" to defendant's program).

Respectfully submitted,

Dated: March 25, 2026

By: /s/ *Matthew J. Murray*

Matthew J. Murray* (CA Bar No. 271461)
Connie K. Chan* (CA Bar No. 284230)
Alice X. Wang* (CA Bar No. 335224)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Fax: (415) 362-8064
Email: mmurray@altber.com
cchan@altber.com
awang@altber.com
**Pro Hac Vice*

Janet Herold (Bar No. 632479)
**Justice Catalyst Law**
40 Rector Street, Floor 9
New York, NY 10006
Main: 518-732-6703
Email: jherold@justicecatalyst.org

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs request a hearing.