# EXHIBIT B

# SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND READY TO WORK, LLC UNDER THE AMERICANS WITH DISABILITIES ACT, DJ # 202-13-342

## I. BACKGROUND

1. The parties to this Settlement Agreement are the United States of America and Ready to Work, LLC (Ready to Work).

2. This matter is based upon a complaint filed with the United States Department of Justice (Department), in which the Complainant alleged that Ready to Work, a work, residential, and social services program for individuals who are homeless, with facilities in Aurora and Boulder, Colorado, discriminated against her on the basis of disability in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181-12189. Specifically, the Complainant alleges that Ready to Work in Aurora, Colorado denied her admission to its residential and social services program because she is a person with opioid use disorder (OUD) who uses Suboxone for treatment of OUD.

3. The parties have reached an agreement that it is in the parties' best interests, and the United States believes that it is in the public interest, to resolve this dispute. The parties have therefore voluntarily entered into this Agreement as follows:

## II. TITLE III COVERAGE AND DETERMINATIONS

4. The Attorney General of the United States is responsible for administering and enforcing Title III of the ADA, 42 U.S.C. §§ 12181-12189, and the relevant regulations implementing Title III, 28 C.F.R. Part 36.

5. Ready to Work is a private business with a principal address at 4747 Table Mesa Drive, Boulder, Colorado 80305. Ready to Work operates a homeless shelter and another social service center establishment, which provide work, social services, and residential services, and is thus a public accommodation subject to the requirements of Title III of the ADA. 42 U.S.C. §§ 12181(7)(K), 12182(a); 28 C.F.R. § 36.104(11).

6. The Complainant is a person with a disability because she has OUD, a physical or mental impairment that substantially limits one or more major life activities. At all relevant times, she did not engage in the illegal use of drugs and has participated in a supervised rehabilitation program. 28 C.F.R. § 36.105(b)(2) (defining physical or mental impairment to include "drug addiction"); 42 U.S.C. § 12210. OUD substantially limits major life activities, including caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). OUD also limits the operation of major bodily functions, such as neurological and brain functions. 42 U.S.C. § 12102(B). The determination of whether an impairment substantially limits a major life activity is made

without regard to the effect that ameliorating measures, including medication, may have on the impairment. 42 U.S.C. § 12102(4)(E)(i).

7. As a result of its investigation, the United States has determined the following:

a. Ready to Work offers up to one year of housing, employment, and social services support at its facilities in Aurora and Boulder, Colorado, for adults experiencing homelessness.

b. Prospective residents serve as unpaid interns at Ready to Work before they become residents. As interns, they are assigned to work onsite as part of a landscaping crew, cleaning the facilities, or working in the kitchen. Interns typically become residents after working part-time for a period of days.

c. In 2018, the Complainant applied to Ready to Work Aurora. On her application, she disclosed that she takes Suboxone to treat OUD and had been sober and in recovery for almost two years.

d. The Complainant began working as an intern at Ready to Work Aurora in mid-December 2018. She worked in the facility performing cleaning tasks.

e. On approximately January 4, 2019, the Lead Case Manager of Ready to Work advised the Complainant that she would not be admitted to Ready to Work's residency and social services program because of her Suboxone use.

f. Ready to Work Aurora was concerned that the Complainant's Suboxone use could result in "nodding out" during work hours while potentially triggering other residents to relapse. Ready to Work Aurora was also concerned that Complainant's Suboxone use presented a higher recovery need, noting on her application that "we cannot assist with a higher need for recovery," despite that Complainant had been successfully treated for OUD.

g. By refusing to provide residency to the Complainant because she has OUD, Ready to Work discriminated against her on the basis of disability in the full enjoyment of Ready to Work's goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. §§ 12182(a), 12182(b)(1)(A)(i); 28 C.F.R. §§ 36.201(a), 36.202(a).

h. By turning away the Complainant, and any other prospective residents with OUD, Ready to Work imposed eligibility criteria that screen out or tend to screen out individuals with OUD. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

## III. ACTIONS TO BE TAKEN BY READY TO WORK

### General Obligations

8. Ready to Work shall comply with the requirements of Title III of the ADA, 42 U.S.C. § 12182, and its implementing regulation, 28 C.F.R. Part 36. That mandate includes, but is not limited to, the following:

   a. Ready to Work shall not discriminate on the basis of disability, including OUD, in the full and equal enjoyment of Ready to Work's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a).

   b. Ready to Work shall not deny an individual on the basis of disability, including OUD, the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(1)(A)(i), 28 C.F.R. § 36.202(a).

   c. Ready to Work shall not impose or apply eligibility criteria that screen out, or tend to screen out, an individual with a disability or a class of individuals with disabilities (including OUD) from fully and equally enjoying its goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b)(2)(A)(i), 28 C.F.R. § 36.301(a).

