# EXHIBIT C

# SETTLEMENT AGREEMENT
# BETWEEN
# THE UNITED STATES
# AND
# THE MASSACHUSETTS PAROLE BOARD[1]

1. After receiving multiple complaints, the United States Attorney's Office for the District of Massachusetts ("U.S. Attorney's Office") initiated an investigation to ascertain whether the Massachusetts Parole Board's ("Parole Board") treatment of individuals with mental health disabilities (including but not limited to Substance Use Disorder ("SUD")) violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and Title II's implementing regulation, 28 C.F.R. pt. 35.

## BACKGROUND

2. Title II of the ADA requires that no qualified individual with a disability, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by a public entity. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

3. The United States Department of Justice ("DOJ" or "the Department") is responsible for implementing Title II's compliance procedures with respect to State and local governments' programs, services, and regulatory activities related to law enforcement and public safety. 28 C.F.R. § 35.190(b)(6). The Department, through the U.S. Attorney's Office, is authorized under 28 C.F.R. Part 35, Subpart F, to determine the Parole Board's compliance with Title II of the ADA and the Title II regulation. The U.S. Attorney's Office has the authority to, where appropriate, attempt informal resolution of any matter, such as through this settlement agreement. *See* 28 C.F.R. § 35.172(c). If resolution is not achieved, the U.S. Attorney's Office is authorized to take additional steps, including issuing a Letter of Findings, to initiate negotiations to secure voluntary compliance, and to bring a civil action to enforce Title II of the ADA. 28 C.F.R. § 35.173.

4. The Parole Board is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1)(A) and (B), and is therefore subject to Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

5. SUD is a physical or mental impairment that substantially limits one or more major life activities, which include the operation of major bodily functions. 28 C.F.R. § 35.108(b)(2) (defining physical or mental impairment to include "drug addiction."). SUD substantially limits major life activities, including caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(A); 28 C.F.R. § 35.108(c)(1)(i). SUD also limits the operation of major

---

1 DJ 204-36-241

bodily functions, such as neurological and brain functions. 42 U.S.C. § 12102(B); 28 C.F.R. § 35.108(c)(1)(ii). The determination whether an impairment substantially limits a major life activity is made without regard to the effect that ameliorating measures—including medication—may have on the impairment. 42 U.S.C. § 12102(4)(E)(i); 28 C.F.R. § 35.108(d)(1)(viii). Opioid Use Disorder ("OUD") is one type of SUD, and as such, a disability under the ADA.

6. The Parole Board is an independent government entity that reviews and grants or denies applications for parole. The Parole Board also supervises parolees in the community. When granting parole, the Parole Board often imposes conditions, such as requiring the parolee to maintain housing or obtain treatment for a mental health disability from a licensed health care professional. If parolees violate these conditions, the Parole Board can revoke parole.

7. Where prospective parolees have mental health disabilities other than SUD, they typically receive an individualized assessment from a medical provider who recommends treatment for their disabilities. The Parole Board generally then requires, as a condition of parole, that these individuals comply with their medical provider's recommendations regarding treatment, but does not require them to take a specific brand or type of medication in order to receive or maintain parole.

## THE UNITED STATES' REVIEW

8. Based on a review, the United States identified concerns with respect to the Parole Board's compliance with the ADA's non-discrimination requirements, which include:

a. When drafting decisions and conditions of release, the Parole Board requires prospective parolees with SUD who are not currently taking a medication to treat their SUD to take a particular form and brand of prescription medication, without an individualized assessment to ascertain the efficacy or appropriateness of the medication for a particular inmate with SUD; and

b. The Parole Board fails to implement a practice of allowing a parolee to reasonably modify a condition of release requiring that a current or prospective parolee with SUD take a specific form of medication where the parolee requests, or his or her health care provider recommends, a different prescription medication or medically-indicated treatment decision, based on a prospective parolee's particular medical and SUD treatment history or an individualized assessment of such medical and treatment history and needs.

9. The Parole Board's practice of drafting decisions and conditions of release requiring parolees with SUD to take a specific form of medication, without individualized assessments into the efficacy or appropriateness of the specific medication has been reported to have the following impacts:

a. Health care providers treating parolees with a condition of release requiring the parolee to take Vivitrol report that Vivitrol is giving some parolees serious adverse side effects that impede parolees' ability to work and function in the community.

b. Health care providers, including qualified addiction specialists (as defined under Massachusetts law)[2] have found that Vivitrol is not effective in treating some parolees' SUD. These qualified addiction specialists have recommended other types of Medication for Opioid Use Disorder ("MOUD") to treat these parolees' SUD, such as methadone or buprenorphine (Suboxone), but because the Parole Board decision required Vivitrol, the parolees could not switch to an alternative medically indicated treatment, or even cease their parole-mandated Vivitrol protocol, without obtaining a change in conditions release, which requires a change of vote by the Parole Board.

10. It is the intent of the United States and the Parole Board (collectively, the "parties") that this Settlement Agreement ("Agreement") shall resolve the United States' investigation under Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

11. The Parole Board denies that it has failed to comply with the requirements of the ADA, and this Agreement does not amount to any admission of wrongdoing by the Parole Board.

12. The United States and the Parole Board agree that it is in the Parties' best interests, and the United States believes that it is in the public interest, to resolve this matter on mutually agreeable terms without litigation.

