# EXHIBIT D

**SETTLEMENT AGREEMENT BETWEEN**
**THE UNITED STATES OF AMERICA**
**AND**
**ASHLAND HOSPITAL CORPORATION**
**D/B/A KING'S DAUGHTERS MEDICAL CENTER.**
**UNDER THE AMERICANS WITH DISABILITIES ACT**
**USAO# 2021V00109 & DJ# 202-30-56**

## I. BACKGROUND

1. The parties to this Settlement Agreement ("Agreement") are the United States Department of Justice ("United States") and Ashland Hospital Corporation d/b/a King's Daughters Medical Center (the "Hospital"), which operates the King's Daughters Outpatient Behavioral Medicine Clinic (the "Clinic") as an outpatient department.

2. This matter is based on a complaint filed with the United States, in which a complainant (the "Complainant") alleged that the Clinic discriminated against her on the basis of her disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq*. Specifically, the Complainant, an individual with Opioid Use Disorder ("OUD"), alleges that the Clinic refused to accept her as a patient because she was prescribed buprenorphine, a medication used to treat OUD ("MOUD").

3. The parties agree that it is in their best interests, and the United States believes that it is in the public interest, to resolve this dispute. The parties have therefore voluntarily entered into this Agreement, agreeing as follows:

## II. TITLE III COVERAGE

4. The Attorney General of the United States is responsible for administering and enforcing the ADA, 42 U.S.C. §§ 12101-12213, and the relevant regulations implementing Title III, 28 C.F.R. Part 36.

5. The Hospital, a healthcare provider registered to do business in Kentucky and located at 2201 Lexington Ave., Ashland, Kentucky 41101, operates the Clinic as an outpatient department. The Clinic is located at 1066 Kenwood Drive, Russell, Kentucky 41169.

6. The Hospital facility, which contains the professional offices of health care providers, is a place of public accommodation. 28 C.F.R. § 36.104. The Hospital is a private entity that owns, operates, leases (or leases to) places of public accommodation within the meaning of 42 U.S.C. § 12182(a), and is thus is a public accommodation subject to the requirements of Title III of the ADA. 28 C.F.R. § 36.104.

7. Under Title III of the ADA, no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 42 U.S.C. § 12182(a);

28 C.F.R. § 36.201(a). Specifically, discrimination includes the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a). Discrimination also includes a failure to make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. 28 C.F.R. § 36.302(a).

8. Where necessary for safe operation, the ADA allows a place of public accommodation to impose legitimate safety requirements; however, such requirements must be based on actual risk and not on mere speculation, stereotypes, or generalizations about individuals with disabilities. 28 C.F.R. § 36.301(b).

9. Additionally, a physician who specializes in treating only a particular condition cannot refuse to treat an individual with a disability for that condition, but is not required to treat the individual for a different condition. If an individual with a disability is seeking treatment outside a healthcare provider's area of specialization, the health care provider is permitted to refer that individual to another provider only if the provider would make a similar referral for an individual without a disability who seeks or requires the same treatment or services. 28 C.F.R. § 36.302(b)(2).

10. OUD is a mental impairment that substantially limits one or more major life activities. 28 C.F.R. § 36.105(b)(2) (defining physical or mental impairment to include "drug addiction"). OUD limits the operation of major bodily functions, such as neurological and brain functions. 42 U.S.C. § 12102(2)(B). The determination whether an impairment substantially limits a major life activity is made without regard to the effect that ameliorating measures—including medication—may have on the impairment. 42 U.S.C. § 12102(4)(E)(i). Accordingly, persons with OUD are individuals with a disability within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 36.104 and are covered by the ADA's protections.

11. Under the ADA, the term "individual with a disability" does not include an individual who is "currently engaging in the illegal use of drugs when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). This exclusion does not apply to individuals who are no longer using illegal drugs and who (1) have successfully completed drug rehabilitation, (2) are participating in a supervised rehabilitation program, or (3) are erroneously regarded as using illegal drugs. 42 U.S.C. § 12210(b). However, public accommodations are prohibited from denying "health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services." 28

C.F.R. § 36.209(b)(1). Further, an individual's use of controlled substance is not an "illegal use of drugs" if the person takes those substances "under supervision by a licensed health care professional." 42 U.S.C. § 12210(d)(1).

12. The United States is authorized (1) to investigate alleged violations of Title III of the ADA and initiate compliance reviews, (2) to use alternative means of dispute resolution, where appropriate, including settlement negotiations, (3) to resolve disputes, and (4) to bring a civil action in federal court in any case that raises issues of general public importance, as well as in cases where the United States has reasonable cause to believe that a group of persons is engaged in a pattern or practice of discrimination in violation of the ADA. 42 U.S.C. §§ 12188(b), 12212; 28 C.F.R. §§ 36.502, 503, 506.

