# EXHIBIT H

# SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND HEBREW SENIORLIFE

## BACKGROUND

1. The parties to this Settlement Agreement are the United States of America and Hebrew SeniorLife, Inc. ("Hebrew SeniorLife").

2. This matter is based upon complaints filed with the United States Department of Justice that alleged a skilled nursing facility operated by Hebrew SeniorLife discriminated against a patient on the basis of disability in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181-12189. The complaints alleged that a Hebrew SeniorLife facility refused to accept a patient for treatment because that patient was being treated with medication used to treat Opioid Use Disorder (OUD). As a result of these complaints, the United States opened an investigation and initiated a compliance review of all Hebrew SeniorLife skilled nursing facilities in Massachusetts to determine whether a violation of the ADA existed.

3. Hebrew SeniorLife, Inc. does not admit the allegations asserted by the United States herein. The parties agree that it is in their best interests, and the United States believes that it is in the public interest, to resolve this dispute. The parties have therefore voluntarily entered into this Agreement, agreeing as follows:

## TITLE III COVERAGE AND DETERMINATIONS

4. The Attorney General of the United States is responsible for administering and enforcing the ADA, 42 U.S.C. §§ 12101-12213, and the relevant regulations implementing Title III, 28 C.F.R. Part 36.

5. Hebrew SeniorLife operates facilities in Massachusetts; that provide skilled nursing services, post-acute medical services, and/or rehabilitation programs.

6. These facilities are places of public accommodation; they are operated by Hebrew SeniorLife—a private entity—and are facilities that are health care providers, hospitals, or other service establishments, as well as social service center establishments. 42 U.S.C. §§ 12181(7)(F),(K); 28 C.F.R. §§ 36.104(6),(11) (definition of place of public accommodation).

7. Hebrew SeniorLife is a private entity that owns, operates, leases (or leases) to places of public accommodation within the meaning of 42 U.S.C. § 12182(a), and is thus is a public accommodation subject to the requirements of Title III of the ADA.

8. Under Title III of the ADA, no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). Specifically, discrimination includes the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class

of individuals with disabilities from fully and equally enjoying any good, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary. 42 U.S.C. § 12182(b)(2)(A)(i). A public accommodation may impose legitimate safety requirements that are necessary for safe operation, but safety requirements must e based on actual risks and no on mere speculation, stereotypes, or generalizations about individuals with disabilities. 28 C.F.R. 36.301(b).

9. Title III of the ADA further specifies that a public accommodation shall not subject an individual or a class of individuals on the basis of a disability to a denial of the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations. 28 C.F.R. § 36.202(a).

10. OUD is a physical or mental impairment that substantially limits one or more major life activities, which include the operation of major bodily functions. 28 C.F.R. § 36.105(b)(2) (defining physical or mental impairment to include "drug addiction"). OUD substantially limits major life activities, including caring for oneself, learning, concentrating, thinking, and communicating. 42 U.S.C. § 12102(A). OUD also limits the operation of major bodily functions, such as neurological and brain functions. 42 U.S.C. § 12102(B). The determination whether an impairment substantially limits a major life activity is made without regard to the effect that ameliorating measures—including medication—may have on the impairment. 42 U.S.C. § 12102(4)(E)(i). Accordingly, persons with OUD are individuals with a disability within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 36.104, and covered by the ADA's protections, except as described in paragraph 10, below.

11. Under the ADA, the term "individual with a disability" does not include an individual who is "currently engaging in the illegal use of drugs when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a).[1] This exclusion does not apply to individuals who are no longer using illegal drugs and who (1) have successfully completed drug rehabilitation, (2) are participating in a supervised rehabilitation program, or (3) are erroneously regarded as using illegal drugs. 42 U.S.C. § 12210(b). However, a public accommodation may not deny health services to an individual on the basis of that individual's current use of drugs, if the individual is otherwise entitled to such services. 28 C.F.R. §§ 36.209(b)(1).

12. In December 2016, the Massachusetts Department of Public Health issued a Circular clarifying that Massachusetts' regulations state that when individuals on Medication for Opioid Use Disorder (MOUD)[2] seek admission to long-term care facilities, such as skilled nursing facilities, "the facility is expected to admit the resident and provide for the administration of MOUD as directed by the prescribing or ordering physician at the resident's

---

[1] An individual's use of controlled substance is not an "illegal use of drugs" if the person takes those substances 'under supervision by a licensed health care professional." 42 U.S.C. § 12210(d)(1).

[2] MOUD involves using FDA approved medications along with counseling and behavioral therapies for the treatment of OUD. The medications typically include Opioid Agonist Therapies (OAT) such as methadone or buprenorphine, or naltrexone, which is an opioid antagonist.

opioid treatment program (OTP) or Office Based Opioid Treatment with buprenorphine program (OBOT).

