# EXHIBIT J

# *Helping Recovery Residences Adapt* to Support People with Medication-Assisted Recovery







NARR
National Alliance for Recovery Residences
Community • Standards • Ethics • Education

info@narronline.org | narronline.org | 855-355-NARR (6277)

Center for Social Innovation

Mental Health First Aid
National Council for Behavioral Health
Healthy Minds. Strong Communities.



## In this Brief

Many people with opioid use disorders embrace medication-assisted treatment (MAT) or medication-assisted recovery (MAR) as a pathway to recovery. For some, the role that medication can play in a person's long-term recovery process is not as clear. Within the recovery community, many people have questions about the use of agonist or partial agonist medications (methadone, buprenorphine) to support abstinence. As we continue to grapple with the effects of the opioid crisis, it is important to recognize the life-saving role of medications to address opioid dependence and addiction, understand the facts about how medications work, and find ways to support long-term recovery for individuals using these medications.

As one key recovery support, access to **quality recovery housing** can make or break a person's likelihood of long-term success. Specific to opioid use disorders, recovery residence operators need guidance to implement cultural and operational changes that support medication-assisted recovery. While different levels of recovery residences have varying structures, staffing, services, and supports, the information and considerations in this brief are helpful to all residences seeking to support medication-assisted pathways to recovery. Currently, there is no definitive research that matches the level of a recovery residence with its ability to support residents using medication in their recovery.

This document provides basic guidance, key considerations, and tips and tools for recovery residence operators that are supporting or want to support individuals who choose medication-assisted recovery.



# *Developing* *A Shared Language*

The concepts of medication-assisted treatment (MAT) and medication-assisted recovery (MAR) are closely related, but may have distinct meanings across individuals, communities, and systems of care. Both MAT and MAR refer to using FDA-approved medications (such as buprenorphine, methadone, naltrexone) to address the physical components of addiction. In this brief, the described medications are specific to opioid use disorders. Other medications can be prescribed to address alcohol dependence.

Within the recovery community, MAR is a preferred term since it emphasizes *recovery*. It may also indicate an individual's commitment to engaging in recovery supports as part of their long-term pathway to abstinence and recovery, in addition to using prescribed medication. This brief will primarily use the term MAR; however, it is important to know that MAT and MAR are sometimes misunderstood or used interchangeably. When screening and supporting residents, be sure to ask explicit questions about a person's use of medication to support their recovery. Also ask about their specific goals for abstinence and recovery over the long term, and together determine if your recovery residence can meet their needs.



**Recovery residences** provide a family-like living environment free from alcohol and illicit drug use, centered on peer support and connections that promote sustained recovery from substance use. NARR has described four levels of recovery residences, ranging from fully peer-run (Level 1) to therapeutic residences (Level 4).

**Medication-assisted treatment (MAT)** refers to using a FDA-approved medication (such as buprenorphine, methadone, naltrexone) to assist a person in addressing a substance use disorder.

**Medication-assisted recovery (MAR)** also refers to using a FDA-approved medication to address a substance use disorder, and emphasizes a person's commitment to engaging with abstinence-based recovery supports.

# Reviewing
# Key Facts About MAR

The history, evolution, policies, and systems of care for medication-assisted treatment (MAT) and abstinence-based treatment (ABT) are quite different. Traditionally, individuals using medication may not have been thought of as abstinent and thus were not a visible part of the larger recovery community. However, the term medication-assisted recovery (MAR) recently emerged to describe individuals who use medication as an aid in abstaining from alcohol and illicit drug use and in support of their overall recovery process. This term offers a non-stigmatizing framework that bridges the two different philosophies.

For some individuals, medication can be life-saving, and is one of many tools to support abstinence and long-term recovery. This section briefly reviews basic facts and common myths about MAR.

**Relationship of Recovery Pathways**




## The 3-Legged stool: Medication, Psychosocial Services, and Recovery Support Services

MAR refers to using a medication to assist a person in their recovery from a substance use disorder. Ideally, MAR is part of a three-pronged effort that combines the use of medications with counseling or behavioral therapies (psychosocial services) and recovery support services. **Medication** can help stabilize brain functioning and relieves cravings and withdrawal symptoms, allowing individuals to focus on their recovery process. **Psychosocial services** help individuals address the underlying causes of addiction, while **recovery support services** ensure that individuals have the supports needed to learn how to live a life of recovery. Many opioid treatment programs are now trying to connect people to recovery support services, because these supports are important to sustain long-term recovery.