### Non-Discrimination Policies and Procedures

9. Within 30 calendar days of the effective date of this Agreement, Ready to Work shall submit a non-discrimination policy to the United States for its review and approval. Additionally, Ready to Work shall amend or remove any existing policies or statements that deny or limit treatment for individuals with OUD. Within 30 calendar days of the effective date of this Agreement, Ready to Work shall send copies of all revised written materials to the United States for its review and approval.

10. Within 21 days of approval by the United States, Ready to Work shall adopt and implement the non-discrimination policy, and any other new and/or modified policies and practices, and shall disseminate a copy of its new and/or modified policies and practices to all employees. Ready to Work shall conspicuously post the non-discrimination policy in the reception area of Ready to Work's offices and as a link on the company's main webpage, currently located at https://boulderbridgehouse.org/ready-to-work/, as well as on the webpage of any future Ready to Work website, for the duration of this Agreement. Throughout the term of this Agreement, Ready to Work shall disseminate these policies and practices to all new employees within 30 days of their hire.

**Training**

11. Ready to Work shall provide ADA training that includes addressing OUD and medication-assisted treatment (MAT) for OUD, within 90 calendar days of the effective date of this Agreement, and every year thereafter for the Term of this Agreement, to all of its management and employees who interact with new or current intern/trainees or residents.

12. Within 45 calendar days of the effective date of this Agreement, Ready to Work shall provide all written or electronic training materials to the United States. Such materials shall be consistent with the provisions of this Agreement and approved in advance of the training dates by the United States. The ADA Training shall address:

    a. the requirements of Title III of the ADA, including the "General Obligations" outlined at Paragraph 8 of this Agreement;

    b. OUD and MAT for OUD;

    c. a general overview of the terms and obligations of this Agreement; and

    d. the reporting obligations under Paragraphs 16-18 of this Agreement.

13. The ADA Training shall be conducted by an individual or individuals with substantive knowledge of the ADA, including the ADA's application to individuals with OUD and who use MAT.

14. Ready to Work shall send to counsel for the United States for pre-approval the name, qualifications (including resume), and contact information of the individual who will conduct the training, no later than 45 calendar days after the effective date of this Agreement. The trainer shall be pre-approved by the United States.

15. For each session of the ADA Training conducted under this Agreement, Ready to Work shall maintain attendance logs reflecting the date of the training, names and titles of attendees, and the attendees' signatures.

**Reporting**

16. Initial Regular Report: Within 120 calendar days following the effective date of this Agreement, Ready to Work shall submit a report to the United States confirming its implementation of the policies referenced in Paragraphs 9-10 ("Non-Discrimination Policies and Procedures") as well as its fulfillment of the requirements of Paragraph 8 ("General Obligations") and Paragraphs 11-15 ("Training"). Ready to Work shall provide the Department with the attendance logs maintained for the ADA Training under Paragraph 15.

17. Subsequent Regular Reports: For the Term of this Agreement, every year on the anniversary of the due date of the Initial Regular Report, and two months before the termination of this Agreement, Ready to Work shall submit a Subsequent Regular Report to the Department regarding its compliance with this Agreement. The report shall include, for the period since the prior report to the Department, the following:

   a. All dates of Ready to Work's ADA Training conducted pursuant to this Agreement;

   b. All attendance logs associated with the ADA Training conducted pursuant to this Agreement; and

   c. Ready to Work's continued fulfillment of the obligations of Paragraph 8 ("General Obligations"), Paragraphs 9-10 ("Non-Discrimination Policies and Procedures") and Paragraphs 11-15 ("Training").

18. Immediate Reports: During the Term of this Agreement, Ready to Work shall notify the United States within 10 calendar days of the following:

   a. For any individual with OUD who has disclosed that condition to Ready to Work and is not admitted to the internship or residency program, Ready to Work shall provide an explanation, as well as documents (including, but not limited to, internal and external correspondence), indicating the reason. In such an instance, Ready to Work shall identify the individual by unique identifier (instead of by name, in order to maintain privacy), and the United States shall keep confidential such information.

   b. Knowledge of any lawsuit, written complaint, charge, or other allegation that Ready to Work has engaged in disability-based discrimination and/or violated the ADA with regard to a person with OUD. Such notice shall include, at a minimum, a description of the nature of the allegation, the name(s) of the individual(s) bringing the allegation, and all documentation possessed by Ready to Work relevant to the allegation.