## ACTIONS TO BE TAKEN BY THE PAROLE BOARD

13. Within 30 days of the effective date of this Agreement, the Parole Board will submit a draft policy for parolees with SUD to the United States for its review and approval. The draft policy will provide for the following:

a. With respect to parole applicants who have SUD but have not been prescribed MOUD while incarcerated, a qualified addiction specialist may conduct an individualized assessment prior to their hearings before the Parole Board. Following the assessment, the qualified addiction specialist may recommend

---

2 A "qualified addiction specialist" is defined by the Massachusetts legislature as "a treatment provider who is: (i) a physician licensed by the board of registration of medicine, a licensed advanced practice registered nurse or a licensed physician assistant; and (ii) a qualifying practitioner or qualifying other practitioner, as defined in the federal Controlled Substances Act, as codified at 21 U.S.C. 823(G), who has been issued an identification number by the United States Drug Enforcement Administration pursuant to the federal Controlled Substances Act, as codified at 21 U.S.C. 823(g)(2)(D)(ii) or 21 U.S.C. 823(g)(2)(D)(iii)." Mass. Gen. Laws Ann. ch. 127, § 1 (West). A qualified addiction specialist is a health care provider who has authority to prescribe all three types of MAT: Vivitrol, buprenorphine (Suboxone) and methadone.

and prescribe any treatment or medication that, according to the qualified addiction specialist, is appropriate for that individual. The parties understand that the timing of an assessment is typically determined by the correctional facility. An individual who has an acknowledged or diagnosed SUD, but who has not received an individualized assessment prior to their parole hearing, may be referred for an evaluation or assessment as part of their parole plan.

b. In determining parole pursuant to M.G.L. c. 127, § 130 and 120 CMR 300, the Parole Board may consider an individual's willingness to receive treatment consistent with the conclusions and recommendations of the individualized assessment described in paragraph 13(a) above. The Parole Board shall not, however, express a preference for, or mandate, one medication over another for those individuals whose individualized assessment resulted in a recommendation that included more than one medication option.

c. The Parole Board may require that parolees with SUD comply with the treatment recommendations of their qualified addiction specialist as a condition of parole. The Parole Board will not revoke an individual's parole on the basis of noncompliance with treatment for SUD where a qualified addiction specialist has conducted an individualized inquiry and recommended or prescribed a change in the parolee's treatment for SUD and the parolee is complying with the recommended or prescribed change. The Parole Board will modify conditions of parole for all parolees with SUD to eliminate any condition that includes a requirement for a specific MOUD and instead require that the parolee comply with their health care providers' recommendations regarding SUD treatment.

d. The Parole Board will not use incentives, rewards, or punishments to encourage or discourage a person to take any particular form or brand of medication used to treat SUD while seeking or supervised on parole.

14. Within 90 days of approval by the United States, the Parole Board will implement the policy set forth in paragraph 13.

15. Within 180 days of implementing the policy set forth in paragraph 13, the Parole Board shall provide training to all board members, parole officers, and other staff whose responsibilities relate to parole applicants or parolees with SUD. That training must include the ADA's protections for people with SUD, information about different types of MOUD, and the implementation of Parole Board's policy (as set forth in paragraph 13) and related procedures. The required training may be given only after the United States approves the trainer and an outline of the content. If, after good faith efforts, the Parole Board is unable to schedule the trainings within the 180-day time period, the Parole Board will work with the DOJ to amend the timeframe.

16. Six months from the date of implementation of the revised policy pursuant to paragraph 13, the Parole Board will provide to the United States a written report on the new policy implementation that includes information regarding any revocations or denials of parole that involve treatment for SUD, and any complaints or legal challenges related to those revocations or denials of parole. The Parole Board will provide updated reports containing the same information one year, two years, and three years from the date of implementation of the policy. The Parole Board will provide further information related to the issues in this settlement agreement at the United States' request.

17. After reviewing the third year report, if the United States finds that the Parole Board has complied with the terms of this Agreement, the United States will close this case and take no further action. If the United States finds any areas of non-compliance, it shall discuss those areas with the Parole Board and work together to create a plan to ensure compliance within six months, after which time the United States will close this case and take no further action.

## REPORTING, ENFORCEMENT, AND OTHER PROVISIONS

18. In consideration for entering into this Agreement, the United States will close this investigation and will not institute a civil action based on the issues set forth in paragraph 8. The United States will continue to monitor the Parole Board's compliance with this Agreement until the terms of paragraphs 11-15 are fulfilled, after which time it will close the matter.

19. Failure by the United States to enforce any provision of this Agreement is not a waiver of its right to enforce any provision of this Agreement.

20. If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and the Parole Board shall engage in good faith negotiations to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

21. The signatory for the Parole Board represents that they are authorized to bind the Parole Board to this Agreement.

22. This Agreement constitutes the entire agreement between the United States and the Parole Board on the matters raised herein, and no prior or contemporaneous statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written agreement, including any attachments, is enforceable. This Agreement can only be modified by mutual written agreement of the parties.

23. This Agreement does not constitute a finding by the United States that the Parole Board is in full compliance with the ADA. This Agreement is not intended to

remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement, including any other claims for discrimination on the basis of disability. Nothing in this Agreement relieves the Parole Board of its obligation to fully comply with the requirements of the ADA.

24. The Parole Board shall not discriminate or retaliate against any person because of his or her participation in this matter.

25. The effective date will be the date of the most recent signature below.

Date Signed: __12/14/2021______

**For the United States of America:**

NATHANIEL R. MENDELL

Acting United States Attorney
District of Massachusetts

/s/______________________
TOREY B. CUMMINGS
GREGORY J. DORCHAK
Assistant U.S. Attorneys
Civil Rights Unit
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
[redacted].gov

**For the Massachusetts Parole Board:**

/s/______________________
Gloriann Moroney
Chair
Massachusetts Parole Board
12 Mercer Road,
Natick, MA 01760
[redacted]