13. Ensuring that hospitals and other health service and social service establishments do not discriminate on the basis of disability is an issue of general public importance. Additionally, ensuring that individuals with disabilities in treatment for OUD do not face discrimination is also an issue of general public importance.

## III. DETERMINATIONS

14. Following an investigation, the United States substantiated the Complainant's allegations and determined that, in its operation of the Clinic, the Hospital maintained practices that violated the ADA. Specifically, the United States determined:

a. The Hospital operates the Clinic to provide outpatient psychiatric services to patients. Specifically, the Clinic provides medication management to patients for psychiatric and behavioral disorders. At the time of the Complainant's appointment, the Hospital employed two nurse practitioners to provide medication management at the Clinic.

b. The Clinic accepts patients solely on a referral basis, from both providers in other Hospital departments and providers outside the Hospital system. When processing referrals, the Clinic uses its electronic medical records program to review prospective patients' medical histories and medication lists. Staff are directed to exclude prospective patients with a history of alcohol or drug use, a current diagnosis of substance use or alcohol use disorder, or who are prescribed MOUD like buprenorphine or methadone. The Clinic also has a practice of requiring, as a condition of admission, that individuals be MOUD-free for six months prior to being seen for psychiatric medication management.

c. The Clinic also has a policy of excluding prospective patients whose search results in Kentucky All Schedule Prescription Electronic Reporting ("KASPER"), Kentucky's prescription drug monitoring program, contain drug-related criminal convictions. The Clinic policy did not apply to other categories of criminal convictions or make exceptions for prospective patients with a disability on the basis of OUD.

d. When Clinic staff is aware that prospective patients referred for psychiatric medication management are prescribed MOUD, the Clinic frequently refers these patients to substance use treatment centers, even though the patients are not seeking substance use treatment from the Clinic and, as evidenced by their MOUD prescriptions, are already receiving substance use treatment elsewhere. Prospective patients seeking psychiatric medication management who were not prescribed MOUD were not similarly referred to substance use treatment centers.

e. Through its practices and policies, the Clinic regularly turned away prospective new patients who are prescribed MOUD, who have been prescribed with MOUD within six months of the referral, and who have current or past diagnoses of OUD.

f. The Complainant is an individual with a disability on the basis of OUD and is prescribed a medication containing buprenorphine to treat her OUD.

g. In January 2021, the Complainant had a telehealth appointment with the Clinic for an initial visit for medication management for treatment of post-traumatic stress disorder. Before the appointment, Clinic staff ran a KASPER report that showed that the Complainant was prescribed MOUD. A provider at the clinic noted on the KASPER report that the Complainant had to be off her MOUD for six months before becoming a patient at the Clinic, and Clinic staff informed the Complainant she was not being accepted as a patient because of the Clinic's policy not to treat individuals who were prescribed MOUD.

h. By refusing to provide the Complainant with psychiatric medication management because of her MOUD prescription, the Clinic discriminated against her by denying her the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Clinic, and by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations being offered by the Clinic. 42 U.S.C. §§ 12182(a), 12182(b)(1)(A)(i); 28 C.F.R. §§ 36.201(a), 36.202(a).

i. By turning away the Complainant and other prospective patients who are treated with MOUD or who have been treated with MOUD within six months, the Clinic imposed eligibility criteria that screen out or tend to screen out individuals with OUD. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a). Further, the Clinic failed to make reasonable modifications to policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities by routinely referring individuals prescribed MOUD to substance use treatment centers and by excluding individuals with drug convictions regardless of whether they had disabilities on the basis of OUD. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

## IV. ACTIONS TO BE TAKEN BY THE HOSPITAL

15. The Hospital, and all its departments, including the Clinic, shall comply with the requirements of Title III of the ADA, 42 U.S.C. § 12182, and its implementing regulation, 28 C.F.R. Part 36. That mandate includes, but is not limited to, the following:

a. The Hospital shall not discriminate on the basis of disability, including on the basis of OUD, in the full and equal enjoyment of the Hospital's goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a).

b. The Hospital shall not deny an individual on the basis of disability, including on the basis of OUD, the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(1)(A)(i), 28 C.F.R. § 36.202(a).

c. The Hospital shall not impose or apply eligibility criteria that screen out, or tend to screen out, an individual with a disability or a class of individuals with disabilities (including on the basis of OUD) from fully and equally enjoying its goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b)(2)(A)(i), 28 C.F.R. § 36.301(a).

d. The Hospital shall make reasonable modifications to policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless it can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

16. Within thirty (30) calendar days of the effective date of this Agreement, the Hospital shall:

a. At the Clinic, amend and submit to the United States for its review and approval its patient access and treatment policies, practices, and written patient referral guidelines to ensure that persons with disabilities on the basis of OUD, including those who are prescribed MOUD, are not discriminated against or deprived of the full enjoyment of the Clinic's services. This includes but is not limited to no longer requiring that patients be MOUD-free for any period as a condition of treatment at the Clinic.

b. Amend and submit to the United States for its review and approval its "Accessibility for Americans with Disabilities Policy" (hereinafter "ADA Policy"). The ADA Policy shall apply to all departments and providers, including the Clinic,

and will include a statement that the Hospital does not discriminate in the provision of services to persons with disabilities, including on the basis of OUD or a prescription for MOUD.