13. Ensuring that rehabilitation centers, hospitals, and other service and social service establishments do not discriminate on the basis of disability is an issue of general public importance. Additionally, ensuring that individuals in treatment for OUD do not face discrimination is also an issue of general public importance. The United States is authorized to investigate alleged violations of Title III of the ADA and initiate compliance reviews, to use alternative means of dispute resolution, where appropriate, including settlement negotiations, to resolve disputes, and to bring a civil action in federal court in any case that raises issues of general public importance, as well as in cases where the United States has reasonable cause to believe that a group of persons is engaged in a pattern or practice of discrimination in violation of the ADA. 42 U.S.C. §§ 12188(b), 12212; 28 C.F.R. §§ 36.502, 503, 506.

14. As a result of its investigation, the United States has determined that since January 2018, Hebrew SeniorLife has denied admission to patients based on their prescription for MOUD and/or on the basis of their OUD.

15. In refusing to admit these patients, Hebrew SeniorLife engaged in discrimination by:

a. Imposing eligibility criteria that screened out individuals with disabilities, specifically individuals with OUD, without assessing actual risks (rather than using mere speculation, stereotypes, or generalizations about individuals with disabilities) ein violation of 42 U.S.C. § 12182(b)(2)(A)(i) and 28 C.F.R. § 36.301, and

b. Denying them the opportunity to equally participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations being offered, on the basis of disability, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.201.

## ACTIONS TO BE TAKEN BY HEBREW SENIORLIFE

16. Hebrew SeniorLife will not discriminate against any individual with a disability on the basis of OUD by denying such individual the opportunity to participate in or benefit from Hebrew SeniorLife ‘s services on the basis of disability or by imposing eligibility criteria that screen out individuals with disabilities on the basis of OUD in violation of Title III of the ADA, 42 U.S.C. § 12182, and its implementing regulation, 28 C.F.R. Part 36.

17. Within 30 days of the effective date of this Agreement, Hebrew SeniorLife will submit a draft non-discrimination policy to the United States for its review and approval. The non-discrimination policy will state that no Hebrew SeniorLife facility discriminates in the provision of services to persons with disabilities on the basis of OUD and who have been prescribed MOUD. This policy will also describe how Hebrew SeniorLife will make individualized assessments as to whether an individual’s current use of drugs poses a direct threat to the health or safety of others. The non-discrimination policy will also direct those with questions, concerns, or complaints on how to make contact with Hebrew SeniorLife regarding their issues. Within 21 days of approval by the United States, Hebrew SeniorLife will adopt and

implement the non-discrimination policy, and Hebrew SeniorLife will maintain and enforce the non-discrimination policy for the duration of this Agreement. Hebrew SeniorLife will conspicuously post the non-discrimination policy in the reception area of Hebrew SeniorLife and as a link on the company's main webpage or "homepage," as well as on the homepage of any current or future Hebrew SeniorLife website, for the duration of this Agreement.

18. After Hebrew SeniorLife receives written approval by counsel for the United States under paragraph 16 of this Agreement, it will within 30 days of receiving that approval, provide training on Title III of the ADA to Hebrew SeniorLife employees and contractors who are involved with admissions for all Hebrew SeniorLife facilities, including training about OUD, medications used to treat OUD, and disability discrimination in general. Hebrew SeniorLife shall notify the United States in writing when this training is completed.

19. Hebrew SeniorLife will ensure that all new employees and contractors who are involved with admissions receive the training referenced in paragraph 17 as a component of new employee training and orientation through the duration of this Agreement. Hebrew SeniorLife shall provide the training to such new employees and contractors within 30 days of their start date as a part of their standard training for new employees and contractors. Notification of Hebrew SeniorLife's completion of this training will be provided to the United States every six months following the effective date of this Agreement and shall include the names and dates of the new employees trained.

20. All training manuals or written or electronic materials that address Hebrew SeniorLife's policies and practices used in the trainings required in paragraphs 17 and 18 or created or substantively revised after the effective date of this Agreement shall be consistent with the provisions of this Agreement and approved in advance by counsel for the United States.

21. Hebrew SeniorLife shall create and maintain a log that documents the name of each individual who participates in the trainings required in paragraphs 17 and 18, his or her title, and the date he or she participated in the training(s). This log may be kept in electronic format. Copies of such log shall be provided to the United States within 21 days of any written request for it.

22. Hebrew SeniorLife shall create and maintain an admissions intake log that documents each prospective patient who has OUD. The log shall include whether the prospective patient was prescribed MOUD, and if so, the name of the medication, the names of the entity and individual making the request for admission on behalf of the patient, whether the prospective patient was denied admission, and if so a description of the reason for denial. This log should not include the name of the patient, and should be maintained in accordance with privacy requirements afforded to individuals in treatment for OUD. 42 C.F.R. Part 2. This log may be kept in electronic format. Copies of such log shall be provided to the United States every six months following the effective date of this Agreement.