## Medications: What are they and how do they work?[1, 2]

Medications are primarily used to treat addiction to opioids such as heroin and prescription drugs like oxycodone and hydrocodone. (The US Food and Drug Administration (FDA) has also approved several medications to treat alcohol dependence.) The three FDA-approved medications for opioid use disorders are described below. Each of them works differently in the brain. However, these medications are not interchangeable. The length and severity of a person's substance use history, and their past treatment experiences and preferred treatment setting, all affect medication decisions made by an individual and their prescribing physician. Any of these three medications should be prescribed as part of a comprehensive treatment plan that includes counseling and participation in recovery support services.

- **Methadone** is a *full opioid agonist*, meaning that it works by binding to opioid receptors in the brain. Methadone targets the same neural receptors as heroin and other opioids. Replacing an illegal drug with a prescribed drug such as methadone, helps to stabilize the lives of people who are opioid dependent. The aim of methadone treatment is to prevent opioid cravings and to assist in complete abstinence from illegal opioids. Studies have shown methadone maintenance decreases illicit opioid use, psychosocial and medical problems, and criminal activity. It also improves overall health status and social functioning.

- **Buprenorphine** (also known by the common brand name Subutex) is a *partial agonist,* which means the way that it binds to opioid receptors in the brain is dependent on dosing. However, buprenorphine will only have increasing effects up to a certain dose, and then its effects will plateau. Because of this, it is often less effective for individuals who are dependent on higher opioid doses. Many studies have supported the safety and effectiveness of buprenorphine in treating opioid dependence.

- **Naltrexone** (also known by the common brand name Vivitrol), works differently than methadone and buprenorphine in the treatment of opioid use disorders. It is an *antagonist,* meaning that it binds to and also blocks opioid receptors in the brain. If a person using naltrexone begins to use opioids, naltrexone blocks the euphoric and sedative effects. Naltrexone is available in a long-acting injectable format. It is important to note that naltrexone can only be used with patients that have not used any opioids, including opioid-based medication, for at least 7-10 days. If administered before a person has completely detoxed from opioids, naltrexone can initiate serious withdrawal symptoms. This should not be confused with naloxone (also known as Narcan), which is the short-acting opioid agonist used to reverse an opioid overdose.

**Agonist:** A medication to treat opioid use disorder that is opiate-based, and binds with receptors in the brain in place of heroin or other opioids. A **partial agonist** medication also binds with opioid receptors, but not as strongly as a full agonist.

**Antagonist:** A medication to treat opioid use disorder that works by blocking any euphoric or sedative effects of using opioids.

1 American Psychiatric Association. (2006). Practice guideline for the treatment of patients with substance use disorders. 2nd edition. Arlington, VA: American Psychiatric Association. Available online at https://psychiatryonline.org/pb/assets/raw/sitewide/practice_guidelines/guidelines/substanceuse.pdf

2 Lingford-Hughes AR, Welch S, Peters L, Nutt DJ. (2012). BAP updated guidelines: evidence-based guidelines for the pharmacological management of substance abuse, harmful use, addiction and comorbidity: recommendations from BAP. *Journal of Psychopharmacology,* 26(7):899-952.

## Common Myths about MAR

Myths and misinformation about MAR have been a source of stigma and discrimination. Ultimately, this can limit access to life-saving treatments and recovery supports, or lead to a relapse or other negative consequences. MAR stigma and discrimination happens in many different ways, such as:

- Exclusion of people from recovery support services (recovery housing, mutual aid programs, recovery community events) based only on their use of medications
- Pressure from law enforcement, corrections, drug courts, abstinence-based treatment providers, or recovery community to prematurely stop or taper use of medications
- The use of outdated and stigmatizing language or information about MAR as a pathway to recovery

**Below are some examples of common myths about MAR, along with a summary of key facts in response to each myth.**

**Myth:** MAR is not a legitimate pathway to recovery.

**Truth:** FDA-approved medications, combined with psychosocial services and recovery supports, are considered the "gold standard" for opioid use disorder treatment. This approach has been proven to reduce drug use, reduce risk of overdose, prevent injection behaviors, and reduce criminal behavior. In the past, MAR has been referred to as "drug replacement therapy," often leading to disagreement about whether people on MAR could truly live a substance-free life in recovery. However, medications are essential for some people to reduce cravings and withdrawal symptoms, and to help them avoid future opioid misuse and engage in long-term recovery. Medication helps to prevent relapse and overdose death. From this perspective, MAR may actually be the best chance some have at life and recovery.