**Monetary Relief**

19. Within ten (10) days after receiving the Complainant's signed release (attached as Exhibit A), Ready to Work shall send a check in the amount of seven thousand five hundred dollars ($7,500.00) made out to the Complainant. This check is compensation to the Complainant pursuant to 42 U.S.C. § 12188(b)(2)(B) for the effects of the discrimination and the harm she has endured, including, but not limited to, emotional distress and pain and suffering, as a result of Ready to Work's discrimination on the basis of OUD. Ready to Work shall provide written notification to counsel for the United States, including a

copy of the check, within seven (7) days of completing the actions described in this paragraph.

## IV. OTHER PROVISIONS

20. Consideration: In consideration for this Agreement, the United States shall close its investigation (DJ # 202-13-342) without further enforcement action, except as provided in Paragraph 25 of this Agreement.

21. Effective Date: The effective date of this Agreement is the latest date of the signatures below.

22. Term: The duration of this Agreement will be three years from the effective date.

23. Dates: All references to "days" shall mean calendar days, unless otherwise specified.

24. Reviewing Compliance: The United States may review Ready to Work's compliance with this Agreement or Title III of the ADA at any time, and take appropriate action. If the United States believes that Title III of the ADA, this Agreement, or any portion of it has been violated, the United States will notify Ready to Work in writing and the parties will attempt to resolve the issue in good faith. If the parties are unable to reach a satisfactory conclusion within thirty (30) days of the date the United States notifies Ready to Work, the United States may institute a civil action in the appropriate U.S. District Court to enforce this Agreement and/or Title III of the ADA. Failure by the United States to enforce any provision of this Agreement is not a waiver of its right to enforce any provision of this Agreement.

25. Submission of Materials: All materials sent to the United States pursuant to this Agreement shall be sent by e-mail to undersigned counsel. The cover letter shall include a subject line referencing DJ # 202-13-342.

26. Counterparts: This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same Agreement. Facsimile or electronic signatures are acceptable.

27. Severability: If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and Ready to Work shall engage in good faith negotiations to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

28. Binding Nature of Agreement & Successor Liability: This Agreement is binding on Ready to Work, including all principals, agents, executors, administrators, representatives, employees, and beneficiaries. In the event that Ready to Work seeks to sell, transfer, or assign substantially all of its assets or a controlling membership position in Ready to Work during the term of this Agreement, then, as a condition of such sale, transfer, or assignment, Ready to Work shall obtain the written agreement of the successor, buyer, transferee, or assignee to all obligations remaining under this Agreement for the remaining term of this Agreement.

29. Authority: The individuals signing this Agreement represent that they are authorized to do so on behalf of the respective entity for which they have signed.

30. Entire Agreement: This Agreement constitutes the entire Agreement between the United States and Ready to Work on the matters raised herein and no other statement or promise, written or oral, made by any party or agents of any party, that is not contained in this written Agreement shall be enforceable. This Agreement can only be modified by mutual written agreement of the parties.

31. Extensions: Any time limits for performance imposed by this Agreement may be extended only by the mutual written consent of the Parties. With regard to any of the deadlines specified in this Agreement, Ready to Work shall notify the United States at least 14 days before any deadline of an anticipated inability to meet the deadline and the reason(s) why, and shall request an extension of time to a specific date. The United States shall not unreasonably withhold consent to a request for an extension of time made in good faith. A failure to comply with deadlines agreed upon in this Agreement constitutes a violation of this Agreement.

32. Other Violations: This Agreement is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement, including any other claims for discrimination on the basis of disability. Nothing in this Agreement relieves Ready to Work of its obligation to comply with the requirements of the ADA.

33. Publicity: This Agreement and any amendment hereto shall be public documents. A copy of this Agreement or any information contained herein may be made available to any person, and the Ready to Work shall provide a copy of this Agreement to any person upon request.

34. Titles: Titles and other headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

By their signatures below, the Parties consent to the execution of all aspects of this Agreement.

**For Ready to Work, LLC:**

/s/
Melissa Green, Executive Director

Ready to Work, LLC
4747 Table Mesa Drive, Boulder, Colorado 80305

/s/
Stanley L. Garnett
Amanda Houseal
Brownstein Hyatt Farber Schreck
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Brownstein Hyatt Farber Schreck
Telephone: (303) 223-1247
Email: ahouseal@bhfs.com

March 16, 2022
Date

**For the United States of America:**

Rebeca B. Bond
Chief
Kathleen P. Wolfe
Special Litigation Counsel
Amanda Maisels
Deputy Chief

/s/
Elaine Grant
Senior Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square Building, 9th Floor
Washington, DC 20530
Telephone: (202) 307-1444
Email: Elaine.Grant@usdoj.gov

March 17, 2022
Date