17. Within twenty-one (21) calendar days of receiving written approval by the United States of the Clinic policies and practices described in Paragraph 16(a), the Hospital shall:

a. Adopt and implement the approved policies and practices at the Clinic and disseminate a copy to all Clinic staff and providers.

b. Conspicuously post the notice in the Clinic's patient reception area, and as a link on the Clinic's webpage, currently located at https://www.kingsdaughtershealth.com/services/behavioral-medicine/outpatient-behavioral-medicine/.

c. Provide notice to all Clinic-known referral sources, including all Hospital departments, about the new policies. This notice shall provide the contact information of the undersigned counsel for the United States and notify recipients that, if they believe that the Clinic failed to provide its services to a prospective patient based on the individual's disability, including on the basis of OUD, they can contact the United States.

18. Within twenty-one (21) calendar days of receiving written approval by the United States of the ADA Policy submitted under Paragraph 16(b), the Hospital shall:

a. Adopt and implement the ADA Policy and disseminate a copy of the ADA Policy to all active Hospital employees and contractors who are involved with patient admissions, scheduling appointments and follow-up appointments, and/or processing referrals. For purposes of this Agreement, the term "active employee" does not apply to employees who are on PRN status or otherwise not providing services for the Hospital.

b. Conspicuously post the ADA Policy in patient reception areas of the Hospital, including at the Clinic, and as a link on its main webpage or "homepage," currently located at https://www.kingsdaughtershealth.com/, the Clinic's webpage, currently located at https://www.kingsdaughtershealth.com/services/behavioral-medicine/outpatient-behavioral-medicine/, as well as on the homepage of any current or future Hospital website, for the duration of this Agreement.

19. ***Training.*** The Hospital shall:

a. Within thirty (30) calendar days of receiving written approval by the United States of the ADA Policy submitted pursuant to Paragraph 16(b), and every year thereafter for the duration of this Agreement, provide to its active employees and

contractors who are involved with patient admissions, scheduling appointments and follow-up appointments, and/or processing referrals training about OUD, MOUD, and Title III's prohibitions related to disability discrimination on the basis of OUD. The Hospital will notify the United States in writing when it has completed the actions described in this sub-Paragraph.

b. Through the duration of this Agreement, disseminate its new and modified ADA Policy to all new employees and contractors who are involved with patient admissions, scheduling appointments and follow-up appointments, and/or processing referrals within thirty (30) days of their hire or return to active status and ensure that they receive the training referenced in Paragraph 18(a) as a component of training and orientation.

c. Ensure that all written or electronic materials used in the trainings required by Paragraphs 18(a) and 18(b) are consistent with the provisions of this Agreement and approved in advance by counsel for the United States. This includes the creation of or substantive revisions to such materials after the effective date of this Agreement.

d. Create and maintain a log that documents the name, title, and Hospital department of each individual who participates in the trainings required in Paragraphs 18(a) and 18(b) and the date that individual participated in the training(s). This log may be kept in electronic format. Copies of such log shall be provided to the United States within twenty-one (21) calendar days of any written request for it.

20. For the duration of this Agreement and within 21 days of receipt of any written or oral complaint made to the Hospital alleging a failure to treat a patient on the basis of OUD or physician-approved OUD treatments, including MOUD, the Hospital shall send written notification to counsel for the United States with a copy of any such written complaint (or, if an oral complaint was made, a description of the oral complaint) and a complete copy of the Hospital's response.

21. Within ten (10) calendar days of the effective date of this Agreement, the Hospital shall pay a civil penalty to the United States in the amount of $50,000 as authorized by 42 U.S.C. § 12188(b)(2)(C), 28 C.F.R. § 36.504(a)(3), and 28 C.F.R. § 85.5 as amended, to vindicate the public interest.

22. Within ten (10) calendar days after receiving the Complainant's signed release (a blank release form is attached as Exhibit A), the Hospital shall send a check in the amount of $40,000 to the Complainant. This check is compensation to the Complainant pursuant to 42 U.S.C. § 12188(b)(2)(B) for the effects of the discrimination and the harm she has endured, including, but not limited to, emotional distress and pain and suffering, as a result of the Clinic's failure to accept her as a new patient. The Hospital shall provide written

notification to counsel for the United States, including a copy of each check, within seven (7) days of completing the action described in this Paragraph.