23. For the duration of this Agreement, Hebrew SeniorLife will send a copy to the United States of any complaint received that related to admission of a person with OUD within 21 days of receiving the complaint. For oral complaints, Hebrew SeniorLife will send a written

description. Hebrew SeniorLife will also submit to the United States a copy of its response to each complainant.

24. Hebrew SeniorLife shall pay a civil penalty to the United States in the amount of $15,000 as authorized by 42 U.S.C. § 12188(b)(2)(C), 28 C.F.R. § 36.504(a)(3), and 28 C.F.R. § 85.5 as amended. The payment shall be made as follows:

a. Hebrew SeniorLife shall pay $5,000 to the United States within 30 days of the effective date of this agreement.

b. Payment of $10,000 (the "Suspended Payment") shall be suspended and forgiven if Hebrew SeniorLife materially complies with the terms of this Agreement for the duration of this Agreement.

c. If at any time, the United States determines that Hebrew SeniorLife has failed to materially comply with the terms of this Agreement, it shall provide written notice reasonably describing the noncompliance and demanding payment of the Suspended Payment, or of some portion of the Suspended Payment. Hebrew SeniorLife will then have 30 days to make the payment or cure the non-compliance if it is possible to do so. Alternatively, within the 30-day time period, Hebrew SeniorLife may contest or explain the alleged non-compliance or by assert that the non-compliance has already been cured or does not need to be cured. If, after the 30-day period, and after fully considering Hebrew SeniorLife's explanations, proposals, and attempts to cure, the United States determines there has been material non-compliance that has not or cannot be cured and notifies Hebrew SeniorLife of such determination, and Hebrew SeniorLife fails to make the Suspended Payment within five (5) business days of being so notified, the United States may file a civil action in federal court to enforce the payment obligation and take any other action it determines is necessary and appropriate.

25. If any issues arise that affect the anticipated completion dates set forth in paragraphs 15-23, Hebrew SeniorLife will immediately notify the United States of the issue(s), and the parties will attempt to resolve those issues in good faith.

## OTHER PROVISIONS

26. In consideration for this Agreement, the United States will close its investigation and will not institute a civil action at this time alleging discrimination based on the findings set forth in paragraph 13-14. The United States, however, may review Hebrew SeniorLife's compliance with this Agreement and/or Title III of the ADA at any time. If the United States believes that Hebrew SeniorLife is in violation of Title III of the ADA in ways not addressed by this Agreement, the United States may institute a civil action in the appropriate U.S. District Court to enforce Title III of the ADA.

27. Failure by the United States to enforce any provision of this Agreement is not a waiver of its right to enforce any provision of this Agreement.

28. If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and Hebrew SeniorLife shall engage in good faith negotiations to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

29. This Agreement is binding on Hebrew SeniorLife, including all principals, agents, executors, administrators, representatives, employees, and beneficiaries. In the event that Hebrew SeniorLife seeks to sell, transfer, or assign substantially all of its assets or a controlling membership position in Hebrew SeniorLife during the term of this Agreement, then, as a condition of such sale, transfer, or assignment, Hebrew SeniorLife will obtain the written Agreement of the successor, buyer, transferee, or assignee to all obligations remaining under this Agreement for the remaining term of this Agreement.

30. The signatory for Hebrew SeniorLife represents that he or she is authorized to bind Hebrew SeniorLife to this Agreement.

31. This Agreement constitutes the entire agreement between the United States and Hebrew SeniorLife on the matters raised herein, and no prior or contemporaneous statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written agreement, including any attachments, is enforceable. This Agreement can only be modified by mutual written agreement of the parties.

32. This Agreement does not constitute a finding by the United States that Hebrew SeniorLife is in full compliance with the ADA. This Agreement is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement, including any other claims for discrimination on the basis of disability. Nothing in this Agreement relieves Hebrew SeniorLife of its obligation to fully comply with the requirements of the ADA.

33. Hebrew SeniorLife shall not discriminate or retaliate against any person because of his or her participation in this matter.

## EFFECTIVE DATE/TERMINATION DATE

34. The effective date of this Agreement is the date of the last signature below.

35. The duration of this Agreement will be two years from the effective date.

NATHANIEL R. MENDELL
Acting United States Attorney
District of Massachusetts

/s/ ___________________

SARA MIRON BLOOM
Senior Litigation Counsel
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Telephone: (617) 748-3265

Date: 9/27/2021

HEBREW SENIORLIFE, INC.

/s/ __________________
RACHEL LERNER, ESQ.
General Counsel & Chief Compliance Officer
Hebrew SeniorLife, Inc.
1200 Centre St.
Boston, MA 02131

Date: June 30, 2021