**Myth:** MAR means someone is not practicing abstinence-based recovery.

**Truth:** MAR is consistent with abstinence-based approaches to recovery. For example, an individual who is taking their medication as prescribed, is not engaging in other substance use like alcohol or marijuana, and is connected to a recovery program or culture, is fulfilling the alcohol and illicit drug-free expectations of an abstinence-based approach. The emergence of MAR as a concept has led to an increasing number of abstinence-based programs, including a growing group of 12-step programs, to welcome individuals using MAR to participate.

**Myth:** MAR should only be used for a short time.

**Truth:** Currently, there is no research to support the use of a predetermined length of treatment for MAR. Decisions about length of treatment and any adjustments should be made between an individual and their prescribing physician. Many issues involving MAR come from someone stopping their prescribed medication too abruptly. When this happens, a person's tolerance to opioids drops dramatically, putting them at risk for a life-threatening overdose.

# Understanding

The differences between treatment and recovery pathways that incorporate medications, and those that do not, are important when considering housing options for people in recovery. Traditionally, individuals who have chosen recovery housing as an abstinence-based environment to support their recovery have not used MAR. This has often been driven by recovery residences, which may not have been open to accepting individuals using medication to address substance use. As the opioid epidemic has escalated, so have the numbers of individuals using MAR, including those who need housing that supports their recovery.



For individuals practicing abstinence-based MAR, they are likely to seek a recovery residence with an abstinence-oriented philosophy. However, for some individuals using medication and not practicing abstinence, a recovery residence may not be appropriate. Other supportive housing programs that use a “harm reduction” philosophy might be a better environment for someone who is using medication to address opioid dependence, but is not ready to commit fully to abstinence-based recovery. In light of the current demand for MAR-capable housing, some recovery residences are being developed exclusively for residents practicing MAR, while other models are blending MAR residents with residents whose recovery is not medication-assisted.

In many situations and locales, recovery residence operators are being asked to make adaptations that adequately support residents who are practicing MAR. This might include adapting perceptions, policies, and procedures, and gaining a better understanding of different medications. With intention, these changes can work to advance the safety and recovery of all residents.

# Welcoming

Regardless of how a recovery residence plans to support individuals who are using MAR, there are several considerations and best practices to foster an inclusive, welcoming, and safe environment.

## Screening MAR Residents

Recovery residences may ask applicants questions that determine their ability to meet financial requirements, their history of substance use and recovery, and whether they otherwise meet the home's eligibility criteria. Screening procedures should be consistent, fair, and documented, and a residence should not accept or reject an applicant solely based on their use of MAR. Such exclusions may violate the Federal Fair Housing Act and/or the Americans with Disabilities Act. Be sure to consult with an attorney before establishing and using screening procedures, to ensure you are aware of all relevant federal and state laws and their impact.

For more information, Know Your Rights summarizes the rights of individuals using MAT.

Here are some general tips on how to screen and evaluate potential MAR residents:

1. As with any applicant, your evaluation process should demonstrate that your residence is able to meet an individual's needs, whether you are able to support residents using medications or not.
2. The process should be consistent across all applicants and focus on questions that determine the applicant's 1) eligibility, such as substance use recovery history and priority population criteria, and 2) ability to meet the terms of the resident agreement, such as financial obligations and upholding house rules and expectations.
3. Avoid categorical exclusions based on use of medications. Such exclusions may violate the Federal Fair Housing Act and/or the Americans with Disabilities Act.
4. Pre-acceptance conversations should engage applicants in discussion about their recovery plans, and on their willingness to abstain from alcohol and all illicit drugs, as conditions of the environment. Not all individuals using medications to address opioid use want an abstinence-based recovery environment—even one that permits opioid medications.
5. The applicant's recovery goals should align with the recovery residence's philosophy and services and support offerings, regardless of their MAR status.
6. Residents practicing MAR are expected to engage in personal recovery programs, and to participate in residence activities, just like any other resident. Making this clear in the interview and acceptance process will avoid misunderstandings and will help applicants to understand community expectations.
7. Inform applicants that you may need them to permit you (or your designated staff) and their prescribing physician to communicate with each other. *(Note: this may vary based on the level of a recovery residence and whether staff are available to fill this role.)* Both you and the physician will need signed releases from the applicant. Obtain a release from the applicant for that communication. Inform the applicant that you will verify with the physician that the same permission has been granted to him/her. You can find a sample consent form here (42 CFR Part 2 compliant). Consult an attorney for guidance on the releases.
8. Be clear about medication management and safekeeping policies.
9. If an applicant is not a good fit for your residence, offer referrals to other residences that might be more appropriate.