23. If any issues arise that affect the anticipated completion dates set forth in Paragraphs 16 - 22, the Hospital will immediately notify the United States of the issue(s), and the parties will attempt to resolve those issues in good faith.

## V. OTHER PROVISIONS

24. In consideration for the Hospital's full compliance with this Agreement, the United States shall close its investigation (USAO# 2021V00109 & DJ# 202-30-56) and will not institute a civil action alleging discrimination based on the findings set forth in Paragraph 14. The United States may review the Hospital's compliance with this Agreement and/or Title III of the ADA at any time. If the United States believes that this Agreement or any portion of it has been violated, it will raise its concerns with the Hospital and the parties will attempt to resolve the concerns in good faith. If the parties are unable to reach a satisfactory resolution of the issue within thirty (30) calendar days of the date the United States provides notice to the Hospital, the United States may institute a civil action in the appropriate U.S. District Court to enforce this Agreement or the ADA.

25. Failure by the United States to enforce any provision of this Agreement is not a waiver of its right to enforce any provision of this Agreement.

26. If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and the Hospital shall engage in good faith negotiations to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

27. This Agreement is binding on the Hospital, including all principals, agents, executors, administrators, representatives, employees, and beneficiaries. In the event that the Hospital seeks to sell, transfer, or assign substantially all of its assets or a controlling membership position in the Hospital during the term of this Agreement, then, as a condition of such sale, transfer, or assignment, the Hospital will obtain the written Agreement of the successor, buyer, transferee, or assignee to all obligations remaining under this Agreement for the remaining term of this Agreement.

28. The signatory for the Hospital represents that he or she is authorized to bind the Hospital to this Agreement. Further, the Hospital acknowledges that it has been advised by competent legal counsel in connection with the execution of this Agreement, has read each and every paragraph of this Agreement, and understands the respective obligations set forth herein, and represents that the commitments, acknowledgments, representations, and promises set forth herein are freely and willingly undertaken and given.

29. This Agreement constitutes the entire agreement between the United States and the Hospital on the matters raised herein, and no prior or contemporaneous statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written agreement, including any attachments, is enforceable. This Agreement can only be modified by mutual written agreement of the parties.

30. This Agreement does not constitute a finding by the United States that the Hospital is in full compliance with the ADA. This Agreement is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement, including any other claims for discrimination on the basis of disability. Nothing in this Agreement relieves the Hospital of its obligation to fully comply with the requirements of the ADA.

31. The Hospital shall not discriminate or retaliate against any person because of his or her participation in this matter.

## VI. EFFECTIVE DATE/TERMINATION DATE

32. The effective date of this Agreement is the date of the last signature below.

33. The duration of this Agreement will be three years from the effective date.

**THE UNITED STATES**

CARLTON S. SHIER, IV
United States Attorney
Eastern District of Kentucky

/s/ Carrie B. Pond

CARRIE B. POND
Assistant U.S. Attorney
U.S. Attorney's Office

Eastern District of Kentucky
260 W. Vine Street, Ste 300
Lexington, Kentucky 40507-1612
Telephone: (859) 685-4869

Date Signed: 1/25/2022

**ASHLAND HOSPITAL CORPORATION D/B/A KING'S DAUGHTERS MEDICAL CENTER**

/s/ Kristie Whitlatch

Name: Kristie Whitlatch

Title: President

Date Signed: 1/19/22 KW

# Exhibit A – Release of Claims

I, ______________________________, do hereby agree that, in consideration for the monetary relief offered to me, I do hereby release King's Daughter Medical Center ("the Hospital") from liability for any and all claims, complaints or charges, that I had, or may have had, under the Americans with Disabilities Act, 42 U.S.C. §§ 12181, et seq. ("ADA"), for any alleged discrimination that I incurred at King's Daughter Outpatient Behavioral Health based on my opioid use disorder or prescription for medication for opioid use disorder, occurring on or before the date of my signature on this Release.

I do hereby acknowledge that I am aware of the contents of the Settlement Agreement and the Department of Justice has informed me that I could avail myself of private legal counsel in this matter. I acknowledge that I have chosen voluntarily to release the claims defined above.

I HAVE READ THIS RELEASE AND I UNDERSTAND THE CONTENTS CONTAINED THEREIN. I HEREBY EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Agreed to and signed this _____ day of ___________, 202__.

______________________________
Signature

______________________________
Name of Signatory

______________________________
Address of Signatory

Sworn to and subscribed to before me this ___ day of _________, 202__.

______________________________
Notary Public
My commission expires:

______________________