# Sample Resident Screening Questions

1. Do you have a history of substance use issues?
    a. If so, what has your recovery journey been like (history of use, treatment, recovery)?
    b. If so, what recovery goals do you want to achieve while living in the recovery residence?
    c. Complete a recovery capital scale. *(For an example, click here.)*
    d. To verify your abstinence from alcohol and illicit drugs, are you willing to submit a urine sample and disclose what medications you are prescribed in order to rule out “false positives”?
2. Are you able to provide a copy of a government-issued ID verifying your name and age?
3. Are you willing to adhere to and hold others accountable to the “House Rules”?
4. Are you willing to participate in the required recovery activities?
5. Are you able to manage basic activities of daily living (ADL) on your own, such as bathing, dressing, continence, eating, and evacuating the home during emergencies?
6. Are you able to manage instrumental activities of daily living (IADL) on your own, such as self-managing medications, finances, transportation, cooking, shopping, house cleaning, and laundry?
7. What is your criminal justice involvement history including felony convictions or supervision status?
8. How will you pay your recovery residence fees and living expenses? Are you employed? Are you willing to work? What financial resources do you have?

## Coordinating with Prescribing Physicians

Information sharing with prescribers is essential to the success of residents on MAR. While decisions about an individual's medication will be driven by discussions with their prescriber, it is important for recovery residence operators to have a basic understanding of a resident's recommended dosing and medication duration, and potential negative or positive effects of the medication. Additionally, it is important for prescribers to understand the impact of certain medications and medication interactions on a person's day-to-day recovery.

This two-way communication is especially important because of the challenges of establishing appropriate doses and protecting against diversion or other behaviors that may be associated with drug-seeking. Recovery residence operators can let prescribers know if they are observing behaviors that could indicate that a dosage is not adequate or appropriate. Their input is also helpful if a resident requests a higher dose or a different medication from a prescriber, to ensure that the prescriber makes an informed decision together with the resident.

It may take time to foster this kind of open communication between recovery residences and prescribers. Some recovery residence operators report that not all prescribers welcome this kind of communication. However, the more that operators make an effort to collaborate, the more likely that prescribers will see them as key partners in supporting a person's treatment and recovery goals.

To facilitate this collaboration, recovery housing operators and/or staff should establish a mutual release with prescribers about what information will be shared and how frequently it will be shared. It is important that the release works both ways—that it allows the recovery residence operator/staff member to share information with the prescriber, and for the prescriber to share information with the residence operator/staff. You can find a sample consent form here (42 CFR Part 2 compliant). Be sure to consult an attorney when developing the release agreements.

*Information sharing* with prescribers is essential to the success of residents on MAR.

## Preventing Diversion of Medications

Because of their opioid base, methadone and buprenorphine both have "street value" and as a result, introduce diversion risks. Preventing diversion of these and other medications that are kept on-site is critical to the safety and wellbeing of all residents and staff.

It is important to have clear written policies on medications and ensure that staff members are thoroughly trained and supervised. Many recovery residences already have general policies and procedures in place for residents' medications. Depending on the level of a recovery residence, the need and capability to administer or supervise residents' medications will vary. For prospective residents, it might be helpful to incorporate questions about medication support needs into screening criteria, to ensure that a residence can fully meet a person's needs.

**Recovery residences may find the following considerations and tips helpful in preparing for MAR-specific diversion risks.**

| | |
|---|---|
| **Staff training on handling and distributing medication** | ◆ Ensure that staff are knowledgeable about policies and procedures for managing on-site medications.<br>◆ Ensure that staff do not dispense medication unless the facility license and their credentials permit them to do that. |
| **Medication lists** | ◆ Residents should be provided with a list of prohibited medications if there any. Examples could include over-the-counter cold and flu remedies that contain alcohol. |
| **Medication security** | ◆ If your staffing model supports this, strictly limit access to all medications. However, residents must be able to access their prescribed medications.<br>◆ Provide safes and lockers for secure storage. Keyless entry safes or lockers promote the safety and security of on-site medication storage where either the resident is the only one with access OR staff have access to storage devices kept in the main office.<br>◆ Have staff accompany residents when picking up medications from pharmacy. |
| **Managing days with fewer staff** | ◆ Allow residents to keep the minimum required dose(s) on their person on days with fewer staff. |
| **Behavior monitoring** | ◆ Be attuned to the behavioral warning signs of inappropriate dosing and/or misuse of medications such as drowsiness, lethargy, mood changes, increase in drug use ideation, or disengagement with housemates. |
| **Drug testing** | ◆ Conduct regular, random tests. Determine who is responsible for conducting these tests and when. Affordable tests are available that isolate methadone and buprenorphine from other opioids. Testing for naltrexone is not necessary.<br>◆ Test residents and staff regardless of MAR status. Inform staff of the drug testing requirement prior to employment or promotion to positions to authority.<br>◆ If available, conduct lab testing to assess the levels of specific substances. Ensure that staff have the information or support needed to interpret and respond to testing results. |
| **Medication logs** | ◆ Conduct daily monitoring and documentation of each medication dose taken. |
| **Medication inventory** | ◆ Carefully track the number of pills or strips associated with each prescription. |
| **Blister packs** | ◆ Use packaging that makes it obvious when a pill has been removed. |

## Creating a House Culture that Supports MAR

Recovery residences reflect the culture of local recovery communities, which have historically been 12-step or faith-based communities with definitions of recovery that do not include the assistance of medication. Residents' personal experiences and openness to MAR are diverse and varied, often based on the amount of knowledge and exposure a person has had. Welcoming individuals practicing MAR may require adaptations developed through a process of open discussion, education, and reflection with residents and staff. Below are tips to guide this process:

1 **Educate residents about MAR, including residents who are currently using medication as well as those who are not.** Make basic information about MAR available throughout common areas of the house and upon request. In addition to providing helpful and supportive information to residents currently using medication, be sure to provide information on MAR resources for residents with opioid use disorders who are not currently receiving one of these medications. All residents deserve to know about their options, particularly if they are struggling in their recovery. Brief fact sheets or brochures might describe topics such as: the growing number of people in the recovery community that are using MAR, developing a recovery plan that may or may not include medication over time, talking with your doctor about potential side effects of medications and before changing doses (up or down), and the importance of not sharing or diverting medications.

2 **Share success stories and openly discuss concerns.** Some of the strongest opponents of MAR are those who have had a negative experience with the medications and/or treatment regimens. It is important not to discount or minimize their lived experience, while helping them stay open to the idea that others can benefit from MAR. Many people have succeeded in recovery with the help of MAR, but their story is not often told. Find a MAR champion inside or outside of your residence who is willing to share their experience and answer questions and concerns from residents. Assure residents that many pathways (or "all abstinence-based pathways, including MAR") to recovery will be honored in the house. Also, when celebrating an individual's discontinuation of a medication as a milestone in their recovery journey, be careful not to imply that discontinuation of use is an immediate goal for everyone using MAR, or that they have achieved more in their recovery than someone who is still using medication.

3 **Provide connections to MAR-welcoming recovery support services.** Depending on where a residence is located, it may be difficult to find mutual assistance groups that accept individuals receiving MAR. For some individuals using medication to support their recovery, they may be concerned about, or directly experience, stigma from others in the recovery community. It is important that you, your staff, and your residents develop and maintain a list of MAR-welcoming meetings and other resources for your MAR residents. This will help residents to engage in essential recovery supports, regardless of their personal pathway to recovery.

4 **Develop and provide MAR-supportive recovery support services, such as an all-recovery meeting.** Many recovery residences rely on local mutual aid societies to provide external recovery support. In areas where MAR-welcoming mutual aid societies do not exist, recovery residences should develop their own using resident leaders, alumni, and/or staff.